**FILED**

**10:56 am, Mar 06, 2017**

**U.S. DISTRICT COURT**
SOUTHERN DISTRICT OF INDIANA
Laura A. Briggs, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

ALAN RACKEMANN, individually and on behalf of all others similarly situated,

       *Plaintiff*,

    v.

LISNR, INC., a Delaware Corporation, ADEPT MOBILE, LLC., a Massachusetts Limited Liability Company, and INDIANAPOLIS COLTS, INC., an Indiana Corporation,

       *Defendants*.

Case No. 1:17-cv-00624-TWP-MJD

Hon. Tanya Walton Pratt

## PLAINTIFF'S AMENDED COMBINED RESPONSE IN OPPOSITION
## TO DEFENDANTS' MOTIONS TO DISMISS

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................... 1

II.    FACTUAL BACKGROUND ................................................................................. 3

    A.    The App and Its Surreptitious Listening Activity. ........................................ 3

    B.    Plaintiff's Experience .................................................................................... 5

III.    ARGUMENT ......................................................................................................... 5

    A.    Plaintiff Has Article III Standing to Assert his Wiretap Act Claim. .............. 5

    B.    Plaintiff Has Plausibly Alleged a Violation of the Wiretap Act .................... 11

        1.    *Plaintiff alleges that Defendants intercepted the contents of his private communications.* .......................................................................... **13**s

            a.    *Plaintiff has alleged an "interception."* ....................................... 13

            b.    *Plaintiff has alleged "private communications."* ......................... 17

            c.    *Plaintiff has alleged "contents."* ................................................. 19

        2.    *Plaintiff states a claim against all three Defendants.* ............................ 20

V.    CONCLUSION ..................................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**United States Supreme Court Cases:**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................. 10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................. 10

*Riley v. California*,
    134 S. Ct. 2473 (2014) ............................................................................. 17

*Spokeo Inc. v. Robins*,
    136 S. Ct. 1540 (2016) ........................................................................ 2, 6, 7

**United States Circuit Court of Appeals Cases:**

*Bell v. City of Chicago*,
    835 F.3d 736, 738 (7th Cir. 2016) ......................................................... 12

*Gubala v. Time Warner Cable Inc.*,
    846 F.3d 909 (7th Cir. 2017) ................................................................... 9

*Jacobson v. Rose*,
    592 F.2d 515 (9th Cir. 1978) ................................................................. 19

*Luis v. Zang*,
    833 F.3d 619 (6th Cir. 2016) ................................................................. 19

*Matter of John Doe Trader No. One*,
    894 F.2d 240, 242 (7th Cir. 1990) ...........................................................

*Meyers v. Nicolet Restaurant of De Pere, LLC*,
    843 F.3d 724 (7th Cir. 2016) ............................................................. 9–10

*Negron-Torres v. Verizon Commc'ns, Inc.*,
    478 F.3d 19 (1st Cir. 2007) ..................................................................... 2

*Noel v. Hall*,
    568 F.3d 743 (9th Cir. 2009) ................................................................. 12

*Peavy v. WFAA-TV, Inc.*,
    221 F.3d 158 (5th Cir. 2000) ................................................................. 11

*Saldivar v. Racine*,
    818 F.3d 14 (1st Cir. 2016) ................................................................... 10

*Scanlan v. Tex. A & M Univ.*,
    343 F.3d 533 (5th Cir. 2003) .................................................. 14

*Strubel v. Comenity Bank,*
    842 F.3d 181 (2d Cir. 2016)............................................... 10–11

*United States v. Luong*,
    471 F.3d 1107 (9th Cir. 2006) ............................................... 12

*United States v. Turk*,
    526 F.2d 654 (5th Cir. 1976) ................................................. 12

*United States v. Smith*,
    155 F.3d 1051 (9th Cir. 1998) .......................................... 12, 13

*Van Patten v. Vertical Fitness Grp. LLC,*
    No. 14-55980, 2017 WL 460663 (9th Cir. Jan. 30, 2017)................. 7

*Venture Assocs. Corp. v. Zenith Data Sys. Corp.*,
    987 F.2d 429, 431 (7th Cir. 1993) .......................................... 16

**United States District Court Cases:**

*Aranda v. Caribbean Cruise Line,*
    No. 12 C. 4069, 2016 WL 4439935 (N.D. Ill. Aug. 23, 2016).......... 8

*Byrd v. Aaron's, Inc.*,
    14 F. Supp. 3d 667 (W.D. Pa. 2014)........................................ 19

*Goodman v. HTC Am., Inc*,
    No. 11-cv-1793, 2012 WL 2412070 (W.D. Wash. June 26, 2012) .... 9

*Hutton v. Woodall*,
    No. 13-cv-1338, 2013 WL 5214633 (D. Colo. Sept. 17, 2013)........ 16

*In re Carrier IQ*,
    78 F. Supp. 3d 1051 (N.D. Cal. 2015) .................................. 9, 20

*In re Innovatio IP Ventures, LLC Patent Litig.*,
    886 F. Supp. 2d 888 (N.D. Ill. 2012) ...................................... 15

*In re iPhone Application Litig.*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) ..................................... 9

*In re Toys R Us, Inc., Privacy Litig.*,
    No. 00-cv-2746, 2001 WL 34517252 (N.D. Cal. Oct. 9, 2001) ....... 19

*Koenig v. USA Hockey, Inc.*,
  No. 09-cv-1097, 2010 WL 4783042 (S.D. Ohio June 14, 2010) ................................... 14

*Leslie v. Fielden*,
  2011 WL 4005939 (N.D. Okla. Sept. 8, 2011) ................................................................ 17

*Matera v. Google Inc.*,
  No. 15-cv-04062, 2016 WL 5339806 (N.D. Cal. Sept. 23, 2016) ............................ 2, 7, 8

*Rackemann v. Lisrnr et al.*,
  No. 2:16-cv-01573 (W.D. Pa.) ......................................................................................... 6

*Rajkumar v. Cisco Sys., Inc.*,
  No. 08-1600, 2008 WL 3397851 (N.D. Cal. Aug. 11, 2008) .......................................... 17

*Romero v. Securus Techs., Inc.*,
  2016 WL 6157953 (S.D. Cal. Oct. 24, 2016) .................................................................... 7

*Satchell v. Sonic Notify, Inc. et al.*,
  No. 16-cv-4961 (N.D. Cal. Feb. 2, 2017) ................................................................ *passim*

*Sepulveda v. UMass Corr. Health Care*,
  160 F. Supp. 371 (D. Mass. 2016) ........................................................................... 10, 16

*Walker v. Rieth-Riley Const. Co.*,
  No. 2:03 CV 507 PS, 2005 WL 1799535, at *2 (N.D. Ind. July 25, 2005) .........................

*Yershov v. Gannet Satellite Info. Network, Inc.*,
  No. 14-cv-13112, 2016 WL 4607868 (D. Mass. Sept. 2, 2016) .................................... 7, 8

**Statutes:**

18 U.S.C. § 2510 *et seq.* ......................................................................................... *passim*

28 U.S.C. § 1404 .............................................................................................................. 1

Pub. L. No. 90-351, § 801 (1968) ..................................................................................... 8

**Rules:**

N.D. Cal Civ. L.R. 3-4(e) ............................................................................................ 7 n.4

N.D. Cal. Civ. L.R. 7-14 .............................................................................................. 7 n.4

Fed. R. App. P. 32.1 ..................................................................................................... 7 n.1

Fed. R. Civ. P. 12 ............................................................................................................ 1

v

## I.     INTRODUCTION

Though marketed to sports fans as a means of tracking a football team, the mobile application at issue in this lawsuit (the "App") is, in reality, a means of tracking consumers. Built by Defendants Indianapolis Colts, Inc. (the "Colts"), Lisnr, Inc. ("Lisnr"), and Adept Mobile, LLC ("Adept"), the App demands constant access to a smartphone's microphone, which Defendants can activate whenever and wherever they please. The App then monitors and analyzes all audio input for audio signals emitted by "audio beacons," which trigger the delivery of promotional content directly to a user's device. Plaintiff Alan Rackemann alleges that this conduct constitutes an unlawful interception of his oral communications in violation of the Electronic Communications Privacy Act (the "Wiretap Act"), 18 U.S.C. § 2510, *et seq.* Defendants have each moved to dismiss for lack of standing and/or failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). As explained in detail below, Defendants' motions to dismiss should be denied in their entirety.[1]

Colts and Adept first charge that Plaintiff lacks Article III standing, contending that battery loss and other alleged damage to Plaintiff's smartphone do not give rise to an injury in fact. This argument misses the mark for several reasons. First and foremost, a plaintiff asserting a Wiretap Act claim based on an alleged interception of his or her communications has Article III standing independent of any physical damage to his or her smartphone—a conclusion recently reached by the United States District Court for the Northern District of California in a case

---

[1]     This case was transferred to this District by agreement of the Parties in accordance with 28 U.S.C. § 1404(a), rendering moot Lisnr's previous motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). (*See Rackemann v. Lisnr, Inc et al.*, Case No. 3:16-cv-12326-MGM (D. Mass.) Filing No. 45 and Filing No. 47.) Defendants' motions to dismiss for lack of Article III standing and failure to state a claim are therefore the only motions that remain pending before this Court. Per the Parties' stipulation, Plaintiff has updated and re-filed his opposition brief here.

involving similar technology. *Satchell v. Sonic Notify, Inc. et al.*, No. 16-cv-4961, 2017 WL 760786, at \*3–\*6 (N.D. Cal. Feb. 13, 2017); *see also Matera v. Google Inc.*, No. 15-CV-04062-LHK, 2016 WL 5339806, at \*10 (N.D. Cal. Sept. 23, 2016) (finding that "alleged violations of Plaintiff's statutory rights under the Wiretap Act . . . constitute concrete injury in fact").

Indeed, *Spokeo Inc. v. Robins*, 136 S. Ct. 1540 (2016), makes clear that intangible harm arising from a statutory violation may constitute a concrete injury in fact, particularly where protection against that harm is rooted in history and the judgment of Congress. Here, because invasion of privacy has long been recognized as an actionable harm at common law, and because Congress recognized a substantive right to privacy in one's communications in enacting the Wiretap Act, the alleged interception of Plaintiff's communications confers Article III standing, independent of any damage to Plaintiff's smartphone. Second, and in addition to the alleged interception itself, courts have routinely held that wear and tear to a smartphone, battery loss, and other systematic resource depletion constitute a concrete injury for purposes of Article III, and these are exactly the type of injuries Plaintiff alleges he suffered as a result of Defendants' continual access to and activation of his microphone.

Defendants next pick at Plaintiff's Wiretap Act claim, suggesting that he has not plausibly alleged an "interception" of the "contents" of his "private communications," while each Defendant also downplays its role in the interception scheme. Defendants first urge the Court to equate the term "intercept" with "possess," but this definition is narrower than what is set forth in the statute, which refers to the "aural or other acquisition" of the contents of a communication. *See* 18 U.S.C. § 2510(4). By definition, "acquire" means to "possess or control," and here, Plaintiff alleges that Defendants exercised control over his communications when they recorded "*all* audio within range," and then analyzed that audio for audio beacons. (*See* Filing

2

No. 1 ("Compl.") ¶ 4.) Next, Defendants say that because the App works by filtering recorded audio to identify "inaudible" beacon tones, Plaintiff fails to allege that the contents of his communications were captured. But in doing so, the Defendants admit—as they must—that, by design, the App must *first capture and record all audio*, including private conversations, before analyzing it for beacon tones, (*see id.* ¶¶ 4, 30), which makes plausible the claim that Defendants acquired the "contents" of his communications. Defendants then challenge whether Plaintiff's communications were actually private. With respect to privacy, however, Plaintiff alleges that for *four years*—a time period in which he (like the rest of us) constantly carried his smartphone on his person—Defendants routinely captured audio via his smartphone's microphone, which was "present in locations and personal and private situations not generally accessible to the public" where he expected "that his conversations were to remain private." (*Id.* ¶ 35.) Such allegations demonstrate Plaintiff's reasonable belief that his communications would not be subject to interception and, at this stage, must be taken as true. Finally, because each Defendant directly engaged in the interception scheme—in a number of ways—each faces liability under the statute.

Defendants' motions to dismiss Plaintiff's Wiretap Act Claim should be denied.

## II.   FACTUAL BACKGROUND

### A.   The App and Its Surreptitious Listening Activity.

In 2016, the Colts partnered with Lisnr and Adept to develop the App—a mobile application that would not only allow football fans to track the Colts, but one that would also allow Defendants to monitor Colts fans. (Compl. ¶ 3.) The App, which was recently redeveloped by Adept, employs Lisnrs' audio beacon technology. *Id.* ¶¶ 2–3. This technology enables the Colts to send football fans customized content based on their locations. *Id.* ¶ 3. The Colts, in

turn, invite consumers to download the App free-of-charge in the Google Play Store. *Id.* ¶ 25. To date, the App has been downloaded between 100,000 and 500,000 times. *Id.*

For Lisnr's audio beacon technology to function, the App must activate the microphone on a consumer's smartphone and listen to and record *all audio*—including private conversations––whenever Defendants choose. (Compl. ¶¶ 4, 30.) As long as the microphone is activated, the App will continually monitor all audio input that it receives for Lisnr's "audio beacons," specially equipped speakers that emit unique audio signals. *Id.* ¶ 22. Once the microphone is activated, the App temporarily records the audio it captures for analysis. *Id.* ¶¶ 4, 32. If the App detects one of these unique audio signals (to which Lisnr refers as "SmartTones") as present within the recorded audio, it may display promotional content to the consumer. *Id.* ¶¶ 4, 32.

Consumers have no control over when and how Defendants will activate their microphones. Instead, Defendants craft "listening rules," which dictate the date and time interval when a user's microphone will activate and begin listening. *Id.* ¶ 30. These rules are stored on Lisnr's server, which the App constantly pings for listening instructions. *Id.* It doesn't matter where users are located—in church, at work, in their cars, or in their homes—the microphone will activate as long as Defendants' "listening rule" says so. *Id.* In addition, listening rules will activate the microphone if the App is not actually open, or the smartphone is locked. *Id.* ¶ 33.

Consumers likewise receive no indication that Defendants are recording their private conversations via the App. *Id.* Though the App asks for certain "permissions" the first time a user opens it, including permission to access the smartphone's microphone, it does not explain how the microphone will be used, nor does it ask that users "opt-in" to the audio beacon technology, which receives no mention in the App's Terms of Service. *Id.* ¶¶ 27–28.

Each Defendant played a necessary and integral role in the interception of App users'

private communications. The Colts provided a willing audience of football fans. Without the Colts' fans base, Defendants could not have obtained access to hundreds of thousands of microphones. *Id.* ¶ 62. These microphones provided a doorway into the private lives of App users—and the access point necessary for Lisnr's beacon technology to function. *Id.* ¶ 63. Adept, in turn, with its development expertise, provided the means by which Lisnr's technology was integrated into the App and delivered to unsuspecting consumers. *Id.* ¶ 64. And as stated above, each Defendant played a material role in deciding when to activate users' microphones and begin recording all surrounding audio, necessarily including private conversations. *Id.* ¶ 30. Only together could Defendants ensure that App users' microphones would begin listening and recording whenever and wherever they wanted. *Id*.

**B.      Plaintiff's Experience.**

In 2012, Plaintiff downloaded the App from the Google Play store and opened it immediately. *Id.* ¶ 34. Over the next *four years*, until he stopped using the App in September 2016, Plaintiff used the App to follow the progress of the Colts. *Id*. During this timeframe, Plaintiff carried his smartphone on his person, taking it to places where other persons were not present, and where he would have private conversations. *Id.* ¶ 35. Not long after discovering that the App was monitoring him, Plaintiff filed suit in the Western District of Pennsylvania against the Colts, Lisnr, and YinzCam, Inc., which he believed to be the developer of the App. *See Rackemann v. Lisrnr et al.*, Case No. 2:16-cv-01573-AJS (W.D. Pa.). The case was re-filed in this District, eliminating YinzCam, Inc. and naming Adept as a Defendant.

**III.      ARGUMENT**

**A.      Plaintiff Has Article III Standing to Assert his Wiretap Act Claim.**

By surreptitiously listening in on Plaintiff's private conversations via the App,

Defendants caused Plaintiff to suffer a concrete and particularized "injury in fact" sufficient to confer Article III standing. Only the Colts and Adept challenge standing, arguing that the alleged "wear and tear" on Plaintiff's smartphone and drainage of Plaintiff's smartphone battery do not give rise to a cognizable injury in fact. (Filing No. 32 ("Colts Mem.") at 18–19; Filing No. 33 ("Adept Mem.") at 11–12.) Their focus on the physical harm to Plaintiff's smartphone, however, misses the point. Plaintiff's Complaint is premised on an invasion of Plaintiff's substantive interest, protected by the Wiretap Act, in the privacy of his private communications. Because this interest is firmly rooted in both history and the judgment of Congress, Plaintiff need not allege any further harm resulting from Defendants' conduct.

The focus on history and the judgment of Congress derives from the Supreme Court's recent decision in _Spokeo, Inc. v. Robins_, 136 S. Ct. 1540, 1549 (2016). _Spokeo_ involved a challenge to a plaintiff's standing to sue for procedural violations of the Fair Credit Reporting Act. _Id._ at 1545. While declining to decide one way or the other whether the plaintiff there had standing to sue, the Court rejected the defendant's argument that Article III requires a plaintiff to suffer some consequential harm from a statutory violation to have standing to sue. _Id._ at 1549-50. Indeed the Court made clear that in some cases a plaintiff alleging an invasion of their legally protected interests "need not allege any _additional_ harm beyond the one Congress has identified." _Id._ The Court also held that "intangible injuries can [] be concrete." _Id._ at 1548-49. To determine whether an intangible injury is concrete, the Court held that history and the judgment of Congress provide "instructive" guidance. _Id._ at 1549. With respect to history, _Spokeo_ instructs courts to consider "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." _Id._ "In addition, because Congress is well positioned to identify intangible

6

harms that meet minimum Article III requirements," its decision to "elevate to the status of legally cognizable" an injury previously thought inadequate in law is significant. *Id.*

Two district courts undertaking this analysis in the context of the Wiretap Act have concluded that allegations that a defendant intercepted private communications in violation of the Act, standing alone, establish a concrete harm that satisfies Article III. *See Satchell v. Sonic Notify, Inc.*, 2017 WL 760786 (N.D. Cal. Feb. 13, 2017);[2] *Matera v. Google Inc.*, 2016 WL 5339806 (N.D. Cal. Sept. 23, 2016). In *Satchell*, much like this case, the plaintiff alleged that the defendants had violated the Wiretap Act through the use of beacon technology that surreptitiously turned a cellular phone's microphone on so that the App could listen to and analyze all audio within range. 2017 WL 760786, at *2. Rejecting the defendants' argument that the plaintiff lacked standing under the Wiretap Act, the court observed that the Act has a "sufficiently close relationship" to a common law claim for invasion of privacy to be concrete under *Spokeo*. *Id.* at *4. Further, the court found that allegations "that Defendants captured and listened to private conversations without [the plaintiff's] knowledge or consent" was "sufficient to demonstrate she suffered injury-in-fact." *Id.* at *5.

The *Matera* court, in a case about scanned emails, reached a similar conclusion. The court first observed that the Wiretap Act's prohibition on "unauthorized interception of an individual's private communications" bore a close resemblance to the tort of intrusion upon

---

[2]     Plaintiff notes that while the *Satchell* opinion was marked "not for citation" under the local rules for the Northern District of California and, thus, cannot in that District, *see* N.D. Cal. Civ. L.R. 3-4(e), there is no corresponding rule here that prevents citation to *Satchell* as persuasive authority. *Compare* N.D.Cal. Civ. L.R. 3-4(e) (prohibiting citation of cases designated by District Courts under N.D. Cal. Civ. L.R. 7-14 "to this Court") *with* Fed. R. App. P. 32.1 ("A court may not prohibit or restrict the citation of federal judicial opinions. . . that have been . . . designated as as "unpublished," "not for publication," "non-precedential," "not precedent," or the like.").

seclusion, which may occur when a defendant opens a plaintiff's mail or taps their telephone wires. _2016 WL 5339806, at *10_. The court further observed that the Wiretap Act was passed "to protect against the invasion of privacy," _id._, and provided a private right of action under which statutory damages were recoverable for such an invasion without proof of monetary harm, _id._ at *12. Because the defendant's conduct had invaded the plaintiff's protected privacy interests, and because Congress had afforded a private right of action, the court concluded that the plaintiff had standing under _Spokeo_. _Id._ at *12-*13.

This Court should conclude, in line with _Satchell_ and _Matera_, that Plaintiff Rackemann has standing to sue. The invasion of privacy that results from a Wiretap Act violation is a harm that has long been considered a basis for suit in common law courts. The harm Plaintiff describes—the invasion of privacy resulting from Defendants' interception of his private communications—is consistent with privacy invasions that have long been recognized at common law. _See, e.g._, _Van Patten v. Vertical Fitness Grp. LLC_, 847 F.3d 1037 (9th Cir. 2017) ("Actions to remedy defendants' invasions of privacy, intrusion upon seclusion, and nuisance have long been heard by American courts, and the right of privacy is recognized by most states."); _Romero v. Securus Techs., Inc._, 2016 WL 6157953, at *5 (S.D. Cal. Oct. 24, 2016) (denying motion to dismiss state-law wiretap claim based on common law history of suits for invasion of privacy); _Yershov v. Gannet Satellite Info. Network, Inc._, No. CV 14-13112-FDS, 2016 WL 4607868, at *8 (D. Mass. Sept. 2, 2016) (denying motion to dismiss VPPA claim because "an individual's right to privacy . . . has long been regarded as providing a basis for a lawsuit in English or American courts") (internal quotations omitted); _Aranda v. Caribbean Cruise Line_, No. 12 C. 4069, 2016 WL 4439935, at *6 (N.D. Ill. Aug. 23, 2016) ("American and English courts have long heard cases in which plaintiffs alleged that defendants affirmatively

directed their conduct at plaintiffs to invade their privacy and disturb their solitude."). Moreover, as *Matera* makes clear, the harm Rackemann alleges—interception of private conversations—is precisely the harm Congress sought to remedy through the Wiretap Act. Indeed, Congress specifically noted that it first created wiretapping prohibitions "in order to protect effectively the privacy of wire and oral communications" and "to safeguard the privacy of innocent persons." Pub. L. No. 90-351, § 801(b), (d) (1968). By accessing Plaintiff's smartphone microphone whenever they pleased, and using it to record and analyze his private communications, Defendants violated the core, substantive privacy interests that Congress sought to protect in enacting the Wiretap Act. And the Act creates a private right of action and allows for recovery of statutory damages by a plaintiff in Rackemann's shoes. *See Matera*, 2016 WL 5339806, at *12-*13. The judgment of Congress therefore confirms that Rackemann has suffered a concrete injury-in-fact.

Satchell and *Matera* also are consistent with the Seventh Circuit's post-*Spokeo* case law. In *Gubala v. Time Warner Cable Inc.*, for instance, the plaintiff alleged that the defendant violated 47 U.S.C. § 551(e), a provision of the Cable Act prohibiting overlong retention of personal information by cable providers, part of a series of protections meant to keep that information secret. The court observed, in line with the many decisions cited above, that "violations of rights of privacy are actionable." 846 F.3d 909, 912 (7th Cir. 2017). But the court ultimately concluded that the plaintiff lacked standing to sue because "there is no indication of any violation of the plaintiff's privacy" because the protected information had not been disclosed to anyone. *Id.* In other words, in *Gubala*, unlike in this case, the defendant's actions did not actually infringe the privacy rights created by statute.

A similar problem sunk the plaintiff in *Meyers v. Nicolet Restaurant of De Pere, LLC,*

843 F.3d 724 (7th Cir. 2016). There, the plaintiff sued because a restaurant receipt disclosed

more information than permitted by a federal law designed to prevent identity theft. *Id.* at 725.

But the evidence showed that only the plaintiff ever saw the non-compliant receipt, leading the

court to doubt that the unlawful information "could have increased the risk that Meyers' identity

would be compromised. *Id.* at 727. Just as in *Gubala*, then, the defendant's statutory violation

wasn't actionable because it hadn't infringed on the plaintiff's protected statutory interest.

What's more, the *Meyers* court noted, Congress had specifically made known its intention "to

limit FACTA lawsuits to consumers 'suffering from any actual harm.'" *Id.* at 728 (quoting Pub.

L. 110-241 § 2(b)). In that case, then, unlike in this case, *see* Matera, 2016 WL 5339806, at *12-

*13, Congress's judgment established that the plaintiff *didn't* have standing to sue. Rackemann's

allegations provide what was missing in both *Gubala* and *Meyers*: allegations of harm similar to

those recognized at common law, allegations that the defendant's conduct in fact infringed the

privacy interests protected by statute, and evidence that Congress intended for plaintiffs in

Rackemann's position to have a right of action.

      The conclusion that Rackemann has standing also is supported by *Strubel v. Comenity

Bank*, 842 F.3d 181 (2d Cir. 2016), which was cited approvingly in Meyers, 843 F.3d at 728 n.4.

In *Strubel* the plaintiff raised four claims against the defendant bank for violations of regulations

implementing the Truth in Lending Act that mandated certain disclosures. 842 F.3d at 185-86.

The Second Circuit held that the plaintiff had no standing to raise claims regarding disclosures

relating to services the bank did not provide or that the plaintiff never sought. *Id.* at 191-95.

Failure to receive correct information in that context could not possibly invade or put at risk the

plaintiff's concrete interests. *Id*. But the court held that the plaintiff did have standing to assert

claims related to the other disclosures—relating to the "informed use of credit." *Id.* at 190-91.

These statutory violations, the court wrote, related to the plaintiff's own credit obligations, and, therefore, the violation "by itself" risked impairing the plaintiff's interests. *Id*. Rackemann's claims are more like the latter two claims in *Strubel*: Defendants' unlawful conduct "by itself" invades Rackemann's concrete, legally protected interests. He therefore has standing to sue.

Finally, while Defendants choose to focus their standing analysis on the wear and tear to Plaintiff's smartphone, here, those allegations simply provide an *additional* basis for standing. As an initial matter, Defendants' contention that "Plaintiff . . . no longer used the Colts app on the date that his Complaint alleges the microphone was activated" mischaracterizes the pleadings. (Colts Mem. at 18; Adept Mem. at 12.) The Complaint makes clear that any time a "listening rule" is in place, the App would "continuously listen . . . even when the App is not open, such as when a smartphone is locked or when its screen is powered down." (Compl. ¶ 33.) Although the Complaint includes an October 9, 2016 listening rule to demonstrate an instance when the microphone was activated, it does so as an example—not to document each and every time microphone activation occurred. *See id. ¶¶ 29–30*. In any event, although the microphone was not always on, Plaintiff had no control over when Defendants would activate it and could not stop them from doing so, resulting in a depletion of resources over a four-year period that was ongoing and systematic rather than "episodic." *See In re Carrier IQ*, 78 F. Supp. 3d 1051, 1066–67 (N.D. Cal. 2015). Many courts have acknowledged that injuries such as these constitute cognizable harm sufficient to convey Article III standing. *See In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1054 (N.D. Cal. 2012); *Goodman v. HTC Am., Inc.*, No. 11-cv-1793, 2012 WL 2412070, at *7 (W.D. Wash. June 26, 2012). But while these allegations also state an injury, the Court should find standing independent of any damage caused to Plaintiff's smartphone.

### B. Plaintiff Has Plausibly Alleged a Violation of the Wiretap Act.

Turning to the substantive allegations of the Complaint, Plaintiff states a claim under the Wiretap Act because he has plausibly alleged that all three Defendants "intercepted" his private oral communications. A complaint survives a Rule 12(b)(6) motion to dismiss when it contains "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Detailed factual allegations are not required, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In assessing the sufficiency of a complaint, the court accepts all well-pleaded facts as true, construing them in the light most favorable to the nonmoving party, and drawing all reasonable inferences in that party's favor. *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016).

The Wiretap Act makes it unlawful to "intentionally intercept[], endeavor[] to intercept, or procure[] any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication," and to "intentionally use[], or endeavor[] to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection." 18 U.S.C. § 2511(1)(a), (d). Here, Defendants contend that Plaintiff has failed to allege that Defendants acquired the contents of Plaintiff's private communications, and also downplay their individual roles in the interception process. (*See* Colts Mem. at 11–18; Lisnr Mem. at 13–15; Adept Mem. at 4–11.) Each of these arguments must be rejected, as Plaintiff has plausibly alleged that Defendants "intercepted" all surrounding audio, including the contents of his private communications, and each Defendant played a material role in the interception

12

scheme.[3]

### 1.   *Plaintiff alleges that Defendants intercepted the contents of his private communications.*

Defendants challenge Plaintiff's interception claim on three different bases—claiming that Plaintiff has not alleged (1) an actual "interception" (2) of the "contents" (3) of his "private communications." (Colts Mem. at 14–16; Lisnr Mem. at 14–15; Adept Mem. at 8–9.) Defendants are mistaken on all three grounds. First, "interception" does not require "possession" of an oral communication, as Defendants claim, but instead requires the "aural or other acquisition" of the communications via a device. 18 U.S.C. § 2510(4). Here, there are ample allegations that Defendants exercised significant control over Plaintiff's communications by recording and then analyzing them for beacon data. Second, Plaintiff's description of the manner in which he used and carried his smartphone make plausible his allegation that he expected his communications to be private and not subject to interception. Finally, Plaintiff's allegations that Defendants, through the App, temporarily recorded his communications supports his claim that the contents of his communications were intercepted.

### a.   *Plaintiff has alleged an "interception."*

Defendants first claim that Plaintiff has not alleged an "interception" because they did not

---

[3]      Defendants also contend that Plaintiff has not alleged "use" separate from "interception." (Colts Mem. at 17-18, Lisnr Mem. at 15; Adept Mem. at 10–11.) However, Plaintiff need only allege "interception" to invoke the Wiretap Act's civil liability provision, 18 U.S.C. § 2520(a). Regardless, Plaintiff alleges that Defendants must capture *all* background audio—and then monitor and analyze it—in order to filter out the beacons that trigger the marketing messages. (*See* Compl. ¶¶ 4, 22–24, 31–33.) Defendants accordingly "use" Plaintiff's communications to transmit unwanted marketing content to consumers. Their purpose in doing so aligns with the purpose of the statute's "use" provision, which is "to reinforce the interception proscription by denying the wrongdoer the fruits of his conduct. . . and by eliminating the demand for those fruits by third parties." *Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 191–92 (5th Cir. 2000) (citation and internal quotations omitted).

actually come into possession of his communications. (*See* Colts Mem. at 14–16; Adept Mem. at 8–9).) But the Wiretap Act does not require possession, and courts have reasoned that an "interception" occurs as soon as a communication is captured, which may be evidenced by a Defendant's control over the communications. By describing how Defendants recorded, analyzed, and exercised control over his communications, Plaintiff has alleged an "interception."

The Wiretap Act defines "intercept" as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). While the statute does not define "acquire," courts have reasoned that interception occurs where, and as soon as, a communication is captured, regardless of whether it is stored or heard elsewhere. *See, e.g.*, *Noel v. Hall*, 568 F.3d 743, 749 (9th Cir. 2009) (citation and internal quotations omitted) ("[A]cquisition occurs "when the contents of a wire communication are captured or redirected in any way."); *United States v. Luong*, 471 F.3d 1107, 1109 (9th Cir. 2006) ("It seems clear that when the contents of a wire communication are captured . . . in any way, an interception occurs at that time. Such an interception plainly occurs at . . . the situs of the [device] itself . . . .") (citation and internal quotations omitted); *United States v. Turk*, 526 F.2d 654, 658 (5th Cir. 1976) ("If a person secrets a recorder in a room and thereby records a conversation between two others, an 'acquisition' occurs at the time the recording is made."), *disagreed with on other grounds by* *Noel*, 568 F.3d at 749 n.9.

Defendants' reliance on *United States v. Smith*, 155 F.3d 1051 (9th Cir. 1998), for the proposition that "acquisition" refers to "the act of acquiring, or coming into possession of," is misplaced. (Colts Mem. at 15; Adept Mem. at 8.) In *Smith*, the Ninth Circuit affirmed the suppression of an unlawfully intercepted wire communication—a hacked voicemail that an individual had forwarded to her own voicemail inbox and subsequently recorded with a handheld

14

recording device. *Smith*, 155 F.3d at 1055. The court found that the "*act of recording the message* with a handheld audiotape-recording 'device' constituted an 'aural or other acquisition'—and, hence, an 'interception'—of the message," and that the dictionary definition of the term "acquire" was "certainly broad enough" to encompass this conduct. *Id.* at 1055 n.7. The case does not hold, or even suggest, that acquisition requires possession. Just as the "act of recording" the voicemail with a handheld recorder constituted "aural acquisition," here, the App's continual recording activity constitutes an "aural acquisition," and thus, an interception.

This interpretation is consistent with the dictionary definitions that the Colts and Adept offer, which define "acquire" as to coming into "possession *or control*" over a thing. (*See* Colts Mem. at 15 n.10; Adept Mem. at 8 n.5.) Defendants note "the Complaint does not identify any oral communications that came into [their] possession," nor does it indicate that communications were "sent to any server or other device" they maintained. (Colts Mem. at 15; Adept Mem. at 9.) But the Complaint is clear that Defendants *controlled* Plaintiff's communications for an interval of time, because the App temporarily "record[ed] *all* audio within range" and then "analyze[d] and monitor[ed] the picked-up audio for any of the Lisnr beacon tones." (Compl. ¶¶ 4, 32.)

*Satchell* involved analogous beacon technology. There, the Court relied on similar allegations to find the at-issue "App used the microphone to record surrounding audio, including conversations, [which was] sufficient to show 'capture' of the contents of an oral communication." *See Satchell*, 2017 WL 760786, at *7. Relying on *Noel* and *Smith*, the Court reasoned that acquisition occurs when the contents of a wire communication are captured or redirected in any way, and that the plain meaning of the term "acquire" merely requires "some measure of possession or control," which the plaintiff had alleged by describing how an app used her microphone "to record surrounding audio, including conversations." *Id.* As in *Satchell*, and

regardless of whether Defendants ever "possessed" temporary recordings of Plaintiff's communications, Defendants here had sufficient control over the communications to analyze and manipulate them, which demonstrates that the communications were "intercepted."

For its part, Lisnr attempts to negate Plaintiff's allegations by asking the Court to take judicial notice of one of its blog posts from September 13, 2016, which suggests that the App cannot detect "[m]ost sounds," and that the App does not record audio or personal data. (Lisnr Mem. at 14–15; *see also* Colts Mem. at 16 n.11; Adept Mem. at 10 n.6.) As an initial matter, the Court should not take judicial notice of Lisnr's blog post.[4] While a district court may consider documents that are incorporated by reference into a complaint, such documents must be referred to in and central to the complaint. *See Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). *See also Walker v. Rieth-Riley Const. Co.*, No. 2:03 CV 507 PS, 2005 WL 1799535, at *2 (N.D. Ind. July 25, 2005) (noting that a document that is "integral to or explicitly relied upon" in the complaint may be considered). Here, Plaintiff's Complaint references two articles from Lisnr's website—one relating to sports teams' use of beacon technology, and another describing the technology more generally (*see* Compl. ¶¶ 3 n.1, 23 n.4)—but the Complaint does not cite to, reference, or rely upon the document presented by Lisnr's motion. Because the blog post is not referred to in or central to the Complaint, it cannot be considered.

---

[4]     Many courts have recognized that taking judicial notice of materials on a party's own website—especially where, as here, a party presents them not for the fact of their publication, but for the purported truth of their contents—is not appropriate. *See*, *e.g.*, *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 537 (5th Cir. 2003) (holding that district court should not take notice of "a defendant-created report" posted on the Internet); *Koenig v. USA Hockey, Inc.*, No. 09-cv-1097, 2010 WL 4783042, at *3 (S.D. Ohio June 14, 2010) ("federal courts should be very reluctant to take judicial notice of information or documents that appear exclusively on websites which have been created and are maintained by one of the parties to a case").

But even if the Court were to take judicial notice of the blog post, it would not be dispositive of Plaintiff's Wiretap Act claim. Indeed, while its blog post disavows "recording," (Lisnr Mem. at 15), Lisnr does not—and cannot, based on the design and functionality of its technology—deny making the temporary recordings described in the Complaint. (*See* Compl. ¶ 32.) To that end, the quoted blog post admits that Lisnr's technology first receives "audio . . . from the microphone," which is later "overwritten by new data"—a process that confirms the *recording* alleged in the Complaint does in fact occur. (Lisnr Mem. at 15.) The fact that these recordings are later "filtered" by Lisnr's technology (i.e., to detect "inaudible sound waves") and are not permanently saved (rather, they are "buffered" or "overwritten"), *id.*, does not negate or even question Plaintiff's allegations. *See* Compl. ¶¶ 32 (alleging that the App "temporarily" records audio, which is then analyzed for beacon tones). Nothing in the Wiretap Act requires a communication to be permanently recorded or transferred to a server to be "intercepted." *See In re Innovatio IP Ventures, LLC Patent Litig.*, 886 F. Supp. 2d 888, 892 (N.D. Ill. 2012) (noting that "record[ing] in a permanent medium . . . is nowhere found in the Wiretap Act . . . [and that] an individual's [communication] activity can be chilled merely by the knowledge that a third party has the power to acquire, however briefly, the contents of his communications.").

Because the Wiretap Act does not require possession of an oral communication, and because the Complaint demonstrates that Defendants, at minimum, exercised control over Plaintiff's communications, Plaintiff has alleged an "interception" under the Wiretap Act.

> b.    *Plaintiff has alleged "private communications."*

Defendants next contend that Plaintiff hasn't alleged "private communications" because his relevant allegations are conclusory. (Colts Mem. at 13–14; Adept Mem. at 6–8.) Defendants' argument fails, given that Plaintiff supports his allegations with *facts*—not conclusions.

Under the Wiretap Act, an "oral communication" is one "uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation." 18 U.S.C. § 2510(2). That is, the person speaking must have "an actual (subjective) expectation of privacy" that is also "one that society is prepared to recognize as 'reasonable.'" *See Matter of John Doe Trader No. One*, 894 F.2d 240, 242 (7th Cir. 1990).

Here, while Plaintiff did not identify a *specific* conversation or place where a private conversation was recorded, he alleges that, after installing the App, he "carried his smartphone on his person" **for a period of four years**, during which time he would "take his smartphone to places where he would not invite other people, and to places where he would have private conversations." (Compl. ¶¶ 32.) During this **four-year period**, Plaintiff explains that his smartphone was "present in locations and personal and private situations not generally accessible to the public where the expectation was that his conversations were to remain private."[5] *Id*. Finally, Plaintiff alleges that because Defendants programmed the App to constantly "listen-in" (i.e., temporarily record, then analyze, all audio), it necessarily would have recorded and analyzed his private conversations. *Id*. ¶¶ 32–36. And while he could provide more factual detail (e.g., that, over the period, he carried his phone with him in specific locations, like his bedroom, kitchen, doctor's office, etc.), Plaintiff submits that this level of detail is not—particularly at this stage—required, given the *facts* alleged. *See Sepulveda v. UMass Corr. Health Care*, 160 F. Supp. 3d 371, 383 (D. Mass. 2016) (noting that all reasonable inferences must be drawn in favor of plaintiff on 12(b)(6) motion).

---

[5]     Here again, Defendants make much of the fact that the Complaint contains a "listening rule" from October 9, 2016, but Plaintiff only carried his smartphone on his person until mid-September of that year. (*See* Compl. ¶¶ 31, 35.) Here, the October 9, 2016 rule was included as an example only, and the "forensic accounting" of the App was conducted to examine "how the App operates," not to document every time the microphone was activated. (*See id*. ¶¶ 29–30.)

To be sure, courts have found similar descriptions of private communications sufficient to withstand a motion to dismiss. *See, e.g.*, *Hutton v. Woodall*, No. 13-CV-1338-BNB-KMT, 2013 WL 5214633, at *1 (D. Colo. Sept. 17, 2013) (finding allegations that defendant "surreptitiously bugged or taped conversations of the plaintiff" in a break room in which plaintiff "had a reasonable expectation of privacy" sufficient); Leslie v. Fielden, 2011 WL 4005939, at *1 (N.D. Okla. Sept. 8, 2011) (finding allegations that defendant "set up a recording device in the living room of the parties' marital residence, intercepted and recorded at least 29 hours totaling more than 6 tapes of [the plaintiff's and her children's] life along with interaction with other parties" sufficient); *Rajkumar v. Cisco Sys., Inc.*, No. C 08-1600 PVT, 2008 WL 3397851, at *3 (N.D. Cal. Aug. 11, 2008) (finding allegations that defendants intercepted communications by "planting listening devices in [plaintiff's] home in 2006, and tapping his Internet connection and telephone connection" to be "more than just a 'formulaic recitation of a cause of action's elements'"). And while the *Satchell* court held that similar allegations did not plead a private communication, Satchell, 2017 WL 760786, at *8–*9 (addressing allegations of phone use over 3- to 4-month period), Plaintiff submits that here, his allegations that he carried his smartphone over a *four year* period—which Defendants turned into a listening device—to places where "he would not invite other people, and . . . where he would have private conversations" should be more than sufficient. Compl. ¶¶ 34–35. Thus, particularly when drawing inferences in his favor, Plaintiff has plausibly alleged private communications that he expected would not be subject to interception. *See Riley v. California*, 134 S. Ct. 2473, 2484 (2014) ("[M]odern cell phones . . . are now such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy.")

        *c.*     *Plaintiff has alleged "contents."*

Finally, Defendants briefly challenge whether Plaintiff has alleged the "contents" of his private communications were intercepted. (*See* Colts Mem. at 16–17; Adept Mem. at 9–10.) Specifically, the Colts and Adept suggest that Plaintiff "only" alleges that the App recorded "portions" of audio and then analyzed that data for "inaudible" tones (i.e., rather than alleging that the App records the "content" of conversations). (*See* Colts Mem. at 16–17; Adept Mem. at 9–10.) But this argument ignores the thrust of the Complaint, along with Plaintiff's specific allegations that—by design—the App works by recording "all audio within range—including . . . conversations," (Compl. ¶ 4), and only then analyzes that recorded data for Lisnr's beacon tones. *Id.* ¶ 32. Plaintiff further alleges that this listening activity occurs at all times—even when the App is not open, the smartphone is locked, or the screen is powered down. *Id.* ¶ 33. Given the constant recording of "all audio" data, Plaintiff has alleged that the App—and, thus, Defendants—acquired "information concerning the substance, purport, or meaning of [Plaintiff's] communication[s]." 18 U.S.C. § 2510(8).

## 2.   *Plaintiff states a claim against all three Defendants.*

Pointing its finger at Lisnr, the Colts claims that it cannot be liable under the Wiretap Act because it merely provided the "framework" through which communications could be obtained. (Colts Mem. at 11–12.) Adept parrots the Colts' analysis almost verbatim, urging that it likewise provided nothing more than a benign "framework." (Adept Mem. at 4–6.) Lisnr, on the other hand, contends that it is merely the "provider" of the technology through which the communications could be obtained. (Lisnr Mem. at 13–14.) Each Defendant's respective attempt to shift blame should be rejected. By alleging that all three Defendants played an integral and necessary role in developing the App, Plaintiff states a claim against the Colts, Adept, and Lisnr.

The Wiretap Act permits "any person whose wire, oral, or electronic communication is

intercepted, disclosed, or intentionally used" to "recover from the person or entity . . . which engaged in that violation." 18 U.S.C. § 2520(a). While some courts have interpreted this as limiting liability to those who directly "intercept," "disclose" or "use" communications, *see In re Toys R Us, Inc., Privacy Litig.*, No. 00-cv-2746, 2001 WL 34517252, at *6 (N.D. Cal. Oct. 9, 2001), others have imposed liability on those who manufacture, market, sell, and operate the device that is used to do so, *see Luis v. Zang*, 833 F.3d 619, 637 (6th Cir. 2016) (finding Wiretap Act liability even when defendant "did not initiate the specific action that 'intercepted'" the communication). Courts have likewise held that a defendant who is "intimately and integrally involved" with facilitating unlawful interceptions—for instance, by allowing recording software to be implanted on rental computers—may also face direct liability under the Wiretap Act. *See Byrd v. Aaron's, Inc.*, 14 F. Supp. 3d 667, 690 (W.D. Pa. 2014); *see also Jacobson v. Rose*, 592 F.2d 515, 522 n.12 (9th Cir. 1978) (imposing liability on defendant "involved in the setting up of the recording devices"); *Integrated Bus. Techs., LLC v. Netlink Sols., LLC*, No. 16-CV-048-TCK-PJC, 2016 WL 4742306, at *7 (N.D. Okla. Sept. 12, 2016) (finding allegations "that Defendants, acting in concert, somehow monitored and intercepted emails" sufficient to state a Wiretap Act claim).

Here, Plaintiff alleges that the App—and its recordings of consumers' audio data—was a venture between *all* Defendants, wherein *each* Defendant played integral and necessary roles. Indeed, *none* of the recordings at issue could have occurred but for each Defendant's participation. Among other details, Plaintiff alleges that:

> Defendants programmed the App to contact a server owned and operated by Defendant Lisnr and wait for instructions on how and when users' Microphones should be used. Lisnr's server then responds with certain "listening rules." These rules, provided by Defendants Colts and/or Adept Mobile, contain different date and time intervals when the "listening" should be activated in the app. On Defendants' specified dates and at their desired times, the App activates the

21

microphone and starts listening in.

Compl. ¶ 30. Stated otherwise, the Colts and Adept decided when to activate the listening technology built into the App, and Lisnr effectuated those decisions using its servers to signal all installed instances of the Apps—which were present on users' smartphones—to begin recording and analyzing audio. The Complaint also explains that the Colts and Adept provided access to thousands of smartphone microphones (Colts) and integrated Lisnr's technology into the App (Adept), which were necessary to cause the at-issue interceptions. *See* Compl. ¶¶ 62, 64. Defendants' mutual conduct is no different than setting up and hiding a recording device in someone's home: Colts provided the access, Adept integrated listening technology into the device, and all Defendants initiated the recording. Hence, each played an essential role in bringing the App into existence and making possible the interception described in the Complaint.

Nevertheless, each Defendant likens itself to the device manufacturers in *In re Carrier IQ*, 78 F. Supp. 3d 1051. (*See* Colts Mem. at 12; Lisnr Mem. at 14; Adept Mem. at 6.) In rejecting a Wiretap Act claim, the *In re Carrier IQ* court reasoned that the device manufacturer defendants had "merely provided a means through which a third party"—a software developer— had "subsequently intercept[ed] communications." *In re Carrier IQ*, 78 F. Supp. 3d at 1088–89. But unlike the manufacturers in *In re Carrier IQ*, which provided a passive "avenue" through which software could intercept communications, *id.* at 1089, here, all three Defendants played critical and active roles in the interception. Further, as the *Satchell* court reasoned, where a party uses "technology to turn on a smartphone microphone and thereafter record, i.e., capture, surrounding audio, including human conversations . . . [that party has] 'intercepted,' . . . communications." *See* *Satchell*, 2017 WL 760786, at *7. Here, the fact each Defendant played a role in "turn[ing] on a smartphone microphone," (i.e., by designing or implementing listening

rules) also supports the theory that each caused the interceptions at issue.[6]

   As such, and because Plaintiff alleges that the Colts, Lisnr, and Adept each played an essential role in intercepting his communications, he states a claim against all three Defendants.

## V.   CONCLUSION

   For all these reasons, Defendants' motions to dismiss should be denied. In the event this Court grants any of the motions, however, Plaintiff respectfully requests leave to amend.

                              Respectfully submitted,

                              **ALAN RACKEMANN**, individually and on behalf
                              of all others similarly situated,

Dated: March 3, 2017          By: By: s/William E. Winingham
                              William E. Winingham, #1309-49
                              Wilson Kehoe Winingham LLC
                              2859 N. Meridian Street
                              Indianapolis, IN 46208
                              Tel: 317-920-6400
                              Fax: 317-920-6405
                              Email: winingham@wkw.com
                                 One of Plaintiff's Attorneys


                              Rafey S. Balabanian
                              (*pro hac vice* admittance to be sought)
                              rbalabanian@edelson.com
                              Eve-Lynn J. Rapp
                              (*pro hac vice* admittance to be sought)
                              erapp@edelson.com
                              EDELSON PC
                              123 Townsend Street, Suite 100
                              San Francisco, California 94107
                              Tel: 415.212.9300
                              Fax: 415.373.9435

---

[6]    In *Satchell*, the court found that only one of three defendants had engaged in the alleged interception (i.e., by "turn[ing] on a . . . microphone"), and that it could not "discern the exact manner in which the other Defendants" had participated. *See Satchell*, 2017 WL 760786, at *8. While Plaintiff submits that this test from *Satchell* is overly narrow, it nevertheless supports liability for all three Defendants here.

Benjamin S. Thomassen
(*pro hac vice* application filed)
bthomassen@edelson.com
EDELSON PC
350 North LaSalle Street, 13th Floor
Chicago, Illinois 60654
Tel: 312.589.6380
Fax: 312.589.6378

*Counsel for Plaintiff and the Putative Classes*