UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

|  |  |  |
|---|---|---|
| ALAN RACKEMANN, individually and on behalf of all others similarly situated, | ) ) ) |  |
| Plaintiff, | ) ) |  |
| v. | ) ) | Case No. 1:17-cv-00624-TWP-MJD |
| LISNR, INC., ADEPT MOBILE, LLC, and INDIANAPOLIS COLTS, INC., an Indiana Corporation, | ) ) ) ) ) |  |
| Defendants. | ) |  |

## ENTRY ON DEFENDANTS' MOTIONS TO DISMISS

Plaintiff Alan Rackemann ("Rackemann"), on behalf of himself and others similarly situated, alleges that Defendants LISNR, Inc., ("LISNR"), Adept Mobile, LLC ("Adept Mobile"), and the Indianapolis Colts, Inc. ("the Colts") (collectively, "Defendants"), violated federal anti-wiretapping laws in their operation of a Colts' mobile application. Rackemann alleges that Defendants unlawfully intercepted and unlawfully used his private communications. Specifically, he alleges the Defendants hijack users' smartphones and turn them into listening devices. Defendants have each filed Motions to Dismiss. ([Filing No. 30](#); [Filing No. 31](#); [Filing No. 34](#).) For the reasons that follow, the Court **denies** the Defendants' Motions regarding Rackemann's interception claims, and the Court **grants** without prejudice Defendants' Motions regarding the use claims.

## I. BACKGROUND

The following facts are not necessarily objectively true. But as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the Second Amended

Complaint and draws all reasonable inferences in favor of Rackemann as the non-moving party. *See Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

The Colts are a professional football team in the National Football League. ([Filing No. 1 at 1](#).) The Colts offer a mobile application (the "App") that allows fans to "stay up-to-date on everything Colts with breaking news, game highlights, player interviews, cheerleader photographs and more." ([Filing No. 1 at 7](#).) The App is available for free download in the Google Play Store, and to date, it has been downloaded between 100,000 and 500,000 times. ([Filing No. 1 at 6-7](#).)

LISNR and Adept Mobile are both audio technology development companies. In 2016, the Colts partnered with LISNR and Adept Mobile to further develop the App. ([Filing No. 1 at 2](#).) LISNR has developed a specific type of "beacon technology" that enables an app to ascertain a consumer's physical location through sounds rather than through means such as radio signals. ([Filing No. 1 at 6](#).) LISNR partners with entities such as the Colts to place speakers throughout designated geographic locations. ([Filing No. 1 at 6](#).) These speakers emit unique, inaudible audio signals that are detectable by, for example, the microphones of smartphones that are nearby. ([Filing No. 1 at 6](#).) However, in order for the technology to work, a device's microphone must be turned on to listen for these audio signals. ([Filing No. 1 at 6](#).) When a customer downloads the App, he is asked to provide certain "permissions," including whether the App can access the device's microphone. ([Filing No. 1 at 7](#).) The App is programmed to contact a server owned and operated by LISNR and to await instructions on how and when a particular device's microphone should be activated. ([Filing No. 1 at 8](#).) LISNR's server then responds with "listening rules," which are themselves provided by the Colts or Adept Mobile, that designate different date and time intervals during which the "listening" function should be activated by the App. ([Filing No. 1 at 8](#).)

During those specified periods, the App activates the device's microphone. ([Filing No. 1 at 8](#).) When the microphone is activated, the App temporarily records portions of the audio it hears in order to monitor it for any of the LISNR beacon tones. ([Filing No. 1 at 9](#).) When a beacon tone is identified, the App will respond by, for instance, displaying banner advertisements to the user or by showing highlights or other information. ([Filing No. 1 at 9](#).) The App is able to continuously listen on command, even when the App is not open but is running in the background of a user's smartphone. ([Filing No. 1 at 9](#).) The App does not obtain the user's consent or otherwise notify the user prior to each activation of the device's microphone. ([Filing No. 1 at 9](#).) The App's "Terms of Service Privacy Policy" does not disclose the App's use of beacon technology, and the App does not otherwise disclose that information. ([Filing No. 1 at 8](#).) The App also does not disclose that it activates the device's microphone specifically for the purpose of "listening in." ([Filing No. 1 at 8](#).)

Adept Mobile developed and maintained the code base of the App and ensures the deliverability of the App to the Google Play Store. ([Filing No. 1 at 17](#).) Adept Mobile also integrated the LISNR beacon technology into the App, conducted testing and analysis, and issued the App for distribution through the Google Play Store to consumers. ([Filing No. 1 at 17](#).)

Rackemann downloaded the App sometime in 2012 from the Google Play store, and it remained on his smartphone through mid-September 2016. ([Filing No. 1 at 10](#).) During that time, Rackemann used the App to follow the Colts, and the App was regularly updated. ([Filing No. 1 at 10](#).) During this time, Rackemann carried his smartphone on his person, and would take his smartphone to places where he would not invite other people, and to places where he would have private conversations. ([Filing No. 1 at 10](#).) As a result, the App, when it was activated, listened in on Rackemann's private conversations. ([Filing No. 1 at 9](#).)

On November 18, 2016, Rackemann filed this lawsuit against Defendants in the District of Massachusetts, on behalf of himself and two putative classes of plaintiffs. ([Filing No. 1](#).) Defendants filed motions to transfer the case to this Court, or in the alternative, to dismiss. ([Filing No. 30](#); [Filing No. 31](#); [Filing No. 34](#).) Those motions were fully briefed, and a district court judge in the District of Massachusetts granted Defendants' Motion to Transfer the case to this court, based on a stipulation by the parties. ([Filing No. 48](#).) The parties filed position statements pursuant to Local Rule 16-2, all stating that the Court should rule upon the previously filed Motions to Dismiss. ([Filing No. 73](#) through [Filing No. 76](#).) Those Motions are now ripe for review.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws all reasonable inferences in favor of the plaintiff. *Bielanski v. County of Kane*, 550 F.3d at 633 (7th Cir. 2008). However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.; see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("it is not enough to give a threadbare recitation of the elements of a claim without factual support"). The allegations must "give the defendant fair notice of what

4

the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

### III. DISCUSSION

Rackemann's Complaint raises two causes of action, one on behalf of the first class of plaintiffs against LISNR, and the other on behalf of the second class against all Defendants. In each count, Rackemann alleges that Defendants have violated 18 U.S.C. §§ 2510 *et seq.*, (the "Wiretap Act") in that they have intercepted (by listening to and recording) Rackemann's "private conversations, including oral communications, where [Rackemann] and the [class] exhibited expectations that such communications were to remain private and would not otherwise be subject to interception under circumstances justifying such expectation." ([Filing No. 1 at 14-17](#).) Rackemann also alleges that Defendants used those intercepted communications to their economic benefit, including for marketing purposes. ([Filing No. 1 at 16](#).) The Defendants raise several arguments in support of their motions to dismiss, and to varying degrees, join in each other's briefing. The Court addresses those arguments below.

### A. Standing

The Colts and Adept Mobile first argue that Rackemann's claims must be dismissed because he lacks standing to bring them. ([Filing No. 32 at 21](#); [Filing No. 33 at 14](#).) They contend that Rackemann has failed to plead a cognizable injury in fact. ([Filing No. 32 at 21](#); [Filing No. 33 at 14](#).)

The "irreducible constitutional minimum of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016) (citation omitted). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements. Where, as here, a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element." *Id.* (citation and quotation omitted). As to the injury-in-fact element, "a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* (citation and quotation omitted).

The Colts and Adept Mobile both focus their standing arguments on Rackemann's allegations that the App's use of his smartphone's microphone caused battery usage and wear and tear to his smartphone. They argue that these allegations are not sufficient to demonstrate a concrete injury. Rackemann responds, however, that his Complaint "is premised on an invasion of [his] substantive interest, protected by the Wiretap Act, in the privacy of his private communications." ([Filing No. 61 at 12](#).) The Court agrees that Rackemann has sufficiently identified as an injury the violation of his substantive interest in the privacy of his communications. *See, e.g.,* [Filing No. 1](#) ("LISNR intercepted…[Rackemann's] and the LISNR Class's private conversations, including oral communications, where [Rackemann] and the LISNR Class exhibited expectations that such communications were to remain private and would not otherwise be subject to interception under circumstances justifying such expectation.").

The question is whether such an invasion of privacy constitutes an injury in fact sufficient to confer standing to Rackemann under Article III. In *Spokeo*, the Supreme Court stated that:

> [i]n determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles. Because the doctrine of standing derives from the case-or-controversy requirement, and because that requirement in turn is grounded in historical practice, it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American Courts.

*Spokeo*, 136 S. Ct. 1540, 1549. The Supreme Court goes on to note that "the law has long permitted recovery by certain tort victims even if their harms may be difficult to prove or measure." *Id.* (citing Restatement (First) of Torts §§ 569 (libel), 570 (slander *per se*) (1938)). The Supreme Court concluded that "[j]ust as the common law permitted suit in such instances, the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified. *Spokeo*, 136 S. Ct. at 1549-50 (citing *Federal Election Comm'n v. Akins,* 524 U.S. 11, 20-25 (1998) (confirming that a group of voters' "inability to obtain information" that Congress had decided to make public is a sufficient injury in fact to satisfy Article III); *Public Citizen v. Department of Justice,* 491 U.S. 440, 449 (1989) (holding that two advocacy organizations' failure to obtain information subject to disclosure under the Federal Advisory Committee Act "constitutes a sufficiently distinct injury to provide standing to sue")). As one court has summarized *Spokeo*, it:

> held that two factors may be relevant to whether the violation of statutory rights constitutes injury in fact: (1) whether the statutory violation bears a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts, and (2) congressional judgment in establishing the statutory right, including whether the statutory right is substantive or procedural.

*Matera v. Google Inc.*, 2016 WL 5339806, at *9 (N.D. Cal. 2016).

The Wiretap Act is violated when any person "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or

7

electronic communication." 18 U.S.C. § 2511(1)(a). As to the first element of the *Spokeo* analysis, Rackemann argues that the statute bears a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit—the invasion of privacy. (Filing No. 61 at 13.) The Court agrees.

Invasion of privacy has been recognized as a tort under common law for over a century. *See Matera*, 2016 WL 5339806, at *10 (citing Restatement (Second) of Torts §§ 652A-I (noting that the right to privacy was first accepted by an American court in 1905, and "a right to privacy is now recognized in the great majority of the American jurisdictions that have considered the question")). And, while this is not a requirement under the *Spokeo* analysis, the Court notes that the right to privacy has also long been rooted in the jurisprudence surrounding Fourth Amendment search and seizure law. Indeed, the Seventh Circuit has made the following observations regarding recorded conversations and privacy in the context of considering Illinois' eavesdropping statute:

> At common law, actionable invasion of privacy takes several forms: (1) an unreasonable intrusion upon the seclusion of another; (2) appropriation of another's name or likeness; (3) unreasonable publicity given to another's private life; and (4) publicity that unreasonably places another in a false light before the public. Restatement (Second) of Torts § 652A; *Wolfe v. Schaefer,* 619 F.3d 782, 784 (7th Cir. 2010); *Desnick v. Am. Broad. Cos.,* 44 F.3d 1345, 1353 (7th Cir. 1995); *Haynes v. Alfred A. Knopf, Inc.,* 8 F.3d 1222, 1229 (7th Cir. 1993). In Fourth Amendment law, there is 'no talisman that determines in all cases those privacy expectations that society is prepared to accept as reasonable.' *O'Connor v. Ortega,* 480 U.S. 709, 715 (1987) (plurality opinion); *see also* Orin S. Kerr, *Four Models of Fourth Amendment Protection,* 60 Stan. L. Rev. 503 (2007) (discussing different understandings of privacy). But surreptitiously accessing the private communications of another by way of trespass or nontrespassory wiretapping or use of an electronic listening device clearly implicates recognized privacy expectations. *See United States v. Jones,* 132 S. Ct. 945, 945-52 (2012); *Bartnicki,* 532 U.S. at 526; *Katz v. United States,* 389 U.S. 347, 351-52 (1967).

*Am. Civil Liberties Union of Illinois v. Alvarez*, 679 F.3d 583, 605 (7th Cir. 2012).

Other courts have likewise held that "the unauthorized interception of an individual's private communications may state a claim for common law invasion of privacy." *Matera*, 2016 WL 5339806, at *10 (citing *Vernars v. Young*, 539 F.2d 966, 969 (3d Cir. 1976) (finding that a plaintiff stated a claim for common law invasion of privacy when "the defendant is accused of opening plaintiff's private mail and reading it without authority"); *Quigley v. Rosenthal*, 327 F.3d 1044, 1073 (10th Cir. 2003) (noting that, under Colorado law, "it is clear that the interception of the Quigleys' telephone conversations would constitute an intentional intrusion on the Quigleys' seclusion or solitude"); *Billings v. Atkinson*, 489 S.W.2d 858, 860 (Tex. 1973) (noting that eavesdropping was an indictable offense at common law, and recognizing an invasion of privacy cause of action based on a wiretap of plaintiff's telephone); *Arrington v. Colortyme, Inc.*, 972 F. Supp. 2d 733, 746-47 (W.D. Pa. 2013) (denying motion to dismiss state law invasion of privacy claim based on electronic surveillance of plaintiff's computer activity)).

As to the second element—congressional judgment in establishing the statutory right, including whether the statutory right is substantive or procedural—the Court concludes that Congress exercised its judgment to codify a substantive right, as discussed above, long recognized in American jurisprudence. The Court agrees with the *Matera* court that the Wiretap Act was passed to protect against the invasion of privacy, and particularly privacy with regard to electronic communications. *Matera*, 2016 WL 5339806, at *10 (citing *DirecTV, Inc. v. Webb*, 545 F.3d 837, 850 (9th Cir. 2008) (stating that the Wiretap Act's "emphasis on privacy is evident in both the legislative history of the Wiretap Act and in the breadth of its prohibitions")).

For these reasons, the Court concludes that Rackemann has standing to raise a challenge regarding violations of the Wiretap Act.

9

### B. Failure to State Interception Claim

"In relevant part, the ECPA imposes civil liability on persons who intentionally intercept, or try to intercept, a wire, oral or electronic communication." *Bowden v. Kirkland & Ellis LLP*, 432 F. App'x 596, 600 (7th Cir. 2011) (citing 18 U.S.C. §§ 2511(1); *McCann v. Iroquois Mem'l Hosp.,* 622 F.3d 745, 751-52 (7th Cir. 2010); *Doe v. GTE Corp.,* 347 F.3d 655, 658 (7th Cir. 2003)). The Act defines an "oral communication" as "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation." 18 U.S.C. § 2510(2). To make out a valid interception claim under the Wiretap Act, a plaintiff must allege that the defendant "acqui[red]" the contents of his or her oral communications. 18 U.S.C. § 2510(4) (defining interception as "acquisition"); *see Valentine v. WideOpen W. Fin., LLC*, 288 F.R.D. 407, 411 (N.D. Ill. 2012). "Contents" include "any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8).

Defendants assert three reasons why, Rackemann has failed to state a claim of "interception" under the Wiretap Act. They contend that Rackemann has failed to allege (1) a private communication; (2) interception; and (3) that content was acquired. (Filing No. 32 at 16; Filing No. 33 at 9; Filing No. 34 at 13.) Rackemann responds that he has adequately pleaded these three elements.

#### 1. Private Communications

Defendants argue that Rackemann has failed to identify in his Complaint any specific, private communications that were intercepted, and that his allegations are "naked conclusions" and "devoid of" required factual details. (Filing No. 33 at 10-11.) Defendants highlight that

10

Rackemann does not identify any information about "the participants, subject matter or location" of any private conversations that were intercepted. ([Filing No. 33 at 11](#).)

In suggesting that Rackemann was required to provide such information in his Complaint, Defendants ask this Court to apply the wrong standard to Rackemann's pleadings. Defendants fault Rackemann for failing to include information regarding the specific details of any communication that might have been intercepted, including that he did not list participants, subject matter, or location of any such communication. However, this is not a fraud case, subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires that a plaintiff plead the alleged fraud in detail. Rackemann is subject to the normal notice-pleading requirements, which require him to provide "enough facts to state a claim to relief that is plausible on its face." *Hecker*, 556 F.3d at 580.

Rackemann alleges that during the four years that the App was installed on his smartphone, he carried that device on his person, and would take his smartphone to places where he would not invite other people, and to places where he would have private conversations. ([Filing No. 1 at 10](#).) He also alleges that the App received instructions developed by the Colts and Adept Mobile, that designated different date and time intervals during which the "listening" function should be activated by the App. ([Filing No. 1 at 8](#).) Rackemann alleges that during those specified periods, the App activated the device's microphone. ([Filing No. 1 at 8](#).) The Court draws all reasonable inferences in favor of the non-moving party at the motion to dismiss stage. While Rackemann may not, prior to discovery, be able to pinpoint the precise dates and times that his smartphone was activated to record, the Court concludes that it may reasonably infer that at some point during a four-year period, Rackemann's smartphone was activated while he was engaged in a private communication.

These allegations are sufficient to state a claim for relief under the Wiretap Act.

2. **Interception**

To make out a valid interception claim under the Wiretap Act, a plaintiff must allege that the defendant "acqui[red]" the contents of his or her oral communications. 18 U.S.C. § 2510(4) (defining interception as "acquisition"); *see Valentine v. WideOpen W. Fin., LLC*, 288 F.R.D. 407, 411 (N.D. Ill. 2012). Defendants argue that the term "acquire" means to "come into possession of" the communication, and that Rackemann has not pleaded that Defendants ever held them in their possession. ([Filing No. 33 at 11](#).) Rackemann disputes that proposed definition.

Defendants cite *United States v. Smith*, 155 F.3d 1051 (9th Cir. 1998), in support of their proposed definition. That case involved the question of whether the Wiretap Act, or alternatively the Stored Communications Act, applied to the recording of a voicemail message.[1] The Wiretap Act uses the term "intercept," and the Stored Communications Act uses the term "access" to describe the prohibited conduct. Therefore, the *Smith* court was faced with determining whether the conduct at issue constituted interception or access. The defendant argued that the statutory definitions supplied by the Wiretap Act were broad, and encompassed the conduct at issue. In a footnote while discussing the parties' positions, the court noted that "[t]he term 'acquisition' is not defined in § 2510; however, its ordinary meaning—the act of acquiring, or coming into possession of, *see Webster's Third New International Dictionary* 18-19 (1986)—is certainly broad enough to encompass Gore's conduct." *Smith*, 155 F.3d at 1055 n.7. The court ultimately concluded that "the terms are conceptually, or qualitatively, different. The word "intercept" entails *actually* acquiring the contents of a communication, whereas the word "access" merely involves *being in position* to acquire the contents of a communication." *Id.* at 1058 (emphasis in original).

---

[1] This issue was significant because the Wiretap Act allows for exclusion of evidence obtained in violation of the Act, while the Stored Communications Act does not.

The *Smith* court did not conclude that interception requires possession, though the statutory term was broad enough to encompass that definition, and this Court also declines to do so. In any event, the balance of authority, including later opinions by the Ninth Circuit, supports a different definition of the term: acquisition occurs "when the contents of a wire communication are captured or redirected in any way." *United States v. Rodriguez,* 968 F.2d 130, 136 (2d Cir. 1992); *Noel v. Hall*, 568 F.3d 743, 749 (9th Cir. 2009) (same). Rackemann has adequately pled that his communications were captured, as he alleges that the App recorded portions of audio captured by the device's microphone, and that audio was analyzed by Defendants.

### 3. Content

To make out a valid interception claim under the Wiretap Act, a plaintiff must allege that the defendant "acqui[red]" the contents of his or her oral communications. 18 U.S.C. § 2510(4) (defining interception as "acquisition"). "Contents" include "any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8). Defendants argue that Rackemann has failed to adequately plead that they acquired the "content" of any communication. (Filing No. 33 at 12-13.)

On the contrary, Rackemann alleges that the App functions by activating a smartphone's microphone, and that the App temporarily records portions of the audio for analysis. He alleges that the App "was continuously running on his smartphone, [and it] listened-in to private oral communications." (Filing No. 1 at 10.) Defendants attempt to dispute this allegation by raising two arguments. First, Defendants contend that "the only factual allegations concerning how the mobile application works state that it 'temporarily records' only 'portions' of audio to 'analyze and monitor' 'for any of the LISNR beacon tones.'" (Filing No. 33 at 13, citing Filing No. 1 at 6.) Defendants interpret these allegations to mean that, necessarily, the only "portions" of audio

recorded are specifically the beacon tones, and therefore that no other sounds or communications are recorded by the device's microphone. However, that is not the only plausible reading of the word "portions," particularly in light of the fact that the Complaint specifically alleges that Defendants recorded his private communications. The Court draws all reasonable inferences in favor of the non-moving party, not the movant, and the Court declines to draw the inference proposed by Defendants.

Second, Defendants dispute Rackemann's factual allegation that the App records audible communications. (Filing No. 33 at 13; Filing No. 35 at 14.) They encourage the Court to adopt a contrary factual allegation, pointing to a statement on LISNR's website that "its software does not detect audible sounds." (Filing No. 33 at 13.) Defendants argue that this Court "may augment facts and inferences in the Complaint with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." (Filing No. 33 at 13.) Put simply, the factual allegation forwarded by Defendants has not been incorporated into the Complaint, is not a matter of public record, and is not a fact susceptible to judicial notice. The Court declines Defendants' attempt to supplement the Complaint with their own suggested facts.

The Court concludes that Rackemann has plausibly alleged that Defendants acquired the content of his communications.

**C.     The Colts and LISNR: Liability under the Act**

The Colts and LISNR each argue that, while the other party might be liable under the Act, it is not. The Colts assert that all of Rackemann's allegations contend that LISNR (and its software) "enable" the interception of communications. (Filing No. 32 at 14.) The Colts argue that Rackemann alleges "merely that the team leveraged its mobile application…to serve as the

host of the LISNR audio beacon technology." (Filing No. 32 at 15.) As such, the Colts contend, Rackemann seeks to hold the Colts liable as aiders and abettors, a theory of liability which is not permitted by the statute. (Filing No. 32 at 15.)

The Court need not reach the issue of aider and abettor liability here, because the Colts' argument fails on other grounds. Rackemann makes a number of factual allegations ignored by the Colts in its briefing here, including that: the App belongs to the Indianapolis Colts, (Filing No. 1 at 6); the Colts programmed the App, (Filing No. 1 at 7); the Colts and/or Adept Mobile issue the listening rules regarding when the App should activate the microphone to record, (Filing No. 1 at 8); and the Colts' App records audio for analysis, (Filing No. 1 at 9). These allegations are sufficient at the motion to dismiss stage to support an allegation of liability for the Colts.

As to LISNR, it argues that it cannot be held liable under the Act, because it is "merely a provider of technology." (Filing No. 35 at 13.) LISNR highlights the above allegations that Rackemann makes against the Colts, and as to itself, argues that it only "provided a piece of technology…that others incorporated into the App" and "owns a piece of technology—the server—that, through rules provided by the Colts and Adept Mobile, interacts with the App." (Filing No. 35 at 13-14.) It argues that this involvement cannot be enough to establish liability. However, the precise manner and degree to which LISNR's software or server were involved in any alleged interception involves the consideration of facts (and, the Court can only assume, highly technical ones). This type of consideration is neither possible nor appropriate in response to a motion to dismiss.

As with the Colts, Rackemann's allegations are sufficient to support a claim of liability against LISNR.

D.      **Adept Mobile: Liability under the Act**

Adept Mobile also argues that Rackemann's Complaint fails to state a claim that Adept Mobile was the party who intercepted Rackemann's communications. ([Filing No. 33 at 7](#).) Resolution of this issue is less straightforward in Adept Mobile's case than with the other Defendants. Rackemann's allegations regarding Adept Mobile's role in the operation of the App are relatively fewer and less developed. He alleges that Adept Mobile (and/or the Colts) provide listening rules as to when the App should activate the devices' microphone and record; Adept Mobile develops and maintains the code base of the App and ensures the deliverability of the App to the Google Play Store; Adept Mobile integrated the LISNR audio beacon technology into the Colts App, conducted testing and analysis, and then issued the App for distribution. ([Filing No. 1 at 8](#); [Filing No. 1 at 17](#).) Rackemann further alleges that "Adept Mobile's actions are an integral link in the development and distribution of the listening device (i.e., the App) that performs the unlawful interceptions at issue." ([Filing No. 1 at 17](#).)

As with Defendants the Colts and LISNR, the Court concludes that Rackemann has pleaded a plausible claim against Adept Mobile. Ultimately, resolution of this issue turns upon facts that cannot be considered (and indeed may not be known to Rackemann) at this stage. Other courts have concluded (at least at the motion to dismiss stage) that allegations of defendants working in concert or participating in the interception of communications can suffice to state a claim. *See, e.g., Luis v. Zang*, 833 F.3d 619, 633 (6th Cir. 2016) ("The alleged intercept of a communication thus occurs at the point where WebWatcher—without any active input from the user—captures the communication and reroutes it to Awareness's own servers. Construing these allegations liberally, as we must … the complaint supports an inference that Awareness itself—not simply the WebWatcher user—'acquires' the communications by rerouting them to servers that it owns and controls."); *Byrd v. Aaron's, Inc.*, 14 F. Supp. 3d 667, 690 (W.D. Pa. 2014) (concluding that a

complaint survived motion to dismiss where the defendant was "intimately and integrally involved with its Franchisees' acts of building Detective Mode and spying upon Aaron's customers"); *Integrated Bus. Techs., LLC v. Netlink Sols., LLC*, 2016 WL 4742306, at *7 (N.D. Okla. 2016) (finding plausible claim where multiple defendants, allegedly "acting in concert, somehow monitored and intercepted emails between IBT and its customers … IBT likely lacks details as to how and when this was accomplished but has stated a plausible claim for relief assuming it can gather the necessary evidence.").

As such, the Court concludes that Rackemann has adequately pled his claim against Adept Mobile.

**E.**     **Use of Intercepted Communications**

Defendants also argue that Rackemann fails to allege that they "used" any intercepted communications, in violation of 18 U.S.C. § 2511(d). (Filing No. 32 at 20; Filing No. 33 at 13; Filing No. 35 at 14.) That section of the Wiretap Act "protects against the dissemination of private communications that have been unlawfully intercepted." 18 U.S.C. § 2511(d). The Court has identified only one allegation in the Complaint related to Rackemann's "use" claim, that Defendants "used the contents of those communications to [their] economic benefit, including for marketing purposes." (Filing No. 1 at 14.) However, here, as in the *Satchell* case,

> there are no facts, as opposed to conclusory allegations, to show that the contents of [Plaintiff's] communications, as opposed to the beacon signals, were used to send [him] targeted advertising in the Complaint. For example, there are no allegations, that Plaintiff was speaking to someone, privately, about a particular topic while the App was running and [he] suddenly received an advertisement about that topic.

*Satchell*, 234 F. Supp. 3d at 1008-09.

The Court therefore concludes that Rackemann has failed to adequately plead a violation of this provision, and this claim should be dismissed. Because this defect could be cured through further pleading, however, the Court grants this dismissal without prejudice.

## IV. CONCLUSION

For the reasons stated above, the Court **DENIES** Defendants' Motions to Dismiss, (Filing No. 30; Filing No. 31; Filing No. 34), insofar as they relate to Rackemann's "interception" claims. The Court **GRANTS without prejudice** Defendants' Motions to Dismiss, insofar as they relate to Rackemann's "use" claims.

Should he choose to do so, Rackemann may file an amended complaint, within **thirty (30) days** of the docketing of this Order.

**SO ORDERED**

Date: 9/29/2017

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Rafey S. Balabanian
EDELSON PC
rbalabanian@edelson.com

Eve-Lynn Rapp
EDELSON PC
erapp@edelson.com

Benjamin Thomassen
EDELSON PC
bthomassen@edelson.com

Erica C Mirabella
132 Boylston Street
Boston, MA 02116

Thomas A. Barnard
TAFT STETTINIUS & HOLLISTER LLP
tbarnard@taftlaw.com

David J. Bender
COVINGTON & BURLING LLP
dbender@cov.com

Eric C. Bosset
COVINGTON & BURLING LLP
ebosset@cov.com

Thomas L. Feher
THOMPSON HINE LLP (Cleveland)
tom.feher@thompsonhine.com

Katharine Goodloe
COVINGTON & BURLING LLP
kgoodloe@cov.com

Jesse Jenike-Godshalk
THOMSPON HINE LLP
Jesse.Jenike-Godshalk@ThompsonHine.com

Kevin Kelly
COVINGTON & BURLING LLP
kkelly@cov.com

Jerrold G. Neeff
BOSTONIAN LAW GROUP
jerry@bostonianlaw.com

Thomas F. Zych
THOMPSON HINE LLP
tom.zych@thompsonhine.com