# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JEFF EVANS, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>LISNR, INC., a Delaware Corporation, ADEPT MOBILE, LLC., a Massachusetts Limited Liability Company, and INDIANAPOLIS COLTS, INC., an Indiana Corporation,<br><br>*Defendants*. | Case No. 1:17-cv-00624-TWP-MJD<br><br>Hon. Tanya Walton Pratt<br><br>Magistrate Mark J. Dinsmore |

**FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Jeff Evans ("Plaintiff or "Evans") brings this First Amended Class Action Complaint ("Complaint") against Defendants Lisnr, Inc. ("Lisnr"), Adept Mobile, LLC. ("Adept Mobile"), and Indianapolis Colts, Inc. (the "Colts") (collectively "Defendants") based on their unlawful practice of systematically and surreptitiously intercepting consumers' oral communications without their consent. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

**NATURE OF THE ACTION**

1. The Colts are one of the premier sports and entertainment organizations in the National Football League ("NFL"), combining its success on the field with its desire to be at the forefront of technology and fan entertainment off the field.

2. Like many other NFL organizations, the Colts offer a mobile application ("App")

for fans. The App, which was recently re-developed by Defendant Adept Mobile, provides an interactive experience for fans by delivering scores, news, and other information relevant to the organization.

3. In 2016, in furtherance of the Colts' desire to remain a technological leader among NFL organizations, the Colts partnered with Defendant Lisnr and Defendant Adept Mobile to integrate Lisnr's beacon technology.[1] Beacons are a novel method to track consumers and how they interact with marketing and advertisements. For instance, with beacons, advertisers might be able to discern when a consumer is looking at a specific billboard—something previously unprecedented. With the App, Lisnr's software allows the Colts to target specific consumers and send them tailored content, promotions, or advertisements based on their location.

4. The App determines a consumer's precise location by secretly activating the consumer's smartphone's built-in microphone ("Microphone") and listening for nearby Lisnr audio beacons. With the Microphone activated, the App listens to and records *all* audio within range—including consumer conversations. If the App "hears" one of Lisnr's beacons it may display an ad to the consumer or simply send that information to Lisnr.

5. Unfortunately for consumers, Defendants never inform them that their smartphones are being turned into listening devices nor do they ever seek consent. Accordingly, this putative class action seeks (1) to prevent Defendants' continued nonconsensual listening and recording of consumer conversations, and (ii) statutory and punitive damages for violations under the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 *et seq.* (the "ECPA").

---

[1] *Lisnr*, http://lisnr.com/index.php/portfolio-items/lisnr-sidearm-sports-to-bring-location-based-mobile-messaging-to-college-sports-fans/ (last visited Nov. 15, 2016).

## PARTIES

6. Plaintiff Jeff Evans is a natural person and resident and citizen of the State of Indiana.

7. Defendant Lisnr, Inc. is a corporation existing under the laws of Delaware, with its headquarters and principal place of business located at 920 Race Street, 4th Floor, Cincinnati, Ohio 45214. Lisnr conducts business throughout this District, the State of Indiana, and the United States.

8. Defendant Adept Mobile, LLC., is a limited liability company existing under the laws of Massachusetts, with its headquarters and principal place of business located at 1240 Southeast St., Amherst, Massachusetts 01002. Adept Mobile conducts business throughout this District, the State of Indiana, and the United States.

9. Defendant Indianapolis Colts, Inc., is a limited liability company existing under the laws of Indiana, with its headquarters and principal place of business located at 7001 West 56th Street, Indianapolis, Indiana 46254. The Colts conduct business throughout this District, the State of Indiana, and the United States.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 *et seq.*, a federal statute.

11. This Court has personal jurisdiction over Defendant Lisnr because it conducts business in Indiana.

12. This Court has personal jurisdiction over Defendant Adept Mobile, because it conducts business in Indiana.

13.     This Court has personal jurisdiction over Defendant Indianapolis Colts, Inc., because it conducts business in Indiana, and is headquartered and registered to do business in Indiana.

14.     Moreover, a substantial part of the injury-causing conduct at issue occurred in Indiana. Specifically, out-of-state Defendants Lisnr and Adept entered into agreements with Defendant Colts, which calls for a continued relationship between the Defendants. The basis of Defendants' agreement is the subject of this lawsuit, namely the inclusion and continued operation of the Lisnr audio beacon technology in the Colts App.

15.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant Colts resides in this District.

**FACTUAL BACKGROUND**

I.      **An Introduction to Beacon Surveillance Technology.**

16.     As introduced above, "beacons" are new technologies that seek to track and monitor consumers and how they interact with advertisements and marketing.[2] Fundamental to beacon technology is the smartphone, which consumers carry on their person everywhere they go. Built into smartphones are a plethora of radio transmitting and receiving devices, including a "Bluetooth" radio.

17.     Bluetooth is a wireless personal area network technology used for transmitting data over short distances. A smartphone with Bluetooth will invariably attempt to communicate with other Bluetooth devices in its vicinity. While those other Bluetooth devices take the form of hands-free car radios, headphones, or stereos, marketers found a new use—canvasing Bluetooth

---

[2]    *Beacon Technology: The Where, What, Who, How and Why*, http://www.forbes.com/sites/homaycotte/2015/09/01/beacon-technology-the-what-who-how-why-and-where/#668c740b4fc1 (last visited Nov. 15, 2016).

4

devices in specific locations (e.g., retail stores) that exist only to capture an attempted Bluetooth connection. By monitoring which Bluetooth radio (and the corresponding smartphone and owner) attempts to connect to the placed-Bluetooth devices, marketers can track the physical path a smartphone takes through that location.

18. For instance, suppose a department store placed a Bluetooth beacon in the men's shoes, accessories, and children's departments. While the consumer navigates from the men's shoes department to the children's department, his or her smartphone would attempt to connect to the beacons in the men's shoes and then the children's departments. The retailer now would have a record of that path, which may inform the retailer on certain consumer behavior.

19. The next logical step for marketers was to create beacons that interact more fully with consumer's smartphone. In that same example described above, the retailer might want to cause the consumer's smartphone to "pop up" an alert whenever he or she enters the kids department. The pop up could be simple text advertising a sale or even a coupon. For this to work, however, the retailer would need access to the consumer's smartphone through an application or a system-wide protocol.

20. Because beacon tracking is inherently invasive (consumers are continuously tracked), industry standards dictate that consumers opt-in to beacon tracking.[3] Often, the form of the opt-in is through the Apple iBeacon protocol in Apple iPhones, or through an application developer's mobile application. If the retailer, in the example above, operates their own mobile application, they might seek consent through an explicit disclosure or, at least, a privacy policy.

21. Defendant Lisnr utilizes a novel beacon technology called audio beacons. Defendant Lisnr's audio-based beacon technology, in contrast to Bluetooth beacon technology,

---

[3] *Id*.

requires Defendant Lisnr to ascertain a consumer's physical location through sounds rather than through radio signals. Instead of canvasing a location with only Bluetooth devices, Lisnr partners with entities like the Colts to place speakers throughout locations. Each speaker is mapped to a location and emits a unique audio signal. A device that can "hear" a Lisnr audio beacon must be near that speaker. As such, Lisnr is able to quickly ascertain the location of that device and its approximate distance from the speaker.

22. Lisnr describes its beacon technology in the following way:

> LISNR is the creator of SmartTones, a new technology that sends data over audio. LISNR uses an inaudible digital sound file to turn any device into a beacon. LISNR gives brands and content creators a platform that delivers second-screen experiences and proximity-based messaging.[4]

23. But for the technology to work, Lisnr requires a microphone to continuously listen for its audio signals. For that, Lisnr involuntarily enlists thousands of sports fans that have downloaded and installed the app from their favorite team.

## II. Defendants Partner To Include Audio Beacons in the Colts' App.

24. Like most professional sports teams, the Indianapolis Colts offer their App for free download in the Google Play Store (the "Play Store"). To date, the App has been downloaded between 100,000 and 500,000 times.[5] Defendants Colts and Adept Mobile market the App as "the official mobile app of the Indianapolis Colts" where fans can "Stay up-to-date on everything Colts with breaking news, game highlights, player interviews, cheerleader photographs and more."[6]

---

[4] *LISNR Lands Intel Capital and $10 Million in Series B Funding – LISNR*, http://lisnr.com/portfolio-items/proximity-3/ (last visited Nov. 15, 2016).

[5] *Indianapolis Colts Mobile- Android Apps on Google Play*, http://web.archive.org/web/20160922190313/https://play.google.com/store/apps/details?id=com.yinzcam.nfl.colts (last visited Nov. 15, 2016).

[6] *Id.*

6

25. Just as with any other application for download in the Play Store, the App asks for certain "permissions." Defendants programmed the App to ask for the following permissions:



(**Figure 1.**)

26. Notably absent from the permission list is a request to "opt-in" to the audio beacon technology. While the permissions include "microphone," Defendants do not provide any context or information regarding the "microphone." Indeed, a reasonable consumer would view the permission, which is requested right after "Photos/Media," as relating to media, one of the primary advertised features of the App.

27. Moreover, the App's Terms of Service Privacy Policy entries are equally silent as to the App's use of beacons.[7] At no time do Defendants disclose to consumers that the App uses

---

[7] *Colts.com | Privacy Policy*,

beacon technology. And, Defendants have not disclosed that the Colts App uses audio beacon technology that surreptitiously turns on consumers' smartphone microphones and listens in.

### III. Defendants Hijack Users Smartphones and Turn Them into Listening Devices.

28. Upon startup, the App does not seek permission to begin listening in so long as the smartphone is running a version of Android below version 6.0. Instead, Defendants programmed the App to contact a server owned and operated by Defendant Lisnr and wait for instructions on how and when users' Microphones should be used. Lisnr's server then responds with certain "listening rules." These rules, provided by Defendants Colts and/or Adept Mobile, contain different date and time intervals when the "listening" should be activated in the app. On Defendants' specified dates and at their desired times, the App activates the microphone and starts listening in. For instance, Defendant Lisnr's server issued the following rule created by Defendants Colts and/or Adept Mobile for the weekend of October 9th, 2016:

```
"rules": [{"object": "smartListenRule", "type": "datetime", "id":
"f4597ef6-24c7-4c4c-a5ac-37fa50daee47", "name": "Welcome to Lucas Oil",
"start": "2016-10-09T15:30:00Z", "end": "2016-10-09T17:15:00Z",
"timeZone": "America/Detroit"}, {"object": "smartListenRule", "type":
"datetime", "id": "a82c85f8-ed7b-4c02-8f78-7ae678aa2586", "name": "Safe
Driving", "start": "2016-10-09T19:30:00Z", "end": "2016-10-09T20:30:00Z",
"timeZone": "America/Detroit"}]
```

(**Figure 2.**)

29. That is, Defendants' rules shown in Figure 2 caused the secret activation of tens of thousands of consumers' microphones across the country on Sunday, October 9th, 2016 at 11:30 a.m. to 12:15 p.m. and 2:30 p.m. to 3:30 p.m. Eastern time. Consumers' microphones were activated no matter where they were—in church, in their cars, at work, or in their homes. That is, the rule was not limited in any way to consumers at Lucas-Oil Stadium, the home stadium of the

---

http://web.archive.org/web/20160409104429/http://www.colts.com/footer/privacy-policy.html (last visited Nov. 15, 2016).

8

Colts. Worse, Defendants designed the App so that consumers are not given any indication that Defendants are listening (i.e., no part of the App's user interface displays a warning that the microphone is turned on).

30. And when it is listening, the App temporarily records portions of the audio for analysis. Defendants programmed the App to analyze and monitor the picked-up audio for any of the Lisnr beacon tones. For instance, if the App hears a transmitter's audio signal in its recordings, the App will automatically respond by, for instance, displaying banner advertisements to the consumer or showing highlights or other information.

31. To maximize effectiveness, Defendants programmed the App so that their audio-based beacon technology is able to continuously listen on command and in the background. Defendants programmed the App to listen in even when the App is not open, such as when a smartphone is locked or when its screen is powered down. As a result, Defendants "listening rules" activate Microphones even when the App is only running in the background (e.g., when a smartphone is in a consumer's pocket or purse). Regardless of whether the App is being actively used or is running in the background, Defendants never obtain consent to begin listening in and consumers are still ignorant of when Defendants are listening.

### FACTS RELATED TO PLAINTIFF JEFF EVANS

32. On April 29, 2016, Plaintiff Jeff Evans downloaded the Colts App onto his Samsung Galaxy S5 smartphone from the Google Play. His Samsung Galaxy S5 smartphone was running version 4.4.2 of the Android operating system.

33. As soon as the App downloaded, Plaintiff opened the App. Over the years, Plaintiff regularly used the App to follow the progress of the Indianapolis Colts. Over that time period, the App was also regularly updated. The App running on Plaintiff's phone was auto-

9

updated to various versions, including version 3.1.1 on August 3, 2016.

34.    During the time version 3.1.1 (and likely 3.1.0) was installed on his phone, Plaintiff carried his smartphone on his person. He would take his smartphone to places where he would not invite other people, and to places where he would have private conversations. That is, his phone was present in locations and personal and private situations not generally accessible to the public where the expectation was that his conversations were to remain private. Plaintiff stopped using his Samsung Galaxy S5 as his primary phone around August 2017 but still used the device periodically and connected to the internet via Wifi.

35.    Unbeknownst to Plaintiff and without his consent, Defendants programmed the App to turn on his smartphone's Microphone and listen-in. Specifically, because Plaintiff carried his smartphone to locations where he would have private conversations and the App was continuously running on his phone, Defendants App listened-in to private oral communications.

36.    At no time did Plaintiff consent to the App using his Microphone to listen-in to his oral conversations.

## CLASS ALLEGATIONS

37.    **Class Definition**: Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of himself and a Class of similarly situated individuals, defined as follows:

> **Colts Class:** All individuals in the United States who downloaded versions 3.1.0, 3.1.1, 3.1.2, 3.1.3, and/or 3.1.4 of the Indianapolis Colts mobile application from the Google Play store and opened the Indianapolis Colts mobile application on an Android smartphone below version 6.0.

Excluded from the Class are: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current, former, purported, and alleged employees, officers, and directors; (3) counsel

for Plaintiff and Defendants; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors, or assigns of any such excluded persons; and (6) all persons who have previously had claims similar to those alleged herein finally adjudicated or who have released their claims against Defendants.

38. **Numerosity**: The exact number of Class members is unknown to Plaintiff at this time, but it is clear that individual joinder is impracticable. Defendants have listened in on thousands of consumers who fall into the Class definition. Ultimately, the Class members will be easily identified through Defendants' records.

39. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual Class members. Common questions for the Class include, but are not necessarily limited to the following:

   a) whether Defendants listened to and/or recorded the Class members' oral communications;

   b) whether Defendants obtained consent to listen to and/or record the Class members' oral communications;

   c) whether Defendants' conduct violates the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510, *et seq.*; and

   d) whether Plaintiff and the Class members are entitled to equitable relief as well as actual and/or statutory damages resulting from Defendants' conduct.

40. **Typicality**: Plaintiff's claims are typical of the claims of all the other Class members. Plaintiff and the Class members sustained substantially similar damages as a result of Defendants' uniform wrongful conduct, based upon the same interactions that were made uniformly with Plaintiff and the public.

41. **Adequate Representation**: Plaintiff will fairly and adequately represent and

protect the interests of the other Class members. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the Class members and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to those of the other Class members.

42. **Policies Generally Applicable to the Class**: Defendants have acted and failed to act on grounds generally applicable to Plaintiff and the other Class members, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class.

43. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by individual Class members will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for individual Class members to obtain effective relief from Defendants' misconduct. Even if Class members could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions ensured.

44. Plaintiff reserves the right to revise the Class Definitions and Class Allegations based on further investigation, including facts learned in discovery.

**FIRST CAUSE OF ACTION**
**Violation of the Electronic Communications Privacy Act**
**Against All Defendants**
**18 U.S.C. §§ 2510, *et seq.***
**(On Behalf of Plaintiff and the Colts Class)**

45. Plaintiff incorporates by reference the foregoing allegations.

46. The Electronic Communications Privacy Act, 18 U.S.C. §§ 2510, *et seq.* prohibits any person from intentionally intercepting any oral communication or from intentionally using, or endeavoring to use, the contents of any oral communication while knowing or having reason to know that the information was obtained through the interception of an oral communication. 18 U.S.C. §§ 2511(1)(a), (d).

47. Plaintiff and each member of the Colts Class downloaded and installed the Colts App with Defendant Lisnr's audio beacon technology built in.

48. During the time Plaintiff and the members of the Colts Class had (or still have) Defendants' App on their smartphones, Defendants intercepted (by listening in and recording) Plaintiff's and the Colts Class's private conversations, including oral communications, where Plaintiff and the Colts Class exhibited expectations that such communications were to remain private and would not otherwise be subject to interception under circumstances justifying such expectation. 18 U.S.C. § 2510(2).

49. Defendants did not inform nor obtain consent from Plaintiff or the Colts Class to listen to and record their private conversations. Plaintiff and the Colts Class had no reason to know or suspect that the App would constantly and continuously record and analyze their conversations.

50. As detailed herein, once the App is downloaded and opened on their smartphones, Defendants listen to and record oral communications belonging to Plaintiff and members of the

Class and use the contents of those communications to their economic benefit, including for marketing purposes.

51. At all times, Defendants acted intentionally by programming the App to specifically turn on consumers' Microphones without consent. And, each defendant is integrally involved with the inclusion of the Lisnr audio beacon code and with the operation of the offending software.

52. The Colts leveraged its mobile application with a large number of consumers who downloaded and installed the App (likely greater than 50,000) to serve as the host of the Lisnr audio beacon technology. Reasonable consumers that downloaded the Colts App did not have the understanding that the requested "microphone" permission would result in the surreptitious monitoring of their oral communications. Instead, consumers trusted the Colts when they downloaded the application. And when the Colts requested the microphone permission, consumers trusted that it was for some disclosed purpose (e.g., media). Without the Colts' trusting fans, Defendants could not have obtained access to enough microphones for their scheme to be viable.

53. Defendant Lisnr, for its part, not only provided the specific technology at issue here, but was and is integral to the continued operation of the listening device. Specifically, Lisnr owns and controls the rule issuing server that causes consumers' microphones to activate. Without Lisnr's server, consumers' microphones would not be activated. As a result, Lisnr's actions are an integral link in the development and operation of the listening device (i.e., the App) that performs the unlawful interceptions at issue.

54. Defendant Adept Mobile develops and maintains the codebase of the App and ensures the deliverability of the App to the Google Play Store and, ultimately, consumers. Adept

Mobile integrated the Lisnr audio beacon technology into the Colts App, conducted testing and analysis, and then issued the App for distribution through the Google Play Store and to consumers. Adept Mobile's actions are an integral link in the development and distribution of the listening device (i.e., the App) that performs the unlawful interceptions at issue.

55. As a proximate cause of Defendants' violation of the ECPA, Plaintiff and members of the Colts Class have been injured by and through the wear and tear on their smartphones, consuming the battery life of their smartphones, and diminishing their use, enjoyment, and utility of their devices.

56. Plaintiff and the Colts Class members suffered harm as a result of Defendants' violations of the ECPA, and therefore seek (a) preliminary, equitable and declaratory relief as may be appropriate, (b) the sum of the actual damages suffered and the profits obtained by Defendants as a result of its unlawful conduct, or statutory damages as authorized by 18 U.S.C. § 2520(c)(2)(B), whichever is greater, (c) punitive damages, and (d) reasonable costs and attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Jeff Evans, on behalf of himself and the Class, respectfully requests that this Court enter an Order:

A. Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff Evans as representative of the Class, and appointing his counsel as Class Counsel;

B. Declaring that Defendants' actions, as described herein, violate the Electronic Communications Privacy Act (18 U.S.C. §§ 2510, *et seq.*);

C. Awarding statutory damages in the amount of whichever is the greater of (a) the

sum of actual damages suffered plus any profits Defendants earned through its unlawful conduct, or (b) the greater of $100 per Class member per day of Defendants' violations or $10,000 per Class member, pursuant to 18 U.S.C. § 2520(c)(2);

      D.      Awarding punitive damages as appropriate;

      E.      Awarding injunctive relief as necessary to protect the interests of Plaintiff and the Class members, including, *inter alia*, an order prohibiting Defendants from listening to and recording consumer oral communications in compliance with the ECPA;

      F.      Awarding Plaintiff and the members of the Class their reasonable litigation expenses and attorneys' fees;

      G.      Awarding Plaintiff and the members of the Class pre- and post-judgment interest, to the extent allowable; and

      H.      Awarding such other and further relief as equity and justice may require.

## JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted,

**JEFF EVANS**, individually and on behalf of all others similarly situated,

Dated: November 20, 2017      By: /s/ Rafey S. Balabanian
      One of Plaintiff's Attorneys

Rafey S. Balabanian (admitted *pro hac vice*)
rbalabanian@edelson.com
Eve-Lynn J. Rapp (admitted *pro hac vice*)
erapp@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

16

Benjamin S. Thomassen
bthomassen@edelson.com (admitted *pro hac vice*)
Amir Missaghi
amissaghi@edelson.com (admitted *pro hac vice*)
EDELSON PC
350 North LaSalle Street, 13th Floor
Chicago, Illinois 60654
Tel: 312.589.6380
Fax: 312.589.6378

*Counsel for Plaintiff and the Putative Class*