**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| ALAN RACKEMANN | Case No. 1:17-cv-00624-TWP-MJD |
| Plaintiff/Counterclaim-Defendant, | Judge Tanya Walton Pratt |
| v. | Magistrate Mark J. Dinsmore |
| LISNR, INC., | |
| Defendant/Counterclaim-Plaintiff. | |

**DEFENDANT/COUNTERCLAIM-PLAINTIFF LISNR, INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFF/COUNTERCLAIM-DEFENDANT ALAN RACKEMANN'S MOTION TO STRIKE OR DISMISS COUNTERCLAIMS**

The Court should deny Plaintiff/Counterclaim-Defendant Alan Rackemann's ("Plaintiff") Motion to Strike or Dismiss Counterclaims as to each counterclaim asserted by Defendant/Counterclaim-Plaintiff LISNR, Inc. ('LISNR"). Plaintiff's Motion ignores or misstates the relevant standards governing his Motion, as well as the factual allegations of the Counterclaims. Applying the correct legal standards to the stated allegations, LISNR has adequately pleaded a counterclaim for spoliation of evidence under the law of Ohio, which applies according to Indiana choice of law principals. Ohio recognizes an independent cause of action for spoliation where, as here, the plaintiff has intentionally destroyed material evidence so as to impede the defendant's ability to litigate a case.

LISNR has likewise adequately and plausibly pleaded a counterclaim for abuse of process, because Plaintiff and his counsel knowingly filed baseless litigation for the ulterior purpose of extorting money from LISNR. Finally, the Court should exercise its discretion to allow LISNR's counterclaim for declaratory judgment to go forward, because it will serve the useful purpose of heading off threatened repetitive and baseless litigation over whether the

Indianapolis Colts, Inc. ("Colts") mobile phone application ("the App") "eavesdrops" on users' conversations in violation of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 *et seq.* ("the Wiretap Act").

Plaintiff's Motion also wrongly asserts that this Court lacks subject matter jurisdiction over LISNR's state law counterclaims for spoliation and abuse of process, based on a standard for calculating damages that the Seventh Circuit has expressly rejected and likewise ignoring LISNR's specific damage allegations.   Similarly, in arguing that the Court does not have supplemental jurisdiction over LISNR's counterclaims, the Motion disregards the Seventh Circuit standard for supplemental jurisdiction.   Because LISNR's state law counterclaims involve the same core factual issues as the claims in this case that arise under federal law, the Court has supplemental jurisdiction over the state law claims.  The Motion should be denied.

## FACTUAL ALLEGATIONS IN LISNR'S COUNTERCLAIMS[1]

The Motion repeatedly asserts that the Counterclaims' allegations are conclusory, implausible and duplicative, all without ever describing what is actually alleged.  (*See* Dkt. 194 at 3 (briefly summarizing each counterclaim in the "background" section of Plaintiff's memorandum).)  But addressing the merits of the counterclaims requires review of the actual allegations that support LISNR's three counterclaims, as well as the jurisdictional allegations of the counterclaims.  Thus, these are laid out below.

## I.   Factual Allegations Underlying LISNR's Three Counterclaims

LISNR's counterclaims specifically allege that Plaintiff and his attorney/agents carried out a plan to use the threat of continuing, baseless litigation to extort money from LISNR.  The allegations are that counsel began by investigating mobile phone applications to identify those

---

[1] LISNR will also soon seek leave to file its Second Amended Answer and Counterclaims to add newly learned facts to its Counterclaims.

2

that included LISNR's technology. (Counterclaims (Dkt. 166) at ¶ 7.) During this process, they identified the Colts' App. (*Id.* at ¶ 8.)

Through "investigating" the Colts' App, they came to understand that LISNR's technology activated the microphones on user's mobile phones, but also that the technology "did not recognize, process, or record human voices." They also understood that "all users of the App consented to the activation of the microphone[s]." (*Id.* at ¶¶ 10, 15, 16, 19.) The Plaintiff and his agents brought the claim, though they had no evidence of facts critical to a claim of illegal wiretapping. (*Id.* at ¶ 20.) Specifically, the investigation found no evidence (and there was no basis for alleging) that the App analyzed or communicated any data related to human voices or that the App caused users' phones to send any conversation received from the microphones anywhere, including to LISNR or its customers. (*Id.* at ¶ 21.)

Undeterred, Plaintiff's agents fraudulently represented to over 100 other individuals that the App was eavesdropping on them in violation of the Wiretap Act (*id.* at ¶ 12, 23), and then intentionally filed two complaints against LISNR making those false statements (*id.* at ¶¶ 25, 26, 28, 29, 31), as well as baseless legal claims (*id.* at ¶¶ 35, 44–48). In the complaints, which they knew and intended would be publicized and damaging to LISNR's business, they falsely alleged that the Colts App records human oral communications and does not seek consent from users. (*Id.* at ¶¶ 25, 29.) They further falsely stated that their investigation had *confirmed* all of their false allegations (*id.* at ¶ 31.),[2] asserting two meritless claims (on behalf of putative classes) for violations of the Wiretap Act. (*Id.* at ¶¶ 25, 28.)

_____

[2] For example, while the Complaints expressly stated that the App was "eavesdropping" on users' conversations (Dkt. 1 at ¶ 29), the sworn testimony of Plaintiff's expert on December 21, 2017 was that there was no evidence that was true. That fact will be among other revelations set forth in LISNR's proposed Second Amended Answer and Counterclaims.

The purpose or motive in filing these suits was to injure "LISNR's reputation and its business" so as to force LISNR into offering Plaintiff and his agents a settlement "unrelated to the actual value of the purported wiretap claim." (*Id.* at ¶¶ 35, 48.) As alleged, they "understood that the natural consequence of filing and pursuing baseless litigation was to injure LISNR's reputation and its business" (*id.* at ¶ 46), and they "intended the[se] natural consequences" (*id.* at ¶ 47).

After deciding to assert his baseless claims against LISNR, Plaintiff also knowingly deleted the App from his phone "thereby rendering forensic review of his personal claims substantially more difficult and potentially impossible." (*Id.* at ¶¶ 38, 39.)[3] "The installed App . . . could have demonstrated the falsity of any allegation that LISNR's product covertly recorded Plaintiff's conversations." (*Id.* at ¶ 40.) "Plaintiff willfully and intentionally deleted the App from his cell phone in order to disrupt LISNR's ability to defend against the lawsuits that Plaintiff has filed, through his attorneys, against LISNR." (*Id.* at ¶ 41.) "By deleting the App from his cell phone, Plaintiff disrupted LISNR's ability to defend against the lawsuits that Plaintiff has filed against LISNR and has caused LISNR damages." (*Id.* at ¶ 42.)

Despite the deletion of this critical evidence, it still became "clear during the course of discovery that Plaintiff did not have a viable individual claim" for violation of the Wiretap Act. (*Id.* at ¶ 52.)[4] In response, Plaintiff "threatened to bring another lawsuit via another one of the 103 other individuals that [his] attorneys had recruited." (*Id.*)

---

[3] As noted elsewhere, since the filing of the Counterclaims, Plaintiff has testified that he deleted the App "on advice of counsel." (*See* Dkt. 166 at ¶ 39 (Plaintiff deleted App "at his attorney's direction").) There can be no question but that his counsel knew that any such deletion was strictly prohibited under law.

[4] The reason why, as has been disclosed since the Counterclaims were filed, was because he never actually had any LISNR product on his phone, a fact that was not disclosed until after more than a year of litigation and the filing of two complaints. (*See* Dkt. 177 at 1.)

Based on the foregoing factual allegations, LISNR has asserted three counterclaims against Plaintiff: (1) Count I – Spoliation of Evidence; (2) Count II – Abuse of Process; and (3) Count III – Declaratory Judgment Under 28 U.S.C. §§ 2201 *et seq*.   Count III seeks "a declaration that the App does not record human oral communications and therefore does not violate the Wiretap Act."  (*Id.* at ¶ 53.)

## II.   Jurisdictional Allegations in the Counterclaims

LISNR alleges that "LISNR and Plaintiff are citizens of different states and the amount in controversy exceeds $75,000."  (Counterclaims (Dkt. 166) at ¶ 3.)  In support, LISNR describes various damages caused by Plaintiff's misconduct, including: the loss of "at least two customer relationships, with the Colts and the [Cleveland Cavaliers]"; and "increased legal fees and costs" caused by Plaintiff's spoliation.  (*Id.* ¶¶ 36, 42.)

LISNR also alleges that this Court has federal question jurisdiction over Plaintiff's claims, because they arise under the Wiretap Act, a federal statue.  (*Id.* at ¶ 3.)  Similarly, it alleges that this Court has federal question jurisdiction over LISNR's counterclaim for declaratory judgment, which arises under the Declaratory Judgment Act, another federal statute. (*Id.*)  Finally, it alleges that "the Court may exercise pendent, supplemental, or ancillary jurisdiction over LISNR's" claims for spoliation and abuse of process.  (*Id.*)

## STANDARDS GOVERNING PLAINTIFF'S MOTION

Just as Plaintiff fails to describe the actual allegations of the counterclaims, he likewise does not clearly or adequately state the standards that govern his motion.  To remedy this deficiency, LISNR lays out the standards below.

I.      **Standard Governing Rule 12(f) Motions to Strike**

Pursuant to Federal Rule of Civil Procedure 12(f), courts may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "[M]otions to strike in general are highly disfavored, and the burden lies upon the moving party to prove that such an exceptional remedy is warranted."  *Slabaugh v. State Farm Fire & Cas. Co.*, No. 1:12-cv-01020-RLY-MJD, 2014 U.S. Dist. LEXIS 61108, at *17 (S.D. Ind. May 1, 2014) (Dinsmore, Mag.).  "'[A]ny doubt as to the striking of matter in a pleading should be resolved in favor of the pleading.'"  *Pain Prevention Lab, Inc. v. Elec. Waveform Labs, Inc.*, 657 F. Supp. 1486, 1491 (N.D. Ill. 1987) (quoting *Hanley v. Volpe*, 305 F. Supp. 977, 980 (E.D. Wisc. 1969)).

II.     **Standard Governing Rule 12(b)(1) Motions to Dismiss**

Under Federal of Civil Procedure 12(b)(1), a party may move to dismiss for lack of subject matter jurisdiction, such as when the amount in controversy is less than the jurisdiction limit of $75,000 set in § 1332(a)(1).  "The burden of proof is on the party asserting jurisdiction."  *Overton & Sons Tool & Die Co. v. Precision Tool, Die & Mach. Co.*, No. 1:13-cv-01302-TWP-DKL, 2014 U.S. Dist. LEXIS 58451, at *3 (S.D. Ind. Apr. 28, 2014) (Pratt, J.).  "In determining whether subject matter jurisdiction exists, the court must accept all well-pleaded facts alleged in the [counterclaim] and draw all reasonable inferences from those facts in the [non-moving party's] favor."  *Id.*  Where, as here, the moving party launches a factual attack on jurisdiction— rather than just a facial attack—the Court may also "properly look beyond the jurisdictional allegations of the [counterclaim] and view whatever evidence has been submitted on the issue to determine whether jurisdiction in fact exists."  *Id.* at *6.

A factual attack on jurisdiction involves two separate standards: (1) the preponderance of the evidence standard; and (2) the "legal certainty" standard.  If the moving party challenges "material factual allegations" underlying jurisdiction, then the proponent of jurisdiction must "prove those jurisdictional facts by a preponderance of the evidence." *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006).  "Although the proponent of jurisdiction may be called on to prove facts that determine the amount in controversy . . . once these facts have been established[,] the proponent's estimate of the claim's value must be accepted unless there is 'legal certainty' that the controversy's value is below the threshold." *Id.* at 541.  That is, "[w]hether damages will exceed $75,000 is not a fact but a prediction, and with respect to that subject the court must decide whether 'to a legal certainty . . . the claim is really for less than the jurisdictional amount.'" *Id.* (quoting *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938)).  The "legal certainty standard 'is a cousin to the question whether a particular argument is frivolous.'" *Green v. Monarch Recovery Mgmt.*, No. 1:13-cv-00418-SEB-MJD, 2013 U.S. Dist. LEXIS 131781, at *10 (S.D. Ind. Sept. 16, 2013) (Dinsmore, Mag.) (quoting *Pratt Cent. Park Ltd. P'ship v. Dames & Moore, Inc.*, 60 F.3d 350, 354 (7th Cir. 1995)).

Thus, to succeed on a factual challenge to the amount in controversy, the moving party needs to come forward with evidence showing that it is "factually impossible" to meet the amount in controversy requirement. *Overton*, 2014 U.S. Dist. LEXIS 58451, at *12 (denying motion to dismiss where moving party failed to meet this standard).

Plaintiff's brief ignores this standard and cites in passing a single case decided more than twenty years ago holding that the proponent of jurisdiction "'has the burden of coming forward with competent proof to establish at least a reasonable probability that the amount in controversy

requirement is satisfied.'" (Dkt. 194) at 6 (quoting *Reason v. Gen. Motors Corp.*, 896 F. Supp.

829, 834 (S.D. Ind. 1995).)  But in *Meridian* the Seventh Circuit "banished [this standard] from

our lexicon," explaining that such a standard was in violation of Supreme Court precedent.  441

F.3d at 542–43.  Yet, that is the standard Plaintiff urges this Court to apply.

### III.    Standard Governing Rule 12(b)(6) Motions to Dismiss

The standard for deciding Rule 12(b)(6) motions to dismiss was enunciated in *Am.*

*Family Mut. Ins. Co. v. Mill Installation & Constr.*, Inc., No. 1:10-cv-1711-TWP-DKL, 2011

U.S. Dist. LEXIS 106596, at *5–6 (S.D. Ind. Sept. 21, 2011) (Pratt, J.):

> When reviewing a 12(b)(6) Motion, the Court takes all well-pleaded allegations in
> the counterclaim as true and draws all inferences in favor of the non-movant.
> *Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008) (citations
> omitted).  However, the allegations must "give the [counter-defendant] fair notice
> of what the . . . claim is and the grounds upon which it rests" and the "[f]actual
> allegations must be enough to raise a right to relief above the speculative level."
> *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (quoting *Bell
> Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929
> (2007)).  Stated differently, the counterclaim must include "enough facts to state a
> claim to relief that is plausible on its face."  *Hecker v. Deere & Co.*, 556 F.3d 575,
> 580 (7th Cir. 2009) (citations omitted).  To be facially *plausible*, the counterclaim
> must allow "the court to draw the reasonable inference that the defendant is liable
> for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937,
> 1949, 173 L. Ed. 2d 868 (2009) (citation omitted).

Plaintiff's Motion does not meet the foregoing standards.

### ARGUMENT

### I.    The Court Should Deny the Motion to Dismiss Count I for Spoliation.

Plaintiff argues that the Court should dismiss Count I because "[s]poliation is not an

independent tort *in Indiana*."  (Dkt. 194 at 8–9.)  But Ohio law applies to LISNR's spoliation

claim, and spoliation is viable under Ohio substantive law, meaning dismissal is not warranted.

Indiana's choice of law rules determine what body of substantive law will apply to

LISNR's counterclaim.  *See Buckeye State Mut. Ins. Co. v. Roe*, No. 1:12-CV-411-PPS, 2013

U.S. Dist. LEXIS 177329, at *8 (N.D. Ind. Dec. 18, 2013).  "Under Indiana's choice of law principles for torts, the presumption is that . . . the court applies the law of the place of the tort, the place where the last event necessary to make the actor liable for the alleged wrong takes place."  *Id.* at *10–11.  This presumption can be overcome only "if the place of the tort bears little connection to the legal action."  *Id.* at *11.  "The Indiana Supreme Court has cautioned that the place of the tort is rarely insignificant."  *Id.*

Applying this framework to a claim for common law fraud, the Supreme Court of Indiana held that "the reliance and consequent damage incurred by the plaintiffs is the 'last event' necessary to establish the elements" of that tort.  *Allen v. Great Am. Reserve Ins. Co.*, 766 N.E.2d 1157, 1164–65 (Ind. 2002).  Because the plaintiffs had relied and suffered damages in South Carolina, the court applied South Carolina substantive law to the fraud claim.  *Id.* at 1165.

Similarly, in the present case, "the last event necessary to make" Plaintiff liable for spoliation is harm or damages.  First, Indiana does recognize a tort cause of action for spoliation (though perhaps under certain circumstances that may not apply here).  *Baker v. AIG Claim Servs.*, No. 2:05-CV-141-PRC, 2005 U.S. Dist. LEXIS 46174, at *20 (N.D. Ind. Feb. 7, 2005); *see also J.S. Sweet & Co. v. Sika Chem. Corp.*, 400 F.3d 1028, 1032 (7th Cir. 2005) (for defendant to be liable, plaintiff must prove duty, breach, and harm).  But as described below the law of Ohio applies to LISNR's claim because that is where it was damaged.  And Ohio expressly recognizes a cause of action for spoliation when these elements are met:

> (1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of the defendant that litigation exists or is probable, (3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts.

*Smith v. Howard Johnson Co.*, 615 N.E.2d 1037, 1038 (Ohio 1993).   Notably, under both Indiana and Ohio law, the last event necessary to make the actor liable is harm or damages.   *Id.*; *J.S. Sweet*, 400 F.3d at 1032.

As a corporation, LISNR suffered harm where its principal place of business is located. *See Bunn-O-Matic Corp. v. Bunn Coffee Serv.*, 88 F. Supp. 2d 914, 920 (N.D. Ill. 2000) (affirming earlier finding that plaintiff "felt the impact of . . . tortious conduct at its principal offices in Illinois"); *Creative Sales Corp. v. Dell Distrib.*, No. 82 C 2060, 1985 U.S. Dist. LEXIS 17884, at *13–14 (N.D. Ill. July 15, 1985) ("[T]he alleged injury occurred in Illinois since plaintiff is an Illinois corporation with its principal place of business in this state.").   As alleged in the Counterclaims, LISNR has "its principal place of business at 920 Race Street, 4th Floor, Cincinnati, Ohio  45214." (Counterclaims (Dkt. 166) at ¶ 2.)  In sum, the last event necessary to make Plaintiff liable for spoliation occurred in Ohio, and Ohio law presumptively applies to LISNR's counterclaim for spoliation.

This presumption cannot be overcome, because Ohio is not insignificant to this action. Plaintiff and his agents knew (and alleged) where LISNR was headquartered.  (*See* Dkt. 1 at ¶ 7). Per the allegations of the Counterclaims, Plaintiff sued LISNR intending that the suit would cause damage to its reputation.  (Counterclaims (Dkt. 166) at ¶¶ 35, 46.)  Plaintiff and his agents investigated mobile phone applications to identify which ones included LISNR's technology so that they could initiate one or more lawsuits against LISNR.  (*Id.* at ¶¶ 7–8.)  Having identified the Colts' App, they made fraudulent statements about LISNR to users of the App.  (*Id.* at ¶ 23.) Finally, they filed baseless litigation against LISNR for the purpose of injuring "LISNR's reputation and its business" in Cincinnati, Ohio in an attempt to force LISNR to pay an extortionate settlement unrelated to the value of Plaintiff's claims.  (*Id.* at ¶¶ 25–26, 35, 48.)  The

Counterclaims allege that damage, and the concurrent financial loss is deemed to have occurred in Ohio.  (*Id.* at ¶ 42.)

Thus, Ohio is not insignificant to the present matter, and Ohio law should apply to LISNR's counterclaim for spoliation.

LISNR's counterclaim is valid under Ohio law.  Ohio law recognizes claims for spoliation "between the parties to the primary action (i.e., the action in which the spoliated evidence would have been used)."  *Smith*, 615 N.E.2d at 1038.  Further, such claims "may be brought at the same time as the primary action."  *Id.*  Thus, LISNR may bring a counterclaim against Plaintiff at this time for spoliation.

While Plaintiff briefly contests the merits of this counterclaim, he relies entirely on "facts" that are outside of, and contrary to, the Counterclaims.  (*See* Dkt. 194 at 8.)  This is clearly impermissible on a motion to dismiss.  *Am. Family*, 2011 U.S. Dist. LEXIS 106596, at *5–6.  He also suggests, in passing, that the spoliation counterclaim is moot now that he has moved to "withdraw" as plaintiff.  (Dkt. 194 at 9 n.6.)  But it is his conduct that has disrupted, and needlessly increased the cost of, LISNR's defense of this case.  (Counterclaims (Dkt. 166) at ¶¶ 41–42.)  The fact that he now seeks to withdraw because he never had standing to bring the claim only increases, instead of eliminates, the viability of the claim against him.  This Court should deny his Rule 12(b)(6) motion to dismiss Count I for spoliation.

## II.   Count II for Abuse of Process is Adequately Pleaded.

Plaintiff also argues that LISNR has not adequately pleaded either element for abuse of process under Indiana law.  (Dkt. 194 at 9–12.)  Plaintiff is wrong on both the law and on the allegations of the Counterclaims.[5]

"The two elements of abuse of process are: (1) ulterior purpose or motive; and (2) a willful use of process not proper in the regular conduct of the proceedings."  *Estate of Mayer v. Lax, Inc.*, 998 N.E.2d 238, 256 (Ind. Ct. App. 2013).  "An abuse of process claim may be predicated upon the filing of a complaint."  *Id.* at 256 n.7 (citing *Lindsay v. Jenkins*, 574 N.E.2d 324, 326 (Ind. Ct. App. 1991)).

The second element (improper process) is met where the legal process at issue is either procedurally **_or_** substantively improper.  *Wine & Canvas Dev. LLC v. Muylle*, No. 1:11-cv-01598-TWP-DKL, 2015 U.S. Dist. LEXIS 146512, at *11 (S.D. Ind. Oct. 28, 2015) (Pratt, J.) ("To avoid an abuse of process claim, [the counterclaim-defendants'] action had to be both procedurally and substantively proper.").   Numerous cases have recognized that filing a complaint containing baseless claims or false allegations (as specifically alleged here) is a substantively *improper* use of legal process.  *Id.* at *12 ("During the trial, the jury heard evidence that [the counterclaim-defendants'] action was substantively improper in filing baseless claims, thus satisfying the [second] element of an abuse of process claim."); *Assocs. Fin. Servs. Co. v. Bowman, Heintz, Boscia & Vician, P.C.*, No. IP 99-1725-C-M/S, 2001 U.S. Dist. LEXIS 7874, at *28–29 (S.D. Ind. 2001) (denying dismissal of abuse of process counterclaim that alleged the plaintiff "intentionally filed a complaint containing false allegations"); *I.A.E., Inc. v. Bishop*, 49 N.E.3d 138, 159 (Ind. Ct. App. 2015) (filing barred claims satisfies second element of

---

[5] LISNR does not contest the application of Indiana law to this claim, because it does not appear that applying a different body of substantive law would affect the outcome in this case.

abuse of process); *Exec. Builders, Inc. v. Trisler*, 741 N.E.2d 351, 359 (Ind. Ct. App. 2000) (upholding jury verdict in favor of abuse of process counterclaim where Plaintiff had filed complaint containing false allegations); *see also Estate of Mayer*, 998 N.E.2d at 257 (claims that were disposed of on motion to dismiss or motion for summary judgment could be substantively improper); *Waterfield v. Waterfield*, 61 N.E.3d 314, 329–30 (Ind. Ct. App. 2016) (evidence that the plaintiff's attorney did not conduct adequate pre-suit investigation before filing claims can satisfy second element of abuse of process).

Plaintiff relies on a single case holding that "'abuse of process was not intended to address allegations of a frivolous lawsuit.'" (*See* Dkt. 194 at 10 (quoting *DirecTV, LLC v. Spina*, No. 15-cv-00104-JMS-TAB, 2015 U.S. Dist. LEXIS 115376, at *12 (S.D. Ind. Aug. 11, 2015).) That single case is against the great weight of authority from Indiana state and federal court and is based on a clear misreading of precedent. *DirecTV* (which was not appealed to the 7th Circuit) relies upon the following quote from the Supreme Court of Indiana: "This standard contemplates something more on the part of an attorney filing suit than a questionable belief as to the merits of a case, or the failure to fully investigate all the facts prior to initiating suit." *Nat'l City Bank, Indiana v. Shortridge*, 689 N.E.2d 1248, 1253 (Ind. 1997). In *Shortridge*, the Supreme Court of Indiana was not stating that baseless or meritless litigation may not serve as a predicate for an abuse of process claim; it was stating that an attorney cannot be sued for abuse of process unless he or she was highly culpable (i.e. more than just negligent). This holding has no relevance to the present Motion, where LISNR has alleged knowing falsehoods by Plaintiff and his counsel, not the kind of simple negligence discussed in *Shortridge*.

Based on the great weight of authority, LISNR has plausibly alleged both elements of a cause of action for abuse of process. The Court should disregard Plaintiff's efforts to go outside

the pleadings, arguing the merits of the case (*see* Dkt. 194 at 9–10) in response to a 12(b)(6) motion to dismiss.  *Am. Family*, 2011 U.S. Dist. LEXIS 106596, at *5–6.  The only question is whether, taking the allegations in the Counterclaims as true, LISNR has plausibly pled the elements of abuse of process.  It has.

LISNR has alleged that Plaintiff and his agents filed a complaint that contained factual allegations they knew were false (Counterclaims (Dkt. 166) at ¶¶ 25, 26, 28, 29, 31), as well as baseless legal claims that relied on those false facts (*id.* at ¶¶ 35, 44–48).  These assertions are far from "conclusory," as LISNR has supported them with specific factual allegations (the vast majority of which came from specific documents and testimony produced in discovery):

- Plaintiff and his agents conducted an investigation of the Colts' App and LISNR's technology through which they came to understand that LISNR's technology "did not recognize, process, or record human voices" and that "all users of the App consented to the activation of the microphone."  (*Id.* at ¶¶ 10, 15, 16, 19.)

- Plaintiff and his agents also knew that, despite having reviewed the App's operation in detail, there was no basis for alleging facts critical to a claim of illegal wiretapping.  (*Id.* at ¶ 20, 21.)

- Plaintiff filed *multiple* complaints against LISNR alleging that the App records human oral communications and does not seek consent from users, and he has threatened, through counsel, to file more.  (*Id.* at ¶¶ 25, 29, 52.)

- In these complaints, Plaintiff and his counsel further falsely asserted that their investigation had confirmed that the App records human oral communications without user consent.  (*Id.* at ¶ 31.)

- Based on all of these false statements, they asserted two baseless claims for violation of the Wiretap Act.  (*Id.* at ¶¶ 25, 28.)

Plaintiff responds that, because this Court did not dismiss all of his claims on LISNR's 12(B)(6) Motion, they cannot be baseless.  (Dkt. 194 at 10–11.)  But denial of LISNR's Motion, as a matter of law, does not establish that those claims had (or have) a viable basis in fact and are substantively proper, especially where his claims are still subject to disposal on summary

14

judgment (or at trial).[6]  LISNR alleges that Plaintiff has abused legal process by including false statements in his complaints, which allowed his claims to withstand a motion to dismiss.  Thus, LISNR has adequately pled the second element of abuse of process.

LISNR has also adequately pleaded the first element of abuse of process—ulterior purpose or motive.  LISNR alleges that Plaintiff's purpose or motive in filing suit was to injure LISNR's reputation and business so as to extort LISNR into offering him a settlement "unrelated to the actual value of the purported wiretap claim."  (Counterclaims (Dkt. 166) at ¶¶ 35, 48.)  LISNR makes further factual allegations in support of this assertion: Plaintiff understood that the natural consequence of filing and pursuing baseless litigation was to injure LISNR's reputation and its business" (*id.* at ¶ 46), and he "intended the[se] natural consequences" (*id.* at ¶ 47).  *See also Boyle v. Anderson Fire Fighters Ass'n Local 1262*, 497 N.E.2d 1073, 1080 (Ind. Ct. App. 1986) ("The general rule of law is that when a tortfeasor voluntarily commits a wrongful act in reckless disregard of the natural and probable harm that is likely to follow, the law presumes that the tortfeasor intended the consequences proximately caused by the intentional act, and the tortfeasor may be held liable therefore.").

Finally, as with LISNR's spoliation counterclaim, this counterclaim is not rendered moot or improper simply because Plaintiff is now seeking to exit from this case.  (*See* Dkt. 194 at 2–3.)  Plaintiff seriously damaged LISNR by pursuing baseless litigation against it for more than a year.  Even if he wants to quit the litigation now, this does not absolve him of his wrongdoing or render LISNR's Counterclaims inviable.

---

[6] *See Estate of Mayer*, 998 N.E.2d at 257 (finding that two claims can be substantively improper where the court dismissed one and granted summary judgment on the other); *Waterfield v. Waterfield*, 61 N.E.3d 314, 329–30 (Ind. Ct. App. 2016) (finding that claims disposed of on summary judgment may be substantively improper).

Because LISNR has sufficiently pleaded both elements of its abuse of process counterclaim, the Court should deny Plaintiff's motion to dismiss this claim.

## III.    Count III for Declaratory Judgment Is Proper, Because it Serves the Useful Purpose of Avoiding Future Litigation Over the App.

Plaintiff argues that the Court should strike or dismiss LISNR's counterclaim for declaratory judgment, because it is a mirror image of Plaintiff's claims for violations of the Wiretap Act.  (Dkt. 194 at 4–5.)  Plaintiff again ignores applicable precedent and facts.

While a court *may*, in its discretion, choose not to entertain a claim for declaratory judgment where the claim would serve no useful purpose, it may also exercise discretion to adjudicate the claim.  *See Nucor Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 578–79 (7th Cir. 1993).  In *Dugan v. City of W. Chi.*, No. 08 C 2223, 2008 U.S. Dist. LEXIS 104549 (N.D. Ill. Dec. 29, 2008), the court applied this principle and denied a motion to dismiss a counterclaim for declaratory judgment.  *Id.* at *3–5.  The court found that the declaratory judgment counterclaim would serve a useful purpose, because "[t]he Counterclaim . . . seeks to establish a definitive finding of the City's obligations . . . ; a finding it wishes to use not only to defend [in the present litigation], but also to head off any future litigation." *Id.* at *4–5.[7]

This Court similarly should exercise its discretion to deny Plaintiff's Motion.  Even if the counterclaim were a mirror image of his claims, the counterclaim would serve a useful (and important) purpose here.  Plaintiff is wrong when he argues that "[r]esolution of the claims in the complaint will necessarily resolve the question on which LISNR seeks a declaratory judgment."

---

[7] Plaintiff relies upon *Tempco Electric Heater Corp. v. Omega Engineering, Inc.*, 819 F.2d 746 (7th Cir. 1986) to suggest that a party may only state a claim for declaratory judgment when one of two particular situations is present.  (Dkt. 194 at 4.)  While *Tempco* does lay out two categories of declaratory judgment claims, it never states that *all* declaratory judgment actions must fit within the narrow confines of these two categories.  *See Tempco*, 819 F.2d at 749.

(Dkt. 194 at 5.)  As explained in Defendants' Response in Opposition to Plaintiff's Motion for Leave to Amend Complaint and Scheduling Order, the Court should now dismiss Plaintiff's claims for lack of standing.  (Dkt. 185.)  Thus, at this point, his claims are unlikely to be resolved on the merits.

Plaintiff and his agent attorneys continue to claim that the App and LISNR's technology record human oral communications and violate the Wiretap Act.  Without the Declaratory Judgement counterclaim, these issues may simply go unresolved, depriving LISNR of the opportunity to restore its reputation.

More significant for LISNR, Plaintiff's counsel has specifically stated to LISNR and the Court that it intends to bring this same claim on behalf of another client that it solicited.  (Dkt. 176 at 1; Counterclaims (Dkt. 166) at ¶ 52.)  To avoid being held hostage by threats of future lawsuits, LISNR now seeks—as in *Dugan*—definitive findings on Plaintiff's legal theories so as "to head off any future litigation."  2008 U.S. Dist. LEXIS 104549 at *5.  Thus, as in *Dugan*, the declaratory judgment counterclaim serves a useful purpose, and Plaintiff's motion to dismiss should be denied.

## IV.   This Court Has Subject Matter Jurisdiction Over the Counterclaims.

The Court should deny Plaintiff's Rule 12(b)(1) motion, because the Court has diversity jurisdiction over all of LISNR's claims; has federal question jurisdiction over LISNR's declaratory judgment claim; and has supplemental jurisdiction over LISNR's spoliation and abuse of process claims.

### A.   The Court Has Diversity Jurisdiction Over All of LISNR's Counterclaims.

Plaintiff argues that the predicate requirements for the Court's exercise of diversity jurisdiction are not satisfied in this case.  Needless to say, Plaintiff is wrong.  While conceding

that "the parties are of diverse citizenship," he avers that the amount in controversy does not exceed $75,000.  (Dkt. 194 at 5.)  In advancing this argument, he does not actually contest any of the facts underlying LISNR's estimate of damages, such as the fact that LISNR had customer relationships with the Colts and the Cleveland Cavaliers, that the conduct of Plaintiff and his agents has caused LISNR to lose these relationships, and that LISNR has incurred needless legal fees and costs.  (Counterclaims (Dkt. 166) at ¶¶ 8, 36, 42.)  Instead, he argues that LISNR's relationship with the Colts was worth less than $75,000.  (Dkt. 194 at 5–6.)  Even if this were true—which LISNR does not concede—this does not show that the amount in controversy is less than $75,000.

Plaintiff completely ignores the other damages that LISNR pleads (i.e. attorneys' fees and costs, and the loss of LISNR's business relationship with the Cavs).  Thus, the Motion falls far short of showing to a "legal certainty" that the amount in controversy is less than $75,000, and the Court has diversity jurisdiction over all of LISNR's counterclaims.

**B.    Even if the Court Did Not Have Diversity Jurisdiction, it Has Supplemental Jurisdiction Over LISNR's State Law Counterclaims.**

It is uncontested that this Court may exercise federal question jurisdiction over Plaintiff's claims, because they arise under the Wiretap Act, a federal statue.  (*See* Dkt. 1 at ¶ 10; Counterclaims (Dkt. 166) at ¶ 3.)[8]   Under 28 U.S.C. § 1367(a), "[a] district court has supplemental jurisdiction over . . . state claims . . . so long as they derive from a common nucleus of operative fact with the original federal claims."  *Houskins v. Sheahan*, 549 F.3d 480,

---

[8] It is similarly uncontested that this Court would have original federal question jurisdiction over LISNR's counterclaim for declaratory judgment, which arises under the Declaratory Judgment Act, another federal statute, and seeks a declaration as to whether there can be liability under the Wiretap Act – a federal statute – on the facts of this case. (Counterclaims (Dkt. 166) at ¶ 3.)  Plaintiff argues only that the Court should not exercise supplemental jurisdiction over LISNR's state law counterclaims.  (Dkt. 194 at 6–8.)  Again, Plaintiff is wrong.

495 (7th Cir. 2008).  As the Seventh Circuit has held, "[a] loose factual connection is generally sufficient," to meet this test.  *Id.*  Applying this liberal standard, the court in *Heartland Rec. Vehicles, LLC v. Forest River, Inc.*, No. 3:11-CV-250-JD, 2012 U.S. Dist. LEXIS 130690 (N.D. Ind. Sept. 12, 2012) easily found that an abuse of process counterclaim based on the counterclaim-defendant's conduct in bringing a patent infringement claim "forms part of the same case or controversy as the infringement claim."  *Id.* at *4.  Thus, the Court had supplemental jurisdiction over the abuse of process counterclaim.  *Id.*

While Plaintiff cites cases where courts did not exercise supplemental jurisdiction over abuse of process claims, all of those cases are from outside the Seventh Circuit, and they applied the § 1367(a) standards of other Circuits.  Applying the Seventh Circuit's standard for supplemental jurisdiction to the facts of the present case, this Court clearly has supplemental jurisdiction over LISNR's state law claims for abuse of process and spoliation.  First, LISNR's abuse of process counterclaim shares a strong factual connection with Plaintiff's claims and with LISNR's counterclaim for declaratory judgment.  In its abuse of process counterclaim, LISNR alleges that Plaintiff and his agents investigated the App, learning that the App did not record human oral communications or violate the Wiretap Act, and then filed baseless claims that the App records human oral communications in violation of the Wiretap Act.

In deciding the abuse of process counterclaim, the factfinder will have to examine the App and whether it records human oral communications, and will have to decide if Mr. Plaintiff's claims are indeed baseless.  Thus, the abuse of process counterclaim involves the same core factual issues as Plaintiff's claims and LISNR's declaratory judgment counterclaim: (1) Does the App record human oral communications; and (2) does the App violate the Wiretap Act – a federal statute?

19

Similarly, LISNR's counterclaim for spoliation rests on these same core issues and conduct.  LISNR alleges that Plaintiff's deletion of the App from his phone impeded LISNR's ability to show that the App had not recorded Plaintiff's communications and, thus, impeded LISNR's ability to show that it had not violated the Wiretap Act relative to Plaintiff. (Counterclaims (Dkt. 166) at ¶¶ 40–42.)

In sum, both of LISNR's state law counterclaims are connected factually to the claims in this case over which the Court has federal question jurisdiction.  As such, the Court should exercise supplemental jurisdiction over these state law claims.

## CONCLUSION

There is no basis for this Court to conclude that the allegations of LISNR's Counterclaims are in any way insufficient, nor that it lacks jurisdiction over these claims. Accordingly, the Court should deny *in toto* Plaintiff's Motion to Strike or Dismiss Counterclaims.

Respectfully submitted,

  _/s/ Jesse Jenike-Godshalk_____
Thomas Feher (*pro hac vice*)
Thomas F. Zych (*pro hac vice*)
Thompson Hine LLP
3900 Key Center
127 Public Square
Cleveland, Ohio  44114
Phone: 216-566-5605
Fax: 216-566-5800
Tom.Feher@ThompsonHine.com
Tom.Zych@ThompsonHine.com

Jesse Jenike-Godshalk (*pro hac vice*)
Thompson Hine LLP
312 Walnut Street, Suite 1400
Cincinnati, Ohio 45202
Phone: 513-352-6702
Fax: 513-241-4771

Jesse.Godshalk@ThompsonHine.com

*Attorneys for Defendant/Counterclaim-Plaintiff LISNR, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on December 22, 2017, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Jesse Jenike-Godshalk*