*Corrected* **Exhibit 1**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| ALAN RACKEMANN | Case No. 1:17-cv-00624-TWP-MJD |
|        Plaintiff, | Judge Tanya Walton Pratt |
|     v. | Magistrate Mark J. Dinsmore |
| LISNR, INC. *et al.*, | |
|        Defendants, | |
| AND | |
| LISNR, INC., | |
|        Counterclaim-Plaintiff, | |
|     v. | |
| ALAN RACKEMANN, JEFFREY EVANS, and EDELSON P.C., | |
|        Counterclaim-Defendants. | |

**DEFENDANT LISNR, INC.'S SECOND AMENDED ANSWER AND**
**COUNTERCLAIMS**
**(FILED UNDER SEAL)**

Thomas Feher (*pro hac vice*)
Thomas F. Zych (*pro hac vice*)
Thompson Hine LLP
3900 Key Center
127 Public Square
Cleveland, Ohio  44114
Phone: 216-566-5605
Fax: 216-566-5800
Tom.Feher@ThompsonHine.com
Tom.Zych@ThompsonHine.com

Jesse Jenike-Godshalk (*pro hac vice*)
Thompson Hine LLP

1

312 Walnut Street, Suite 1400
Cincinnati, Ohio 45202
Phone: 513-352-6702
Fax: 513-241-4771
Jesse.Godshalk@ThompsonHine.com

*Attorneys for Defendant LISNR, Inc.*

Pursuant to Federal Rule of Civil Procedure 15(a)(1)(A), Defendant LISNR, Inc. ("LISNR") responds as follows to the Complaint (Dkt. 1) of Plaintiff Alan Rackemann ("Plaintiff").

## FIRST DEFENSE

As to Plaintiff's unnumbered introductory paragraph, LISNR denies the allegations in the first sentence, and LISNR lacks knowledge or information sufficient to form a belief about the truth of the allegations in the second sentence.

1.     LISNR admits that Defendant Indianapolis Colts, Inc. (the "Colts") are a sports organization and a member of the National Football League.  LISNR lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 1.

2.     Admitted.

3.     LISNR admits that, in 2016, it contracted with the Colts to supply its technology to be integrated into the Colts' mobile phone application ("the App").  LISNR further admits that the App with LISNR's technology allows the Colts to send consumers tailored content based on their locations within Lucas Oil Stadium.  LISNR denies that its technology is "beacon technology" and denies the remaining allegations in Paragraph 3.

4.     LISNR admits that, when the App detects one of LISNR's Smart Tones, the App may display a banner.  LISNR denies the remaining allegations in Paragraph 4.

5.     LISNR denies the allegations in Paragraph 5.

6.     LISNR admits that Plaintiff is a natural person.  LISNR lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 6.

7.      LISNR admits the allegations in the first sentence of Paragraph 7, and denies the remaining allegations in Paragraph 7.

8.      LISNR admits that Defendant Adept Mobile LLC ("Adept") is a limited liability company that does business in Massachusetts.  LISNR lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 8.

9.      LISNR denies that the Colts are a limited liability company.  LISNR lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 9.

10.     Paragraph 10 makes no factual allegations for LISNR to admit or deny.

11.     LISNR denies the allegations in Paragraph 11.

12.     LISNR admits that Adept conducts business in Massachusetts.  LISNR lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 12.

13.     LISNR lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 13.

14.     LISNR admits that Adept is a limited liability company that works on Android mobile phone applications in Massachusetts.  LISNR lacks knowledge or information sufficient to form a belief about the truth of whether Adept is headquartered in Massachusetts or is a Massachusetts LLC.  LISNR denies the remaining allegations in Paragraph 14.

15.     LISNR admits that the November 15, 2016 update of the Colts App included the LISNR SDK.  LISNR lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 15.

16.     LISNR admits that Adept has offices in Massachusetts.  LISNR denies the

remaining allegations in Paragraph 16.

17.     LISNR denies that it sells "beacon technology" and therefore denies the allegations in Paragraph 17.

18.     LISNR denies the allegations in Paragraph 18.

19.     Paragraph 19 states a hypothetical and does not contain any factual allegations that require a response.  To the extent that Paragraph 19 does contain any factual allegations, LISNR denies the allegations in Paragraph 19.

20.     LISNR denies the allegations in Paragraph 20.

21.     To the extent that any portion of Paragraph 21 relates to the factual issues relevant to this matter, LISNR denies the allegations of Paragraph 21.

22.     LISNR admits that its technology uses inaudible sounds emitted from speakers. LISNR denies that its technology is "beacon technology" and denies the remaining allegations in Paragraph 22.

23.     LISNR admits that the words in the block-quote appear on LISNR's website. Those words speak for themselves.  Except as expressly admitted, the allegations in Paragraph 23 are denied.

24.     LISNR denies the allegations in Paragraph 24.

25.     LISNR admits that the Indianapolis Colts offer their App for download in the Google Play Store.  LISNR lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 25, particularly since the website cited in footnotes 5 and 6 is no longer accessible.

26.     LISNR admits that the App asks for certain permissions, but denies that it programmed the App or that the permissions displayed in Figure 1 are the only permissions

sought from users.  LISNR lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 26.

27.     LISNR states that the images in Figure 1 speak for themselves.  LISNR denies all of the allegations in Paragraph 27 as incorrect extrapolations from the images in Figure 1.

28.     LISNR states that the App's Terms of Service Privacy Policy speaks for itself, and LISNR expressly denies Plaintiff's mischaracterization of the policy.  LISNR further denies all other allegations in Paragraph 28.

29.     LISNR admits that attorneys and staff at the Edelson law firm engaged in an investigation of the Colt's mobile application which actually confirmed that neither LISNR nor any other defendant "remotely eavesdrop[s] on consumers' lives," and denies all other allegations in Paragraph 29.

30.     LISNR denies the allegations in Paragraph 30.

31.     LISNR denies the allegations in Paragraph 31.

32.     LISNR denies the allegations in Paragraph 32.

33.     LISNR denies the allegations in Paragraph 33.

34.     LISNR lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 34.

35.     LISNR lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 35.

36.     LISNR denies the allegations in Paragraph 36.

37.     LISNR denies the allegations in Paragraph 37.

38.     Paragraph 38 does not contain any factual allegations that require a response. LISNR denies that the classes sought to be defined in the Complaint are appropriate for

certification and, to the extent that Paragraph 38 does contain any factual allegations, LISNR denies them.

39.     Paragraph 39 does not contain any factual allegations that require a response. LISNR denies that the classes sought to be defined in the Complaint are appropriate for certification and, to the extent that Paragraph 39 does contain any factual allegations, LISNR denies them.

40.     Paragraph 40 does not contain any factual allegations that require a response. LISNR denies that the classes sought to be defined in the Complaint are appropriate for certification and, to the extent that Paragraph 40 does contain any factual allegations, LISNR denies them.

41.     Paragraph 41 does not contain any factual allegations that require a response. LISNR denies that the classes sought to be defined in the Complaint are appropriate for certification and, to the extent that Paragraph 41 does contain any factual allegations, LISNR denies them.

42.     Paragraph 42 does not contain any factual allegations that require a response. LISNR denies that the classes sought to be defined in the Complaint are appropriate for certification and, to the extent that Paragraph 42 does contain any factual allegations, LISNR denies them.

43.     Paragraph 43 does not contain any factual allegations that require a response. LISNR denies that the classes sought to be defined in the Complaint are appropriate for certification and, to the extent that Paragraph 43 does contain any factual allegations, LISNR denies them.

44.     Paragraph 44 does not contain any factual allegations that require a response.

LISNR denies that the classes sought to be defined in the Complaint are appropriate for certification and, to the extent that Paragraph 44 does contain any factual allegations, LISNR denies them.

45. Paragraph 45 does not contain any factual allegations that require a response. To the extent that it does contain factual allegations, LISNR denies them.

46. LISNR repeats its responses to the allegations made in Paragraphs 1 through 45 as if fully rewritten here.

47. Paragraph 47 contains only legal conclusions and no factual allegations that require a response. To the extent that it contains factual allegations, LISNR denies them.

48. LISNR denies that its technology is "audio beacon technology" and therefore denies the allegations in Paragraph 48.

49. LISNR denies the allegations in Paragraph 49.

50. LISNR denies the allegations in Paragraph 50.

51. LISNR denies the allegations in Paragraph 51.

52. LISNR denies the allegations in Paragraph 52.

53. LISNR denies the allegations in Paragraph 53.

54. LISNR denies the allegations in Paragraph 54.

55. LISNR repeats its responses to the allegations made in Paragraphs 1 through 54 as if fully rewritten here.

56. Paragraph 56 contains only legal conclusions and no factual allegations that require a response. To the extent that it contains factual allegations, LISNR denies them.

57. LISNR denies the allegations in Paragraph 57.

58. LISNR denies the allegations in Paragraph 58.

59.     LISNR denies the allegations in Paragraph 59.

60.     LISNR denies the allegations in Paragraph 60.

61.     LISNR denies the allegations in Paragraph 61.

62.     LISNR denies the allegations in Paragraph 62.

63.     LISNR admits that it supplied Adept with LISNR's technology.  LISNR denies the remaining allegations in Paragraph 63.

64.     LISNR admits that Adept integrated LISNR's technology into the Colts' App, conducted testing and analysis of the App, and then issued the App to the Google Play Store. LISNR denies the remaining allegations in Paragraph 64.

65.     LISNR denies the allegations in Paragraph  65.

66.     LISNR admits that Plaintiff seeks the relief requested in Paragraph 66, but denies that Plaintiff is entitled to any such relief.

67.     LISNR denies that Plaintiff is entitled to the relief he seeks in his Prayer for Relief.

## SECOND DEFENSE

68.     The Complaint fails to state a claim against LISNR upon which relief can be granted.

## THIRD DEFENSE

69.     The Complaint is barred by the equitable doctrines of estoppel, laches, waiver, acquiescence, or unclean hands.

## FOURTH DEFENSE

70.     Plaintiff lacks standing to assert some or all of his claims.

## FIFTH DEFENSE

71.     LISNR is not liable to Plaintiff, in whole or in part, because the losses that Plaintiff allegedly suffered were not proximately caused by any act or omission of LISNR.

## SIXTH DEFENSE

72.     Plaintiff's alleged injuries and damages (if any) were due to, and proximately caused by, in whole or in part, other events, conditions, instrumentalities, and/or acts or omissions of an individual or entity over whom or which LISNR exercised no control.

## SEVENTH DEFENSE

73.     Plaintiff has failed to mitigate his damages, if in fact there are any.

## EIGHTH DEFENSE

74.     The purported class cannot be certified under Federal Rule of Civil Procedure 23 because the purported class, class representative, and/or class counsel fail to meet the typicality, commonality, adequacy, superiority, and predominance requirements for class actions.

## NINTH DEFENSE

75.     Plaintiff's purported class claims are barred because Plaintiff's definitions of the classes are vague, ambiguous, and overly broad.

## TENTH DEFENSE

76.     LISNR is entitled to a setoff against any damages awarded to Plaintiff for any and all payments made by any collateral source, including any funds paid in settlement on behalf of other Defendants and settling parties.

## ELEVENTH DEFENSE

77.     Any award of punitive damages against LISNR in this matter would violate LISNR's guarantees of due process, equal protection, and protection against excessive fines under the Fourteenth Amended to the United States Constitution.

## TWELFTH DEFENSE

78.     LISNR cannot be liable under the Electronic Communications Privacy Act, because it was a party to any communication that was allegedly intercepted or one of the parties to the communication gave prior consent to such interception.

## THIRTEENTH DEFENSE

79.     LISNR cannot be liable under the Electronic Communications Privacy Act, because Plaintiff gave prior consent to interception of his communications.

## FOURTEENTH DEFENSE

80.     LISNR reserves the right to supplement or modify the defenses asserted herein.

## FIFTEENTH DEFENSE

81.     Plaintiff's claims are barred, in whole or in part, by spoliation of evidence.

WHEREFORE, LISNR prays that:

A.     This Court grant judgment in its favor and against Plaintiff;

B.     Plaintiff take nothing on its claims;

C.     The Court award LISNR its costs and reasonable attorneys' fees in litigating this case, including those available pursuant to 28 U.S. Code § 1927; and

D.     The Court grant LISNR all other and further relief as available.

## COUNTERCLAIMS

Pursuant to Rules 13 and 15 of the Federal Rule of Civil Procedure and this Court's Order of January 2, 2018, LISNR states the following Counterclaims against Plaintiff and claims against new party defendants Jeff Evans and Edelson P.C. ("Edelson").

### Parties

1.      Plaintiff and new party defendant Jeff Evans are all natural persons and on information and belief are residents and citizens of the State of Indiana.

2.      Edelson is a professional corporation organized under the laws of the state of Illinois with its principal place of business in Chicago, Illinois.  On information and belief, the persons at Edelson whose actions are described below were employees or agents of Edelson at all times relevant to these Counterclaims and were acting at the direction of and within the scope of their employment or authority at all times relevant to these Counterclaims.

3.      LISNR is a corporation organized under the laws of the state of Delaware with its principal place of business at 920 Race Street, 4th Floor, Cincinnati, Ohio 45202.

### Jurisdiction and Venue

4.      This Court has subject matter jurisdiction over this civil action under 28 U.S.C. § 1331, because Plaintiff's alleged claims arise under the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 *et seq.* (the "Wiretap Act"), a federal statute, because the Court may exercise pendent, supplemental, or ancillary jurisdiction over LISNR's counterclaims, because LISNR is a citizen of a different state than each counterclaim-defendant and the amount in controversy exceeds $75,000, and because LISNR asserts a claim under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, another federal statute.

5.      This Court has personal jurisdiction over Plaintiff because Plaintiff is a citizen of Indiana and by virtue of Plaintiff's agreement to transfer this case to this Court (*see* Dkt. 45),

thereby submitting to this Court's jurisdiction.

6.      This Court has personal jurisdiction over Mr. Evans because, on information and belief, he is a citizen of Indiana and by virtue of his request to be substituted in as a plaintiff in this case (*see* Dkt. 176), thereby submitting to this Court's jurisdiction.

7.      This Court has personal jurisdiction over Edelson, because its attorneys have appeared before this Court in this case and their actions in investigating, promoting and litigating the present case are the basis for LISNR's claims against Edelson.

8.      Venue is proper in this Court because the Plaintiff and new party defendants reside in this District and because some of the acts forming the basis for these Counterclaims occurred in this District.

## Background Facts

9.      The Edelson law firm, according to its own materials, is a "Plaintiffs Class Action powerhouse," "known for securing multi-million dollar settlements against tech giants," and as "pioneers in the electronic privacy class action field, having litigated some of the largest consumer class actions in the country on this issue." In addition to attorneys, its staff includes "investigators" specializing in privacy issues, including employees with degrees in Computer Engineering and "Cyber Forensics and Security."

10.     The firm has a technology lab staffed by technicians who regularly dissect new products, including applications for smart phones ("mobile apps" or "apps"), to proactively identify potential defendants in class action lawsuits that it will seek to file. It did and does so without any client whose interest it has been retained to represent or protect; instead, the work is done to generate new lawsuits that will further its own business and profits. Once it has identified the target, it then advertises on social media and other places seeking to solicit and

entice individuals to agree to act as plaintiffs in claims it seeks to file.  When contacted by a potential plaintiff, the firm attempts to convince them that they have been victimized by the potential defendant's (or defendants') product or conduct, with the goal of enticing them to permit Edelson to file a lawsuit in his or her name.

11.     Consistent with this pattern and practice, in 2016 the Edelson firm began "investigating" the mobile applications for certain sports teams, including the Golden State Warriors ("Warriors").  They concluded that the Warriors were a viable target for a lawsuit claiming that its app "listened" to the conversations of app users.  They expanded their search to look for other businesses using what they believed was similar technology.  In that investigation, the Edelson firm identified and targeted LISNR, whose technology had been incorporated into mobile apps by several teams.

12.     On August 29, 2016 Edelson filed suit against Sonic Notify, Inc. d/b/a Signal360, Yinzcam, Inc. ("Yinzcam") and the Warriors in the U.S. District Court for the Northern District of California, case no. 4:16-cv-04961-JSW alleging that the Warriors' mobile application (the "Warriors' App) secretly eavesdropped on the users of the App.  Specifically, Edelson alleged two class action claims for violation of the Wiretap Act, one through "interception" and one through "use" of private oral conversations.

13.     Just as in the present suit, the Warriors lawsuit claimed that the defendants violated the Wiretap Act by "intercepting" digital data representing sounds that a user's microphone picked up when the app was active.   Edelson chose to assert these claims because they provided for an award of specific liquidated damages without the need to establish that any user had experienced actual loss.

14.     However, as the Edelson firm knew, the express terms of the Wiretap Act only

prohibit the interception of the "substance, purport, or meaning of human oral communications."

15.     On August 31, 2016, Edelson reviewed research on LISNR's customers, identifying LISNR's relationships with the Cleveland Cavaliers ("the Cavs") and the Indianapolis Colts ("the Colts") as potential opportunities for suits.

16.     As part of their efforts to develop claims against LISNR, Edelson reviewed LISNR's website.  Numerous parts of the website described LISNR's product.  All of them emphasized that LISNR's technology does not record any audio data and only processes inaudible tones, not human speech, including a section entitled "At LISNR, We Take Your Privacy Seriously," available at http://lisnr.com/blog/at-lisnr-we-take-your-privacy-seriously.   It states, in relevant part:

> Most sounds that we hear every day, like the sound of a human voice, simply aren't detectable by LISNR as they fall well below our high frequency range and are filtered out completely by our technology.
>
> We **Do Not Save or Record Any Audio** or Personal Data
>
> **We do not collect or share any personally identifiable information**, **nor does LISNR record any audio** on the device. We rely solely on the microphone to detect and decode our SmartTones. All audio received from the microphone is filtered to only include the high frequency, inaudible sound waves that comprise our SmartTones.

17.     Nevertheless, and in keeping with the Edelson business model, the firm looked to identify and entice one or more persons through whom it could create a claim.  On September 13, 2016, members of the Edelson team noted that "we've got to find someone" to act as a class plaintiff.

18.     No later than September 15, 2016, Felipe Sierra, a member of the Edelson staff with training in computer forensics, downloaded and analyzed the Colts' and Cavs' Apps. Edelson was thus able to understand much of what these apps did – and what they did not do.

By that time, they had determined that the Colts' App could turn on the microphones on users' mobile phones on certain dates and times, and also that App users agreed to allow it to "listen in the background."

---

### September 15th, 2016

2:58 PM   **fsierra**  Colts listen to the mic in the last 2 versions of the app. They activate it through the server as well.

No disclosures but they have the checkbox to accept "listen in Background"

19.     The review of the Colts' App also showed, consistent with the information set forth on the LISNR website, that the LISNR software did nothing more than run audio data through a "buffer," and did not contain any instructions to create an actual recording of any audible sounds picked up by the device microphone, including human voices or conversations. Edelson's investigation revealed nothing indicating that anyone from LISNR or the Colts could ever actually listen to the contents of a user's conversation.

20.     On September 15, 2016, two days after noting that they needed someone to act as a plaintiff, Edelson posted ads on Facebook suggesting that users of the Colts' App could be entitled to $10,000, and inviting users to contact them.

21.     A number of users responded, including Plaintiff (on September 16, 2016) and ███████ on September 19, 2016.  Edelson then asked the users to further contact them for the purpose of evaluating them as plaintiffs and convincing the users to agree to allow Edelson to file suit in their name.

22.     To entice these users to become plaintiffs, Edelson made false statements about how the LISNR technology works.  When communicating with at least one of the users ████

████████████████████████████████████████████████████████████████████████

 The purpose of these and other false communications to users was to make the users believe that their rights and privacy had been violated in order to convince them to allow Edelson to file suit in their name.

23.     When Plaintiff Alan Rackemann spoke with attorney Missaghi on September 17 or 18, 2016, Missaghi told Rackemann that the Colts' App listened in on his conversations, including his conversations with his family.

24.     The statements made to Rackemann and ████ (and possibly others) were materially false representations and/or failed to disclose other material facts within Edelson's knowledge, including the fact that the Colts' App processed no more than .04 seconds of audio, that it did not intercept or record conversations, and that there was no evidence that anyone from any defendant could ever hear anything that any user said while using the App.

25.     Based upon these false representations and material omissions, on or about September 18, 2016, Plaintiff entered into an agreement by which he agreed that the  attorneys at Edelson could file a lawsuit on his behalf involving alleged privacy issues with the Colts' App.

26.     Plaintiff appointed his attorneys at Edelson to act as his agents in all ways with regard to the potential claims, including the investigation of and assertion of the claims in a class action lawsuit, placing no limitations upon them whatsoever and ratifying all acts they had taken prior to their appointment.

27.     From mid-September 2016 onward, well over 100 other users of the App

responded to various Edelson solicitations, at least 100 of whom were specifically – and falsely – informed that the App was surreptitiously listening to or recording their conversations.

28.     In preparing their false claims, the persons at Edelson "investigating" the claims assumed that the Colts' App was designed by a developer named Yinzcam and assumed that the permissions (or lack of permissions) in the Yinzcam version of the Cavs' App were identical to those in the Colts' App.

29.     On September 22, 2016, the Edelson team reviewed a message that had been posted by LISNR's CEO on its website on September 13, 2016, which had been prompted by the lawsuit filed by Edelson regarding the Warriors' App, which did not involve LISNR.

1:27 PM    http://lisnr.com/blog/at-lisnr-we-take-your-privacy-seriously/



LISNR Blog

**At LISNR, We Take Your Privacy Seriously - LISNR Blog**

At LISNR, your privacy has always been important. Since our technology's birth, we've taken measures to ensure our customers' privacy and security. Following strict guidelines outlined by the Electronic Communications Privacy Act, we continue to be committed to providing our customers with the best experience possible. We encourage you to read the summaries below and ...

Sep 13th, 2016 at 9:04 AM

funny

felipe found that

they issued that after we filed

hah

30.     Plaintiff and Edelson understood that LISNR was concerned for its business

reputation and that LISNR was adamant that its technology did not recognize, process, or record human voices.  They also understood that LISNR's statements were true, noting on September 22, 2016 that the Colts' App did no more than turn on the user's microphone, that it only searched for inaudible tones, and that no data ever left the phone (i.e. no audio was delivered to LISNR):

> amir  "Most sounds that we hear every day, like the sound of a human voice, simply aren't detectable by LISNR as they fall well below our high frequency range and are filtered out completely by our technology."
>
> This is the processing part of it
>
> so just like Signal360
>
> It's still turningo n the mic though, and still routing the audio to LISNR
>
> (on the phone)
>
> they're just using the captured audio in a specific way

RACKEM

31.     As of September 22, the Edelson attorneys understood that the App did not "hear" human voices, specifically noting that the App was "not listening" or "not hearing":

|  |  | **September 22nd, 2016** |
|---|---|---|
| 1:44 PM | dore | so, it's hearing but not listening? |
| 1:44 PM | amir | it's listening but not hearing |

32.     Despite this understanding, on or about September 22, 2016, Edelson prepared the first draft of a complaint (the "Initial Complaint") against LISNR, Yinzcam, and the Colts.

33.     ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████

34.     On or about September 24, 2016, ████████ also entered into an agreement with Edelson to "investigate and potentially prosecute" a claim involving the Colts' App that incorporates LISNR's technology.

35.     On September 23, 2016, Edelson studied other LISNR clients for potential lawsuits, but rejected the potential for asserting claims involving other LISNR clients who did not have enough users to make pursuing the claims financially attractive.

36.     On or about October 4, 2016, well before filing its Initial Complaint against LISNR, several Edelson attorneys met with counsel representing the defendants in the Warriors case.  In both cases, Edelson alleged that the apps utilized "beacon technology" and that the beacon technology is what violated the Wiretap Act.

37.     In the October 4 meeting, counsel for the Warriors and Sonic 360 provided specific details of how the Warriors' App operated, which Edelson then understood to be identical to the functioning of the Colts' App.  They detailed many specifics to the Edelson attorneys, including the fact that the Warriors' App filters out all audible sounds and that it only uses snippets of audio data representing milliseconds of actual sound, meaning that the App could not intercept the import or content of any conversation.  In response, Edelson indicated that what it heard was consistent with what it already understood about how the beacon technology functioned.

38.     By October 6, 2016, Edelson had concluded that the App contained instructions for the device to temporarily hold data from the microphone in a buffer and then discard it, and

that the data held in the buffer represented no more that .04 of a second of audio data, a fact specifically noted in their "investigation."



39.     This information, *i.e.*, that the app captured only .04 seconds of  "audio" before discarding it, made clear to Edelson that the Colts' App simply did not record "the substance, purport, or meaning" of any user's communications.

40.     They also reviewed material demonstrating that users of the App were aware that the App was "listening in the background."



41.  ████████████████████████████████████████

████████████████████████████████████████████████████████████

42.     They also found that all users of the App consented to the activation of the microphone.

43.     The Edelson review failed to find evidence of facts critical to the claim of illegal wiretapping that Edelson was telling users was being perpetrated upon them, and found no evidence uncovered by anyone else to support such a claim.

44.     Specifically, there was no evidence of any code that would cause a user's phone or the App to make any recording of sound in any permanent memory.

45.     Edelson found no evidence that a user's phone or the App could or would decode any data representing sounds in the range of the human voice.

46.     Edelson found no evidence that the App caused the phone to send any conversation received from the microphone anywhere, including to LISNR or its customers.

47.     Edelson claimed (and claims) that the mere movement of audio data through a

temporary buffer by the Colts' App constituted "recording" and "interception" for purposes of liability under the Wiretap Act, which was baseless on its face.  All audio data generated by any cell phone's microphone is moved through a buffer.  Plaintiff and Edelson's allegation, if true, would mean that every cell phone manufacturer in the country would be guilty of violating the Wiretap Act every time any person in the United States used their phone to make or accept a call. There is and never was any good faith argument that the law supported or ever could support such a claim.

48.     On October 7, 2016, after meeting with counsel in the Warriors case, 



49.     At a time shortly before October 14, 2016, without having seen any evidence to support such allegations, Plaintiff authorized the filing of the Initial Complaint against LISNR which falsely asserted that LISNR's product violated federal law by illegally eavesdropping on and recording Plaintiff's conversations, as well as the conversations of all other users of the Colts' App, with the intent to force LISNR and the other defendants to pay a settlement to avoid continuing damage to their business.

50.     The Colts' App had been published for public use for several years prior to the

inclusion of the LISNR technology and had been updated a number of times since then.  No later than October 6, 2016, Edelson's forensic team understood that most versions of the App did not include LISNR's technology.   Notwithstanding this specific knowledge, before Plaintiff authorized the filing of this suit, Plaintiff and Edelson failed to confirm that the version of the App on Plaintiff's phone even contained LISNR's technology or whether the version on his phone was, instead, created prior to the addition of LISNR's technology.  In fact, Plaintiff never had the LISNR technology on his phone, a fact that Edelson did not disclose until more than a year after filing the Initial Complaint.

51.     On October 14, 2016, Plaintiff filed suit against LISNR, Yinzcam, and the Colts in the U.S. District Court for the Western District of Pennsylvania, case no. 2:16-cv-01573-AJS. In the Initial Complaint, Plaintiff and Edelson alleged two class action claims for violation of the Wiretap Act through interception and use of private oral conversations using the App.  The allegations of the Initial Complaint included numerous baseless and false statements about the LISNR technology, statements that were made with knowledge of their falsity, with a lack of reliable substantiation for them, or both.  The statements were (and are) objectively baseless and false and, as described above, were asserted for reasons other than to obtain the legitimate relief afforded by a resort to judicial process.

52.     Plaintiff and his agents at Edelson knew and intended that the Initial Complaint, which was a publicly available document, would draw wide media attention, including in publications that are regularly reviewed by LISNR's existing and potential customers.  Indeed, Edelson's founder describes its business model by saying: "Most plaintiffs firms are what we call, 'chase the news' firms. . . . We think of ourselves as a 'make the news' kind of firm."

53.     In the Initial Complaint, Plaintiff and Edelson alleged that the App, through the

LISNR technology, illegally intercepted users' conversations in violation of the Wiretap Act, despite knowing that these allegations were false.

54.     Plaintiff and Edelson further falsely alleged that the App recorded conversations and falsely alleged that the App did not solicit permissions for turning on the microphones on users' phones.

55.     In the Initial Complaint, Plaintiff and Edelson specifically referenced various parts of the LISNR website, but failed to disclose those portions that made clear that LISNR's technology does not hear human voices.

56.     In the Initial Complaint, Plaintiff and Edelson also falsely stated that they had conducted an investigation that confirmed their allegations.  They disclosed certain aspects of their findings, but failed to disclose that they knew the App only used (and then discarded) no more than .04 seconds of audio data, failed to disclose that they had not found evidence that the data was ever decoded or evidence of any voice analysis or transmission, and failed to disclose that they knew the App did not hear or listen to human speech.

57.     On November 3, 2016, following the filing of the Initial Complaint, LISNR sent a letter to Plaintiff (via Edelson), explaining:

> [T]he app does not record the contents of any oral communication.  It senses and temporarily processes a sound signal at a frequency range well above the frequency of human speech.  In other words, no oral communication is captured, meaning that there can be no violation of the Electronic Communication Privacy Act, the basis of your suit.  **** If you have performed that investigation and ***have facts to the contrary, please let us have them immediately***.

LISNR also "request[ed] that [Plaintiff] dismiss Lisnr immediately to avoid unnecessary cost, delay and multiplying the proceedings."

58.     Notwithstanding that they knew LISNR's statements were accurate, Plaintiff and Edelson opted to continue pursuing baseless litigation against LISNR.

59.     On November 18, 2016, in response to a Motion to Dismiss filed against the Complaint, Plaintiff and Edelson dismissed Plaintiff's case in the Western District of Pennsylvania.

60.     Also on November 18, 2016, Edelson and Plaintiff filed another complaint (Dkt. 1) (the "Current Complaint") against Defendants in the U.S. District Court for the District of Massachusetts, case no. 3:16-cv-12326-KAR, making all the same material allegations, but replacing Yinzcam with Adept Mobile LLC ("Adept"), the actual developer of the Colts' App.

61.     LISNR and the other Defendants moved to dismiss the Current Complaint. Plaintiff and Edelson opposed the Motion, relying on the false allegations (including the false allegation that the App "recorded conversations").  The Court dismissed Plaintiff's false claim of illegal "use" of intercepted data, but declined to dismiss the "interception" claim, based upon the false allegations made in the Current Complaint.

62.      In February 2017, the Colts opted to cease doing business with LISNR and removed LISNR's product from the Colts' App based upon the issues and publicity surrounding the baseless allegation that the App with LISNR's technology eavesdropped on users' conversations in violation of the Wiretap Act.

63.     Plaintiff and Edelson persisted in prolonging and extending the present proceedings despite being aware that Plaintiff's claims are baseless, and continued to do so until after they had concluded that Plaintiff never had a factual basis for claiming that he had used LISNR's technology.  They did so purposely and vexatiously, with the purpose of inflicting continuing cost and damage to business reputation on Defendants in order to extract a settlement that would bestow a windfall on Plaintiff and his agent attorneys at Edelson.

64.     On information and belief, Edelson again posted ads on Facebook seeking to

recruit additional plaintiffs to sue LISNR based on the Colts' App on or around March 22, 2017 and July 20, 2017.

65.     On July 28, 2017, 

66.     On September 19, 2017, Mr. Missaghi and Plaintiff's computer expert, Dr. Andrew C. Blaich, reviewed the LISNR source code, which demonstrated that LISNR's technology did not record any audio, that it did in fact filter out any audible sound, and that no one from any Defendant could hear or listen to any user's conversations.

67.     Nevertheless, on or around September 29, 2017, Edelson yet again posted a Facebook ad seeking to recruit additional plaintiffs to sue LISNR.

68.     That same day, 10 days after reviewing the LISNR source code,



69.    Also on September 29, 2017, █████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████

70.    Shortly thereafter (on or about October 2, 2017) and in reliance upon the various

false and misleading representations that Edelson had made, ████████ executed a retention

agreement with Edelson relating to the Colts' App.

71.    In October 2017, more than a year after Plaintiff agreed to sue LISNR for illegal

conduct, Edelson first asked an expert (here, Dr. Blaich) to examine a backup of Plaintiff's

phone to determine what version of the App was on it.  On or about October 21, 2017, Dr. Blaich

informed Mr. Missaghi that Plaintiff did not have the LISNR product.

72.    On November 1 and 2, 2017, long after examining LISNR's source code, ██████

█████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████



73.    At no point did the Edelson employees inform the users that Edelson had already

examined the source code and that the "allegations" were not true; nor did they disclose any of

the material facts in Edelson's knowledge and possession, including that the Colts' App filters

out audible sounds and never records anything in actual memory.

74.     On or about November 2, 2017, after also receiving similar misleading information, Defendant Evans executed a retention agreement with Edelson relating to the Colts' App.

75.     On November 3, 2017, Rafey Balabanian, Edelson's Managing Partner and General Counsel, held a conference with counsel for the Defendants in this litigation.  In it, he falsely stated that Plaintiff had "decided" that he no longer wished to continue as the class representative, and sought the Defendants' consent to "substitute" another user that Edelson had solicited as the class representative.  He indicated that, if there was no agreement on substitution, Edelson would file a new lawsuit on behalf of the "new class representative" (Defendant Evans).  This position was later confirmed in writing on November 6, 2017 and in subsequent filings with the court.

76.     In his sworn deposition testimony the following week, Plaintiff stated that he made no such decision and that, in fact, he had been "informed" by Mr. Missaghi that he could not continue in this litigation.

77.     

78.     On November 20, 2017, Plaintiff, through Edelson, first revealed to the Court and

to Defendants that "the version of the App on his phone [never] include[d] the [LISNR] technology at issue in this case." (Dkt. 177 at 1.) He had learned this fact from Dr. Blaich almost a month earlier.

79.     Plaintiff's disclosure was made as part of a request by Edelson for permission to amend their Complaint and thereby continue the baseless claims in the name of a new plaintiff despite having already confirmed that the App did not intercept or record human conversations. In the Motion, Edelson sought the Court's permission to permit Defendant Evans to replace Mr. Rackemann as Plaintiff and continue the litigation despite their knowledge that there is no factual basis for the allegations.

80.     Plaintiff's Proposed Amended Complaint includes the same false allegations and baseless claims found in his Initial Complaint and the Current Complaint, including the allegation that "Defendants listen to and record oral communications" through the App. (*See* Dkt. 177-2 at ¶ 50.)

81.     Further, despite all of the recent revelations in this case, Plaintiff, through Edelson, continues to this day to make false statements to users of the Colts' App regarding LISNR, LISNR's technology, and the App that includes LISNR's technology.

## COUNT I
(Spoliation of Evidence against Plaintiff and Edelson)

82.     LISNR incorporates by reference the allegations in the preceding paragraphs of these Counterclaims as if fully written here.

83.     On September 18, 2016, Plaintiff and Edelson knew that they were likely to sue LISNR related to the Colts' App, and they intended to do so.

84.     Notwithstanding that existing intent, and at Edelson's direction, Plaintiff intentionally deleted the Colts' App from the Samsung Galaxy S5 phone that he had used since

mid-2014, thereby rendering forensic review of the device to defend against his claims that it was recording his conversations substantially more difficult and potentially impossible.

85.     As installed on Plaintiff's device, the Colts' App included evidence of what "permissions" the App had requested from Plaintiff and evidence of whether Plaintiff agreed to each permission.  The installed App also could have demonstrated the falsity of any allegation that LISNR's product covertly recorded Plaintiff's conversations.

86.     Plaintiff willfully and intentionally deleted the Colts' App from his device, knowing that it would disrupt LISNR's ability to defend against the lawsuits that Plaintiff has filed, through Edelson, against LISNR.

87.     Edelson willfully and intentionally directed Plaintiff to delete the App from his device, knowing it would disrupt LISNR's ability to defend against the lawsuits that Plaintiff has filed, through Edelson, against LISNR.

88.     By deleting (and encouraging the deletion of) the App, Plaintiff and Edelson disrupted LISNR's ability to defend against the lawsuits that Plaintiff has filed, through Edelson, against LISNR and has caused LISNR damages, including but not limited to increased legal fees and costs, in an amount to be proven at trial.

## COUNT II
(Abuse of Process against Plaintiff and Edelson)

89.     LISNR incorporates by reference the allegations in the preceding paragraphs of these Counterclaims as if fully written here.

90.     Plaintiff and Edelson filed baseless claims in the Initial Complaint, for which there was no basis in fact or law and also at a time when they already had knowledge of facts demonstrating that the claims were false.

91.     Plaintiff and Edelson filed additional baseless litigation in the Current Complaint

and have continued to litigate these claims up to the present.  Edelson has threatened (and sought this Court's permission) to bring additional litigation on behalf of Defendant Evans asserting the same false claims.

92.    Plaintiff and Edelson understood that the natural consequence of filing and pursuing baseless litigation was to injure LISNR's reputation and its business.

93.    Plaintiff and Edelson intended the natural consequences of their actions in filing and pursuing baseless litigation.

94.    Plaintiff and Edelson had ulterior purposes and motives for filing and pursing the baseless litigations against LISNR: to injure LISNR's reputation and its business and thereby to reap financial benefit unrelated to the actual value of the purported Wiretap Act claim, benefits not legitimately available to them through resort to proper judicial process.  In addition, the motive for seeking permission to bring new litigation was to avoid awards of fees or sanctions for having brought the baseless claims initially.

95.    As a result of Plaintiff's and Edelson's actions, LISNR has been damaged in an amount to be proven at trial.

## COUNT III

(Declaratory Judgment Under 28 U.S.C. §§ 2201 *et seq.* against Plaintiff, Mr. Evans, and Edelson)

96.    LISNR incorporates by reference the allegations in the preceding paragraphs of these Counterclaims as if fully written here.

97.    There is an actual, justiciable controversy between LISNR, on the one hand, and Plaintiff, Mr. Evans, and Edelson, on the other hand, regarding whether the App operated in such a way as to violate the Wiretap Act.

98.    It was made clear during the course of discovery that Plaintiff did not have a

viable individual claim; in response, Edelson threatened to bring another lawsuit via another one of the 103 other individuals that they had recruited through their campaign of making false statements to users regarding the App's operation.

99.     Defendant Evans, ██████████, and ██████████ have entered into an agreement with Edelson for the purpose of prosecuting baseless claims against LISNR alleging violations of the Wiretap Act.

100.    On November 20, 2017, Plaintiff and Edelson moved this Court to substitute Plaintiff with Defendant Evans in asserting claims against LISNR for violation of the Wiretap Act.

101.    To avoid continual litigation over the App from multiple plaintiffs—including Plaintiff, Mr. Evans, ██████████, and ██████████—LISNR is entitled to a declaration that the App does not violate the Wiretap Act.

## COUNT IV
### (Malicious Prosecution against Plaintiff and Edelson)

102.    LISNR incorporates by reference the allegations in the preceding paragraphs of these Counterclaims as if fully written here.

103.    Plaintiff and Edelson filed the Initial Complaint, instituting a legal action against LISNR.

104.    Plaintiff and Edelson filed the Current Complaint, instituting a second legal action against LISNR.

105.    In filing both the Initial Complaint and the Current Complaint, Plaintiff and Edelson acted maliciously by including in the complaints statements that they knew were false and claims that they knew were baseless for the purpose of harming LISNR's business and reputation so as to extort an exorbitant settlement from LISNR.

33

106.    Plaintiff and Edelson had no probable cause to institute either the first action or the current action against LISNR, because they knew that their claims were baseless and invalid.

107.    Plaintiff, through Edelson, voluntarily dismissed his Initial Complaint after it was demonstrated that it included baseless claims.

108.    Plaintiff, through Edelson, has sought to withdraw from the present proceedings through his Motion for Leave to Amend Complaint and Scheduling Order and therein acknowledged that there was no basis for asserting the claims and acknowledged that the claims should be terminated on the merits because he never experienced the wrongs alleged in the Current Complaint.

109.    As a result of Plaintiff's and Edelson's actions, LISNR has been damaged in an amount to be proven at trial.

## COUNT V
(Violation of the Deceptive Trade Practices Act against Edelson)

110.    LISNR incorporates by reference the allegations in the preceding paragraphs of these Counterclaims as if fully written here.

111.    Edelson published to numerous users of the Colts' App, including Plaintiff, false, materially incomplete defamatory statements that disparaged LISNR and its  technology.

112.    In making the false and materially incomplete statements, Edelson acted with malice and in bad faith, publishing statements that it knew were false and that it intended would injure LISNR's business and reputation and thereby coerce a substantial but unwarranted financial settlement.

113.    By reason of Edelson's conduct, LISNR has suffered irreparable harm to its business, reputation and goodwill.  Unless Edelson is preliminarily and permanently restrained from its actions, LISNR will continue to be irreparably harmed.

114.     As a result of Edelson's actions, LISNR has suffered and will continue to suffer damages in an amount to be proved at trial, including incurring attorney fees of at least $400,000.00 in defending claims in the Initial and Current Complaints.

## COUNT VI
(Defamation against Edelson)

115.     LISNR incorporates by reference the allegations in the preceding paragraphs of these Counterclaims as if fully written here.

116.     Edelson has made false and materially incomplete statements of fact regarding LISNR, LISNR's technology, and the Colts' App that incorporates LISNR's technology.

117.     The false statements made by Edelson were defamatory per se, falsely asserting that LISNR was involved in criminal conduct (i.e. the violation of the Wiretap Act, a federal criminal statute) and falsely indicating that LISNR was involved in misconduct in its trade, business, or industry.

118.     Edelson published these false and defamatory statements to numerous users of the Colts' App, including Plaintiff, the result of which included Plaintiff agreeing to bring what are baseless claims against LISNR.

119.     Edelson acted with malice and in bad faith, publishing statements that it knew were false and that it intended would injure LISNR's business and reputation and thereby coerce a substantial but unwarranted financial settlement.

120.     As a result of Plaintiff's and Edelson's actions, LISNR has suffered and will continue to suffer damages in an amount to be proved at trial, but not less than $500,000.00.

**Prayer for Relief**

WHEREFORE, LISNR requests the following relief:

A.      An order awarding LISNR its actual damages in an amount to be proven at trial, but not less than $500,000.00;

B.      A declaration that the Colts' App does not violate the Electronic Communications Privacy Act;

C.      A preliminary and permanent injunction enjoining Edelson and Plaintiff from continuing to publish false and defamatory statements that disparage LISNR and its technology or bring actions asserting that LISNR's product operates to violate law or any user's private rights;

D.      An order awarding the maximum punitive damages available under federal and/or state law;

E.      An order awarding LISNR its reasonable costs and attorneys' fees in litigating the present case;

F.      An order awarding LISNR pre-judgment and post-judgment interest; and

G.      Any other additional relief to which LISNR may be entitled based upon the facts proven.

Respectfully submitted,

_/s/ Thomas Feher_____
Thomas Feher (*pro hac vice*)
Thomas F. Zych (*pro hac vice*)
Thompson Hine LLP
3900 Key Center
127 Public Square
Cleveland, Ohio  44114
Phone: 216-566-5605
Fax: 216-566-5800
Tom.Feher@ThompsonHine.com

36

Tom.Zych@ThompsonHine.com

Jesse Jenike-Godshalk (*pro hac vice*)
Thompson Hine LLP
312 Walnut Street, Suite 1400
Cincinnati, Ohio 45202
Phone: 513-352-6702
Fax: 513-241-4771
Jesse.Godshalk@ThompsonHine.com

*Attorneys for Defendant LISNR, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 10, 2018, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

_/s/ Thomas Feher_