# Exhibit 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| ALAN RACKEMANN,<br><br>                    Plaintiff,<br><br>          v.<br><br>LISNR, INC. *et al.*,<br><br>                    Defendants. | Case No. 1:17-cv-00624-TWP-MJD<br><br>Judge Tanya Walton Pratt<br><br>Magistrate Mark J. Dinsmore |

**DEFENDANTS' [PROPOSED] SUR-REPLY IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT AND SCHEDULING ORDER**

In his reply to Defendants' arguments for dismissal of this action, Plaintiff ignores his own expert's recent deposition testimony, mischaracterizes the Colts' recent rebuttal expert report, and ignores controlling Circuit precedent and other evidence his counsel recently produced. First, Plaintiff argues this Court should retain jurisdiction over this action for the sake of "efficiency." (Dkt. 213 at 1.) However, this is not a constitutionally recognized ground for exercising subject-matter jurisdiction. Plaintiff also argues that a delay of over a year to identify the fact that Plaintiff lacked damages or standing was reasonable, though his counsel was aware that most versions of the Colts App did not contain the LISNR software and was also aware of a simple way to determine if Plaintiff had it.

Finally, Plaintiff's argument that his proposed claim could survive summary judgment rests upon a blatant misstatement of the Colts' rebuttal expert's opinion. More significant, the testimony of Plaintiff's putative expert, taken after Defendants' Opposition was filed, confirms that there is absolutely no factual basis for Plaintiff's claim that the Colts App with LISNR software eavesdropped on any user in violation of the Wiretap Act.

It is undisputed that Plaintiff never had the LISNR version of the Colts App that forms the basis of his Complaint. Without it, he could not have suffered the injuries he alleges in his Complaint, he does not have standing, and the Court must deny substitution of another plaintiff and dismiss his action pursuant to Federal Rule of Civil Procedure 12(h)(3). By failing to verify the truthfulness of his allegations prior to filing the Complaint, Plaintiff and his counsel have subjected the Court and Defendants to more than a year of unnecessary litigation and should be sanctioned. Their failure is particularly pernicious in light of the factual record, which proves that any claim that the Colts App violated the Wiretap Act is false, and any amendment to assert it is futile.

I.  **The Court Must Dismiss for Lack of Subject Matter Jurisdiction**

Though Plaintiff refuses to admit (while not denying) that he "never suffered any injury and never had standing," (Dkt. 213 at 14), this conclusion is inescapable because Plaintiff *does* admit that he never downloaded the LISNR version of the Colts App. Plaintiff has declared under penalty of perjury that he "never downloaded the version of the Colts App that included Defendant LISNR's technology." (Dkt. 177-4 at ¶ 7.)[1] As correctly put in Plaintiff's opening brief: "his phone did not include the 'listening' technology at issue in this case." (Dkt. 177 at 1.) The factual record is thus undisputed that Plaintiff *never* downloaded the LISNR version of the Colts App. *A fortiori*, he lacked standing to file the Complaint, and Fed. R. Civ. P. 12(h)(3)

---

[1] This admission flows from records produced by Google establishing that Plaintiff had not downloaded a new version of the Colts App since 2015—more than six months prior to the release of the first LISNR version of the Colts App. (Dkt. 177-4 at ¶ 7 ("records from Google … confirmed that I never downloaded the [LISNR] version of the Colts App"); Dkt. 177-1 at ¶ 10 ("Google [records] … showed that Plaintiff's phone had last updated the Colts App at the end of 2015."); Dkt. 185 at 9 n.4, 17 (describing internal Edelson emails that identified July 23, 2016 release date for LISNR version of the Colts App).)

2

mandates dismissal of this action, pursuant to controlling 7th Circuit authority.  (*See* Dkt. 185 at 12-15.)

Although Judge Pratt accepted as true (as Rule 12(b)(6) requires) Plaintiff's *allegations* of injury in denying Defendants' motions to dismiss, those allegations have since been exposed as unfounded and untrue.  As the 7th Circuit has explained, it does "not matter whether the claim was known at the outset to be frivolous.  Until the judgment concluding a suit becomes final … the existence of jurisdiction over the suit can be challenged."  *Walters v. Edgar*, 163 F.3d 430, 433 (7th Cir. 1998).  Contrary to Plaintiff's contention, this is not a case where a plaintiff simply failed to prove injury on a claim of colorable merit.  (*See* Dkt. 213 at 7-8.)  There was never any merit to Plaintiff's claim that he was injured because he never had the LISNR version of the Colts App.  "[I]f a class representative lacks standing at the time the complaint is filed, the entire class action should be dismissed."  *Sherman ex. rel. Sherman v. Koch*, 623 F.3d 501, 506 (7th Cir. 2010).

Plaintiff argues that the Seventh Circuit's prohibition on substitution in this context is contrary to *Mullaney v. Anderson*, 342 U.S. 415 (1952).  But *Mullaney* was decided under very different facts than this action, which is why the Seventh Circuit has never suggested *Mullaney* commands a different result than reached in *Walters* and the other opinions that Defendants have cited.  (Dkt. 185 at 14.)

In *Mullaney*, the defendant did not question the standing of the plaintiff, a union, to bring suit on behalf of its members until after the case had been appealed to the Supreme Court.  342 U.S. at 416-17.  The union (which had received authorization from its members to bring the suit on their behalf) moved the Supreme Court to add the union members as plaintiffs pursuant to Federal Rule of Civil Procedure 21, so as to avoid any controversy regarding the union's

3

standing. *Id.* at 417. The Supreme Court granted the motion, explaining that it "merely puts the principal, the real party in interest, in the position of his avowed agent." *Id.* But here, Plaintiff is not Mr. Evans' agent; he has no legal relationship with Plaintiff. Indeed, Mr. Evans first responded to Edelson ads over a year after Plaintiff brought suit. He never authorized Plaintiff to bring this action on his behalf.

In this action, substitution would not merely replace an agent with the real party in interest, it would swap the current plaintiff for a completely unrelated party with a different phone and a different version of the Colts App. Similarly, the other cases cited by Plaintiff in his reply brief are inapposite or otherwise provide no basis for ignoring controlling 7th Circuit precedent prohibiting substitution when, as here, the plaintiff never had standing and no class had been certified.

## II. Plaintiff Lacks Good Cause to Amend

Plaintiff argues that neither he nor Edelson could have determined any sooner which version of the Colts App was on Plaintiff's phone, even if he had not deleted the Colts App.[2] (Dkt. 213 at 14-15.) But this attempt to blink away Plaintiff's spoliation of evidence (in which Edelson's complicity is not disputed) ignores evidence recently produced by Plaintiff that expressly refutes this argument.

First, before filing suit, the Edelson firm understood that the LISNR software had only first appeared a few months earlier, in "the last two versions of the App." (*See* Dkt. 185 at 5-6 (describing internal Edelson email produced as RACKEMANN_00362).)[3] They knew that

---

[2] Edelson's backup file was created after Plaintiff had already deleted the Colts App. (Dkt. 177-1 at ¶¶ 2-3 (acknowledging that Edelson created the backup file after May 31, 2017).)

[3] As to Plaintiff's new argument that he and Edelson could not have known which version of the App was on his phone, this Court should also note that in touting its credentials as class counsel, Edelson boasts that its staff

4

anyone that had an older version could not have been injured and lacked standing.  Yet they did not bother checking which version Plaintiff was using, despite the fact that their documents demonstrate that they knew how to do so, easily.

A year after filing suit for Plaintiff, Edelson was soliciting other users to act as a class representative. ██████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████
██████████████████[5] ██████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
██████████[5]

Presumably, Edelson confirmed that Mr. Evans had the LISNR version of the Colts App in this manner before attempting to substitute him for Mr. Rackemann, just as they could have for Mr. Rackemann before filing this suit.

Alternatively, a user may also quickly determine the version of the Colts App on his or her phone simply by accessing the applications manager within the settings menu of the Android OS.  This feature is available on every Android phone.  The failure to utilize either of these easy

---

includes several non-lawyer technicians who "investigate" their claims, including the person who "investigated" Plaintiff's claim.  Both he and the team leader are trained in "network and computer forensics." (*See, e.g.*, Declaration of Kevin Kelly ("Kelly Dec."), ¶ X & Ex. A (Edelson firm resume) at 18-19.)

[4] "AppDetective" has been on the market since at least January 27, 2013.  *App Detective - Android App on AppBrain* (last visited Jan. 12, 2018), http://www.appbrain.com/app/app-detective/com.zmarties.detective.

[5] (*See, e.g.*, Kelly Dec., ¶ X & Ex. C (RACKEMANN_001684) ████████████████
████████████████████████████████████)

5

steps—and instead to delete the App from his phone—demonstrates that Plaintiff was not diligent and therefore lacks good cause.

### III. Amendment Would Be Futile

Defendants also opposed the proposed amendment because seven months of discovery has left no doubt that there was no violation of the Wiretap Act, and that the proposed amendment is therefore futile. In their Opposition, Defendants pointed out that even the report of Plaintiff's own expert (Dr. Andrew Blaich) does not support Plaintiff's eavesdropping claims.[6]

Plaintiff's reply brief attempts to obscure this record by resorting to incomplete excerpts and mischaracterizations of the Blaich report, as well as of the Colts' recently-served rebuttal expert report of Christopher Rucinski. But Plaintiff's discussion of the Rucinski report bears no resemblance to the report itself, which is attached to Plaintiff's reply (*see* Dkt. 215-3).

For example, Plaintiff asserts that Rucinski ███████████████████████████████ ██████████████████████████" (Dkt. 213 at 12 (emphasis added)),[7] but what Rucinski actually opined was that ████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████

---

[6] The Blaich report, which Plaintiff attached to his brief (Dkt. 215-2), addressed the merits of his claims, and Plaintiff did not disclose any further "liability" experts by the December 15, 2017 deadline. (Dkt. 94 at § III.F.)

[7] Plaintiff sprinkles the word "capture"—in brackets and otherwise—throughout his brief to mischaracterize Mr. Rucinski's report. (*E.g.*, Dkt. 213 at 12 n.10.) Mr. Rucinski never invokes that word or concept in his report. Plaintiff's motivation is obvious, as this Court also used this word in its motion to dismiss opinion. Plaintiff's accusation of "wordplay" thus best describes his own brief. (*Id.*)

6



(Dkt. 215-3 at ¶ 9.)

Rucinski further opined that ███

███ (Dkt. 215-3 at ¶¶ 9, 25.) In short, the Rucinski report unequivocally confirms what Defendants have asserted from the beginning: the Colts App did not acquire the content of human oral communications in violation of the Wiretap Act.

Moreover, since Defendants' Opposition was filed, Plaintiff's putative expert (Dr. Blaich) gave his sworn deposition testimony. His testimony has eliminated any doubt about the Plaintiff's inability to make out a violation of the Wiretap Act. In his deposition, Blaich testified that:



---

[8] (Kelly Dec., ¶ X & Ex. D (Deposition of Dr. Andrew Blaich) 90:9-12.)



---

[9] (*Id.* at 69:24–70:10.)

[10] (*Id.* at 71:3-10.)

[11] (*Id.* at 122:14–123:5.)

8



Simply put, Dr. Blaich confirms that the App did not eavesdrop on any users' conversations, or "record" them in any sense of the word that could constitute a violation of the Wiretap Act.

A new complaint making a claim to the contrary would be futile.[14]

                              Respectfully submitted,

                              /s/ *Kevin Kelly*
                              Eric C. Bosset (*pro hac vice*)
                              Kevin Kelly (*pro hac vice)*
                              COVINGTON & BURLING LLP
                              One City Center
                              850 Tenth Street, NW
                              Washington, DC 20001-4956
                              Tel: 202-662-5606
                              Fax: 202-778-5606
                              Email: ebosset@cov.com
                                         kkelly@cov.com

                              Thomas A. Barnard
                              TAFT STETTINIUS & HOLLISTER LLP
                              One Indiana Square
                              Suite 3500

---

[12] (*Id*. at 98:3-7.) Indeed, Dr. Blaich testified that he had reviewed Mr. Rucinski's report and did not find any inaccuracies. (*Id.* at 96:20–97:1.)

[13] (*Id.* at 89:9-16.)

[14] Defendants rest on their prior brief for seeking an award of sanctions against Plaintiff.

Indianapolis, IN 46204
Tel: 317-713-3500
Fax: 317-713-3699
Email: tbarnard@taftlaw.com

*Attorneys for Defendant Indianapolis Colts, Inc.*

/s/ *Thomas Feher*
Thomas Feher (*pro hac vice*)
Thomas F. Zych (*pro hac vice*)
Thompson Hine LLP
3900 Key Center
127 Public Square
Cleveland, Ohio 44114
Phone: 216-566-5605
Fax: 216-566-5800
Tom.Feher@ThompsonHine.com
Tom.Zych@ThompsonHine.com

Jesse Jenike-Godshalk (*pro hac vice*)
Thompson Hine LLP
312 Walnut Street, Suite 1400
Cincinnati, Ohio 45202
Phone: 513-352-6702
Fax: 513-241-4771
Jesse.Godshalk@ThompsonHine.com

*Attorneys for Defendant LISNR, Inc.*


/s/ *John F. McCauley*
David O. Tittle, No. 857-49
John F. McCauley, No. 20715-12
BINGHAM GREENEBAUM DOLL LLP
2700 Market Tower
10 West Market Street
Indianapolis, IN 46204
Telephone: (317) 968-5418
Facsimile: (317) 236-9907
mdtittle@bgdlegal.com
mjmccauley@bgdlegal.com

*Attorneys for Defendant Adept Mobile, LLC*

10