**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| ALAN RACKEMANN, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| v. | Case No. 1:17-cv-00624-TWP-MJD |
| LISNR, INC., a Delaware Corporation, ADEPT MOBILE, LLC, a Massachusetts Limited Liability Company, and INDIANAPOLIS COLTS, INC., an Indiana Corporation | Hon. Tanya Walton Pratt  Magistrate Mark J. Dinsmore |
| Defendants. | |

**COUNTERDEFENDANTS' MEMORANDUM
<u>IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS</u>**

## TABLE OF CONTENTS

I.    **Introduction** ..................................................................................................1

II.    **Factual Background** ......................................................................................4

III.    **Argument** .....................................................................................................6

       A.    **Standard of Review** ..........................................................................6

       B.    **Choice of Law** ..................................................................................6

       C.    **Relief is barred by the *Noerr-Pennington* doctrine** ....................8

       D.    **There is no claim for first-party spoliation under Indiana law** ..................................................................................12

       E.    **Lisnr identifies no process that has been abused** .........................13

       F.    **Lisnr's request for a declaration should be dismissed as redundant** ...................................................................................14

       G.    **Lisnr's malicious-prosecution claim must be dismissed because it does not plausibly allege either malice nor favorable termination** ......................................................................16

       H.    **No applicable Deceptive Trade Practices Act applies to the alleged conduct** ...........................................................................18

       I.    **Lisnr's claims for defamation had multiple dispositive flaws** ........19

V.    **Conclusion** ...................................................................................................2

I.      **Introduction**

Does the Wiretap Act apply to software that surreptitiously and without prior consent activates the microphone on an individual's cell phone and collects all audio within range of the microphone, even if that audio is thereafter filtered for specific sounds and audio that doesn't fit specified criteria discarded? That interesting question is the subject of the underlying litigation here. Alan Rackemann, Jeff Evans, and their attorneys at Edelson PC ("Edelson") believe the answer is yes. LISNR, Inc. (a company whose name is a modified spelling of "listener") desperately wants the answer to be no.

After its position did not prevail on a motion to dismiss, LISNR, Inc. ("Lisnr") opted to countersue. The resulting countercomplaint represents a preposterous and poorly considered attempt to poison the waters surrounding the claims in this lawsuit. Feigning outrage at run-of-the-mill efforts to investigate claims and retain clients, Lisnr lobs a farrago of counterclaims in a transparent attempt to avoid any semblance of normal litigation. But the federal rules provide an orderly method for vetting the factual and legal basis for a claim—Rules 26 through 37 set forth the procedures governing discovery, and Rule 56 sets forth the process for determining whether adequately pleaded claims stand or fall as a matter of law. And although one wouldn't know it simply by reading Lisnr's countercomplaint, the federal rules even provide ways to deal with frivolous or malicious pleadings, bad faith litigation tactics, and recalcitrant litigants. But Lisnr thinks it is smarter and more clever than the judges who drafted the federal rules. Matters such as the factual or legal basis for claims don't need to be vetted through discovery. Instead, more litigation is apparently the appropriate response to an adverse decision at the pleadings stage.

Lisnr's strategy is abusive and inefficient, and its counterclaims are substantively meritless.[1] Indeed, there are critical, dispositive flaws in each of the claims. In the first place, given that all of the activity Lisnr complains about relates to legitimate litigation, the *Noerr-Pennington* doctrine bars each and every counterclaim alleged by Lisnr. That doctrine gives effect to the First Amendment right to petition the government (including the courts) by immunizing from liability statements or conduct related to litigation. An exception exists for "sham" litigation, but that doesn't apply when, as here, a litigant seeks to succeed on his lawsuit.

And the counterclaims are defective in their own rights, as well. Lisnr's claim for spoliation goes nowhere because there is no claim for first-party spoliation under Indiana law. A previous filing makes plain Lisnr's belief that the law of Ohio would apply here, but that suggestion is not well-taken: The claims at issue here all accrued due to events occurring in Indiana, which is the state with the closest connection to the action. Given that Indiana law provides no cause of action for spoliation that might apply here, the claim must be dismissed.

Lisnr's claim for abuse of process is defective because it identifies no process that has been abused. The amended countercomplaint contains no plausible allegation that the suit was instituted for an improper purpose. Defendant's weeping and gnashing of teeth notwithstanding, a procedurally and substantively valid lawsuit falls outside the scope of the abuse-of-process tort.

Lisnr's request for a declaration is redundant. Courts have not hesitated to dismiss redundant counterclaims for declaratory relief, and the Court should follow the same path here.

Lisnr's malicious-prosecution claim must fail because one element of the claim is that the maliciously prosecuted suit terminate on the merits in favor of Lisnr, something that hasn't happened. A successful malicious-prosecution claim also requires a showing of malice, but Lisnr

---

[1]     Notably, neither of the other two defendants chose to join Lisnr's countercomplaint, including the Indianapolis Colts, the sole defendant with real name recognition.

comes up short. Its theory of malice is driven entirely by its disagreement about the applicability of the Wiretap Act. But the parties contest that question of statutory interpretation in good faith.

Lisnr's claim under "the" Deceptive Trade Practices Act fails for several reasons. First, "the" Deceptive Trade Practices Act does not appear to be a creature of Indiana law. The language of the counterclaim appears to mirror an Ohio law, Ohio Rev. Stat. § 4165.02(A)(10), but the counterclaim discloses no reason why an Ohio statute would apply here. The Ohio Deceptive Trade Practices Act doesn't apply to acts that occur beyond Ohio's borders, which ends this matter. A similar Illinois law conceivably could apply, but none of the alleged statements in the complaint qualify as disparaging under Illinois law.

Finally, the claim for defamation fails because statements within or preliminary to a judicial proceeding are protected by an absolute privilege. What's more, many of the allegedly defamatory statements say nothing about Lisnr. This is particularly problematic for Lisnr's claim of defamation *per se*, because an allegation that relies on extrinsic circumstances to establish a statement's defamatory nature simply cannot be defamatory per se. The only alleged statement that could conceivably constitute defamation per se is an email in which an Edelson PC employee shared a draft complaint with a potential plaintiff. But Lisnr doesn't separately allege that the filing of the complaint is defamatory. In other words, the theory makes no sense. Left to argue that they have suffered damages, Lisnr can point only to the attorneys' fees it will incur in this case and any lost income from the fact that the Indianapolis Colts no longer work with Lisnr. But Lisnr doesn't, and can't, plausibly allege that these losses resulted from the alleged defamation rather than the act of filing suit itself. Thus, Lisnr fails to allege plausibly that it was harmed by the defamation, providing further reason for the claim's dismissal.

The counterclaim is utterly frivolous and should be dismissed in its entirety.

II.     **Factual Background**

Edelson PC is a consumer-protection law firm that specializes in litigating privacy

claims, like claims that might arise when a smartphone's microphone is turned on without the

user's consent. (Counterclaim ¶ 9.) Edelson attorneys, like Amir Missaghi, regularly

investigate how devices and other technologies work in an effort to explore ways in which

companies protect or violate user privacy. (Counterclaim ¶¶ 10-11.) Like any consumer-

protection firm (or even any consumer-interest group), Edelson regularly advertises its ongoing

investigations, and allows interested individuals to contact them. (Counterclaim ¶¶ 17, 20-

21.) When warranted, Edelson even represents these individuals in suits against companies that

act in ways that are invasive of consumer privacy. *See generally Rackemann v. LISNR, Inc., et*

*al.,* No. 17-cv-00624-TWP-MJD (S.D. Ind.).

And that is all that happened in this case. An Edelson investigation revealed that several

smartphone applications, like the Colts App ("App") at issue in this case, used technology that

turned on the microphone on a user's phone. (Counterclaim ¶¶ 12-13, 16, 18-19.) Just as it

does during a phone call, the microphone collects audio from around the phone. Thus, by turning

on the phone's microphone, the Colts App, using the Lisnr technology, will record any sound

within the microphone's range.

It is not possible for a smartphone app to control the content or frequency of the audio the

microphone collects. Thus, the App indiscriminately and continuously collects all audio that can

be picked up by the phone's microphone. As such, although the Lisnr technology utilizes beacon

technology, which uses high-frequency sounds that are not audible to the human ear, the Colts

App must continuously analyze the audio it does collect. As Lisnr's counterclaim is at pains

to point out, this audio is analyzed in small chunks, perhaps as small as 0.04 seconds.

4

(Countercomplaint ¶ 24.) But this figure is a red herring: the App is continuously collecting audio. That it is broken down into small chunks for analysis doesn't make the App's functionality all that different from the human brain, which appears to process audio similarly. *See* Hao Tam Ho, et al., *Auditory Sensitivity & Decision Criteria Oscillate at Different Frequencies Separately for the Two Ears*, 27 Current Biology 3642 (2017) (publishing findings that the brain processes auditory information essentially in rhythmic chunks that oscillate between the two ears).

Alan Rackemann and Jeff Evans contend that the act of collecting the audio, however it is analyzed and whatever is ultimately done with it, brings the Colts App within the ambit of the Wiretap Act. Edelson PC, their attorneys, believe that there is a good faith basis for that contention, and that it is not foreclosed by existing law. (See Dkt. 1, ¶¶ 29-33; dkt. 61, at 13-17; Countercomplaint ¶¶ 37, 48.) (A belief, it bears noting, that has been tentatively vindicated by the Court. Dkt. 129.) The complaint names as defendants each entity involved with the development of the Colts App and its constituent technology, including Lisnr.

Based on its countercomplaint, Lisnr appears to believe that because audio is analyzed only in very small chunks, and that (at least for now) audio that does not trigger the App's functionality is discarded, the Wiretap Act does not apply.[2] (This is made clearest in paragraphs 14 and 57 of the amended countercomplaint, which purport to "allege" a fatal inconsistency between the allegations in the underlying lawsuit and the Wiretap Act.) Plaintiffs and their

---

[2]    In scattered paragraphs, Lisnr appears to suggest that its frustration is not about the functioning of the App but about Rackemann's unfitness to represent a class to litigate that theory. (Countercomplaint ¶¶ 50, 63, 78.) A holistic review of the countercomplaint, including, importantly, the request for a declaratory judgment, makes clear that when Lisnr refers to "baseless" or "false" allegations, it is simply expressing disagreement with Edelson's theory regarding the ECPA. (Countercomplaint ¶¶ 16, 18-19, 30-31, 39, 41, 43-48, 51, 53-56, 58, 61-62, 73, 77, 80-81.)

attorneys are perfectly happy to litigate that contention in the normal course. Lisnr, however, appears unhappy with the normal course. Lisnr, unlike the other defendants to this lawsuit, has countersued, alleging that because Edelson's pre-suit investigation revealed the facts that Lisnr, but not Edelson, believes defeat the claim, and thus that the entire lawsuit must itself be the basis for a second lawsuit. Alleging six different claims for relief, Lisnr takes a run-of-the-mill disagreement about the scope of the Wiretap Act—a subject that would ordinarily be vetted through garden-variety motions practice—and seeks hundreds of thousands of dollars in unwarranted relief from Plaintiffs and their attorneys.

## III.    Argument

### A.    Standard of Review

Fortunately, the Court need not address at this stage the parties disagreement over the meaning of the Wiretap Act and the way in which the Lisnr technology interacts with the statute, because Lisnr's counterclaims are subject to dismissal on several independent grounds. Under Fed. R. Civ. P. 12(b)(6) a claim should be dismissed if the plaintiff fails to "allege enough facts to state a claim to relief that is plausible on its face." *Forgue v. City of Chicago*, 873 F.3d 962, 966 (7th Cir. 2017). And "when a plaintiff's complaint … sets out all of the elements of an affirmative defense, dismissal under Rule 12(b)(6) is appropriate." *Ind. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012).

### B.    Choice of Law

As a preliminary matter, Lisnr's opposition to the now-mooted motion to dismiss its previous countercomplaint asserted that Ohio law applies to each of its claims for relief. (Dkt. 207, at 9-10.) That is incorrect: Indiana law applies to the countercomplaint in its entirety.

As a federal court sitting in diversity, this Court applies the choice-of-law rules of Indiana, the forum state. *See Armstrong v. Deere & Co.*, No. 1:16-cv-00844-TWP-MPB, 2017 WL 4168485, at *3 (S.D. Ind. Sept. 20, 2017). Indiana courts presumptively apply "the substantive laws of 'the state where the last event necessary to make an actor liable for the alleged wrongs takes place.'" *Simon v. United States*, 805 N.E.2d 798, 805 (Ind. 2004) (quoting *Hubbard Mfg. Co., Inc. v. Greeson*, 515 N.E.2d 1071, 1073 (Ind. 1987)). But this is a rebuttable presumption, and can be set aside if "the place of the tort 'bears little connection' to the legal action." *Id.* at 806 (quoting *Hubbard*, 515 N.E.2d at 1074). If the place of the tort "is insignificant to [the] action," Indiana courts will "apply the law of the state with the most significant relationship to the case." *Id.*

Lisnr previously contended that because it suffered loss at its headquarters in Cincinnati, the *lex loci* analysis presumptively selected the law of Ohio. But courts applying the *lex loci* rule to malicious-prosecution claims generally conclude that the state in which the lawsuit terminated on the merits in favor of the plaintiff governs any claim for malicious prosecution. *See Ex parte U.S. Bank N.A.*, 148 So. 3d 1060, 1070 (Ala. 2014). This lawsuit, of course, hasn't yet terminated (which is reason enough to dismiss the claim), but when it does, it will terminate in Indiana. Likewise, an abuse of process claim accrues when the allegedly abusive process is initiated. *Yoost v. Zalcberg*, 925 N.E.2d 763, 771 (Ind. Ct. App. 2010). Here, that occurred either in Massachusetts or Indiana, not Ohio. Further, the place of the wrong in a defamation case is the place where the statement was communicated. *See Hoffman v. Roberto*, 578 N.E.2d 701, 705 (Ind. Ct. App. 1991). Lisnr does not allege where any individual received the allegedly defamatory communication, but Rackemann and Evans, the only individuals whose citizenship is

even identified, are both residents of Indiana. Presumptively, then, Indiana law applies to the defamation claim.

It is not necessary to run this analysis to the ground, however, because it is clear that the relationship between Ohio, or any state other than Indiana, is "insignificant," so any presumption in favor of a state other than Indiana would be rebutted. The analysis in *Simon* is instructive. There, negligent conduct that occurred in Indiana and the District of Columbia caused harm in Kentucky. 805 N.E.2d at 806-07. Kentucky's only relationship to the lawsuit was that it was the place of injury, and so the Indiana Supreme Court concluded that Kentucky law should not apply. *Id.* at 806. Concluding that Indiana law should apply, the court reasoned that "the most important relevant factor is where the conduct causing the injury occurred because an individual's actions and the recovery available to others as a result of those actions should be governed by the law of the state in which he acts." *Id.* at 806-07. The court noted that "this preference for the conduct-regulating law of the conduct state is virtually absolute." *Id.* at 807 n.12 (quotation omitted).

Here, all of Lisnr's counterclaims arise out of events related to a lawsuit filed in Indiana, by Indiana plaintiffs, and which Lisnr affirmatively sought to litigate in Indiana. (Dkt. 34.) In other words, "the conduct causing the injury" occurred in Indiana, and following the "virtually absolute" preference for applying the "law of the conduct state," Indiana law should apply. *See also Hoffman*, 578 N.E.2d at 705 (concluding that Michigan law should apply to defamation claim arising out of judicial proceedings in Michigan because Michigan bore closest connection to claim regarding statements that were communicated across state lines).[3]

C.   **Relief is barred by the *Noerr-Pennington* doctrine.**

---

[3]   The only other potential "conduct state" is Illinois, but Illinois also has little connection to the lawsuit.

This court need not inquire into the merits of Lisnr's counterclaims at all because relief is barred *in toto* by the *Noerr-Pennington* doctrine. The *Noerr-Pennington* doctrine gives meaning to the First Amendment's right to petition the government by immunizing from liability "speech and other efforts to influence governmental activity." *Tri-Corp Housing Inc. v. Bauman*, 826 F.3d 446, 450 (7th Cir. 2016). Although the doctrine originated in the antitrust context, it is now understood to apply to all types of petitioning activity, including the bringing of lawsuits. *Toyo Tire & Rubber Co., Ltd. v. Atturo Tire Corp.*, No. 14 C 206, 2017 WL 1178224, at *4 (N.D. Ill. Mar. 30, 2017). The doctrine also protects conduct that is "incidental" to petitioning activity, or, in other words, conduct outside the judicial proceeding that is nevertheless related to the lawsuit. *See id.*

This doctrine provides every counterdefendant with immunity here. Acts associated with filing and litigating the lawsuit—which covers Lisnr's counterclaims for spoliation, abuse of process, malicious prosecution, and a declaration—are obviously protected petitioning activity. *See New West, LP v. City of Joliet*, 491 F.3d 717, 722 (7th Cir. 2007); *Freeman v. Lasky, Hass & Cohler*, 410 F.3d 1180, 1184 (9th Cir. 2005) (concluding that conduct during discovery is protected by *Noerr-Pennington*); *GlobalTap LLC v. Smart Tap LLC*, No. 13 C 5322, 2015 WL 791256, at *7 (N.D. Ill. Feb. 24, 2015) (observing that litigation conduct is protected by *Noerr-Pennington*). And the alleged pre-complaint activity—which forms the basis for the claims for defamation and violations of "the" Deceptive Trade Practices Act—is so incidental and connected to the lawsuit that it acquires the same immunity. *See Fitbit, Inc. v. Laguna2, Inc.*, No. 17-cv-00079-EMC, 2018 WL 306724, at *5 (N.D. Cal. Jan. 5, 2018) (prelitigation communication about same subject matter as lawsuit protected by *Noerr-Pennington*, even when communication alleged theft); *Sosa v. DirecTV, Inc.*, 437 F.3d 923, 935-36 (9th Cir. 2006) (pre-

suit communications related to lawsuit are protected as incidental to the protected lawsuit, even if they involve individuals not party to the lawsuit).

There is a "sham" exception to *Noerr-Pennington* immunity. "Two specific kinds of conduct … can trigger the sham exception: (1) sham lawsuits; and (2) fraudulent misrepresentations." *Mercatus Grp. LLC v. Lake Forest Hosp.*, 641 F.3d 834, 842 (7th Cir. 2011). A "sham lawsuit" is one that is (1) "objectively baseless such that no reasonable litigant could realistically expect success on the merits;" and (2) serves as a pretext, using the judicial process as a weapon to achieve some extra-judicial end. *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61 (1993). Recent Seventh Circuit authority also establishes that, when applied to misrepresentations (like those Lisnr alleges here) the "sham" exception only applies to material misrepresentations that deprive the litigation of its legitimacy. *Mercatus Grp*, 641 F.3d at 843. The court likened removal of *Noerr-Pennington* immunity to the circumstances that might warrant relief under Fed. R. Civ. P. 60(b)(3), such as when a litigant's fraud prevents the other party from putting on its case in the first place. *Id.* at 843 n.4.

Attempting to squeeze Rackemann's lawsuit into this "sham" exception, Lisnr repeatedly incants (nineteen times) that the lawsuit, from its perspective, is "baseless."[4] These "allegations" are plainly insufficient under *Mercatus Group*. Lisnr implausibly alleges that Edelson and Rackemann made knowingly false allegations, but doesn't explain how these allegations guaranteed an ultimate merits victory for Rackemann or any Edelson client and can't show that

---

[4]     Whether or not the lawsuit is baseless, of course, is the type of legal conclusion that the Court should disregard. *See GlobalTap*, 2015 WL 791256, at *7 ("Though the court presumes SmartTap's factual allegations are true, its allegation that GlobalTap's lawsuit was 'objectively baseless' at the time of filing is a legal conclusion that is not entitled to this presumption."); *see also Best v. Indiana*, No. 1:16-cv-02549-TWP-MJD, 2017 WL 4074631, at *3 (S.D. Ind. Sept. 14, 2017) (noting that "courts are not obliged to accept as true legal conclusions or unsupported conclusions of fact"). Baseless litigation isn't like Beetlejuice: It doesn't appear if you repeat the phrase often enough.

these allegations somehow prevented Lisnr from defending itself. *See Mercatus Grp.*, 641 F.3d at 843-44.

Neither does the sham litigation exception fit. As a legal matter Lisnr's position is at odds with the reality that two separate district courts, including this one, have concluded that similar allegations state a claim for relief. *See* dkt. 129; *Satchell v. Sonic Notify, Inc., et al.*, dkt. 89, at 9-10, No. 16-cv-4961 (N.D. Cal. Nov. 20, 2017). And the counterclaim is devoid of factual allegations that might render Lisnr's characterization of the lawsuit ("baseless") plausible. Again, Lisnr's allegation of "baselessness" stems almost entirely from its disagreement about why and whether the Wiretap Act applies to technologies that, without obtaining consent, turn on a phone's microphone in order to collect sound. (Counterclaim ¶¶ 14, 57.) That the parties have a disagreement about the merits, a wholly unremarkable circumstance, does not render the litigation "baseless."

Lisnr also can't demonstrate subjective unreasonableness. Lisnr posits that Edelson and the plaintiffs brought the lawsuit for two illegitimate reasons: (1) to injure Lisnr's business reputation, and (2) to procure a settlement. (Counterclaim ¶ 63.) But there are no facts alleged to support the contention that any of the counterdefendants brought the lawsuit for the purpose of harming Lisnr's business interests. *See Best*, 2017 WL 4074631, at *3 (courts should disregard unsupported conclusions of fact). And as far as a settlement goes, "courts have invariably held that lawsuits terminating in a favorable settlement are also objectively reasonable and are not shams." *Toyo Tire*, 2017 WL 1178224, at *4.[5]

---

[5]       At several points, of course, Lisnr also takes issue with the failure of Edelson attorneys to double check which version of the App was installed on Rackemann's phone. But this failure cannot be considered the genesis of "sham" litigation because Rackemann acknowledged the issue and Edelson sought to substitute a different plaintiff who could validly litigate the underlying Wiretap Act theory alleged in the complaint. These actions are positive proof that

Simply put, the underlying lawsuit is not a sham. Edelson attorneys investigated the Colts App, became concerned about the privacy implications of the App, and placed advertisements inviting potentially interested parties to contact the firm to learn more. Rackemann agreed to let Edelson represent him because he believed the App's functionality was invasive of his privacy. Edelson attorneys presented to the Court the facts they believed were material to the Wiretap Act claims at issue, presented them in the best light, consistent with their obligation to zealously advocate on behalf of their clients, and explained to the Court why they did not believe the claims were foreclosed by existing law. This is all perfectly normal behavior. There is no bad faith in any part of this sequence. *Noerr-Pennington* immunity therefore attaches to all the claims in the countercomplaint.

### D.     There is no claim for first-party spoliation under Indiana law.

If the court does reach the merits, dismissal still is plainly warranted. Lisnr first seeks relief on a claim of spoliation against Edelson and Rackemann. As set forth in prior briefing (dkt. 194), Rackemann deleted the App after learning that it would turn on his phone's microphone and could potentially allow Lisnr to use his phone to record audio. He believed that deleting the App was the only definitive way to prevent the App from commandeering his phone's microphone (a belief that Lisnr's president later confirmed). This act, intended to protect his privacy, is the basis for Lisnr's claim for spoliation.

But there is no tort for first-party spoliation in Indiana. *Glotzbach v. Froman*, 854 N.E.2d 337, 338-39 (Ind. 2006); *see Allstate Ins. Co. v. Burgher*, No. 4:07-cv-106-SEB-WGH, 2009 WL 2147760, *2 (S.D. Ind. July 15, 2009) ("Spoliation is not an independent tort in Indiana."). That rule covers both Rackemann, who is party to the lawsuit, and Edelson, who as his lawyer is

---

none of the counterdefendants seek to wield the judicial process as a weapon to achieve some extra-judicial end.

treated as Rackemann's agent for the purposes of this claim (Counterclaim ¶ 26), and is thus legally indistinguishable from Rackemann. *See Koval v. Simon Telelect, Inc.*, 693 N.E.2d 1299, 1302 (Ind. 1998) ("It is well settled that an attorney, by virtue of the representation, becomes a powerful agent with a great deal of authority."). Consequently, the claim for spoliation should be dismissed.

### E.   Lisnr identifies no process that has been abused.

Lisnr next alleges a claim for abuse of process. In Indiana, abuse of process consists of two elements: "(1) ulterior motive, and (2) use of process that would not be proper in the normal prosecution of the case." *Scott v. Rama, Inc.*, No. 1:13-cv-01750-TWP-DML, 2015 WL 1210121, at *3 (S.D. Ind. Mar. 16, 2015). Indiana courts have stressed that *both* elements are required to state a claim for abuse of process, *Reichert v. City of New Haven*, 674 N.E.2d 27, 31 (Ind. Ct. App. 1996), and thus, "improper motive alone is insufficient to proceed with an abuse of process claim," *Panwar v. Access Therapies, Inc.*, No. 12-cv-00619-TWP, 2013 WL 320673, at *2 (S.D. Ind. Jan. 28, 2013). In other words, "[a] party's intent is irrelevant where his acts are procedurally and substantively proper under the circumstances." *Reichert*, 674 N.E.2d at 31. Consequently, "[t]he starting point for analysis of an abuse of process claim is to determine whether the defendant (in this case, the counter-defendant) employed an improper process, not the defendant's motivation in employing that process." *Panwar*, 2013 WL 320673, at *2.

Here, Rackemann's and Edelson's actions have been procedurally and substantively proper. Edelson filed on Rackemann's behalf a complaint against Lisnr (and the other defendants) alleging a violation of the Wiretap Act. At several points in its countercomplaint, Lisnr calls the claim "baseless," but as described above that characterization is simply Lisnr's way of saying that it disagrees with Rackemann's (and Evans's) claims on the merits. But there

is nothing improper about Rackemann's (or Edelson's) filing such a suit. To prevail on its abuse

of process claim, Lisnr "must have some evidence tending to show that [Rackemann] used

judicial processes for an end other than that for which it was designed." *Panwar*, 2013 WL

320673, at *2. But Rackemann's "filing of the … Complaint—the 'process' in question—was

used for its intended purpose, which was to initiate a lawsuit." *Id.*; *see Konecranes, Inc. v. Davis*,

No. 12-cv-01700-JMS-MJD, 2013 WL 5701046, at *6 (S.D. Ind. Oct. 18, 2013) ("[Plaintiff's]

filing of the Complaint was not an abuse of process because it was used to institute a civil action

that is proceeding as the process intended.").

Lisnr repeatedly suggests in the complaint that Rackemann and Edelson filed suit solely

to injure Lisnr's business and to reach an unwarranted settlement. But Lisnr alleges no facts to

render that conclusion plausible. (And it bears noting that Edelson has located no case in which a

litigation strategy aimed at procuring a settlement of the underlying action amounted to abuse of

process.) And, in any event, a claim for abuse of process requires "evidence that the attorney

knowingly initiated proceedings for a clearly improper purpose, which requires more than

evidence of a questionable belief as to the merits of a case, or the failure to fully investigate all

facts before filing suit." *Waterfield v. Waterfield*, 61 N.E.3d 314, 328 (Ind. Ct. App. 2016)

(internal quotation omitted). Lisnr simply can't make this showing.

### F.     Lisnr's request for a declaration should be dismissed as redundant.

Count III of Lisnr's counterclaim seeks a declaration from this Court "that the App does

not violate the Wiretap Act." (Counterclaim ¶ 101.) This request should be stricken or dismissed

because it is the mirror image of plaintiff's complaint, and thus unnecessarily redundant.[6]

---

[6]     It is not entirely clear whether striking under Fed. R. Civ. P. 12(f) or dismissing under
Fed. R. Civ. P. 12(b)(6) is the appropriate mechanism for dealing with a redundant declaratory
judgment counterclaim. One court has noted the lack of guidance from the Seventh Circuit on

Declaratory judgments are available in two factual situations: (1) a controversy has ripened to a point where one of the parties could invoke a coercive remedy—such as a suit for damages—but has not done so, or (2) although the controversy is real and immediate, it has not ripened to such a point, and it would be unfair or inefficient to require the parties to wait for a decision. *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 749 (7th Cir. 1987). Neither of those situations are present here. The dispute over whether Lisnr's technology violates the Wiretap Act has ripened to the point where App users can file a suit for damages, and indeed, such a suit has been filed. The putative class action complaint and Lisnr's counterclaim are two sides of the same coin: the complaint asserts that the App violates the Wiretap Act, and Lisnr's counterclaim seeks a declaration that it doesn't. Where a declaratory judgment "is being sought merely to determine issues which are involved in a case already pending and can be properly disposed of therein," it "serves no useful purpose." *Int'l Med. Grp., Inc. v. Walker*, No. 1:08-cv-0923-LJM-TAB, 2010 WL 1257481, at *2 (S.D. Ind. Mar. 24, 2010) (quotation omitted); *see also 7E Fit Spa Licensing Grp. LLC v. Dier*, No. 1:15-cv-01111-RLY-MPB, 2016 WL 4943824, at *5 (S.D. Ind. Sept. 16, 2016) ("Where the substantive suit would resolve the issues raised by the declaratory judgment action, the declaratory judgment action serves no useful purpose because the controversy has ripened and the uncertainty and anticipation of litigation alleviated.") (internal quotations omitted).

That is precisely the case here. Resolution of the claims in the complaint will necessarily resolve the question on which Lisnr seeks a declaratory judgment. Consequently, the

---

this question, but based on its own review of cases found that "the majority of Seventh Circuit district courts have disposed of redundant counterclaims via Rule 12(f)." *Cincinnati Specialty Underwriters Ins. Co. v. DMH Holdings, LLC*, No. 3:11-CV-357, 2013 WL 683493, at *4 n.2 (N.D. Ind. Feb. 22, 2013). Either way—whether under Rule 12(f) or Rule 12(b)(6)—Lisnr's counterclaim for a declaratory judgment is redundant and should be removed from this case.

counterclaim for a declaratory judgment serves no useful purpose and should be stricken or dismissed. *See, e.g.*, *7E Fit Spa*, 2016 WL 4943824, at *4-*5 (dismissing declaratory judgment count of counterclaim as redundant); *Int'l Med. Grp.*, 2010 WL 1257481 at *2 (same).

>        **G.   Lisnr's malicious-prosecution claim must be dismissed because it does not plausibly allege either malice or favorable termination.**

Lisnr's fourth counterclaim is for malicious prosecution. In Indiana, a claim for malicious prosecution requires a showing that (1) the defendant instituted or caused to be instituted an action against the plaintiff; (2) the defendant acted maliciously in so doing; (3) the defendant had no probable cause to institute the action; and (4) the action was terminated in the plaintiff's favor. *Estate of Meyer v. Lax, Inc.*, 998 N.E.2d 238, 249-50 (Ind. Ct. App. 2013). Lisnr can't show either malice or favorable termination.

Start with malice. In Indiana, to state a malicious prosecution claim, the plaintiff must state "malice in fact," not merely "malice in law." *Satz v. Koplow*, 397 N.E.2d 1082, 1085 (Ind. Ct. App. 1979) ("Malice in fact must be shown here"). "Malice in fact" requires a showing of improper mental state, and may be "proved by showing that the defendant brought the original action with a wrongful, or improper motive; or with ill will, evil motive, gross indifference, or reckless disregard of the rights of others; or that the prosecutor was actuated by improper motives." 52 Am. Jur. 2d *Malicious Prosecution* § 46. "Malice in law" requires showing a total lack of probable cause.

Contrary to *Satz*, however, Lisnr rests solely on a claim of "malice in law," and a weak one at that. Lisnr's principal basis for asserting a lack of probable cause is simply that Rackemann used a version of the Colts App that didn't incorporate Lisnr's technology. (Countercomplaint ¶ 108.) But that flaw in Rackemann's claim doesn't show an absence of probable cause: Lisnr, for instance, can't dispute that its technology indeed activates a phone's

microphone and instructs the phone to collect all audible noises for analysis (the facts that underpin the Wiretap Act theory at issue), or that versions of the Colts App incorporated this technology. These facts alone show more than a "total lack" of probable cause. *See Bd. of Comm'rs v. King*, 481 N.E.2d 1327, 1329 (Ind. Ct. App. 1985). Further, Lisnr alleges no facts that would render plausible an inference of malice in fact from this tenuous showing of purported malice in law. There is no allegation, for instance, that Edelson or Rackemann harbors any animosity towards Lisnr or even that "the defendant initiated the prosecution for a purpose other than that of securing the proper adjudication of the claim." 52 Am. Jur. 2d *Malicious Prosecution* § 46. Lisnr bleats about Edelson's purported efforts to secure a "windfall" (Countercomplaint ¶ 63), but that characterization is driven, again, entirely by Lisnr's legal theory about the Wiretap Act—if Edelson is right about the substance of the Wiretap Act, any award isn't really a "windfall." The desire on the part of Edelson and its clients to litigate this theory of the Wiretap Act that is not foreclosed by existing law doesn't become "malicious" simply because Lisnr would characterize the applicable law (or the potential outcome) in a different way.

Lisnr also cannot show that the litigation terminated favorably. Lisnr's countercomplaint previews an argument that Rackemann's proposed exit from the lawsuit constitutes a favorable termination. (Countercomplaint ¶ 108.) But Evans's presence on the same docket makes clear that the lawsuit hasn't terminated in any meaningful sense. *See Kossler v. Crisanti*, 564 F.3d 181, 188 (3d Cir. 2009) (common-law authorities require termination of entire "proceeding" in order to satisfy favorable-termination element). *Accord Neff v. Neff*, 247 P.3d 380, 395 (Utah 2011); *March v. Cacioppo*, 185 N.E.2d 397, 402 (Ill. App. Ct. 1962) (malicious-prosecution action will lie when "substantial portion" of the underlying suit is resolved in favor of plaintiff). Under Indiana law "the court may <u>not</u> ignore the context in which the proceedings were terminated."

17

*Strutz v. McNagny*, 558 N.E.2d 1103, 1107 (Ind. Ct. App. 1990); *see also* Restatement (Second) of Torts § 674 cmt. *j* (noting that whether the voluntary abandonment of a claim constitutes favorable termination depends on the surrounding circumstances). According to the Restatement, when new proceedings are instituted on the same grounds, such as "when a complaint has been imperfectly drawn and the proceedings are abandoned in order to permit the filing of a new and amended complaint," the abandonment of the initial claim is not a favorable termination. Restatement (Second) of Torts § 660(d) & cmt. g.; *see Duvall v. Kroger Corp.*, 549 N.E.2d 403, 406 (Ind. Ct. App. 1990) (voluntary abandonment of suit with caveat that change in particular circumstance will allow reinstitution of proceedings on the same ground is not a favorable termination). Here, Rackemann's withdrawal from the case has nothing to do with Lisnr's contentions about why the action is baseless. *See supra* at n.1. Evans intends to continue litigating the underlying theory. This is not a favorable termination for the purposes of malicious prosecution.

### H. No applicable Deceptive Trade Practices Act applies to the alleged conduct.

Lisnr next brings a claim for violation of "the" Deceptive Trade Practices Act. There is not, of course, a single Deceptive Trade Practices Act. The language of paragraph 111 of the countercomplaint (which discusses "disparagement") suggests that Lisnr believes that some state's commercial-disparagement law applies. But Indiana, whose law applies to this action, doesn't have an applicable statute. So the claim fails.

As mentioned earlier, Lisnr has suggested that it believes Ohio law applies here, and Ohio law does have a statute that seems to fit Lisnr's theory. *See* Ohio Code Rev. § 4165.02(A)(10). But, aside from the fact that Indiana choice-of-law rules wouldn't select Ohio law, Ohio statutory law doesn't apply to acts that occur outside of Ohio. *See In re Nat'l Century*

*Fin. Enters., Inc., Inv. Litig.*, 755 F. Supp. 2d 857, 873-875 (S.D. Ohio 2010); *Mitchell v. Abercrombie & Fitch, Inc.*, No. C2-04-306, 2005 WL 1159412, at *3-4 (S.D. Ohio May 17, 2005); *Americana Leasing, Inc. v. Neyman*, No. 49564, 1985 WL 8120, at *2 (Ohio Ct. App. Oct. 10, 1985). The amended countercomplaint alleges nothing that would connect the allegedly disparaging acts to Ohio.

Another possibility is Illinois, where Edelson PC's principal office, at which both Amir Missaghi and Greer Rubinstein work, is located. 815 ILCS 510/2(a)(10) does prohibit commercial disparagement. But as Illinois courts have held, the Illinois Deceptive Trade Practices Act prohibits only statements that disparage the *quality* of a business's goods or services. *See, e.g.*, *Conditioned Ocular Enhancement, Inc. v. Buonaventura*, 458 F. Supp. 2d 704, 710 (N.D. Ill. 2006); *Fedders Corp. v. Elite Classics*, 268 F. Supp. 2d 1051, 1064 (S.D. Ill. 2003). But the allegedly "materially incomplete" statements made about Lisnr's technology say nothing about the quality of the technology. What's more, "[t]he statute is not applicable to a statement about whether a competitor has broken the law." *Fedders Corp.*, 268 F. Supp. 2d at 1064. Thus, this claim cannot be sustained under Illinois law.

I.     **Lisnr's claim for defamation has multiple dispositive flaws.**

Finally, Lisnr alleges a claim of defamation. "To maintain an action for defamation, a plaintiff must prove a communication with four elements: 1) defamatory imputation; 2) malice; 3) publication; and 4) damages." *Branham v. Celadon Trucking Servs., Inc.*, 744 N.E.2d 514, 522 (Ind. Ct. App. 2001). There are several serious issues with this claim.

First, statements made during or in preparation for litigation are absolutely privileged. *See Medical Informatics Eng'g, Inc. v. Orthopaedics Ne., P.C.*, 458 F. Supp. 2d 716, 723 (N.D. Ind. 2006). The only qualification is that privileged statements must be "pertinent and relevant to

the case." *Id.*; *see* Restatement (Second) of Torts § 586. There can be no doubt that the privilege covers every alleged defamatory statement here. To be sure, all of the challenged statements were made in discussions with potential clients about the subject matter of the litigation. They are therefore absolutely privileged. *Medical Informatics*, 458 F. Supp. 2d at 723-29.

Second, "true statements never give rise to liability for defamation." *Branham*, 744 N.E.2d at 522. For all its rending of garments, Lisnr never identifies *any* allegedly defamatory statement that is definitively false.[7] Again, though the word "baseless" appears in the countercomplaint nineteen times, that characterization is premised entirely on Lisnr's interpretation of the ECPA. (See Countercomplaint ¶¶ 14, 57.) But whether or not the claims are *legally* baseless has little to do with whether the allegations in the complaint or in any of the emails sent by Greer Rubinstein or Amir Missaghi are *factually* incorrect. Take, for instance, paragraph 57, which represents the nub of Lisnr's theory. As Lisnr recounts there, its contention, which it believes is dispositive, is that the App filters out sound that is within the range of human hearing. (Countercomplaint ¶ 57.) But that contention doesn't deny, for instance, that audio is collected, which is the central point of Rackemann's and Evans's theory.

That leaves two statements: the statement that the App's functionality, which turns on a user's microphone without meaningful notice or consent, effects "a huge privacy violation" (countercomplaint ¶¶ 22, 68), and scattered statements that the conduct may violate federal law. As to the first, the use of Lisnr's technology may well constitute "a huge privacy violation" even if it doesn't violate the ECPA. In any event, statements that communicate the speaker's subjective views on an issue, without implying testable facts, aren't defamatory. *See Filippo v. Lee Pubs. Inc.*, 485 F. Supp. 2d 969, 980 (N.D. Ind. 2007).* Whether the App's functionality

---

[7]     Allegations about Rackemann's use of the App, discovery has shown, were incorrect, but Lisnr does not premise its defamation claim on any of these statements.

occasions "a huge privacy violation" (it does) is not a testable fact. *See* *Wartell v. Lee*, 47 N.E.3d 381, 385 (Ind. Ct. App. 2015) (statement expressing "subjective view, interpretation, or theory" not actionable in defamation). Statements regarding Lisnr's compliance with federal law also are not actionable: These statements amount to a legal *theory* that Lisnr's conduct violates the Wiretap Act. *See id.*; *see also* *Ayyadurai v. Floor64, Inc.*, 270 F. Supp. 3d 343, 361 (D. Mass. 2017) (conclusions drawn from disclosed facts are not independently actionable in defamation because they are simply an interpretation); *Hellmuth v. Efficiency Energy, LLC*, No. H-14-2945, 2016 WL 642352, at *3 (S.D. Tex. Feb. 18, 2016) ("The correctness of a party's opinion on an undecided legal issue, however, is not an appropriate basis for a defamation or business disparagement action."). And of course Lisnr can point to nothing suggesting that any statement about how Lisnr might have violated federal law is false because, of course, the allegations weren't dismissed.

For all its bluster, the countercomplaint makes a subtle shift from an allegation that the alleged defamatory statements are false to a claim that they are "false *and materially incomplete*." (Countercomplaint ¶ 116 (emphasis added).) This clumsy attempt at misdirection practically concedes that even Lisnr can't in good faith base its claim on verifiable falsity. And, in any event, materially incomplete to whom? Lisnr seems upset that Edelson has not disclosed, either in its communications with potential clients or in the pleadings it has filed the fact that the App filters collected audio for certain sounds and discards all other data. But whether that fact is material is one of the very things in dispute, and Edelson has already explained its position that the answer is no. (Dkt. 61, at 22-23.) As Rackemann and Edelson explained on the motion to dismiss: "Regardless of whether Defendants ever 'possessed' temporary recordings of Plaintiff's communications, Defendants here has sufficient control over the communications to analyze and

21

manipulate them, which demonstrates that the communications were 'intercepted.' … The fact that these recordings are later 'filtered' by Lisnr's technology (i.e., to detect 'inaudible sound waves') and are not permanently saved (rather, they are 'buffered' or 'overwritten'), does not negate or even question Plaintiff's allegations." (Id. at 22-23.)

Liability in defamation for allegedly material omissions is far narrower than liability for affirmative untruths. Courts have held that material omissions can support a defamation claim only if the challenged utterance omits some critical context. See Assocs. Corp. of N. Am. v. Smithley, 621 N.E.2d 1116, 1119-20 (Ind. Ct. App. 1993). But "liability may not ordinarily be imposed for an omission of facts which does not make the communication untrue." 53 C.J.S. Libel & Slander, Injurious Falsehood § 78. Smithley is illustrative. The plaintiff, Smithley, alleged that a letter recounting that she was terminated for lying was defamatory because it omitted that her supervisor had told her to lie. 621 N.E.2d at 1119. The Indiana court concluded that the statements were true, however, because the added context didn't change the fact that, indeed, she had been fired for lying. Id. at 1120. So, too, here: The added context that Lisnr believes is so essential does not change the fact that once Lisnr's technology activates a phone's microphone it is collecting all audio in range, no matter how it is thereafter filtered or analyzed.

Lisnr also cannot show damages. Although Lisnr suggests that the statements it alleges were defamatory per se, a statement which is defamatory only in context cannot constitute defamation per se. Duggan v. Mittal Steel USA, Inc., 929 N.E.2d 184, 186 (Ind. 2010). Lisnr alleges six defamatory statements, at paragraphs 22, 23, 27, 65, 68, and 72 of the complaint.[8] Of

---

[8]     Lisnr also hints at defamation in paragraph 67 when it says that "on or around September 29, 2017, Edelson yet again posted a Facebook ad seeking to recruit additional plaintiffs to sue Lisnr." Lisnr and its lawyers, however, are fully aware that the ad said nothing about Lisnr, and neither did it reference any of the statements Lisnr purports to take umbrage at. The ad, which was produced to Lisnr under the terms of the court's previous order, is attached.

these, the statements in paragraphs 22, 23, 27, 68, and 72 contain *no mention of Lisnr*. If these statements defamed Lisnr it is because of the context in which the statements were made. Notably, Lisnr does not allege that the recipients of these communications would have had any reason to connect a statement made about the Indianapolis Colts App to Lisnr. (See also Compl. ¶¶ 27-28 (observing that the App's privacy policy says nothing about why or how the App uses the phone's microphone).) Because none of these allegedly defamatory statements mention Lisnr, they cannot qualify as defamation per se, as Lisnr seems to think. (Countercomplaint ¶ 117.) Instead, as to these statements Lisnr can prevail only on a claim of defamation per quod, which requires a showing of damages and an "affirmative causal link between any of the pecuniary damages [Lisnr] claims to have suffered and the allegedly defamatory [statement]." *Ducker v. Amin*, No. 1:12-cv-01596-SEB-DML, 2014 WL 1018050, at *7 (S.D. Ind. Mar. 14, 2014). And on that score, Lisnr's allegations are woefully deficient.

The only allegation of harm that is potentially linkable to the alleged defamation is that the "the Colts opted to cease doing business with Lisnr … based upon the issues and publicity" surrounding the lawsuit. (Countercomplaint ¶ 62.) But this harm bears almost no connection to the defamation. The chain of causation appears to run like this:

1. Edelson reveals to a handful of potential plaintiffs that it may sue regarding the operation of the Indianapolis Colts App. (This is the alleged defamation.)
2. Some number of those who hear the statement understand it to refer to Lisnr.
3. Three individuals are persuaded to represent a class of App users in a suit against three defendants, including Lisnr.
4. On behalf of two of these individuals, Edelson files suit, alleging a violation of the Wiretap Act.
5. As a general matter, the Edelson law firm considers itself a "make the news" kind of firm. (Countercomplaint ¶ 52.)
6. Rackemann and Edelson "intended" that the lawsuit "would draw wide media attention." (Countercomplaint ¶ 52.)
7. The Colts were displeased with the media attention the lawsuit received.

8.   The Colts stopped doing business with Lisnr.[9]

There are several problems with this chain of causation. First, with one exception, there is no allegation anywhere that anyone understood the allegedly defamatory statements to refer to Lisnr. Greer Rubinstein published the complaint to an absent class member (Countercomplaint ¶ 65), so he is likely to have understood the statements contained therein to refer to Lisnr. But it is implausible that that statement could have occasioned the news coverage of the suit or the Colts' subsequent decision. Second, the event that supposedly caused the Colts to cease doing business with Lisnr wasn't the defamation, or even the lawsuit, but the news coverage. Third, the causal chain requires both the news media to decide to cover the lawsuit and the Colts to make a business decision based on the media coverage, two events completely outside the control of Edelson. Third, step six in this chain (Rackemann and Edelson intended for the suit to gain widespread media coverage) is unsupported by any alleged facts that would make it plausible. There are no allegations that Edelson attorneys or Rackemann himself encouraged any media coverage of this case, spoke to the media, or even sent out a press release. Certainly there is nothing to suggest that Rackemann or anyone at Edelson encouraged media attention from "publications that are regularly reviewed by Lisnr's existing and potential customers" (and of course we are not told what those publications even are). (Countercomplaint ¶ 52.) The general statement that Edelson, as a firm, likes to make the news doesn't even come close to supporting this allegation because, among other things, there is nothing in the complaint that would suggest that this statement was meant to relate in any way to this case. Tellingly, the article in which it

---

[9]      Edelson assumes that the loss of business from the Colts are the "special damages" that Lisnr alleges in its claim for defamation per quod. We note, however, that we shouldn't have to assume. Fed. R. Civ. P. 9(g) requires special damages to be alleged with particularity.

appears (attached as Exhibit A) was published well after the underlying lawsuit was filed yet it doesn't even reference the lawsuit.

In Indiana, "a plaintiff pleading special damages due to defamation, whether per quod or per se, must plead and demonstrate that the special damages were incurred as a natural and proximate consequence of the wrongful act." *N. Ind. Pub. Serv. Co. v. Dabagia*, 721 N.E.2d 294, 304 (Ind. Ct. App. 1999). Lisnr has no hope of making that showing. There are no plausible allegations that the alleged news coverage was a natural consequence of the lawsuit. Many lawsuits, even many lawsuits filed by the Edelson firm, go unremarked in the press. What the press chooses to cover is outside Edelson's hands. So, too, are the Colts' business decisions. (And one would expect that if Lisnr had fully informed the Colts up front about how the technology works that the Colts might not have been so moved by this alleged press coverage.) In other words, the alleged defamation is just too remote to be the legal cause of Lisnr's harm.

The alleged defamation is paragraph 65 of the countercomplaint—in which Greer Rubinstein forwards a copy of the complaint to an absent class member—doesn't require context. But Lisnr's antecedent failure to establish falsity dooms this theory, anyway. This is doubly so given that, in addition to the fact that good faith assertions of legal theories are not actionable, statements made by non-lawyers interpreting the law are generally deemed opinions that are not actionable in defamation. *See, e.g.*, *Rodriguez v. Panayiotou*, 314 F.3d 979, 986 (9th Cir. 2002).

Finally, it bears noting that the *Noerr-Pennington* doctrine does not apply to statements made in or incidental to litigation that are intentionally or recklessly false. *McDonald v. Smith*, 472 U.S. 479, 484-85 (1985). Presumably, Lisnr will argue that *McDonald* governs this case, or at least its defamation claim. *See id.* at 485. But as recounted in depth above, Lisnr doesn't even

25

come close to demonstrating *either* intentional or reckless falsity, no matter how vociferous its

disagreement with the theory underlying the complaint.

## CONCLUSION

Lisnr's intemperate portrayal of a mundane disagreement about the application of a

federal statute to a particular piece of technology is not the stuff of federal lawsuits. The Court

should dismiss the countercomplaint in its entirety.

Dated: February 9, 2018                    Respectfully submitted,

                                           **ALAN RACKEMANN, JEFF EVANS,** and
                                           **EDELSON PC**

                                           By: /s/ Rafey S. Balabanian

                                           Rafey S. Balabanian (admitted *pro hac vice*)
                                           rbalabanian@edelson.com
                                           Eve-Lynn J. Rapp (admitted *pro hac vice*)
                                           erapp@edelson.com
                                           EDELSON PC
                                           123 Townsend Street, Suite 100
                                           San Francisco, California 94107
                                           Tel: 415.212.9300
                                           Fax: 415.373.9435

                                           Benjamin H. Richman (admitted *pro hac vice*)
                                           brichman@edelson.com
                                           Benjamin S. Thomassen (admitted *pro hac vice*)
                                           bthomassen@edelson.com
                                           Amir C. Missaghi (admitted *pro hac vice*)
                                           amissaghi@edelson.com
                                           EDELSON PC
                                           350 North LaSalle Street, 13th Floor
                                           Chicago, Illinois 60654
                                           Tel: 312.589.6380
                                           Fax: 312.589.6378

                                           *Counsel for Plaintiff and the Putative Classes,*
                                           *and Counterclaim Defendants Alan Rackemann,*
                                           *Jeff Evans, and Edelson PC*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 9, 2018, I served the above and foregoing by causing a true and accurate copy of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system.

/s/ Rafey S. Balabanian