IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ALAN RACKEMANN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LISNR, INC., a Delaware Corporation, ADEPT MOBILE, LLC, a Massachusetts Limited Liability Company, and INDIANAPOLIS COLTS, INC., an Indiana Corporation,<br><br>Defendants. | Case No. 1:17-cv-00624-TWP-MJD<br><br>Hon. Tanya Walton Pratt<br><br>Magistrate Mark J. Dinsmore |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'**
**MOTION TO RECONSIDER ORDER ON MOTION TO SEAL (DKT. 248)**

1

## INTRODUCTION

In his brief in support of LISNR's Motion to Seal, (dkt. 219 (the "Brief")), Plaintiff explained that LISNR's Second Amended Answer and Counterclaims (dkt. 218 (the "Counterclaims")) reference, quote, or describe documents produced in discovery that concern aspects of Edelson PC's confidential and proprietary business practices, along with confidential communications between the firm and unnamed putative class members. (Dkt. 241 at 1-2.) Plaintiff argued that there was good cause to maintain the seal over that material, because the ongoing and cumulative public disclosure of such documents risked harming Edelson PC's competitive position. It would, in sum, give competing firms unearned insight into the firm's structure, strategies, and business practices.

Recognizing that the case is a matter of public record, however, Plaintiff left the majority of LISNR's Counterclaims untouched, including:

(i) LISNR's many references to and quotations from internal firm documents and communications concerning the "forensic accounting," which were referenced in the Complaint and the subject of Defendants' motion to compel and the Court's corresponding order, (*see*, *e.g.*, dkt. 244-1 ¶¶ 18, 19, 38);

(ii) LISNR's allegations that Edelson PC made "materially false representations to various Colts App users," including the nature of those representations, (*see*, *e.g.*, *id.* at ¶ 24); and

(iii) LISNR's allegations that Edelson PC essentially knew how the Colts App and LISNR's technology operated—which, in LISNR's view, does not support a Wiretap Act claim—but proceeded with the case anyway, (*see*, *e.g.*, *id.* at ¶¶ 30-32).

Plaintiff also noted, pursuant to Local Rule 5-11(e)(3), that no Defendant took a position on his request to maintain aspects of the Counterclaim under seal, and that he would supplement his filing once Defendants made up their mind. But despite committing to do so, no Defendant

2

followed up.[1] About a week later, the Court entered its Order, noting that it had "review[ed] . . . Plaintiff's supporting brief and proposed redactions," and agreed that the portions of LISNR's Counterclaims identified and redacted by Plaintiff should remain under seal. (Dkt. 248.)

Defendants (but, really, LISNR) now ask that the Court reconsider its Order. And while their supporting brief takes opportunities to sling mud, it wholly fails to address the standard at issue or identify any reason why the Court's order demonstrates a manifest error of law or fact. Further, the arguments Defendants do offer—which are presented without any legal or factual support, don't address the confidential material addressed by Plaintiff (but, rather, talk in abstracted generalities), and can't explain why *Defendants* should be entitled to seal material, but *Plaintiff* is not—fail on their own merits. In short, Defendants fail to identify any legitimate reasons for the Court to reverse course and seal only those portions of the Counterclaims that discuss information that Defendants believe warrant redaction.

The Motion should be denied.

## ARGUMENT

### I. DEFENDANTS NEITHER ADDRESS NOR SATISFY THE STANDARD ON A MOTION TO RECONSIDER

Defendants apparently disagree with the Court's Order on LISNR's Motion to Seal, but that disagreement is no basis for a motion for reconsideration. "To prevail on a motion for reconsideration under Rule 59, the movant must present either newly discovered evidence or

---

[1] On January 31, 2018, Counsel for LISNR (Tom Feher) suggested that, as of 5:49 PM that evening, he had not followed up with his client regarding its position on Plaintiff's request that aspects of the Counterclaims remain under seal because he "did not realize [Plaintiff was] due to file [his] Motion . . . [that day]." (*See* dkt. 257-1 at 4.) Nevertheless, he noted that he would review Plaintiff's proposed redacted version of the Counterclaims with his client and would "let [Plaintiff] know if LISNR would consent." (*Id.*) But despite receiving the proposed redacted Counterclaims that same day, Mr. Feher didn't follow up on the issue.

establish a manifest error of law or fact."[2] *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (citing *LB Credit Corp. v. Resolution Tr. Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995). "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Id.* (quoting *Sedrak v. Callahan*, 987 F.Supp. 1063, 1069 (N.D. Ill. 1997)).

Here, while Defendants purport to offer the instant Motion and supporting memorandum as a "response" to Plaintiff's Brief under Local Rule 5-11(f), (*see* dkt. 257 at 1), they forget that the Court already considered the Brief and ruled on LISNR's Motion to Seal.[3] (Dkt. 248.) And while their Motion sets out reasons why the Defendants disagree with certain points raised in the Brief, it neither raises new evidence nor establishes why the Court's ruling (or even Plaintiff's Brief) contains a *manifest error* of law or fact. *See In re Aug., 1993 Regular Grand Jury (Med. Corp. Subpoena I)*, 854 F. Supp. 1403, 1407 (S.D. Ind. 1994) ("A 'manifest error in law' means more than a quibble over the proper application or interpretation of legal authority; it requires no less than a wholesale disregard, misapplication, or failure to recognize controlling precedent. And, to convince the court to reconsider a prior decision, the movant must adequately allege exactly this sort of failure."). Indeed, and just like its orders on *Defendants'* requests to seal case material, (*see*, *e.g.*, dkt. 240 at 2 (discussing Defendants' request to seal "confidential business information")), the Court acknowledged Plaintiff's argument that aspects of the Counterclaims

---

[2] Outside of narrow circumstances set out in Rule 60, motions for reconsideration are considered under Rule 59(e). *Talano v. Nw. Med. Faculty Found., Inc.*, 273 F.3d 757, 760 n.1 (7th Cir. 2001) ("Technically, a 'Motion for Reconsideration' does not exist under the Federal Rules of Civil Procedure. A properly termed Rule 59(e) motion is a 'Motion to Alter or Amend Judgment.'").

[3] On February 7, 2018, counsel for LISNR (Tom Feher) contacted Magistrate Judge Dinsmore's chambers to make sure the Court realized that—as Plaintiff explicitly set out in his Brief, (dkt. 241 at 2)—Defendants had not provided their consent to Plaintiffs' requested redactions. (Dkt. 257 at 9-10.) Defendants were instructed to file "motions to reconsider." (*Id.*)

"reveal[ed] Edelson PC's proprietary business practices," (dkt. 248 at 1), which even Defendants recognize may satisfy the requisite "good cause" standard, (*see* dkt. 258 at 3).

Because Defendants offer *no* basis for the Court to reconsider its Order, the Motion must be denied.

## II.     DEFENDANTS' ARGUMENTS FAIL ON THEIR MERITS

Putting aside their failure to identify a manifest error of fact or law underlying the Court's Order, Defendants also don't offer serious support for their disagreement with Plaintiff's position and request. They attempt to stake out two approaches: that Plaintiff did not identify confidential information in the first instance, and that even if he had, Defendants' interests are more important. Neither contention prevails.

### A.     Plaintiff Only Identified and Sought to Seal Confidential Information.

As described in the Brief, Plaintiff only sought to seal those portions of the Counterclaims that "reveal aspects of the firm's confidential and proprietary inner-workings—essentially its trade secrets." (Dkt. 241 at 5-6.) Plaintiff's proposed redactions were narrow: he identified those allegations that either specifically described or quoted from documents that reveal aspects of Edelson PC's internal business practices.[4] (*Id.* at 6.) Plaintiff also explained that the public disclosure of this information—even where individual allegations might not, standing alone, amount to a full blueprint of Edelson PC's internal operations—could result in competitive harm to Edelson PC. (*Id.* at 7-8.) He additionally offered a declaration to support and substantiate his arguments. (Dkt. 241-2.)

---

[4]     Defendants note that they have not challenged the confidentiality designations attendant to the underlying documents, even though the Protective Order gives them discretion to do so. (Dkt. 258 at 3.)

In their motion and memorandum, Defendants brazenly claim that Plaintiff and his law firm, Edelson PC, don't identify confidential information at all but, instead, seek to hide their "unsavory conduct" behind the identified—and accepted—redactions. (Dkt. 258 at 6.) None of the arguments presented offer real support for this ridiculous charge.

**First,** Defendants say that the redacted information alleged in LISNR's Counterclaims—which the Court has agreed should remain under seal—doesn't discuss confidential information at all. (Dkt. 258 at 5.) In support, Defendants don't cite any cases but, instead, rely on incredibly broad and largely irrelevant generalizations. (*See*, *e.g.*, *id.* at 5 ("there is nothing secret about attorneys and staff sending emails to potential client regarding potential litigation. Indeed, this is common practice in the legal profession."), 6 ("Conducting an investigation is mandatory, not secret.").) This approach, however, doesn't even address the allegations Plaintiff sought to seal. For example, Plaintiff does not seek to redact the fact that Edelson PC contacted potential clients for case evaluations, (*see*, *e.g.*, dkt. 244-1 at ¶ 21), or even LISNR's allegations that those communications included "materially false representations and/or [omissions]," (*see*, *e.g.*, *id.* at ¶ 24). Rather, he sought to redact only those allegations *specifically* quoting from or describing the communications themselves (which, Plaintiff explained, provide details on the manner in which Edelson PC contacts/evaluates clients and how the firm folds its case investigation team—including staff assigned to the forensic analysis in this case—into initial client contacts). (*Compare* dkt. 218 at ¶ 22 *with* dkt. 244-1 at ¶ 22.) (*See also* dkt. 241 at 5, 7.) Likewise, Plaintiff did not seek to redact LISNR's allegations that Edelson PC "knew" the allegations in the complaint were false at the time they were filed. (*See*, *e.g.*, dkt. 244-1 at ¶ 30.) Rather, he only sought redaction of those allegations that specifically quote from or describe the manner in which Edelson PC attorneys and staff coordinated on the complaint—including, for example,

how to integrate the results of the firm's investigation (i.e., the "forensic accounting") or address the Defendants' anticipated defenses. (*Compare* dkt. 218 at ¶ 39 *with* dkt. 244-1 at ¶ 39.)[5] Plaintiff does not seek to sanitize the Counterclaims; he only seeks to prevent the public disclosure of information that would reveal aspects of Edelson PC's practice that the firm has—for years—developed and kept confidential.

Defendants also poke fun at Plaintiff's claim that public disclosure of confidential firm information might cause Edelson PC to suffer competitive harm. For example, they suggest that the firm can't possibly "compete" for clients because, in LISNR's view, Edelson PC fabricates claims and then tricks consumers into signing up as class representatives. (Dkt. 258 at 6.) Taking a similar approach, Defendants also suggest that LISNR's counterclaims and wild accusations should have more probative value when courts make leadership appointments (i.e., over Edelson PC's unique approach to investigating and ligating cases, which has been recognized by Courts and the press). (*Id.*) Neither attack, of course, addresses Plaintiff's Brief or supporting declaration, which discuss the harm that may occur if competing plaintiff firms begin to "replicate Edelson PC's business model," such as where multiple firms are attempting to investigate, litigate, or lead similar cases. (Dkt. 241 at 7-8 (citing *Meharg v. AstraZeneca Pharm. LP*, No. 1:08CV184DFH-TAB, 2009 WL 2960761, at *3 (S.D. Ind. Sept. 14, 2009); *United States v. Indiana Univ. Health Inc.*, No. 113CV02009TWPMJD, 2016 WL 10567965, at *2 (S.D. Ind. June 23, 2016).) Contrary to Defendants' completely unsupported perspective, this sort of competition is common. Evidence is easy to find: in virtually every multidistrict litigation

---

[5] Paragraph 39 of the Counterclaims is a particularly good example of this point, as LISNR chose to highlight and quote from a comment left by a non-lawyer (and member of Edelson PC's digital forensics team) on a draft copy of the complaint. This interaction goes to the heart of Plaintiff's Brief and request that aspects of the Counterclaims remain under seal—as it evidences the unique structure of the law firm.

involving multiple class action lawsuits, competing firms regularly race to investigate claims, retain clients, and posture for leadership appointments. Edelson PC's confidential business model—particularly the manner in which it integrates its forensic investigation team into various aspects of the firm's practice—gives it a distinct edge in these cases, which is critical to the firm's historical, current, and ongoing success. (*See* dkt. 241-2 at ¶¶ 3, 7, 11.) In any event, because Defendants do not address Plaintiff's actual arguments of potential harm, their motion doesn't raise a serious challenge to Plaintiff's argument that his request to maintain the seal over limited portions of LISNR's counterclaims is supported by good cause.

**Second,** Defendants suggest that Plaintiff cannot maintain any of the at-issue allegations under seal because any interest in confidentiality was waived. (Dkt. 258 at 7-8.) But again, Defendants argument is unsupported; Plaintiff is not seeking to seal any information that has already been introduced to the public record. For example, Plaintiff did not seek to seal the generalized fact that Edelson PC conducts "forensic reviews," as Defendants suggest. (*See id.* at 7 ("[A]ny claim that Edelson's practice of conducting "forensic reviews" is a trade secret is false. That fact has been part of affirmative statements made by Edelson to the press.").) Plaintiff acknowledges that this aspect of the firm's practice is discussed publicly and was, in any event, alleged in the Complaint. (Dkt. 241 at 2-3.) It therefore remains untouched in LISNR's Counterclaims. Nor did Plaintiff seek to seal references to documents comprising the "forensic accounting," which were the subject of Defendants' prior motion to compel and featured prominently in LISNR's initial counterclaims.[6] But while Plaintiff consented to reveal the *results*

---

[6] Plaintiff agreed to permit the public filing of the "forensic accounting" materials because they bear directly on (and support) the alleged interception claim under the Wiretap Act. Indeed, because Defendants have moved to seal *every* document or piece of deposition testimony that discusses LISNR's technology—which, by no coincidence, *also* support Plaintiff's allegations

8

of Edelson PC's investigation, he did not consent to reveal the firm's confidential litigation and operational *processes*—which remain confidential and proprietary—and asked the Court to maintain the corresponding portions of the Counterclaims (which quote from or describe material evidencing those processes) under seal. (*Id.* at 7-8.)

Defendants also suggest that because LISNR's original counterclaims referenced Edelson PC's early public outreach efforts in the case—e.g., that the firm communicated with "no less than 100" individuals about the case—Plaintiff cannot claim that the conversations themselves "are confidential and should be sealed." (Dkt. 258 at 8.) This argument makes no sense. As Defendants note, it's no secret that law firms communicate with potential and actual clients—but even where that fact is acknowledged, it does not mean the communications themselves (which, here, reveal confidential information about the firm) cannot be kept confidential. Likewise, Defendants' observation that the recipients of Edelson PC emails are "under no obligation to keep the emails private" adds nothing to the conversation. (*Id.*) Of course, Edelson PC would have no expectation of confidentiality with respect to the email recipients themselves; they are, after all, in possession of the communication. But Plaintiff is aware of no case (and Defendants certainly don't provide one) to support the proposition that the confidentiality of a two-party communication requires something akin to an express written commitment to secrecy. And in any event, the at-issue communications here were all initiated through the Consumer-ClassActions.com website, which—as many points—promises that communications are "confidential." (Dkt. 241 at 3.) Accordingly, Defendants' suggestion that Plaintiff asked to seal already public information fails.

---

and interception claim—the information uncovered by Edelson PC's pre-suit investigation is the only evidence in the public record to show that Plaintiff's allegations are accurate and sound.

**Third**, Defendants say that any communications described in the Counterclaims should not be sealed because "[t]hird-party privacy interests can be adequately protected by redacting the names and email addresses of the third parties." (Dkt. 258 at 10.) This argument also fails. Plaintiff explains that *Edelson PC* has a confidentiality interest in these communications as well, given that their full disclosure would reveal aspects of the firm's proprietary business practices. (Dkt. 241 at 5-6.) For that reason, the identified "communication" paragraphs in the Counterclaims should remain sealed. In any event, and contrary to Defendants' arguments, the third party initiators of the at-issue communications also have an interest in protecting both messages they sent to and received from the firm. Indeed, Defendants' argument relies on a single word from Plaintiff's Brief, where he states that messages "initiated" through Consumer-ClassActions.com should remain confidential. (*Id.* at 3; *see* dkt. 258 at 10.) Given this word— "initiated"— Defendants say third parties cannot have an expectation of confidentiality for messages sent by the firm because such responses were not "initiated" through the Consumer-ClassActions.com website. (Dkt. 258 at 10.) This attempt to capitalize on Plaintiff's word choice is a non-starter: Plaintiff only used to the term "initiated" to distinguish conversations that began with a message sent through the Consumer-ClassActions.com website from ones that were "initiated" elsewhere. When the firm receives a message that comes from the Consumer-ClassActions.com website, that message—along with others exchanged in any ensuing "conversation" with the sender—is appropriately treated as confidential, which is consistent with the terms on the site and, correspondingly, the expectations of individuals that submit information.[7] (*See* dkt. 241-2 at ¶ 9.)

---

[7] Defendants also suggest that the privacy interests of any third parties can be protected by redacting their names. (Dkt. 258 at 10.) If the Court reverses course and finds that Edelson PC has no confidentiality interest in the at-issue communications (i.e., to protect the firm's

In sum, Plaintiff identified and provided good cause for maintaining the seal over those portions of the Counterclaim that referenced proprietary—and confidential—aspects of Edelson PC's practice. Defendants offer no sound reasons for the Court to revisit its initial determination.

B.  **Defendants' Unexplained and Unsupported "Interests" Do Not Outweigh Those Already Identified by Plaintiff.**

LISNR states that it has an interest in lifting the seal on those portions of the Counterclaims that the Court ordered to be sealed—one that, it says, "outweighs" any interest Plaintiff has in maintaining confidentiality.[8] (Dkt. 258 at 8-10.) But this section of the memorandum doesn't do any "weighing" at all; there's no discussion of the comparative interests at issue. Rather, LISNR just lists some (unsupported) reasons why it prefers that the allegations of its Counterclaims remain public. For example, LISNR suggests that it might want to show redacted allegations to a third party in the course of unidentified "business discussions." (*Id.* at 9.) Or that the redacted portions of the Counterclaims, somehow, "rob LISNR's counterclaims of much of their power as a tool for repair damage done to existing and future business relationships." (*Id.*) To be sure, LISNR doesn't explain *why* the redacted portions of its Counterclaims are so important, given that the vast majority of the Counterclaims are available to the public. Nor does it provide any authority or evidence to support that its purported interests should prevail. And without any support, LISNR's purported interests in public disclosure cannot trump those identified in Plaintiff's Brief—which were supported by case law and a supporting declaration. (*See generally* dkts. 241, 241-2.)

---

proprietary and safeguarded business practices), then Plaintiff agrees that if the Counterclaims' allegations that describe and quote firm-to-consumer emails are redacted to remove any potentially identifying information about the third party recipients, such redactions would be sufficient to protect those parties' privacy interests.

[8]  Like the rest of the supporting memorandum, this section is written as concerning "Defendants" but, even more than the others, is explicit that it only concerns LISNR. (*See* dkt. 258 at 9.)

Moreover, LISNR's argument is incredibly lopsided, which cuts against its related argument that "the public has a right to know" about the redacted portions of the Counterclaims. (Dkt. 258 at 9.) This case was brought as a putative class action. The Complaint alleges that the Defendants secretly activated Colts App users' microphones and, in turn, began recording all surrounding audio—including conversations. (*See*, *e.g.*, dkt. 1 at ¶¶ 4, 33.) Obviously these individuals (members of the putative class) have a right, and clearly defined interest, to know whether these allegations are true and their rights have been violated. Indeed, there is actual evidence of this interest: as the Counterclaims note, more than a hundred individuals reached out to Edelson PC to learn more about the firm's investigation into the App. (*See* dkt. 218 ¶ 27.) But despite this evidence and obvious interest, Defendants have moved to seal *any* evidence that discusses or even concerns the eavesdropping ("listening") technology built into the App. And even though that evidence *directly* concerns the core allegations and claims set out in the Complaint, the Court has permitted Defendants to keep it out of the public record—for the exact same reasons that *Plaintiff* sought to keep aspects of the Counterclaims under seal (i.e., to protect Edelson PC's interest in the information's confidentiality and prevent the harm that would be associated with the information's public disclosure). The case law is clear: the public does have a "right to know" about the facts underlying litigation, especially when such facts are filed with the Court and central to the litigation. But there are times when, upon a showing of good cause, a party's interest in keeping materials out of the public record should prevail. LISNR, of course, provides no reason why *its* requests to seal appropriately keep information from the public—and the members of the Class—whereas Plaintiff's do not.

## CONCLUSION

Defendants' motion for consideration ignores (and fails to meet) the relevant standard and otherwise fails to override the reasons identified by Plaintiff—and the evidence submitted therewith—for maintaining the seal over portions of LISNR's Counterclaims. The Motion should be denied.

Dated: February 28, 2018                                    Respectfully submitted,

**ALAN RACKEMANN, JEFF EVANS,** and
**EDELSON PC**

By: /s/ Rafey S. Balabanian

Rafey S. Balabanian (admitted *pro hac vice*)
rbalabanian@edelson.com
Eve-Lynn J. Rapp (admitted *pro hac vice*)
erapp@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

Benjamin H. Richman (admitted *pro hac vice*)
brichman@edelson.com
Benjamin S. Thomassen (admitted *pro hac vice*)
bthomassen@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6380
Fax: 312.589.6378

*Counsel for Plaintiff and the Putative Classes, and Counterclaim Defendants Alan Rackemann, Jeff Evans, and Edelson PC*

## CERTIFICATE OF SERVICE

      I hereby certify that on February 28, 2018, I served the above and foregoing by causing a true and accurate copy of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system.

                                          /s/ Rafey S. Balabanian