## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA

ALAN RACKEMANN

        Plaintiff/Counterclaim-Defendant,

        v.

LISNR, INC.,

        Defendant/Counterclaim-Plaintiff.

Case No. 1:17-cv-00624-TWP-MJD

Judge Tanya Walton Pratt

Magistrate Mark J. Dinsmore

## COUNTER-PLAINTIFF LISNR, INC.'S MEMORANDUM IN OPPOSITION TO COUNTER-DEFENDANTS' MOTION TO DISMISS COUNTERCLAIMS (FILED UNDER SEAL)

Jesse Jenike-Godshalk (*pro hac vice*)
Thompson Hine LLP
312 Walnut Street, Suite 1400
Cincinnati, Ohio 45202
Phone: 513-352-6702
Fax: 513-241-4771
Jesse.Godshalk@ThompsonHine.com

*Attorney for Defendant/Counterclaim-Plaintiff LISNR, Inc.*

## INTRODUCTION

The issue to be decided in this Motion is whether parties and attorneys that make knowingly false allegations in order to invoke the legal process for financial advantage unrelated to the real facts may be held liable for their conduct or whether, as Movants argue, they are absolutely immune from any liability because their dishonesty was related to litigation.

Despite the best efforts of Counter-Defendants Edelson P.C. ("Edelson"), Alan Rackemann ("Plaintiff"), and Jeffrey Evans (collectively, "Counter-Defendants") to portray this as a routine legal dispute between them and Counter-Plaintiff LISNR, Inc. ("LISNR"), the facts demonstrate that this is a different matter on every level.  As alleged in the Counterclaims, this is not about the interpretation of a statute (i.e. the Wiretap Act).  The "facts" discussed in the Motion bear no relationship to what Counter-Defendants specifically alleged in two separate Complaints.  There is not now, and has never been, any legitimate dispute that the facts alleged in those pleadings are false and that the attorneys encouraging these individuals to bring claims knew they were false.  Nor has there *ever* been any good faith basis for their accusations that LISNR violated the federal criminal law that prohibits listening to other people's conversations.

There is no dispute that the Indianapolis Colts, Inc.'s ("Colts") mobile phone application with LISNR's technology ("the App") takes in less than *half a second*'s worth of audio and then discards it.  It is likewise undisputed that no one at LISNR (or anyone else) was ***ever*** in a position to listen to any portion of any users' conversation.   As alleged in the Counterclaims, the Counter-Defendants were completely aware of this fact *before* filing either Complaint.  Their Motion takes the position that there is a legitimate dispute whether the App's process violates the Wiretap Act.  There isn't.  But, more important, what they alleged is completely divorced from

these undisputed facts.   What they alleged was that LISNR was actively *listening to* and *recording* users' private conversations:

- The App *listens to* and *records* all consumer *conversations*.  (Dkt. 1 at ¶ 4.)

- Defendants programmed the App to *listen-in*.  (*Id.* at ¶ 36.)

- Defendants' App *listened-in to private oral communications*.  (*Id.*)

- LISNR intercepted (by *listening in and recording*) users' *private conversations*.  (*Id.* ¶ 49.)

- LISNR constantly and *continuously recorded* and analyzed their *conversations*.  (*Id.* at ¶ 50.)

- LISNR programmed applications to *listen to* and *record* users' oral *communications* and used the contents of those communications to its economic benefit, including for marketing purposes.  (*Id.* at ¶ 51.)

- Defendants intercepted (by *listening in and recording*) Plaintiff's and the Colts Class's *private conversations*.  (*Id.* at ¶ 58.)

None of these allegations were true, and Counter-Defendants knew they weren't true. When the Defendants LISNR, the Colts, and Adept Mobile LLC moved to dismiss the Complaint, Counter-Defendants opposed the Motion by referring to these (false) allegations which they knew this Court was bound to accept as true.  They hid the real facts as they knew them from this Court, just as they hid them from the App users they were wooing, in order to maintain the ability to force LISNR to pay their ransom.  This Court denied the Motion in part, specifically noting that it was bound to accept as true the false allegations that the Colts' App listened to and recorded users' conversations.[1]

---

[1] The Opinion noted: (1) The Complaint alleged that "the App, when it was activated, listened in on Rackemann's private conversations." (Dkt. 129 at 3); (2) "In each count, Rackemann alleges that Defendants . . . have intercepted (by listening to and recording) Rackemann's private conversations." (*Id.* at 4); (3) Plaintiff had standing based on his allegation that "LISNR intercepted [his] private conversations." (*Id.* at 6); and (4) Plaintiff adequately pled interception by alleging that the App "listened-in to private oral communications." (Id. at 13).

Movants' allege that the Counterclaims were asserted in response to this Court denying LISNR's Motion to Dismiss.  To the contrary, they were filed well later, just following the production of documents related to the "investigation" of the App which Edelson described in the Complaint as "confirming" their allegations.  The Counterclaims were filed when those documents were produced and demonstrated just the opposite, i.e., that the investigation had demonstrated that there was no basis to suggest that the Colts' App allowed anyone to hear users' conversations.

The Court should deny the Motion to Dismiss Counterclaims with regard to each of the counterclaims.  Counter-Defendants' Motion ignores both the relevant standards governing the Motion, as well as the factual allegations of LISNR's counterclaims, all of which are based on either documents Counter-Defendants produced in this litigation or Edelson's public statements.

Applying the correct standards to these allegations, Counter-Defendants have not carried their burden to show that their knowing misconduct was constitutionally privileged and that the counterclaims based on that conduct are barred by the *Noerr-Pennington* doctrine.

LISNR's counterclaim for abuse of process is viable because Plaintiff and Edelson knowingly filed baseless litigation for the ulterior purpose of extorting money from LISNR. The malicious prosecution claim is viable because the Counterclaims allege numerous circumstances that give rise to a reasonable inference of malice and because the claims brought by Plaintiff and Edelson have been terminated (multiple times) in LISNR's favor.

LISNR has adequately pleaded a claim for spoliation of evidence. Ohio law is the governing law when Indiana choice of law principles are properly applied, and it recognizes spoliation claims where, as here, the plaintiff has intentionally destroyed material evidence so as to impede the defendant's ability to litigate a case.

3

Because Plaintiff's case has been dismissed, LISNR's counterclaim for declaratory judgment is not duplicative.  Moreover, the Court should exercise its discretion to allow the declaratory judgment action to go forward, because it will serve the useful purpose of heading off the repetitive and baseless litigation threatened by Edelson and Evans over whether the App "eavesdrops" on users' conversations in violation of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 *et seq.* ("the Wiretap Act").

LISNR has also stated a viable claim for violation of the Illinois Deceptive Trade Practices Act because Edelson, acting from Chicago, Illinois, publicized false and misleading statements that disparaged LISNR and its products.  Finally, the litigation privilege does not bar LISNR's claim for defamation, because the privilege does not apply to communications—like those at issue here—that occur prior to a judicial proceeding.  In addition, LISNR has adequately alleged all necessary elements of a viable defamation claim, including false statements and causation of damages.

The Motion to Dismiss should be denied.

## LISNR'S FACTUAL ALLEGATIONS

Counter-Defendants repeatedly argue that the counterclaims' allegations are insufficient, generally without describing what is actually alleged.  But addressing the merits of the counterclaims requires review of the actual allegations that support LISNR's six counterclaims. The actual allegations to which the motion is directed are in fact greatly detailed.

LISNR's counterclaims allege that Edelson is a law firm that generates litigation in a particular manner that is decidedly detached from the "public service" described in the Motion. The counterclaims also allege the firm's heightened ability to understand, in advance, the technology they attack:

The firm has a technology lab staffed by technicians who regularly dissect new products, including applications for smart phones ("mobile apps" or "apps"), to proactively identify potential defendants in class action lawsuits that it will seek to file.  It did and does so without any client whose interest it has been retained to represent or protect; instead, the work is done to generate new lawsuits that will further its own business and profits.  Once it has identified the target, it then advertises on social media and other places seeking to solicit and entice individuals to agree to act as plaintiffs in claims it seeks to file.  When contacted by a potential plaintiff, the firm attempts to convince them that they have been victimized by the potential defendant's (or defendants') product or conduct, with the goal of enticing them to permit Edelson to file a lawsuit in his or her name.

(Counterclaims (Dkt. 218) at ¶ 10.)[2]   When communicating with potential "clients" such as Plaintiff or Mr. Evans, Edelson fails to provide the full facts that they know, in order to convince the clients to bring suit.  (*See, e.g., id.* at ¶¶ 21–25.)  In 2016, Edelson "identified and targeted LISNR," searching for and investigating apps that included LISNR's technology, including the Colts' App.  (*Id.* at ¶¶ 11, 13, 15, 33, 35.)

Through using its significant internal technological resources, Edelson dissected the Colts App and learned much of how it works.  (*Id.* at ¶ 18.)  Edelson came to understand that the App activated the microphones on user's mobile devices.  But they were also able to verify that the technology "did not recognize, process, or record human voices."  (*Id.* at ¶ 30; *see also id.* at ¶¶ 18–19, 31.)  Likewise, Edelson's analysis found no evidence of unlawful wiretapping.  (*Id.* at ¶ 43.)  Specifically, the investigation found no evidence (and there was no basis for alleging) that the App analyzed or communicated any data related to human voices.  More significant, there was no evidence that the App created recordings of data that could ever be accessed by LISNR or that the App could send the content of any user's conversation to LISNR.  (*Id.* at ¶¶ 44–46.)

In internal communications, Edelson personnel noted that these facts were inconsistent with the allegation that the App recorded people's "conversations" in violation of the Wiretap

---

[2] Hereinafter, any citation to Dkt. 218 refers specifically to the counterclaims portion of LISNR's Second Amended Answer and Counterclaims.

Act.  (*Id.* at ¶ 39.)  Nevertheless, Edelson made that exact allegation, in no less than 5 paragraphs of the Complaint.  (See Dkt. 1 at ¶¶ 4, 49–51, 58.)  In order to get someone to allow them to file that Complaint in their name, Edelson posted advertisements online to recruit a Colt's App user willing to stand is as a putative class plaintiff to sue LISNR for violation of the Act.  (*Id.* at ¶¶ 17, 20, 64, 67.)

In communications with more than 100 potential plaintiffs—including Plaintiff and Mr. Evans—Edelson made repeated misrepresentations that the Defendants were either listening to or recording users' conversations, and failed to also provide any qualification of those statements disclosing the other essential facts necessary to make the communications truthful.  (*Id.* at ¶¶ 22–24, 27, 65, 68, 72–73.)  These misstatements had the desired effect of convincing several potential plaintiffs, including Plaintiff and Mr. Evans, to sign engagement letters with Edelson to investigate and pursue claims against LISNR.[3]  (*Id.* at ¶¶ 25, 34, 70, 74.)

Plaintiff authorized Edelson to file the Initial Complaint against LISNR.  (*Id.* at ¶ 49.)  At that time, Edelson's tech team had identified the fact that "most versions of the App did not include LISNR's technology."  (*Id.* at ¶ 50.)  Before filing suit, however, Plaintiff and Edelson did not ensure that Plaintiff had ever downloaded one of those versions.  (*Id.*)  As described above, the Initial Complaint specifically alleged "facts" that Plaintiff and Edelson knew were false, such as that Defendants listened to and recorded users' private conversations, and used these factual allegations to assert baseless claims against LISNR for violations of the Wiretap Act.  (*Id.* at ¶¶ 51, 53–56, 58.)  After LISNR demonstrated that Plaintiff had improperly named at least one party, Edelson and Plaintiff voluntarily dismissed the Initial Complaint, only to file

---

[3] The representations to Mr. Evans were made on November 2, 2017, more than a month after Edelson and their expert had already examined the LISNR source code.  (Dkt. 218 at ¶¶ 66, 74.)  As detailed in the deposition of their expert, that review confirmed that there was no way for anyone to use the App to listen to any user's conversation.  (*Id.* at ¶ 77.)

6

another (nearly identical) complaint (the "Current Complaint") against LISNR.  (*Id.* at ¶¶ 57–60, 107.)

LISNR alleges that the purpose and motive in filing these suits was to injure "LISNR's reputation and its business" so as to force LISNR into offering Plaintiff and Edelson a settlement "unrelated to the actual value of the purported Wiretap Act claim."  (*Id.* at ¶¶ 92, 94.)  As alleged, they "understood that the natural consequence of filing and pursuing baseless litigation was to injure LISNR's reputation and its business" (*id.* at ¶ 92), and they "intended the[se] natural consequences" (*id.* at ¶ 93).  LISNR was damaged as a result of this plan, including when the Colts chose to remove LISNR's technology from the Colts' App.  (*Id.* at ¶ 62.)

After deciding to sue LISNR, Plaintiff—in consultation with Edelson—"willfully and intentionally deleted the Colts' App from [Plaintiff's] device, knowing that it would disrupt LISNR's ability to defend against the lawsuits that Plaintiff has filed, through Edelson, against LISNR."  (*Id.* at ¶¶ 86, 87.)  "By deleting (and encouraging the deletion of) the App, Plaintiff and Edelson disrupted LISNR's ability to defend against the lawsuits that Plaintiff filed, through Edelson, against LISNR and have caused LISNR damages."  (*Id.* at ¶ 87.)

Though it was delayed for almost a year by the App's deletion, Defendants' efforts to review Plaintiff's phone did finally force Plaintiff to admit he lacked standing for his claim because he never had the LISNR-enabled version of the App on his phone.  (*Id.* at ¶¶ 71, 98, 108.)  In response, Plaintiff and Edelson sought to substitute Mr. Evans in to litigate Plaintiff's Wiretap Act claims.  (*Id.* at ¶¶ 78–79, 100, 108.)  In their Motion to the Court, they specifically stated that if Amendment was not permitted, they would file a new lawsuit in Mr. Evans' name. (Dkt. 218 at ¶¶ 98–99; *see also* Dkt. 177 at 17.)  Counter-Defendants also "threatened to bring

another lawsuit via another one of the 103 other individuals that [Edelson] had recruited."  (*Id.* at

¶ 98.)

Based on these facts, LISNR has asserted six counterclaims:

- Count I – Spoliation of Evidence Against Plaintiff and Edelson
- Count II – Abuse of Process against Plaintiff and Edelson
- Count III – Declaratory Judgment Under 28 U.S.C. §§ 2201 *et seq.* seeking "a declaration that the App does not violate the Wiretap Act" (*id.* at ¶ 101)
- Count IV – Malicious Prosecution against Plaintiff and Edelson
- Count V – Violation of the Deceptive Trade Practices Act against Edelson
- Count VI – Defamation against Edelson

**STANDARDS GOVERNING COUNTER-DEFENDANTS' MOTION**

Just as Counter-Defendants fail to describe the actual allegations of the counterclaims,

they likewise do not state the legal standards that govern their motion.  The standard for deciding

Rule 12(b)(6) motions to dismiss was summarized in *Am. Family Mut. Ins. Co. v. Mill*

*Installation & Constr.*, Inc., No. 1:10-cv-1711-TWP-DKL, 2011 U.S. Dist. LEXIS 106596, at

*5–6 (S.D. Ind. Sept. 21, 2011) (Pratt, J.):

> When reviewing a 12(b)(6) Motion, the Court takes all well-pleaded allegations in the counterclaim as true and draws all inferences in favor of the non-movant. *Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008) (citations omitted). . . . [T]he counterclaim must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citations omitted).  To be facially *plausible*, the counterclaim must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citation omitted).

As the Seventh Circuit stated in *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.2d 899,

901 (7th Cir. 2004), affirmative defenses are rarely a valid basis for granting a motion to dismiss:

> Orders under Rule 12(b)(6) are not appropriate responses to the invocation of defenses, for plaintiffs need not anticipate and attempt to plead around all potential defenses.  Complaints need not contain *any* information about defenses and may not be dismissed for that omission.  Only when the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense—may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6).

(internal citations omitted).  Counter-Defendants' Motion does not meet this standard.

## ARGUMENT

### I.     Choice of Law

Counter-Defendants inaccurately argue that, even under choice of law principles, "Indiana law applies to the countercomplaint in its entirety."   (Dkt. 251 at 6.)   First, the declaratory judgment counterclaim is clearly governed by federal law, not state law.  (*See* Dkt. 218 (Count III is a claim for "Declaratory Judgment Under 28 U.S.C. § 2201 *et seq.*").)  As such, it is not subject to a choice of law analysis at all.[4]

As to LISNR's abuse of process, malicious prosecution, and defamation counterclaims, there does not appear to be any material difference in the law of the contact states.  Therefore, the Court should simply apply the law of the forum—Indiana—to these counterclaims.[5]

But where there is a difference in outcome, choice of law should be determined on a claim-by-claim basis.  *Nat'l Union Fire Ins. Co. v. Standard Fusee Corp.*, 940 N.E.2d 810, 815 & n.4 (Ind. 2010) (citing *Allen v. Great Am. Reserve Ins. Co.*, 766 N.E.2d 1157, 1162–70 (Ind. 2002)).  The remaining counterclaims—spoliation and violation of the Deceptive Trade Practices Act—arise under state law, and the success of these claims depends on which state's law the Court applies.  The choice of law will be addressed within the sections addressing those claims.

---

[4] It is not true that "LISNR previously asserted that Ohio law applies to each of its claims for relief."  (Dkt. 251 at 6.)  LISNR argued previously, as it argues here, that Ohio law should apply to the spoliation claim, federal law to the declaratory judgment counterclaim, and Indiana law to the abuse of process counterclaim.  (*See* Dkt. 207 at 9–12 & n.5.)

[5] "When there is no [material] disagreement among the contact states . . . , the court applies the law of the forum state."  *Verlan, Ltd. v. John L. Armitage & Co.*, 695 F. Supp. 950, 952 (N.D. Ill. 1988) (citing *Int'l Adm'rs, Inc. v. Life Ins. Co. of N.A.*, 753 F.2d 1373, 1376 n.4 (7th Cir. 1985)); *accord Allen v. Great Am. Reserve Ins. Co.*, 766 N.E.2d 1157, 1162 (Ind. 2002) ("Ordinarily a choice of law issue will be resolved only if it appears there is a difference in the laws of the potentially applicable jurisdictions.").

## II.     The *Noerr-Pennington* Doctrine Does Not Bar LISNR's Counterclaims.

Counter-Defendants prematurely argue that the *Noerr-Pennington* doctrine bars all of LISNR's counterclaims.  They are wrong.  First, "the *Noerr-Pennington* defense is typically only properly analyzed through a consideration of evidence outside of the pleadings and as such, [is usually] not appropriately considered in [a] Rule 12(b)(6) context."  *Constr. Cost Data, LLC v. Gordian Grp., Inc.*, No. H-16-114, 2017 U.S. Dist. LEXIS 77481, at *15–16 (S.D. Tex. Apr. 24, 2017) (internal quotation marks omitted) (collecting cases and denying a motion to dismiss).

Moreover, the *Noerr-Pennington* doctrine is an affirmative defense; Counter-Defendants bear the burden of establishing that the defense applies here.  *Segni v. Commercial Office of Spain*, 816 F.2d 344, 346 (7th Cir. 1987) (The *Noerr-Pennington* doctrine is no different "from any other affirmative defense."); *see also Acoustic Sys. v. Wenger Corp.*, 207 F.3d 287, 296 (5th Cir. 2000); *N.C. Elec. Membership Corp. v. Carolina Power & Light Co.*, 666 F.2d 50, 52 (4th Cir. 1981).   In support of this burden, Counter-Defendants do little more than explain the doctrine on a high-level, state that the doctrine applies to all of the counterclaims, and string cite cases.  (Dkt. 251 at 9.)

To the extent Counter-Defendants have made arguments, they fare no better.  Counter-Defendants argue, for instance, that LISNR's request for a declaration that LISNR does not violate the Wiretap Act is barred by the *Noerr-Pennington* doctrine.  *Noerr-Pennington* is a doctrine derived from the First Amendment that "protects those who petition governmental actors for redress from liability based on their petitioning activity."  *Toyo Tire & Rubber Co. v. Atturo Tire Corp.*, No. 14 C 0206, 2017 U.S. Dist. LEXIS 48672, at *8 (N.D. Ill. Mar. 30, 2017). But Counter-Defendants make no showing of how LISNR's request for a declaration that will cut off future baseless claims burdens First Amendment rights, and they certainly do not identify any

case where a court found that a declaratory judgment claim was barred by the *Noerr-Pennington* doctrine.  (Dkt. 251 at 9.)  To the contrary, it is Counter-Defendants that seek to block LISNR's access to this Court.

Moreover, *Noerr-Pennington* is not without limits.  It does not, as Counter-Defendants argue, operate to bar all claims that are in any way related to litigation.  As discussed below, the doctrine is subject to exceptions for sham litigation and fraudulent misrepresentations, and it does not apply (at least in this Circuit) to pre-litigation conduct.[6]  While LISNR was not required to plead exceptions to *Noerr-Pennington*, it has done so, and all of LISNR's claims fall within them.

**A.      Claims Arising Out of Pre-Litigation Conduct Are Not Barred.**

Counter-Defendants argue that the *Noerr-Pennington* doctrine applies to pre-litigation conduct, but they cite only to cases from the Ninth Circuit to support this proposition.  (Dkt. 251 at 9.)  Other courts, however, including courts in this circuit, have refused to adopt this position. *See Cardtoons, L.C. v. Major League Baseball Players Assoc.*, 208 F.3d 885, 891–93 (10th Cir. 2000) (en banc) (doctrine does not apply to pre-litigation threats between private parties); *Beverly v. Watson*, No. 14 C 4970, 2017 U.S. Dist. LEXIS 160330, at *39 (N.D. Ill. Sept. 29, 2017) ("[D]istrict courts in this circuit have been reluctant to extend *Noerr-Pennington* to cease-and-desist letters."); *Underground Solutions, Inc. v. Palermo*, No. 13 C 8407, 2014 U.S. Dist. LEXIS 132441, at *21 (N.D. Ill. Sept. 22, 2014) (quoting *Cardtoons*).

---

[6] Counter-Defendants argue that LISNR has failed to adequately plead the exceptions. (Dkt. 251 at 10–12.)  But the Seventh Circuit has made clear that Plaintiffs are not required to anticipate and plead around affirmative defenses.  *Xechem*, 372 F.2d at 901 (reversing order granting motion to dismiss).  Thus, LISNR was not required to plead exceptions to the *Noerr-Pennington* doctrine.   Rather, Counter-Defendants must "show . . . that [LISNR's] potential rejoinder to the affirmative defense was foreclosed by the allegations in the" Counterclaims. *Goodman v. PraxAir, Inc.*, 494 F.3d 458, 466 (4th Cir. 2007) (en banc) (reversing order granting motion to dismiss).

Even if that were the law in this Circuit, it would not mean that Counter-Defendants' pre-litigation spoliation of evidence is a core petitioning activity that is "obviously protected" by the First Amendment.   (Dkt. 251 at 9.)   This argument simply makes no sense; destruction of evidence before filing suit is not "petitioning activity."  *See Toyo Tire & Rubber Co.*, 2017 U.S. Dist. LEXIS 48672, at *12 ("There appears to be little dispute that 'core petitioning activity' in the litigation context is limited to direct communications with the court.").

### B.      The Sham Litigation Exception

The sham litigation exception to *Noerr-Pennington* involves two elements: (1) "the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits"; and (2) the lawsuit serves as a pretext, using the judicial process to achieve some extra-judicial end.  *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60–61 (1993).

Though it was not required to, LISNR pleaded the first element of this exception: "Plaintiff and Edelson [brought] baseless litigation against LISNR." (Dkt. 218 at ¶ 58.)  LISNR also pleaded specific facts that made this element plausible as well.  LISNR pleaded that Edelson investigated the Colts' App and "failed to find evidence of facts critical to the claim of illegal wiretapping."  (*Id.* at ¶ 43.)  Other pleaded facts also demonstrate that they knew they had no factual basis for their allegations that the App "listened to" users "personal conversations," including:

- There was no evidence of any code that would cause a user's phone or the App to make any recording of sound in any permanent memory.  (*Id.* at ¶ 44.)

- Edelson found no evidence that a user's phone or the App could or would decode any data representing sounds in the range of the human voice.  (*Id.* at ¶ 45.)

- Edelson found no evidence that the App caused the phone to send any conversation received from the microphone anywhere, including to LISNR or its customers.  (*Id.* at ¶ 46.)

- Edelson claimed (and claims) that the mere movement of audio data through a temporary buffer by the Colts' App constituted 'recording' and 'interception' for purposes of liability under the Wiretap Act, which was baseless on its face. All audio data generated by any cell phone's microphone is moved through a buffer. Plaintiff and Edelson's allegation, if true, would mean that every cell phone manufacturer in the country would be guilty of violating the Wiretap Act every time any person in the United States used their phone to make or accept a call. There is and never was any good faith argument that the law supported or ever could support such a claim. (*Id.* at ¶ 47.)

While Counter-Defendants may eventually dispute some of these allegations, they cannot contend that these allegations do not allege that they knew their allegations of conversations being recorded were factually baseless. As described above, this is not a simple dispute regarding the meaning of the Wiretap Act. This is a case where specific, false factual allegations were made, and LISNR has alleged that they were knowingly false.

Counter-Defendants argue that the lawsuit against LISNR cannot be baseless, because it survived (partially) a motion to dismiss. (Dkt. 251 at 11.) But the mere survival of Plaintiff's claims does not mean that his lawsuit has merit – especially if the result is achieved by virtue of false allegations. *See Mercatus Grp., LLC v. Lake Forest Hosp.*, 641 F.3d 834, 843 (7th Cir. 2011) ("[A]lthough successful petitioning activity may not, as a general matter, be deemed a sham, the fraud exception can remove that immunity if success is achieved by means of intentional falsehoods."). Here LISNR has specifically alleged that Plaintiff's lawsuit survived a motion to dismiss because "Plaintiff and Edelson opposed the Motion, relying on the false allegations in Plaintiff's Complaint (including the false allegation that the App 'recorded conversations')." (Dkt. 218 at ¶ 61.) If surviving a Rule 12 Motion were sufficient to avoid the sham exception, then any litigant could do so by pleading false facts. That is not the law.

Again, though it need not have done so, LISNR also pleaded the second element of the sham litigation exception. (*Id.* at ¶ 94; *see also id.* at ¶¶ 63, 105, 112, 119.) Counter-Defendants

argue that LISNR has not supported these factual allegations with *additional* factual allegations. LISNR, however, is not required to do so, because the Court must accept LISNR's factual allegations as true for purposes of deciding the present motion.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 759 n.2 (2017).[7]  Taking these allegations as true, LISNR has adequately pleaded the sham litigation exception.

### C.      The Fraudulent Misrepresentation Exception

LISNR has also has adequately pleaded the separate "fraudulent misrepresentation" exception.  This second exception has two elements: "(1) a misrepresentation was intentionally made [in a legal proceeding], with knowledge of its falsity; and (2) was material, in the sense that it actually altered the outcome of the proceeding."  *Mercatus*, 641 F.3d at 843.

LISNR has pleaded the first element both adequately and plausibly: "The allegations of the Initial Complaint included numerous baseless and false statements about the LISNR technology, statements that were made with knowledge of their falsity, with a lack of reliable substantiation for them, or both."  (Dkt. 218 at ¶ 51; *see also id.* at ¶¶ 112, 119.)  As described in above (see page 6) , LISNR also supported this allegation with detailed descriptions of the false factual allegations, including the false allegation that Edelson had conducted an investigation that confirmed their allegations that the App recorded users' private conversations.  (*Id.* at ¶¶ 53–56.)

LISNR has also adequately pleaded the second element, materiality.  As alleged in ¶ 61 of the Counterclaim, "Plaintiff and Edelson opposed the Motion [to Dismiss], relying on the false allegations" in their Complaint.  And as alleged and also discussed above (at page 13), the Court

---

[7] The Court also should disregard Counter-Defendants' arguments on page 12 of the Motion to Dismiss, which are built upon "facts" not found in the Counterclaims.

partially denied the Motion to Dismiss based on the false allegation that the App recorded users' conversations. Thus, the false allegations "altered the outcome of the proceeding," *Mercatus*, 641 F.3d at 843, and the second exception to the *Noerr-Pennington* doctrine is satisfied.

In sum, the *Noerr-Pennington* doctrine does not bar any of LISNR's counterclaims.

## III. The Court Should Deny the Motion to Dismiss Count I for Spoliation.

### A. The Court Should Apply Ohio Law to LISNR's Counterclaim for Spoliation.

While Indiana may not recognize a claim for first-party spoliation (*see* Dkt. 251 at 12), Ohio law does,[8] and Ohio law applies to the claim for damage the spoliation caused LISNR.

Indiana's choice of law rules apply the substantive law "of the place of the tort," which is "the place where the last event necessary to make the actor liable for the alleged wrong takes place." *See Buckeye State Mut. Ins. Co. v. Roe*, No. 1:12-CV-411-PPS, 2013 U.S. Dist. LEXIS 177329, at *8, 10-11 (N.D. Ind. Dec. 18, 2013) ("[T]he presumption is that . . . the court applies the law of the place of the tort, *the place where the last event necessary to make the actor liable for the alleged wrong takes place*." (emphasis added)).

In general, "the last event necessary to make the actor liable" is the injury or harm. *Alli v. Eli Lilly & Co.*, 854 N.E.2d 372, 378–79 (Ind. Ct. App. 2006); *see also Allen*, 766 N.E.2d at 1164–65 (last event necessary to establish common law fraud is damages). Thus, the court will presumptively apply the law of the place where the complaining party suffers its injury. *Vivanco v. Biomet, Inc.*, No. 3:03-CV-834 RM, 2005 U.S. Dist. LEXIS 8952, at *13 (N.D. Ind. May 9, 2005) (Indiana precedent "makes clear[ that] the place of the tort is where the plaintiff is harmed."). This presumption can be overcome only "if the place of the tort [i.e. injury] bears

---

[8] *See Smith v. Howard Johnson Co.*, 615 N.E.2d 1037, 1038 (Ohio 1993) (recognizing claim for spoliation "between the parties to the primary action (*i.e.,* the action in which the spoliated evidence would have been used).").

little connection to the legal action." *Buckeye State*, 2013 U.S. Dist. LEXIS 177329, at *11.

"The Indiana Supreme Court has cautioned that the place of the tort is rarely insignificant." *Id.*

Here, "the last event necessary to make" Counter-Defendants liable for spoliation is harm

or damages. *See Smith v. Howard Johnson Co.*, 615 N.E.2d 1037, 1038 (Ohio 1993) (The last

element of spoliation is "damages proximately caused by the defendant's acts."). As a

corporation, LISNR suffers harm where its principal place of business is located.[9] Thus, the last

event necessary to make Counter-Defendants liable occurred in Ohio, and Ohio law

presumptively applies to LISNR's counterclaim for spoliation.

Counter-Defendants suggest that the Court should apply the law of Indiana, the place

where the tortfeasor acted.[10] (Dkt. 251 at 8.) However, the state where the conduct occurred is

to be considered only if the Court "*first* determines that the location of the tort is insignificant to

the action." *Klein v. Depuy, Inc.*, 476 F. Supp. 2d 1007, 1012 (N.D. Ind. 2007); *accord Alli*, 854

N.E.2d at 379 n.4. Thus, "the court must determine the location of the tort, and then determine

whether that state's contacts are insignificant to the action, before it can even consider other

contacts." *Klein*, 476 F. Supp. 2d at 1012.

This presumption cannot be overcome under the facts as alleged, because Ohio is not

"insignificant" to this action. As alleged in the Counterclaims, Counter-Defendants well knew

that LISNR has "its principal place of business [in] Cincinnati, Ohio  45214" and that damage

would occur there.  (*See* Dkt. 1 at ¶ 7).  Edelson "identified and targeted LISNR" and researched

---

[9] *See Bunn-O-Matic Corp. v. Bunn Coffee Serv.*, 88 F. Supp. 2d 914, 920 (N.D. Ill. 2000) (affirming that plaintiff "felt the impact of . . . tortious conduct at its principal offices in Illinois"); *Creative Sales Corp. v. Dell Distrib.*, No. 82 C 2060, 1985 U.S. Dist. LEXIS 17884, at *13–14 (N.D. Ill. July 15, 1985) ("[T]he alleged injury occurred in Illinois since plaintiff is an Illinois corporation with its principal place of business in this state.").

[10] Of course, this position ignores the fact that the Edelson personnel were in Illinois when they acted.

which applications with LISNR's technology had "enough users to make pursuing the claims [against LISNR] financially attractive."  (Dkt. 218 at ¶ 11, 15, 35.)  Plaintiff and Edelson then filed baseless litigation against LISNR for the purpose of injuring "LISNR's reputation and its business" in Cincinnati, Ohio in an attempt to force LISNR to pay an extortionate settlement unrelated to the value of Plaintiff's claims.  (*Id.* at ¶¶ 63, 92–94, 105, 112, 119.)   The Counterclaims allege that damage occurred, and the concurrent financial loss is deemed to have occurred in Ohio.  (*Id.* at ¶¶ 95, 109, 114, 120.)

Counter-Defendants' reliance on *Simon v. United States*, 805 N.E.2d 798 (Ind. 2004) is misplaced.  (Dkt. 251 at 8.)  As noted therein, *Simon* is "one of the rare cases in which the place of the tort [i.e. Kentucky] is insignificant."  805 N.E.2d at 806.  None of the parties were from Kentucky.  *Id.*  Further, the Court noted the coincidental relationship of Kentucky to the claim: "The plane flew over multiple states during the course of the flight, and the crash might have occurred anywhere."  The present case is materially different because LISNR is from Ohio, and it has suffered its injuries at the only place it could suffer them—at its headquarters in Ohio.

Thus, Ohio is in no way "insignificant" to LISNR's claim, and Ohio law should apply to LISNR's counterclaim for spoliation.

**B.    The Counterclaims States a Viable Claim for Spoliation.**

Ohio law recognizes the tort of first-person spoliation, meaning dismissal is not warranted.  *See Smith*, 615 N.E.2d at 1038 (Ohio law recognizes claims for spoliation "between the parties to the primary action (i.e., the action in which the spoliated evidence would have been used).").  Further, such claims "may be brought at the same time as the primary action."  *Id.* Thus, LISNR may bring a counterclaim against Edelson and Plaintiff at this time for spoliation.

While Counter-Defendants briefly contest the merits of this counterclaim, they rely entirely on "facts" that are outside of, and contrary to, the counterclaims.  (*See* Dkt. 251 at 12.)  This is clearly impermissible on a motion to dismiss.  *Am. Family*, 2011 U.S. Dist. LEXIS 106596, at *5–6.  This Court should deny Counter-Defendants' Rule 12(b)(6) motion to dismiss Count I for spoliation.

## IV.   Count II for Abuse of Process is Adequately Pleaded.

Counter-Defendants first make the confusing argument that LISNR has not "identified" any "process" that was abused.  (Dkt. 251 at 13.)  That is not accurate, LISNR identified the filing of two different lawsuits.   (Dkt. 218 at ¶¶ 90–91.)  "An abuse of process claim may be predicated upon the filing of a complaint."  *Estate of Mayer v. Lax, Inc.*, 998 N.E.2d 238, 256 n.7 (Ind. Ct. App. 2013) (citing *Lindsay v. Jenkins*, 574 N.E.2d 324, 326 (Ind. Ct. App. 1991)).

Counter-Defendants also argue that LISNR has not adequately pleaded either element for abuse of process under Indiana law.  (Dkt. 251 at 13–14.)  Counter-Defendants are wrong on both the law and on the allegations of the Counterclaims.  "The two elements of abuse of process are: (1) ulterior purpose or motive; and (2) a willful use of process not proper in the regular conduct of the proceedings."  *Estate of Mayer v. Lax, Inc.*, 998 N.E.2d 238, 256 (Ind. Ct. App. 2013).  LISNR has adequately pleaded both.

### A.   Ulterior Purpose or Motive

LISNR has pleaded the first element—ulterior purpose or motive.  LISNR alleges that Plaintiff and Edelson's purpose or motive in filing suit was to injure LISNR's reputation and business so as to extort LISNR into offering a settlement "unrelated to the actual value of the purported Wiretap Act claim."  (Dkt. 218 at ¶ 94; *see also id.* at ¶¶ 63, 105, 112, 119.)  Although not required to do so, LISNR makes further factual allegations in support of this assertion:

"Plaintiff and Edelson understood that the natural consequence of filing and pursuing baseless litigation was to injure LISNR's reputation and its business" (*id.* at ¶ 92), and they "intended the[se] natural consequences" (*id.* at ¶ 93). *See also Boyle v. Anderson Fire Fighters Ass'n Local 1262*, 497 N.E.2d 1073, 1080 (Ind. Ct. App. 1986) ("when a tortfeasor voluntarily commits a wrongful act in reckless disregard of the natural and probable harm that is likely to follow, the law presumes that the tortfeasor intended the consequences proximately caused by the intentional act, and the tortfeasor may be held liable therefore.").

### B.    Improper Process

Counter-defendants argue that the second element (improper process) is not met here because Rackemann's "filing of the Complaint—the 'process' in question—was used for its intended purpose, which was to initiate a lawsuit."   (Dkt. 251 at 14 (internal quotation marks omitted).)  This ignores the established law.  The second element is met where the legal process at issue is either procedurally **_or_** substantively improper.  *Wine & Canvas Dev. LLC v. Muylle*, No. 1:11-cv-01598-TWP-DKL, 2015 U.S. Dist. LEXIS 146512, at *11 (S.D. Ind. Oct. 28, 2015) (Pratt, J.) ("To avoid an abuse of process claim, [the counterclaim-defendants'] action had to be both procedurally and substantively proper.").   If Counter-Defendants were correct that filing a baseless lawsuit did not satisfy the second prong, then there would never be any decisions supporting such claims.   But numerous cases recognize that filing a complaint containing baseless claims or false allegations (as specifically alleged here) is a ***substantively improper*** use of legal process.  *Id.* at *12 (evidence of filing baseless claims satisfies second element of an abuse of process claim); *Assocs. Fin. Servs. Co. v. Bowman, Heintz, Boscia & Vician, P.C.*, No. IP 99-1725-C-M/S, 2001 U.S. Dist. LEXIS 7874, at *28–29 (S.D. Ind. 2001) (abuse of process counterclaim alleging plaintiff "intentionally filed a complaint containing false allegations"

would not be dismissed); *I.A.E., Inc. v. Bishop*, 49 N.E.3d 138, 159 (Ind. Ct. App. 2015) (filing barred claims satisfies second element of abuse of process); *Exec. Builders, Inc. v. Trisler*, 741 N.E.2d 351, 359 (Ind. Ct. App. 2000) (jury verdict for abuse of process counterclaim upheld where Plaintiff had filed complaint containing false allegations); *see also Estate of Mayer*, 998 N.E.2d at 257.

Likewise, LISNR's allegations that Counter-Defendants improperly alleged that Rackemann had standing are also sufficient to meet the second element. *See Waterfield v. Waterfield*, 61 N.E.3d 314, 329–30 (Ind. Ct. App. 2016) (evidence that the plaintiff's attorney did not conduct adequate pre-suit investigation before filing claims can satisfy second element of abuse of process).

Counter-Defendants' cases regarding the second element are all consistent with these rules. (*See* Dkt. 251 at 14.) None of the underlying complaints in those cases contained baseless claims or false allegations. *See Konecranes, Inc. v. Davis*, No. 1:12-cv-01700-JMS-MJD, 2013 U.S. Dist. LEXIS 150056, at *16 (S.D. Ind. Oct. 18, 2013) (stating that the present case was "[u]nlike *Lindsay*, where there was direct evidence that the lawsuit lacked merit"); *see generally Panwar v. Access Therapies, Inc.*, No. 1:12-cv-00619-TWP-TAB, 2013 U.S. Dist. LEXIS 11019 (S.D. Ind. Jan. 28, 2013).

Based on this authority, LISNR has plausibly alleged both elements for abuse of process. The Court should disregard Counter-Defendants' efforts to go outside the pleadings, arguing the merits of this counterclaim (*see* Dkt. 251 at 13–14). *Am. Family*, 2011 U.S. Dist. LEXIS 106596, at *5–6. The Court should likewise disregard Counter-Defendants' repeated calls for LISNR to come forward with "evidence" in order to survive the Motion to Dismiss. (Dkt. 251 at

14.)  The only question is whether, taking the allegations in the Counterclaims as true, LISNR has plausibly pleaded the elements of abuse of process.  It has.

Because LISNR has sufficiently pleaded both elements of its abuse of process counterclaim, the Court should deny Counter-Defendants' motion to dismiss this claim.

## V.       Count III for Declaratory Judgment Is Proper Because it Is Not Redundant and it Serves the Useful Purpose of Avoiding Future Litigation Over the App.

Counter-Defendants argue that the Court should strike or dismiss LISNR's counterclaim for declaratory judgment, because it is a mirror image of Plaintiff's claims for violations of the Wiretap Act.  (Dkt. 251 at 14.)  Counter-Defendants again ignore applicable precedent and facts.

First, Counter-Defendants are wrong when they argue that "[r]esolution of the claims in the [Plaintiff's] complaint will necessarily resolve the question on which LISNR seeks a declaratory judgment."  (Dkt. 251 at 15.)  Magistrate Dinsmore has now recommended that Plaintiff's claims be dismissed for lack of subject matter jurisdiction.  (Dkt. 253.)  Thus, at this point, Plaintiff's claims are unlikely to be resolved on the merits.  But even if the dismissal of Plaintiff's Complaint were not imminent, this Court can and should allow LISNR's declaratory judgment counterclaim to go forward.

While a court *may* choose not to entertain a declaratory judgment claim where it would serve no useful purpose, the court also has the discretion to adjudicate the claim.  *See Nucor Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 578–79 (7th Cir. 1993).  In *Dugan v. City of West Chicago*, No. 08 C 2223, 2008 U.S. Dist. LEXIS 104549 (N.D. Ill. Dec. 29, 2008), the court applied this principle and denied a motion to dismiss a counterclaim for declaratory judgment.  *Id.* at *3–5.  The court found that the declaratory judgment counterclaim would serve a useful purpose, because "[t]he Counterclaim . . . seeks to establish a definitive

finding of the [Defendant's] obligations . . . ; a finding it wishes to use not only to defend [in the present litigation], but also to head off any future litigation." *Id.* at *4–5.[11]

This Court similarly should deny Counter-Defendant's Motion because, as in *Dugan*, the counterclaim would serve a useful (and important) purpose of heading off any future litigation. Plaintiff and Edelson have moved to have Mr. Evans substituted for Plaintiff so that Mr. Evans can continue to litigate Plaintiff's claims.  (Dkt. 218 at ¶¶ 79, 100.)  Counter-Defendants have also made clear that, if this request is denied, they will simply file a new lawsuit in the name of Mr. Evans or another client that Edelson solicited.  (Dkt. 218 at ¶¶ 98–99; *see also* Dkt. 177 at 17.)[12]  To avoid being held hostage by threats of future lawsuits, LISNR now seeks—as in *Dugan*—definitive findings on the App so as "to head off any future litigation."  2008 U.S. Dist. LEXIS 104549 at *5.  Thus, as in *Dugan*, the declaratory judgment counterclaim serves a useful purpose, and the Motion to Dismiss should be denied.

## VI.   Count IV for Malicious Prosecution is Adequately Pleaded.

Contrary to the arguments made in the Motion to Dismiss, LISNR has adequately pleaded its counterclaim for malicious prosecution, including the elements of (1) malice; and (2) favorable termination.

---

[11] Plaintiff relies upon *Tempco Electric Heater Corp. v. Omega Engineering, Inc.*, 819 F.2d 746 (7th Cir. 1986) to suggest that a party may only state a claim for declaratory judgment when one of two particular situations is present.  (Dkt. 251 at 15.)  While *Tempco* does lay out two categories of declaratory judgment claims, it never states that *all* declaratory judgment actions must fit within these two categories.  *See Tempco*, 819 F.2d at 749.

[12] Even though Plaintiff may not be able to continue litigating his claims in his own name, this does not eliminate the actual case and controversy between LISNR and Plaintiff, because Plaintiff continues to claim that the App and LISNR's technology record human oral communications and violate the Wiretap Act.  He also has indicated that he will continue to pursue litigation against LISNR in the name of Mr. Evans or another plaintiff.

### A.     Malice

LISNR has alleged that, in filing both the Initial Complaint and the Current Complaint, Plaintiff and Edelson acted maliciously by including in the complaints statements that they knew were false and claims that they knew were baseless, for the purpose of harming LISNR's business and reputation so as to extort an exorbitant settlement from LISNR.  (Dkt. 218 at ¶ 105.)  This meets the standard for malice, certainly at the pleading stage.  *See Reynolds v. United States*, 549 F.3d 1108, 1115 (7th Cir. 2008) (applying Indiana law and holding that the element of malice may be inferred from a lack of probable cause or the failure to make a reasonable inquiry); *see also Satz v. Koplow*, 397 N.E.2d 1082, 1085 (Ind. Ct. App. 1979) ("Malice may be inferred from a lack of probable cause.").

LISNR has pleaded numerous facts from which malice may be inferred.  It has alleged the lack of an adequate investigation.  (Dkt. 218 at ¶ 50.)  It has alleged that Edelson's investigation of the App revealed facts demonstrating there could be no eavesdropping on users' conversations.  (*Id.* at ¶¶ 38–47, 51.)  Edelson and Plaintiff then brought two lawsuits that lacked probable cause.  That is, Counter-Defendants filed complaints that they knew included false statements and baseless claims.  (*See*, *supra*, Sections II.B–C, IV.B.)  Malice may be inferred from all of these facts.

In arguing that LISNR has not established malice, Counter-Defendants make a number of errors.  They rely upon a general legal encyclopedia for their propositions of law, instead of focusing on actual Indiana authorities.  (Dkt. 251 at 16–17.)  They then ignore the allegations discussed above, while focusing on irrelevant allegations, arguing over the truth of LISNR's allegations, and inserting their own contrary "facts" that are outside the pleadings.  (*Id.*)  None of

this is proper on a Rule 12(b)(6) motion to dismiss, and it warrants denial of Counter-Defendants' motion.

### B.      Favorable Termination

LISNR has also adequately pleaded favorable termination.  Under Indiana law,

> Civil proceedings may be terminated in favor of the person against whom they are brought . . . , (1) by the favorable adjudication of the claim by a competent tribunal, or (2) by the withdrawal of the proceedings by the person bringing them, or (3) *by the dismissal of the proceedings because of his failure to prosecute them.*  A favorable adjudication may be by a judgment rendered by a court after trial or upon demurrer *or its equivalent.*

*Snider v. Lewis*, 276 N.E.2d 160, 170 (Ind. Ct. App. 1971) (emphasis in original).  Courts have found that the favorable termination element is met where a case was dismissed without prejudice for lack of venue.  *Hammond Lead Prods., Inc. v. Am. Cyanamid Co.*, 570 F.2d 668, 673 (7th Cir. 1977).  Courts have also found that the element is met where a case was dismissed without prejudice for failure to prosecute—even where the party who failed to prosecute then filed a second, identical case.  *Snider*, 276 N.E.2d at 172.

Again, LISNR has adequately pleaded favorable termination.  It has alleged that "Plaintiff, through Edelson, voluntarily dismissed his Initial Complaint after it was demonstrated that it included baseless claims."  (Dkt. 218 at ¶ 107.)  Plaintiff, through Edelson, then filed the present suit, which this Court dismissed in part.  (*Id.* at ¶ 61.)  More recently, Plaintiff

> sought to withdraw from the present proceedings through his Motion for Leave to Amend Complaint and Scheduling Order and therein acknowledged that there was no basis for asserting the claims and acknowledged that the claims should be terminated on the merits because he never experienced the wrongs alleged in the Current Complaint.

(*Id.* at ¶ 108.)  Thus, the Magistrate has now recommended that the remainder of Plaintiff's suit be dismissed for lack of subject matter jurisdiction.  (Dkt. 253.)  Regardless of whether Edelson

or Mr. Evans may still file additional cases against LISNR, the first two cases have been dismissed and, thus, have terminated in LISNR's favor.  *Snider*, 276 N.E.2d at 172.[13]

Because LISNR has adequately pleaded all elements of its malicious prosecution claim, the Court should deny Counter-Defendants motion to dismiss this claim.

## VII.    LISNR Has Stated a Viable Claim in Count V Under the Illinois Deceptive Trade Practices Act.

### A.    The Illinois Deceptive Trade Practices Act Applies to Parties That Violate it While in Illinois.

While Counter-Defendants claim that Indiana does not have a Deceptive Trade Practices Act (*see* Dkt. 251 at 18), Illinois does.  *See* 815 ILCS 510.  Counter-Defendants acknowledge that the Illinois Deceptive Trade Practices Act could apply to LISNR's counterclaim because "Edelson PC's principal office, at which both Amir Missaghi and Greer Rubinstein work, is located" in Illinois.  (Dkt. 251 at 19.)

Because the only activity regarding this claim occurred in Illinois, it is presumed that Illinois law applies.[14]  The presumption cannot be overcome because Illinois's ties to this case are not insignificant.  One of the parties—Edelson—is located in Illinois, and Edelson's agents

---

[13]  In arguing to the contrary, Counter-Defendants rely almost entirely on out-of-Circuit authority applying non-Indiana law.  (Dkt. 251 at 17–18.)  They also rely heavily on authorities where the underlying action—i.e. the action that was maliciously prosecuted—was criminal, rather than civil, as is the case here.  (*Id.*)

[14]  To state a claim under the [Illinois] Uniform Deceptive Trade Practices Act ("UDTPA") plaintiff must allege that defendants publicized untrue or misleading statements that disparaged plaintiff's goods or services."  *Labor Ready, Inc. v. Williams Staffing, L.L.C.*, 149 F. Supp. 2d 398, 413 (N.D. Ill. 2001).  Thus, unlike spoliation which includes the element of damages, the last act for establishing a violation of the Illinois Deceptive Trade Practices Act is publicizing untrue or misleading statements about LISNR and its products.  This "last act" occurred in Illinois.  (Dkt. 218 at ¶¶ 23–24, 27, 65, 68, 69, 72–74.)  Therefore, Illinois law presumptively applies to LISNR's Deceptive Trade Practices Act claim.

and employees committed their tortious actions from offices in Illinois.  Thus, the Court should

apply Illinois law to LISNR's counterclaim for violation of the Deceptive Trade Practices Act.

**B.      The Counterclaim States a Valid Claim for Violation of the Illinois Deceptive Trade Practices Act.**

Counter-Defendants argue that LISNR does not have a viable claim under the Illinois

Deceptive Trade Practices Act ("The Act"), because Edelson did not make any statements

disparaging the "quality" of LISNR's technology.  (Dkt. 251 at 19.)  But the law in Illinois does

not agree.  "To state a claim under the . . . Act, a plaintiff must allege that defendants publicized

untrue or misleading statements that disparaged plaintiff's goods or services."  *Labor Ready, Inc.*

*v. Williams Staffing, L.L.C.*, 149 F. Supp. 2d 398, 413 (N.D. Ill. 2001); *accord Morton Grove*

*Pharms., Inc. v. Nat'l Pediculosis Ass'n*, 525 F. Supp. 2d 1039, 1049 (N.D. Ill. 2007); *Flentye v.*

*Kathrein*, 485 F. Supp. 2d 903, 918 (N.D. Ill. 2007).

Counter-Defendants argue that LISNR's claim fails because they did not comment on the

"quality" of LISNR's goods or services.  But "quality" has a broad meaning.  For instance, a

statement is actionable where it comments on the "safety profile and effectiveness" of a

business's product.  *Morton*, 525 F. Supp. 2d at 1047, 1049 (denying Rule 12(b)(6) motion to

dismiss).  Courts have also found that statements are actionable even if they do not directly

comment on the quality of goods or services, where they negatively reflect on such quality.  For

instance, "[s]tating that [the company] is bankrupt directly attacks the quality of [the company's]

business and indirectly undermines the quality of [the company's] services—an insolvent

company cannot reliably deliver on-going services."  *M&R*, 321 F. Supp. 2d at 952 (denying

Rule 12(b)(6) motion to dismiss.  As another example, in *Labor Ready*, the court credited the

plaintiff's argument that a statement that the plaintiff "is operating illegally and will be shut

down by the City of Chicago" "go[es] to the heart of [plaintiff's] services."  149 F. Supp. 2d at 413 (denying Rule 12(b)(6) motion to dismiss UDTPA claim).

Under this case law, LISNR has more than adequately pleaded statements that directly and indirectly disparage the quality of LISNR's products.  For example, LISNR has pleaded that Edelson told App users that the App "'secretly turns on your phone's microphone and begins listening in'" on and recording conversations (Dkt. 218 at ¶¶ 22, 27, 49, 54, 65, 68, 72, 80); it "'track[s] you as you go about your business'" (Dkt. 218 at ¶ 22); and "'what the App [does] "is a huge privacy violation" and . . . it violates the Wiretap Act'" (Dkt. 218 at ¶¶ 22, 49, 65, 68.).

These statements were intended to and did disparage the App (including LISNR's technology).  The statements indicate that the App with LISNR's technology has undesirable attributes, that it secretly violates user's privacy, and that it is a tool for violating federal criminal statutes.  Because LISNR has adequately pleaded statements that disparage the quality of LISNR's business and product, the Court should deny Counter-Defendants' motion to dismiss this counterclaim.

## VIII.   The Court Should Deny the Motion to Dismiss Count VI for Defamation.

Counter-Defendants advance several arguments for why the Court should dismiss LISNR's counterclaim for defamation.  None has merit.

### A.       The Litigation Privilege Does Not Bar LISNR's Counterclaim.

Counter-Defendants first argue that statements made by an attorney during or in preparation for litigation are absolutely privileged.  (Dkt. 251 at 19.)  The case that Counter-Defendants cite in support, however, misinterpreted Indiana law by extending the privilege to statements made in preparation for litigation.  (*See id.* (citing *Med. Informatics Eng'g, Inc. v. Orthopaedics Northeast, P.C.*, 485 F. Supp. 2d 716 (N.D. Ind. 2006)).)

In *Medical Informatics*, the court addressed the application of the litigation privilege under Indiana state law.  The federal court concluded that Indiana state courts had wholesale adopted Restatement (Second) of Torts § 586, which extends the litigation privilege for attorneys to "communications preliminary to a proposed judicial proceeding." *Medical Informatics*, 285 F. Supp. 2d at 723.

But that holding did not consider applicable precedent.  In particular, it ignored the Seventh Circuit decision in *Raybestos Prods. Co. v. Younger*, 54 F.3d 1234 (7th Cir. 1994).  In *Raybestos*, the Seventh Circuit, applying Indiana law, discussed the parallel Restatement  Section 587, which addresses the litigation privilege *for parties*. *Id.* at 1245.  As with Section 586 (for lawyers), Section 587 extends the privilege to statements made preliminary to judicial proceedings.  And just as some Indiana state courts have cited Section 586, other Indiana state courts have also cited Section 587. *See*, *e.g.*, *Briggs v. Clinton County Bank & Trust Co.*, 452 N.E.2d 989, 997 (Ind. Ct. App. 1983).

In *Raybestos* the Seventh Circuit rejected the notion that Indiana state courts had fully adopted Section 587, stating instead:

> "Indiana law [does] afford an absolute privilege to statements made in the course of a judicial proceeding." *Chrysler Motors Corp. v. Graham*, 631 N.E.2d 7, 9 (Ind. Ct. App. 1994).  But the ***Indiana courts have never extended this privilege, as § 587 of the Restatement does, to statements made prior to a judicial proceeding*** or, as in this case, to trial preparation material.

*Raybestos*, 54 F.3d at 1245 (emphasis added).

The same is true here as to Section 586.  While Indiana law recognizes that "counsel . . . are absolutely privileged to publish defamatory matter in the course of judicial proceedings," *Briggs*, 452 N.E.2d at 997, Indiana state courts have not extended this privilege for attorneys to statements made prior to a judicial proceeding.

28

This is critical, because all of the statements that LISNR alleges in its defamation counterclaim were made by Edelson in emails to potential plaintiffs (i.e. outside of judicial proceedings and prior to the time that each potential plaintiff initiated judicial proceedings). (*See* Dkt. 218 at 22–24, 27, 65, 68, 69, 72.)

Moreover, many of the statements underlying LISNR's defamation claim were made by Greer Rubinstein.  And as Counter-Defendants have stated, she is not an attorney.  (Dkt. 251 at 25.)  Thus, the claim regarding her statements is actually governed by Section 587 and, under the binding precedent of *Raybestos*, the litigation privilege does not bar LISNR's defamation counterclaim.

### B.   LISNR Has Adequately Alleged Defamatory Statements.

Counter-Defendants next argue that the statements in LISNR's allegations are not actionable, because they are not "definitively false."  (Dkt. 251 at 20.)  Counter-Defendants are wrong.  LISNR has alleged:

- Mr. Missaghi made the following "false statement[]": The Colts' App containing LISNR's technology "'track[s] you as you go about your business.'"  (Dkt. 218 at ¶ 22.)

- Edelson made statements that the Colts' App containing LISNR's technology records conversations (*id.* at ¶¶ 27, 65, 68), even though this is not true (*id.* at ¶¶ 19, 24, 39, 44, 47, 66, 73, 77).

- Edelson made statements that the App "secretly" or "surreptitiously" turns on the microphones on users' phones (*id.* at ¶¶ 22, 27, 68), even though the App actually seeks user consent to activate users' microphones and other features of the App show that users were aware the App was "listening" (*id.* at ¶¶ 40–42).

- Edelson told users of the App that "'what the App [does] . . . violates the Wiretap Act'" (*id.* at ¶¶ 22, 65), even though this is false, as Edelson knew based on its investigation (*id.* at ¶¶ 39–47, 53).

Edelson may dispute these allegations, but for purposes of deciding the present motion these well-pleaded allegations must be accepted as true.

29

Further, under Indiana law a statement may be actionable as defamation, even if the statement is not, on its face, verifiably false so long as the statement *implies* an underlying fact that is false. *See*, *e.g.*, *Davidson v. Perron*, 716 N.E.2d 29, 37 (Ind. Ct. App. 1999); *McQueen v. Fayette County Sch. Corp.*, 711 N.E.2d 62, 64 (Ind. Ct. App. 1999). For instance, in *Davidson*, the statement that "[p]olice certainly have privileges, but I do not believe that they should be abused in the way that some officers like Davidson have done" survived the defendant's motion to dismiss because the statement "implie[d] verifiable facts regarding Davidson's conduct and performance as a police officer." 716 N.E.2d at 37. According to the court, "[a] reasonable trier of fact could conclude the statement amounted to a charge of official misconduct against Davidson . . . imputing to the reader that Davidson has abused his privileges as a police officer." *Id.*

LISNR has also alleged that Edelson told users that the App "listens in" on conversations. (Dkt. 218 at ¶¶ 22, 23, 27, 68, 72.) This statement implies several false facts. First, it implies that the App took in sound in such a way that the App could make out the substance, import, or content of a user's conversation. Second, this statement implies that an actual person somewhere was listening to the conversations that are supposedly picked up by the App. Both of these implied "facts" are false. (*Id.* at ¶¶ 30–31, 38–39, 46, 56, 66.) Further, when Edelson made statements to users of the App, it failed to disclose the other material information it had showing these implied facts were false, thus leading users to reach incorrect conclusions about the App, LISNR, and LISNR's technology. (*Id.* at ¶¶ 24–25, 73–74.) Therefore, Edelson's statements about "listening" are actionable as defamation.

Counter-Defendants argue that any statement that LISNR has violated federal law "amount[s] to a [non-actionable] legal *theory* that Lisnr's conduct violates the Wiretap Act."

(Dkt. 251 at 21.)  To support this proposition, Counter-Defendants cite only two cases from non-Indiana courts applying non-Indiana law.  (*See id.* (citing *Ayyadurai v. Floor64, Inc.*, 270 F. Supp. 3d 343, 2017 U.S. Dist. LEXIS 144030 (D. Mass. 2017); *Hellmuth v. Efficiency Energy LLC*, No. H-14-2945, 2016 U.S. Dist. LEXIS 19904 (S.D. Tex. Feb. 18, 2016)).)

These cases are not binding precedent and are also distinguishable from the present case.  In *Ayyadurai*, the court found that certain conclusions (e.g. the conclusion that a person had violated the law) were not actionable at least in part because the speaker had disclosed all of the underlying facts and those facts were true and accurate.  2017 U.S. Dist. LEXIS 144030, at *25–29.  Here, Edelson did not disclose all of the material facts, and the "facts" upon which it based its assertion of illegality were false.  In *Hellmuth*, the speaker had only opined that certain conduct "most likely" violated the law.  2016 U.S. Dist. LEXIS 19904, at *9–10.  But here, Edelson stated definitively and without qualification that LISNR's conduct violated the law.[15]

Counter-Defendants also argue that LISNR cannot base its counterclaim on omissions of fact unless the omissions provide "critical context" such that the statements are untrue without this context.  (Dkt. 251 at 22.)  In fact, a statement is actionable where an omission renders the statement untrue—*or where the omission leads persons hearing the statement to reach an untrue conclusion*.  This is made clear in the case that Counter-Defendants rely on.  *See Associates Corp. of N. Am. v. Smithley*, 621 N.E.2d 1116, 1120 (Ind. Ct. App. 1993).

Nonetheless, LISNR's allegations fall squarely within this holding.  As explained above, Counter-Defendants omitted material facts such as the fact that nothing was really recorded or

---

[15]  Counter-Defendants also argue that any statements made by Greer Rubinstein regarding the legality of LISNR's conduct are not actionable, because she is a non-attorney.  (Dkt. 251 at 25.)  Mr. Rubinstein, however, is an employee of Edelson, a law firm.  (Dkt. 218 at ¶ 65.)  Furthermore, she was acting as an employee or agent of Edelson when she made each of the statements in the Counterclaims, and she was expressing the positions of the firm, not personal opinions.  (*Id.* at ¶ 2.)

that no human could ever actually hear a conversation.  By telling users that the App "listens in" without disclosing the other facts they knew, Edelson ensured that the users would reach false conclusions about how the App operates (and would conclude that the App unquestionably violates federal privacy law).

In sum, each of the statements that LISNR has alleged is actionable as defamation. Further, as long as the Court determines that at least *one* of the statements is actionable, the Court should deny the motion to dismiss LISNR's counterclaim *in toto*.  As the Seventh Circuit recently held, "[a] motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of *parts* of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief."  *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015).  LISNR's counterclaims satisfy this standard.

### C.    LISNR Has Adequately Alleged Damages and Causation.

Counter-Defendants argue that LISNR's defamation claim also fails due to a lack of causation.[16]  This argument is wrong because, as to the statements that are defamation *per se*, causation and damages are presumed.  As to the other claims, LISNR has pleaded causation, and Counter-Defendants are not entitled to test those allegations at the pleading stage through their own description of what they believe LISNR's ultimate claim and proof will be.

First, as Counter-Defendants seem to admit, if any of the statements at issue here are defamation *per se*, then LISNR need not plead causation and damages.  (*See* Dkt. 251 at 23.)  *See also N. Ind. Pub. Serv. Co. v. Dabagia*, 721 N.E.2d 294, 303 (Ind. Ct. App. 1999) (for defamation per se damages are "presumed to follow from the statement").  Statements are only

---

[16] Counter-Defendants state that "LISNR . . . cannot show damages," but they really only address causation of damages—not whether LISNR has adequately alleged the damages themselves.  (*See* Dkt. 251 at 22–25.)

defamatory *per se* when they do not require any additional context to determine, for instance, the identity of the party being defamed.  Counter-Defendants admit that at least one of the statements "doesn't require context"—the statement made by an Edelson employee, Greer Rubinstein, to a user that the App records users' conversations and violates federal law.  (*Id.* at 25.)  This statement *is* defamatory *per se*, because it was made at the same time that Ms. Rubinstein provided a copy of the complaint in this case, which identifies LISNR, thus eliminating the need for any further context.  (*See id.* at 24 ("Greer Rubinstein published the complaint to an absent class member . . . , so he is likely to have understood the statements contained therein to refer to Lisnr.").

Counter-Defendants also argue that most of the other statements alleged are not defamation *per se*, because the statements do not mention LISNR by name and the statements are, thus, defamatory only in context.  (Dkt. 251 at 22.)  As to all of these defamatory statements, LISNR alleges that "[a]s a result of Plaintiff's and Edelson's actions, LISNR has suffered and will continue to suffer damages in an amount to be proved at trial, but not less than $500,000.00."  (Dkt. 218 at ¶ 120.)  Specifically, "the Colts opted to cease doing business with LISNR and removed LISNR's product from the Colts' App based upon the issues and publicity surrounding the baseless allegation that the App with LISNR's technology eavesdropped on users' conversations in violation of the Wiretap Act."  (*Id.* at ¶ 62.)

Counter-Defendants argue that the connection between the defamatory statements and the damages is implausible.  (Dkt. 251 at 23–25.)  It is not.  Edelson was directly publicizing false information to numerous users of the Colts' App.  (Dkt. 218 at ¶¶ 27, 72.)  There is nothing at all implausible, especially at the initial pleading stage, about a claim that making such false statements would cause the Colts  (and others) to stop doing (or refuse to do) business with

LISNR, which is exactly what did happen.   (*Id.* at ¶ 62.)   Moreover, the fact that the Counterclaim specifies one example of damages does not foreclose LISNR from proving more at trial.  This chain of causation from Counter-Defendants' alleged misconduct is simple, plausible, and logical.  Thus, there is no basis to dismiss this counterclaim under Rule 12.

## IX.    Amount in Controversy

In his recent Report and Recommendation (Dkt. 253), Magistrate Dinsmore advised LISNR to address "how [it] establishes the amount in controversy requirement for diversity jurisdiction over its state law claims."  (*Id.* at 4 n.2.)

Diversity jurisdiction is one basis for subject matter jurisdiction.  "In determining whether subject matter jurisdiction exists[ at the pleading stage], the court must accept all well-pleaded facts alleged in the [counterclaim] and draw all reasonable inferences from those facts in the [counter-plaintiff's] favor."  *Overton & Sons Tool & Die Co. v. Precision Tool, Die & Mach. Co.*, No. 1:13-cv-01302-TWP-DKL, 2014 U.S. Dist. LEXIS 58451, at *3 (S.D. Ind. Apr. 28, 2014) (Pratt, J.).  The counter-plaintiff's "estimate of the claim's value must be accepted unless there is 'legal certainty' that the controversy's value is below the threshold."  *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541 (7th Cir. 2006).  The "legal certainty standard 'is a cousin to the question whether a particular argument is frivolous.'"  *Green v. Monarch Recovery Mgmt.*, No. 1:13-cv-00418-SEB-MJD, 2013 U.S. Dist. LEXIS 131781, at *10 (S.D. Ind. Sept. 16, 2013) (Dinsmore, Mag.) (quoting *Pratt Cent. Park Ltd. P'ship v. Dames & Moore, Inc.*, 60 F.3d 350, 354 (7th Cir. 1995)).

In its Counterclaims, LISNR has expressly alleged that "the amount in controversy exceeds $75,000."  (Dkt. 218 at ¶ 4.)  The Court should accept this value as true unless it appears

to a legal certainty that the controversy's value is below $75,000.  In determining this question, the Court consider the additional factual allegations that LISNR has pleaded:

- "As a result of Edelson's actions[ in violating the Deceptive Trade Practices Act (i.e. Count V)], LISNR has suffered and will continue to suffer damages in an amount to be proved at trial, including incurring attorney fees of at least $400,000.00 in defending claims in the Initial and Current Complaints."  (*Id.* at ¶ 114.)

- "As a result of Plaintiff's and Edelson's [defamation of LISNR (i.e. Count VI)], LISNR has suffered and will continue to suffer damages in an amount to be proved at trial, but not less than $500,000.00."  (*Id.* at ¶ 120.)

At the pleading stage, the Court must accept these two factual allegations as true.  *Overton*, 2014 U.S. Dist. LEXIS 58451, at *3.  Accepting these factual statements as true, it cannot appear to a legal certainty that the controversy's value is below $75,000.  Thus, LISNR has established the amount in controversy requirement for diversity jurisdiction over its state law counterclaims.

## CONCLUSION

There is no basis for this Court to conclude that the allegations of LISNR's Counterclaims are in any way insufficient, nor that it lacks jurisdiction over these claims.  Accordingly, the Court should deny  Counter-Defendants' Motion to Dismiss Counterclaims in its entirety.

Respectfully submitted,

  */s/ Jesse Jenike-Godshalk*

| | |
|---|---|
| Thomas Feher (*pro hac vice*) | Jesse Jenike-Godshalk (*pro hac vice*) |
| Thomas F. Zych (*pro hac vice*) | Thompson Hine LLP |
| Thompson Hine LLP | 312 Walnut Street, Suite 1400 |
| 3900 Key Center | Cincinnati, Ohio 45202 |
| 127 Public Square | Phone: 513-352-6702 |
| Cleveland, Ohio  44114 | Fax: 513-241-4771 |
| Phone: 216-566-5605 | Jesse.Godshalk@ThompsonHine.com |
| Fax: 216-566-5800 | |
| Tom.Feher@ThompsonHine.com | *Attorneys for Defendant/Counterclaim-* |
| Tom.Zych@ThompsonHine.com | *Plaintiff LISNR, Inc.* |

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 2, 2018, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Jesse Jenike-Godshalk*