UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ALAN RACKEMANN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-00624-TWP-MJD |
| | ) | |
| LISNR, INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

This matter is before the Court on Plaintiff's *Motion to Dismiss Counterclaims.* [Dkt. 250.] District Judge Tanya Walton Pratt designated the undersigned Magistrate Judge to issue a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). [Dkt. 256.] For the reasons set forth below, the Magistrate Judge recommends Defendant's motion be **GRANTED IN PART** and **DENIED IN PART**.[1]

**I.    Background**

Defendant LISNR, Inc.'s ("LISNR") counterclaims are all that remain of this action. Plaintiff initially alleged a putative class action against Defendants under federal anti-wiretapping laws. [Dkt. 1.] Plaintiff asserted the Indianapolis Colts' mobile phone application (the "App") intercepts and records users' private conversations. During the course of discovery, however, Plaintiff determined that the version of the App on his phone did not include the "listening" technology at issue in the lawsuit. Plaintiff attempted to amend his Complaint to withdraw himself as the named class representative and substitute a new plaintiff (Mr. Evans).

---

[1] Defendant LISNR's *Motion for Leave to File Sur-Reply in Opposition to Motion to Dismiss Counterclaims* [Dkt. 293] is **GRANTED**.

1

The Court denied Plaintiff's motion for leave to amend and dismissed Plaintiff's claims for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(h)(3). [Dkt. 252; Dkt. 288.]

Plaintiff now asserts LISNR's counterclaims should be dismissed, both because Plaintiff believes the counterclaims procedurally cannot be maintained in the absence of the underlying claims, and because they fail on the merits.

## II.     Legal Standard

To survive a Rule 12(b)(6) challenge, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that it "give[s] the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal quotations omitted). When considering such motions, the Court accepts "all well-pleaded factual allegations as true and view[s] them in the light most favorable to the plaintiff." *Lavalais v. Village of Melrose Park,* 734 F.3d 629, 632 (7th Cir. 2013). Although Rule 8 does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

The claim must be "plausible on its face." *Twombly,* 550 U.S. 544 at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. The plaintiff "must do more in the complaint than simply recite the elements of a claim." *Zellner v. Herrick,* 639 F.3d 371, 378 (7th Cir. 2011). Complaints that offer "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678.

### III. Discussion

LISNR asserts numerous counterclaims against different combinations of Plaintiff, Mr. Evans, and Edelson, the law firm representing Plaintiff and Mr. Evans. The Court will address each of them in turn below.

#### A. Declaratory Judgment Action – Federal Question Jurisdiction

LISNR seeks a declaratory judgment under 28 U.S.C. §§2201 that the App does not violate the Wiretap Act. LISNR asserts this counterclaim against Plaintiff, Mr. Evans (the proposed new plaintiff), and Edelson. LISNR believes it should be permitted to pursue the declaratory judgment action (even in the absence of Plaintiff's wiretap claim) in order to "avoid continual litigation over the App." [Dkt. 218 at 33; ¶101.]

The Declaratory Judgment Act ("DJA") provides that a court "may declare the rights and other legal relations of any interested party," 28 U.S.C. § 2201(a). Under the DJA, district courts have "unique and substantial discretion in deciding whether to declare the rights of litigants." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007) (internal citation omitted). However, an "actual controversy" must exist to give the court subject matter jurisdiction to exercise this discretionary power. *Id.* "The DJA's 'actual controversy' requirement is equivalent to Article III's case-or-controversy requirement." *Duehning v. Aurora E. Unified Sch.*, 102 F. Supp. 3d 968, 980 (N.D. Ill. 2015) (citing *MedImmune*, 549 U.S. at 126–27).

At this time, there is no actual controversy under the Wiretap Act with the parties against whom LISNR asserts the claim. The Court dismissed Plaintiff's Wiretap claim for lack of subject matter jurisdiction. LISNR asserts that Mr. Evans and Edelson plan to file a new lawsuit, and the Court should allow the declaratory judgment action as a means of "heading off any future litigation." [Dkt. 275 at 23.] LISNR cites one case in support of its argument that the Court

3

should adjudicate the claim: *Dugan v. City of West Chicago*, 2008 WL 5423565 (N.D. Ill. 2008). In *Dugan*, a union fund filed ERISA claims against the City of Chicago. The City joined the local union as a counter-defendant in its declaratory judgment action counterclaim against the union fund. The local union filed a motion to dismiss, arguing that because the City sought no relief from the local union, it should be dismissed out of the counterclaim. The court reasoned that "the City does not fail to state a claim for relief simply because it asks for a declaration of its own obligations, rather than the obligations of the Union. When a party seeks declaratory judgment about its own obligations, it does so in the hope of establishing those obligations once and for all and preventing future suits based on the same conduct." *Dugan*, 2008 WL 5423565 at *2.

LISNR argues that, like the court in *Dugan*, this Court should allow the declaratory judgment action to proceed to prevent future litigation. What LISNR fails to consider in its argument, however, is that in *Dugan*, the underlying ERISA dispute between the City and the union fund was intact, allowing the City to join the local union as a counter-defendant. Here, the underlying dispute between LISNR and Plaintiff has been dismissed. There is no wiretap claim, therefore there is no actual controversy for the Court to adjudicate. As the Court lacks subject matter jurisdiction over LISNR's declaratory judgment action, the Magistrate Judge recommends the Court **GRANT** Plaintiff's Motion as to that claim pursuant to Rule 12(h)(3).

### B. State Law Claims – Diversity Jurisdiction

In the absence of Defendant LISNR's federal question claim, the Court must determine whether it has diversity jurisdiction over the remaining state law claims. "If there is no jurisdiction over the plaintiff's suit, there would be jurisdiction over the counterclaim only if, were it filed as a free-standing suit, it would be within federal jurisdiction." *El v. AmeriCredit*

4

*Fin. Servs., Inc.*, 710 F.3d 748, 752 (7th Cir. 2013). The remaining counterclaims are based exclusively on state law, so the only basis for federal jurisdiction is diversity jurisdiction, which requires that the parties be of diverse citizenship and the amount in controversy exceed $75,000. *Id.*

There is no dispute that the parties are diverse. LISNR alleges the amount in controversy in this case exceeds $75,000[2], and Plaintiff has failed to counter that such a recovery would be "legally impossible." *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541 (7th Cir. 2006). Consequently, the Court concludes the jurisdictional amount has been satisfied and subject matter jurisdiction is proper. The Court now proceeds to the merits of LISNR's state law claims.[3]

1. *Abuse of Process*

LISNR asserts a counterclaim of abuse of process under Indiana law against Plaintiff and Edelson. LISNR contends Plaintiff and Edelson knowingly filed "baseless claims" and continued to litigate them in an effort to injure LISNR's reputation and business. [Dkt. 218 at 32-33; ¶¶90-94.] The tort of abuse of process consists of two elements: (1) ulterior motive and (2) use of process that would not be proper in the normal prosecution of the case. *Watters v. Dinn,* 633 N.E.2d 280, 288 (Ind. Ct. App. 1994). "The gravamen of [this] tort is not the wrongfulness of the prosecution, but some extortionate perversion of a lawfully initiated process to illegitimate ends." *Heck v. Humphrey,* 512 U.S. 477, 486 n. 5 (1994). Under Indiana law, in order to prevail,

---

[2] Specifically, LISNR alleges damages in excess of $500,000. [Dkt. 218; §114 and §120.]
[3] Plaintiff asserts a sweeping argument that all of LISNR's claims are barred by the *Noerr-Pennington* doctrine, which provides immunity "from antitrust liability for engaging in conduct (including litigation) aimed at influencing decisionmaking by the government." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1757 (2014). Plaintiff identified no cases, and the Court could find none, that apply *Noerr-Pennington* immunity to litigation completely unrelated to governmental action, such as the claims here. *See MCI Communications Corp. v. Am. Tel. & Telegraph Co.,* 708 F.2d 1081, 1159 (7th Cir.1983) ("The *Noerr– Pennington* doctrine is concerned solely with the right to attempt to influence government action."). The Court concludes that *Noerr-Pennington* immunity does not apply in this action.

the plaintiff must have some evidence tending to show that the defendant used process for an end other than that for which it was designed. *Comfax Corp. v. North American Van Lines Inc.,* 638 N.E.2d 476, 481 (Ind. Ct. App. 1994). Proof of improper motive alone is insufficient to proceed with an abuse of process claim; a plaintiff must establish that a defendant has employed an "improper 'process' before the court proceeds to an examination of the defendant's motive." *Reichhart v. City of New Haven,* 674 N.E.2d 27, 30 (Ind. Ct. App. 1996) (internal quotations omitted). "[T]here is no liability where the defendant has done nothing more than carry out process to its authorized conclusion, even with bad intentions." *Id.* at 34, citing *Groen v. Elkins,* 551 N.E.2d 876, 878–79 (Ind. Ct. App. 1996).

Plaintiff and Edelson assert LISNR failed to properly plead both ulterior motive and improper process, and therefore hasn't stated a plausible claim for abuse of process. LISNR argues both elements were met with allegations that Plaintiff and Edelson filed the litigation "to injure LISNR's reputation and its business and thereby to reap financial benefits unrelated to the actual value of the purported Wiretap Act claim, benefits not legitimately available to them through resort to proper judicial process." [Dkt. 218 at 32; ¶94.] But these allegations only address motive. LISNR does not plead an *improper use* of the judicial process that is distinct from that ulterior motive.

Abuse of process requires "more than evidence of a questionable belief as to the merits of a case, or the failure to fully investigate all facts before filing suit." *Estate of Mayer v. Lax, Inc.,* 998 N.E.2d 238, 257 (Ind. Ct. App. 2013). For example, in *National City Bank v. Shortridge*, the Indiana Supreme Court reversed summary judgment on an abuse of process claim after finding evidence of improper use of the judicial process. 689 N.E.2d 1248 (Ind. 1997). That case involved an underlying personal injury suit brought by a construction worker injured on the job.

6

Attorney Shortridge filed suit against the owner of the building where the accident occurred, which was financed by National City. While the personal injury suit was pending, the building was tentatively sold. Shortridge filed a lis pendens notice against the building and claimed an interest in the property for the worker's injuries. Wanting to preserve the sale, counsel for the building filed a motion seeking to have the lis pendens notice removed. Two days before the hearing on that motion, Shortridge filed a second lawsuit and a second lis pendens notice, seeking injunctive relief on the grounds that the proposed sale was a fraudulent conveyance that was undertaken to defraud the worker as a tort claim creditor. At the hearing, the court ordered the first lis pendens notice removed. Shortridge refused to remove the second notice, which clouded the title to the property. The sale fell through, and the building owner defaulted on the mortgage. Ultimately, National City sold the property for a loss and sued Shortridge for abuse of process based upon Shortridge's refusal to remove the second lien.

The trial court entered summary judgment in favor of Shortridge and the Indiana Court of Appeals affirmed. *National City*, 689 N.E.2d at 1250. Focusing on the second lis pendens notice, the Indiana Supreme Court reversed, finding that there was a triable issue of fact as to whether Shortridge wrongly used the lis pendens procedure to impede the sale of the property. *Id.* at 1253. "[I]t is difficult to reconcile the filing of the second lis pendens in Marion County with a desire to secure a *proper* adjudication of the claim." *Id.* (emphasis in original).

There is no comparable allegation to *National City's* second lis pendens action in LISNR's counterclaim. LISNR's belief that Plaintiff and Edelson filed suit "to reap financial benefits unrelated to the actual value of the purported Wiretap Act claim," simply describes the nature of the consumer protection class action lawsuit. Plaintiff's allegedly improper motive does not constitute "a willful act in the use of process not proper in the regular conduct of the

7

proceeding." *CDW LLC v. NETech Corp.,* No. 1:10–cv–0530–SEB–DML, 2011 WL 3844160, at *6 (S.D. Ind. 2011) (allegations in counterclaim related only to alleged ulterior motive, not the propriety of plaintiff's use of the judicial process). Therefore, LISNR has failed to state a plausible claim for abuse of process. The Magistrate Judge recommends the motion be **GRANTED** as to that claim.

### 2. Spoliation of Evidence

LISNR asserts a claim of spoliation of evidence against Plaintiff and Edelson based upon LISNR's contention that Plaintiff deleted the App from his phone at Edelson's direction, thereby rendering forensic analysis more difficult. [Dkt. 218 at 31; ¶84.] LISNR concedes that Indiana does not recognize a claim for first-party spoliation[4]; however, LISNR argues the Court should apply Ohio law to the claim, which does recognize the tort.

Indiana's choice of law rule looks to the location of "the last event necessary to make [the defendants] liable for the alleged wrong" and then examines "whether the place of the tort" is sufficiently connected to the legal action. *Simon v. United States*, 805 N.E.2d 798, 805–06 (Ind. 2004). If the location of the tort is insignificant to the action, the court should consider other contacts that may be more relevant, "such as: 1) the place where the conduct causing the injury occurred; 2) the residence or place of business of the parties; and 3) the place where the relationship is centered." *Id.* at 805.

LISNR asserts the "last event necessary" to make Plaintiff and Edelson liable is the harm that occurred to its business, which is headquartered in Ohio. LISNR further asserts that Ohio is not insignificant to the action because Plaintiff and Edelson knew LISNR was headquartered there and that damage would occur in Ohio. [Dkt. 275 at 17.] The Court disagrees. The injury in

---

[4] *Gribben v. Wal-Mart Stores, Inc.*, 824 N.E.2d 349, 355 (Ind. 2005) (holding that first-party spoliation is not an independent tort in Indiana).

8

a spoliation claim is the negative impact of the destruction of evidence upon a litigant's ability to prevail on its lawsuit. See *Williams v. Werner Enterprises, Inc.*, 770 S.E.2d 532, 542 (W.Va. 2015). In other words, the harm suffered by LISNR by the alleged spoliation would be the negative impact upon this litigation, occurring in Indiana.

Outside of being LISNR's principal place of business, Ohio has no significance to this lawsuit. Plaintiff is an Indiana resident; Edelson's principal place of business is Illinois; and the case is being litigated in Indiana. While the pleadings do not specify where Plaintiff was located physically when he deleted the App, there is no indication that occurred in Ohio either. Consequently, the Court finds that as the place of the tort, the law of Indiana applies to LISNR's spoliation claim. Accordingly, as Indiana does not recognize the independent tort of spoliation, the Magistrate Judge recommends the motion to dismiss be **GRANTED** as to this claim.

3. *Malicious Prosecution*

LISNR asserts a counterclaim of malicious prosecution against Plaintiff and Edelson. The essence of malicious prosecution rests on the notion that the plaintiff has been improperly subjected to legal process. *City of New Haven v. Reichhart,* 748 N.E.2d 374, 378 (Ind. 2001). The elements of a malicious prosecution action are: (1) the defendant instituted or caused to be instituted an action against the plaintiff; (2) the defendant acted maliciously in so doing; (3) the defendant had no probable cause to institute the action; and (4) the original action was terminated in the plaintiff's favor. *Crosson v. Berry*, 829 N.E.2d 184, 189 (Ind. Ct. App. 2005).

Plaintiff and Edelson assert LISNR fails to plausibly allege the elements of malice and favorable termination. As Plaintiff's claims have now been dismissed (a favorable termination for LISNR), the favorable termination element has been satisfied. Malice may be shown by evidence of personal animosity or inferred from a complete lack of probable cause or a failure to

9

conduct an adequate investigation under the circumstances. *F.W. Woolworth Co. v. Anderson, 471 N.E.2d 1249, 1254 (Ind. Ct. App. 1985)*. Plaintiff and Edelson assert there is a "good faith disagreement" as to whether LISNR's actions violate the Wiretap Act, therefore LISNR cannot establish the lawsuit was filed with malicious intent. LISNR repeatedly alleges throughout the counterclaims that Plaintiff knowingly filed a "baseless lawsuit." Additionally, as Plaintiff's claims have now been dismissed for lack of jurisdiction (because the App on Plaintiff's phone did not actually contain the "listening" technology), there exists a plausible showing of malice on the part of Plaintiff for failure to perform an adequate investigation prior to filing the lawsuit. The Magistrate Judge recommends the Court **DENY** the motion to dismiss as to the malicious prosecution claim.

*4. Deceptive Trade Practices Act*

LISNR asserts a claim against Edelson under the Illinois Deceptive Trade Practices Act ("DTPA") based upon allegations that Edelson published defamatory statements that disparaged LISNR and its technology, causing irreparable harm to its business. [Dkt. 218 at 34; ¶111-12.] A party states a claim under the DTPA by alleging that defendants published untrue or misleading statements that disparaged the party's goods or services. *Flentye v. Kathrein*, 485 F. Supp. 2d 903, 918 (N.D. Ill. 2007).

Edelson first argues LISNR cannot state a claim under the Illinois statute because the allegedly disparaging communications were received in Indiana. [Dkt. 291 at 15.] Courts consider several factors to determine whether a transaction occurred "primarily and substantially" in Illinois, bringing a claim under the ambit of the DTPA, including: (1) the plaintiff's residence, (2) where the misrepresentation was made, (3) where the damage to the

10

plaintiff occurred, and (4) whether the plaintiff communicated with the defendant in Illinois. *Avery v. State Farm Mutual Auto Ins. Co.,* 835 N.E.2d 801, 853–54 (Ill. 2005).

Here, while the allegations lack some detail, LISNR has established the factual nexus with Illinois necessary to state a plausible claim under the DTPA. LISNR alleges Edelson, an Illinois firm, communicated the disparaging statements via emails to potential plaintiffs. LISNR does not specify where such communications were received, or whether any such communications were made in person in Edelson's Illinois office. While further discovery may illuminate facts that negate the factual nexus with Illinois, at this time there is enough of a connection to allow the claim to proceed. *See Specht v. Google, Inc.*, 660 F. Supp. 2d. 858, 866 (N.D. Ill. 2009).

Alternatively, Edelson alleges LISNR fails to state a plausible claim because the allegedly disparaging communications relate to the unlawfulness of LISNR's conduct, not the "quality" of LISNR's goods or services as required by the statute. [Dkt. 291 at 15-16.] Edelson's argument mischaracterizes the breadth of the DTPA, which includes 12 subsections identifying ways in which an entity may engage in a deceptive trade practice. 815 Ill. Comp. Stat. Ann. 510/2. Subsection (7) address the misrepresentation of the quality of goods and services. Subsection (8) provides that a deceptive trade practice occurs when the entity "disparages the goods, services, or business of another by false or misleading representation of fact." *Id.*

LISNR's counterclaim includes allegations that Edelson made false statements about the App to potential plaintiffs including that it "secretly turns on your phone's microphone and begins listening in . . . to track you as you go about your business" [Dkt. 218 at 17; ¶22] and "listened in on [Plaintiff's] conversations, including conversations with his family." [Dkt. 218 at 17; ¶23.] LISNR has sufficiently alleged that Edelson disparaged LISNR's business by false or

misleading representations of fact, thereby stating a plausible claim under the DTPA. The Magistrate Judge recommends the motion be **DENIED** as to the DTPA claim.

5. *Defamation*

LISNR asserts a claim of defamation against Edelson based upon allegations that Edelson made false statements regarding LISNR, LISNR's technology, and the App. [Dkt. 218 at 35; ¶116.] LISNR alleges the statements are defamatory *per se* because Edelson advised potential plaintiffs that LISNR's actions violated the Wiretap Act. Edelson asserts the claim should be dismissed both pursuant to Rule 12(b)(6) and because any statements made were entitled to absolute privilege, therefore not actionable as defamation.

A defamatory communication is defined as one that "'tends so to harm the reputation of another as to lower him in estimation of the community or to deter a third person from associating or dealing with him.'" *Doe v. Methodist Hosp.,* 690 N.E.2d 681, 686 (Ind.1997) (quoting Restatement (Second) of Torts § 559 (1977)). To prevail on a cause of action for defamation, a plaintiff must prove four elements: (1) a communication with defamatory imputation, (2) malice, (3) publication, and (4) damages. *See Newman v. Jewish Cmty. Ctr. Ass'n of Indianapolis, Inc.,* 875 N.E.2d 729, 739 (Ind. Ct. App. 2007). A communication is defamatory per se if it imputes: (1) criminal conduct; (2) a loathsome disease; (3) misconduct in a person's trade, profession, office, or occupation; or (4) sexual misconduct. *See Kelley v. Tanoos*, 865 N.E. 2d 593, 597 (Ind. 2007). With per se defamation, damages may be presumed as a natural and probable consequence because the communications are "so obviously and naturally harmful that proof of their injurious character can be dispensed with." *Id.*

LISNR alleges Edelson made false and defamatory statements in emails to potential plaintiffs including:

- That the App "tracks you as you go about your business" [Dkt. 218; ¶22.]
- That the App records users' conversations [Dkt. 218; ¶¶27, 65, 68.]
- That the App violates the Wiretap Act [Dkt. 218; ¶¶22, 65.]

Edelson contends these statements are insufficient to state a claim for defamation because they do not establish a causal connection between the allegedly defamatory statements and the claimed damages (the Colts' decision to stop doing business with LISNR). However, damages are presumed with allegations of per se defamation and need not be specifically pleaded. *See Tanoos*, 865 N.E. 2d at 597. Alternatively, Edelson argues that even if LISNR adequately pleaded defamation, the claim still must fail because the alleged statements are protected by absolute privilege as they were made in connection with a judicial proceeding.

Absolute privilege is a defense to a defamation action. *See Hartman v. Keri*, 883 N.E.2d 774, 777–79 (Ind. 2008). "An absolute privilege bars an action for defamation even when the information was false, and was maliciously and knowingly published." *Hoffman v. Roberto*, 578 N.E.2d 701, 710 (Ind. Ct. App. 1991). The privilege provides judges, attorneys, parties and witnesses, in connection with a judicial proceeding, immunity from liability even if they publish defamatory material with an improper motive. *Van Eaton v. Fink*, 697 N.E.2d 490, 494 (Ind. Ct. App. 1998).

Edelson asserts the privilege applies here because the allegedly defamatory statements were made to potential plaintiffs for this lawsuit, "which, at the time the statements were made, was reasonably contemplated and under serious consideration." [Dkt. 291 at 16.] However, this argument is premature at the pleading stage. Qualified privilege is an affirmative defense (that Edelson has not yet pleaded) that depends on facts of the case that are not yet known to the Court. *See Medical Informatics Engineering, Inc. v. Orthopaedics Northeast, P.C.*, 458 F. Supp.

2d 716, 729 (N.D. Ind. 2006); see also *Jacobs v. City of Chicago,* 215 F.3d 758, 765 n. 3 (7th Cir. 2000) (Because an immunity defense usually depends on the facts of the case, dismissal at the pleading stage is inappropriate: "[T]he plaintiff is not required initially to plead factual allegations that anticipate and overcome a defense of qualified immunity.") Qualified privilege is more appropriately argued at summary judgment.

Viewing the defamation claim in the light most favorable to LISNR, the Court finds it to be "plausible on its face" and therefore the Magistrate Judge recommends the Court **DENY** the motion to dismiss with regard to the defamation claim.

### IV. Conclusion

Based on the foregoing, the Magistrate Judge recommends Plaintiff's *Motion to Dismiss Counterclaims* [Dkt. 250] be **GRANTED IN PART** and **DENIED IN PART**. Specifically, the Magistrate Judge recommends the Court **GRANT** the motion and dismiss LISNR's declaratory judgment action pursuant to Rule 12(h)(3), and the claims of spoliation and abuse of process pursuant to Rule 12(b)(6). The Court should **DENY** the motion as to malicious prosecution, the claim under the Illinois Deceptive Trade Practices Act, and defamation.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Dated: 21 MAY 2018

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically
on all ECF-registered counsel of record via
email generated by the court's ECF system.