**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| ALAN RACKEMANN<br><br>Plaintiff,<br><br>v.<br><br>LISNR, INC. *et al.*,<br><br>Defendants. | Case No. 1:17-cv-00624-TWP-MJD<br><br>Judge Tanya Walton Pratt<br><br>Magistrate Judge Mark J. Dinsmore |

**DEFENDANT/COUNTERCLAIM-PLAINTIFF LISNR, INC.'S OBJECTIONS TO MAGISTRATE JUDGE DINSMORE'S REPORT AND RECOMMENDATION (FILED UNDER SEAL)**

Jesse Jenike-Godshalk (*pro hac vice*)
Thompson Hine LLP
312 Walnut Street, Suite 1400
Cincinnati, Ohio 45202
Phone: 513-352-6702
Fax: 513-241-4771
Jesse.Godshalk@ThompsonHine.com

*Attorney for Defendant/Counterclaim-Plaintiff LISNR, Inc.*

**INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 72 and 28 U.S.C. § 636, Defendant/Counterclaim-Plaintiff LISNR, Inc. ("LISNR") files the following objections to Magistrate Judge Dinsmore's recent Report and Recommendation ("Recommendation") (Dkt. 296), which recommended that this Court grant in part and deny in part the Motion to Dismiss LISNR's Counterclaims filed by Counter-Defendants Alan Rackemann ("Plaintiff"), Edelson P.C. ("Edelson"), and Jeffrey Evans (collectively, "Counter-Defendants").

By way of background, Plaintiff and Mr. Evans are both individual clients of the Edelson law firm. In October 2016, Plaintiff, acting through Edelson, filed the present suit alleging that the version of the Indianapolis Colts, Inc.'s ("Colts") mobile phone application ("App") that included LISNR's technology violated the Electronic Communications Privacy Act ("Wiretap Act") because it allegedly recorded users' conversations. Through subsequent discovery and related litigation, LISNR learned that:

- Prior to filing suit, Edelson studied the App and learned facts fatal to the Wiretap Act claims that they subsequently asserted on behalf of Plaintiff;
- Edelson made numerous communications with users of the App—including Plaintiff and Mr. Evans—misrepresenting how the App worked, in an attempt to recruit the users as plaintiffs in the present suit against LISNR;
- After Edelson recruited Plaintiff to serve as the plaintiff in this suit, they directed him to delete the App from his phone, which he did;
- Plaintiff never had a version of the App on his phone that included LISNR's technology and, thus, Plaintiff lacked standing to bring the present suit;
- Nevertheless, Edelson and Plaintiff filed two complaints against LISNR with claims that they knew were baseless and factual allegations that they knew were false;
- When it was revealed that Plaintiff lacked standing to sue LISNR, Edelson sought to substitute Mr. Evans in as plaintiff, so that he could assert the same baseless claims and false allegations against LISNR; and

- The Edelson firm repeatedly told LISNR – and this Court – that it fully intended to file a new suit on behalf of a class purportedly to be represented by Mr. Evans. The Edelson firm has not retracted these threats.

Based on these revelations, the Court dismissed Plaintiff's claims (disallowing Mr. Evans to substitute in as plaintiff), and LISNR filed counterclaims asserting six causes of action, namely: Count I – Spoliation of Evidence; Count II – Abuse of Process; Count III – Declaratory Judgment Under 28 U.S.C. §§ 2201 et seq. (seeking a declaration that the App does not violate the Wiretap Act); Count IV – Malicious Prosecution; Count V – Violation of the Deceptive Trade Practices Act; and Count VI – Defamation. (Dkt. 218.) Counter-Defendants moved to dismiss these counterclaims (Dkt. 250), and this Court referred the motion to Magistrate Judge Dinsmore for report and recommendation (Dkt. 256).

On May 21, 2018, the Magistrate Judge issued the Recommendation (Dkt. 296), recommending that the Court dismiss LISNR's counterclaims for declaratory judgment, abuse of process, and spoliation, but that the Court deny dismissal of LISNR's counterclaims for malicious prosecution, violation of the Illinois Deceptive Trade Practices Act, and defamation. LISNR objects to the Recommendation that any of the claims be dismissed, and relies upon the arguments set forth in its Memorandum in Opposition to Motion to Dismiss (Dkt. 275) and Sur-Reply in Opposition to Motion to Dismiss (Dkt. 297). LISNR also submits the following specific additional arguments addressing the recommendations as to the declaratory judgment and abuse of process counterclaims.

The Magistrate Judge recommended dismissal of LISNR's counterclaim for declaratory judgment because he believed that there was no "actual controversy" between the parties now that the Court has dismissed Plaintiff's claims. In making this determination, however, the Magistrate Judge focused only on the now-dismissed claimd asserted by Plaintiff. The

Recommendation did not take into account the fact that, in addition to the suit initiated by Plaintiff, Counter-Defendants Edelson and Mr. Evans have also threatened to imminently file a new suit against LISNR for violation of the Wiretap Act. That imminent threat creates an actual controversy between the parties regarding whether the Colts' App violates the Act. Therefore, LISNR objects to the finding that there is no "actual controversy" between itself and Counter-Defendants Edelson and Mr. Evans, such that the Court supposedly lacks subject matter jurisdiction over LISNR's counterclaim.

In addressing LISNR's counterclaim for abuse of process, the Magistrate Judge concluded that LISNR had not adequately pleaded the second element of the claim—"improper process." LISNR objects to this finding because LISNR's counterclaims specifically pleaded that Edelson and Plaintiff filed two complaints containing baseless claims and false statements. Numerous cases recognize that such allegations are sufficient to adequately plead the "improper process" element of an abuse of process claim.

**FACTUAL BACKGROUND**

The allegations of LISNR's counterclaims, which must be accepted as true for purposes of deciding Counter-Defendants' motion to dismiss, assert that Edelson is a law firm that generates litigation in a particular manner. The counterclaims also describe the firm's heightened ability to understand, in advance, the technology they attack:

> The firm has a technology lab staffed by technicians who regularly dissect new products, including applications for smart phones ("mobile apps" or "apps"), to proactively identify potential defendants in class action lawsuits that it will seek to file. It did and does so without any client whose interest it has been retained to represent or protect; instead, the work is done to generate new lawsuits that will further its own business and profits. Once it has identified the target, it then advertises on social media and other places seeking to solicit and entice individuals to agree to act as plaintiffs in claims it seeks to file. When contacted by a potential plaintiff, the firm attempts to convince them that they have been

> victimized by the potential defendant's (or defendants') product or conduct, with the goal of enticing them to permit Edelson to file a lawsuit in his or her name.

(Counterclaims (Dkt. 218) at ¶ 10.)[1]

In 2016, Edelson "identified and targeted LISNR," searching for and investigating apps that included LISNR's technology, including the Colts' App. (*Id.* at ¶¶ 11, 13, 15, 33, 35.) Edelson posted advertisements online to recruit a Colt's App user willing to stand in as a putative class plaintiff to sue LISNR for violation of the Wiretap Act. (*Id.* at ¶¶ 17, 20, 64, 67.) In order to convince potential "clients" such as Plaintiff or Mr. Evans to bring suit, Edelson misled them by failing to disclose the material facts it knew that demonstrated that their claims of "eavesdropping" were false. (*See, e.g., id.* at ¶¶ 21–25.)

Through the use of its significant internal technological resources, Edelson dissected the Colts App and learned much of how it works. (*Id.* at ¶ 18.) Edelson came to understand that the App activated the microphones on user's mobile devices. They also were able to verify that the technology "did not recognize, process, or record human voices." (*Id.* at ¶ 30; *see also id.* at ¶¶ 18–19, 31.) Likewise, Edelson's analysis found no evidence of unlawful wiretapping. (*Id.* at ¶ 43.) Specifically, the investigation found no evidence (and there was no basis for alleging) that the App analyzed or communicated any data related to human voices, i.e., the content of any real communications. More significant, there was no evidence that the App created recordings of data that could ever be accessed by LISNR or that the App could send the content of any user's conversation to LISNR. (*Id.* at ¶¶ 44–46.)

In internal communications, Edelson personnel noted that these facts were inconsistent with their representation that the App recorded people's "conversations" in violation of the

[1] Hereinafter, any citation to Dkt. 218 refers specifically to the counterclaims portion of LISNR's Second Amended Answer and Counterclaims.

Wiretap Act. (*Id.* at ¶ 39.) Nevertheless, Edelson made that exact allegation, in no fewer than 5 paragraphs of each complaint they filed against LINSR. (*See* Dkt. 1 at ¶¶ 4, 49–51, 58.)

In communications with more than 100 potential plaintiffs—including Plaintiff and Mr. Evans—Edelson repeatedly misrepresented that LISNR was listening to and/or recording users' conversations; its employees failed to provide any qualification of those statements disclosing the other essential facts necessary to make their communications truthful. (*Id.* at ¶¶ 22–24, 27, 65, 68, 72–73.) These misstatements had the desired effect of convincing several potential plaintiffs, including Plaintiff and Mr. Evans, to sign engagement letters with Edelson to investigate and pursue claims against LISNR.[2] (*Id.* at ¶¶ 25, 34, 70, 74.)

Plaintiff authorized Edelson to file the Initial Complaint against LISNR. (*Id.* at ¶ 49.) At that time, Edelson's tech team had identified the fact that "most versions of the App did not include LISNR's technology." (*Id.* at ¶ 50.) Before filing a class action suit alleging that the LISNR technology caused the App to secretly recorded users' conversations, however, Plaintiff and Edelson did not ensure that Plaintiff actually had the LISNR technology on his phone. (*Id.*) As described above, the Initial Complaint specifically alleged "facts" that Plaintiff and Edelson knew were false—such as that LISNR listened to and recorded users' private conversations—and used these factual allegations to assert baseless claims against LISNR for violations of the Wiretap Act. (*Id.* at ¶¶ 51, 53–56, 58.) After LISNR demonstrated that Plaintiff had improperly named at least one defendant, Edelson and Plaintiff voluntarily dismissed the Initial Complaint, only to file another (nearly identical) complaint (the "Current Complaint") against LISNR. (*Id.* at ¶¶ 57–60, 107.)

[2] The representations to Mr. Evans were made on November 2, 2017, more than a month after Edelson and their expert had already examined the LISNR source code. (Dkt. 218 at ¶¶ 66, 74.) As detailed in the deposition of their expert, that review confirmed that there was no way for anyone to use the App to listen to any user's conversation. (*Id.* at ¶ 77.)

LISNR's Counterclaim specifically alleges that the purpose and motive in filing these suits was to injure "LISNR's reputation and its business" so as to force LISNR into offering Plaintiff and Edelson a settlement "unrelated to the actual value of the purported Wiretap Act claim." (*Id.* at ¶¶ 92, 94.) As alleged, they "understood that the natural consequence of filing and pursuing baseless litigation was to injure LISNR's reputation and its business" (*id.* at ¶ 92), and they "intended the[se] natural consequences" (*id.* at ¶ 93). LISNR was damaged as a result of this plan, including when the Colts chose to remove LISNR's technology from the Colts' App. (*Id.* at ¶ 62.)

During subsequent discovery, LISNR pushed for a review of Plaintiff's phone, finally forcing Plaintiff to admit he lacked standing for his claim because he never had the LISNR technology installed on his phone. (*Id.* at ¶¶ 71, 98, 108.) In response, Plaintiff and Edelson sought to substitute Mr. Evans in to litigate Plaintiff's Wiretap Act claims. (*Id.* at ¶¶ 78–79, 100, 108.) In their Motion to the Court, they specifically stated that if Amendment was not permitted, they would file a new lawsuit in Mr. Evans's name. (Dkt. 218 at ¶¶ 98–99; *see also* Dkt. 177 at 17.) Counter-Defendants also "threatened to bring another lawsuit via another one of the 103 other individuals that [Edelson] had recruited." (*Id.* at ¶ 98.)

**STANDARDS FOR DECIDING LISNR'S OBJECTIONS**

Pursuant to Federal Rule of Civil Procedure 72 and 28 U.S.C. § 636, a party may object to a magistrate judge's report and recommendation, and "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *accord* 28 U.S.C. § 636(b)(1)(C). "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *accord* 28 U.S.C. § 636(b)(1)(C).

Here, Magistrate Judge Dinsmore issued a report and recommendation with a regard to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). The standard for deciding such motions was summarized in *Am. Family Mut. Ins. Co. v. Mill Installation & Constr., Inc.*, No. 1:10-cv-1711-TWP-DKL, 2011 U.S. Dist. LEXIS 106596, at *5–6 (S.D. Ind. Sept. 21, 2011) (Pratt, J.):

> When reviewing a 12(b)(6) Motion, the Court takes all well-pleaded allegations in the counterclaim as true and draws all inferences in favor of the non-movant. *Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008) (citations omitted). . . . [T]he counterclaim must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citations omitted). To be facially *plausible*, the counterclaim must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citation omitted).

As shown below and in LISNR's prior briefing, Counter-Defendants failed to satisfy this standard with respect to LISNR's counterclaims for declaratory judgment and abuse of process.

## LEGAL ARGUMENT

### I. There Is an Actual Controversy Between LISNR and Counter-Defendants Edelson and Mr. Evans.

In the Recommendation, the Magistrate Judge recommended dismissal of LISNR's counterclaim for declaratory judgment under Federal Rule of Civil Procedure 12(h)(3), because he believed that there was no "actual controversy for the Court to adjudicate" and, therefore, no subject matter jurisdiction. (Dkt. 296 at 4.) He reached this conclusion based on the fact that the claims of Mr. Rackemann – the original Plaintiff – have been dismissed. (*Id.*) The Recommendation, however, appears to have ignored the fact that both Edelson and Mr. Evans have asserted *to this Court* and to LISNR that they intend to file a *new* suit against LISNR making the same allegations as in the Current Complaint – *i.e.*, that the Colts' App records its

users' conversation and thereby violates the Wiretap Act. By threatening to sue, Edelson and Mr. Evans have created an actual controversy subject to adjudication.

Indeed, the very purpose of "'[t]he Declaratory Judgment Act, 28 U.S.C. § 2201, [is to] allow[] a party . . . who expects to eventually be sued, to determine his rights and liabilities without waiting for his adversary, the presumptive plaintiff, to bring suit.'" *Griggers v. Shopf*, No. 1:17-cv-03410-JMS-DML, 2018 U.S. Dist. LEXIS 50649, at *23 (S.D. Ind. Mar. 27, 2018) (quoting *DeBartolo v. Healthsouth Corp.*, 569 F.3d 736, 741 (7th Cir. 2009)). "Where a declaratory plaintiff files a complaint in anticipation of litigation by the declaratory defendant, a[n actual] case or controversy exists if the threat of such litigation is real and immediate." *Norfolk S. Ry. Co. v. Guthrie*, 233 F.3d 532, 534 (7th Cir. 2000) (citing *GNB Battery Techs., Inc. v. Gould, Inc.*, 65 F.3d 615, 620 (7th Cir. 1995)); *accord Bell v. Ill. Cent. R.R.*, No. 01 C 2384, 2001 U.S. Dist. LEXIS 8686, at *28 (N.D. Ill. June 26, 2001). "The focus of the inquiry must rest on the defendant's statements and conduct since an apprehension alone, if not inspired by defendant's actions, does not give rise to an actual controversy." *Bell*, 2001 U.S. Dist. LEXIS 8686, at *27–28 (internal quotation marks omitted).

Courts in the Seventh Circuit have found that a real and immediate threat of litigation exists—and thus an actual controversy exists—where the declaratory defendant has threatened to bring suit against the declaratory plaintiff. *See, e.g.*, *Nucor Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 578 (7th Cir. 1993) (affirming lower court's determination that declaratory judgment claim was ripe once declaratory defendant sent letter to declaratory plaintiff threatening to file suit); *Griggers*, 2018 U.S. Dist. LEXIS 50649, at *24–25 (actual controversy existed at time that declaratory plaintiff filed suit, because counsel for declaratory defendant had sent letter threatening suit); *Am. Acad. of Orthopaedic Surgeons v. Cerciello*, No.

12 C 3863, 2012 U.S. Dist. LEXIS 161437, at *5 (N.D. Ill. Nov. 10, 2012) ("The letters from Cerciello's attorney, in which he specifically said that he would file suit unless AAOS immediately rescinded Cerciello's suspension and took other steps, amounted to an 'immediate and real' threat of litigation, not a speculative one."); *Bell*, 2001 U.S. Dist. LEXIS 8686, at *29 (attorneys for declaratory defendants stated to declaratory plaintiff that declaratory defendants would amend their complaint to assert claims against declaratory plaintiff); *Resuscitation Techs. v. Continental Health Care Corp.*, No. IP 96-1457-C-M/S, 1997 U.S. Dist. LEXIS 3523, at *19–20 (S.D. Ind. Mar. 24, 1997) ("Here, with a letter from the alleged attorney for the defendants threatening a lawsuit if the issues were not resolved within three days was more than enough evidence of an actual and substantial controversy between the parties, whose legal interests were adverse.").

*Norfolk South Railway Co. v. Guthrie* shows that even attorneys who threaten to sue on behalf of their clients may subject themselves to suit for a declaratory judgment. 233 F.3d 532 (7th Cir. 2000). In that case, an attorney sent letters to the Norfolk South Railway Company ("Norfolk") threatening suit on behalf of two of his clients. *Id.* at 535. The attorney had recently filed similar suits on behalf of other clients against another railroad, and this prior conduct suggested that the attorney would in fact follow through on his threats to sue Norfolk. *Id.* Thus, the Seventh Circuit held that there was an actual controversy between Norfolk, on the one hand, and the attorney and the attorney's two clients, on the other hand, such that Norfolk could properly maintain a declaratory judgment claim against all three defendants. *Id.*

Applying this precedent to the facts of the present case, there is an actual controversy between LISNR, on the one hand, and Edelson and Mr. Evans, on the other, regarding whether the LISNR technology operates in violation of the Wiretap Act, because Edelson and Mr. Evans

have made threats—substantiated through concrete actions—to imminently bring suit against LISNR for violation of the Wiretap Act. Since 2016, Edelson has been targeting LISNR (Dkt. 218 at ¶ 11)—communicating with more than 100 users of the Colts' App, specifically seeking plaintiffs for a lawsuit against LISNR. (*Id.* at ¶¶ 20, 27.) Plaintiff and Mr. Evans are two such users who, in response to the misleading statements that Edelson made, signed engagement letters with Edelson for the express purpose of bringing a class action lawsuit based on the claim that the Colts' App violated the Wiretap Act. (*Id.* at ¶¶ 23–25, 74, 99.)

Edelson first brought suit against LISNR on behalf of Plaintiff (*id.* at ¶¶ 49, 51, 60) and then, when Edelson realized that Plaintiff did not have a viable claim (*id.* at ¶¶ 71, 78, 98), it threatened to bring suit on behalf of Mr. Evans (*id.* at ¶¶ 75, 91, 98). Plaintiff and Mr. Evans, through Edelson, filed a motion with this Court, seeking to substitute Mr. Evans in as the named plaintiff in this case. (*Id.* at ¶¶ 79, 100.) In that Motion, they specifically stated that if Amendment was not permitted, they would file a new lawsuit in Mr. Evans's name. (Dkt. 177 at 17.) They also attached to that Motion a proposed Amended Complaint asserting claims on behalf of Mr. Evans against LISNR for violation of the Wiretap Act. (*See* Dkt. 177-2). Now that the Court has denied that Motion, Edelson has stated in public filings, subject to Federal Rule of Civil Procedure 11, that it intends to imminently file a new suit against LISNR on behalf of Mr. Evans. (*See* Dkt. 291 at 13 ("Mr. Evans cannot be added to this suit as a plaintiff and must file his own suit."); *id.* at 14 (discussing "the imminent filing of Mr. Evans's nearly identical suit").)

In sum, Edelson and Mr. Evans have threatened to imminently bring suit against LISNR and have taken concrete actions in pursuit of this goal (e.g. signing an engagement letter, filing a motion to substitute, and drafting and filing a proposed Amended Complaint). Edelson, like the attorney in *Norfolk*, has also previously filed a nearly identical suit against LISNR on behalf of

another plaintiff, Mr. Rackemann, further showing that Edelson intends to follow through on its threats. Therefore, an actual controversy exists between LISNR and Counter-Defendants Edelson and Mr. Evans regarding whether the Colts' App violates the Wiretap Act. Because there is an actual controversy, the Court has jurisdiction over LISNR's declaratory judgment counterclaim, and the Court should deny Counter-Defendants motion to dismiss this claim.

## II. LISNR Has Adequately Pleaded "Improper Process."

The Recommendation recommended dismissal of LISNR's counterclaim for abuse of process because LISNR had not adequately pleaded the second element of this claim—improper process. (Dkt. 296 at 6.) This determination appears to be based upon the case of *National City Bank v. Shortridge*, 689 N.E.2d 1248 (Ind. 1997), where the Supreme Court of Indiana concluded that the plaintiff had adequately pleaded "improper process" by alleging that the defendant "used the lis pendens procedure to impede the sale of [a] property." (Dkt. 296 at 7.) The Magistrate Judge concluded that "[t]here is no comparable allegation . . . in LISNR's counterclaim" and, thus, LISNR had failed to adequately plead improper process. (*Id.*)

To the contrary, LISNR has adequately pleaded improper process. As this Court has previously held, a plaintiff can establish the element of "improper process" by showing that a defendant filed a complaint containing baseless claims or false allegations. *Wine & Canvas Dev. LLC v. Muylle*, No. 1:11-cv-01598-TWP-DKL, 2015 U.S. Dist. LEXIS 146512, at *12 (S.D. Ind. Oct. 28, 2015) (Pratt, J.) ("During trial, the jury heard evidence that WNC Parties' action was substantively improper in filing baseless claims, thus satisfying the [improper process] element of an abuse of process claim."); *see also Assocs. Fin. Servs. Co. v. Bowman, Heintz, Boscia & Vician, P.C.*, No. IP 99-1725-C-M/S, 2001 U.S. Dist. LEXIS 7874, at *28–29 (S.D. Ind. 2001) (denying motion to dismiss abuse of process counterclaim alleging that plaintiff "intentionally

filed a complaint containing false allegations"); *I.A.E., Inc. v. Bishop*, 49 N.E.3d 138, 159 (Ind. Ct. App. 2015) (filing barred claims satisfies the "improper process" element); *Exec. Builders, Inc. v. Trisler*, 741 N.E.2d 351, 359 (Ind. Ct. App. 2000) (jury verdict for abuse of process counterclaim was upheld where the plaintiff "issued a number of false statements in the complaint").

In line with this authority, LISNR has pleaded that Plaintiff and Edelson filed complaints against LISNR containing both baseless claims and false allegations. First, LISNR alleged that "Plaintiff and Edelson [brought] baseless litigation against LISNR." (Dkt. 218 at ¶ 58.) LISNR supported this statement with further factual allegations. LISNR pleaded that Edelson's investigation of the Colts' App "failed to find evidence of facts critical to the claim of illegal wiretapping" (*id.* at ¶ 43), including:

- "[T]here was no evidence of any code that would cause a user's phone or the App to make any recording of sound in any permanent memory." (*Id.* at ¶ 44.)
- "Edelson found no evidence that a user's phone or the App could or would decode any data representing sounds in the range of the human voice." (*Id.* at ¶ 45.)
- "Edelson found no evidence that the App caused the phone to send any conversation received from the microphone anywhere, including to LISNR or its customers." (*Id.* at ¶ 46.)
- "Edelson claimed (and claims) that the mere movement of audio data through a temporary buffer by the Colts' App constituted 'recording' and 'interception' for purposes of liability under the Wiretap Act, which was baseless on its face. All audio data generated by any cell phone's microphone is moved through a buffer. Plaintiff and Edelson's allegation, if true, would mean that every cell phone manufacturer in the country would be guilty of violating the Wiretap Act every time any person in the United States used their phone to make or accept a call. There is and never was any good faith argument that the law supported or ever could support such a claim." (*Id.* at ¶ 47.)

Second, LISNR alleged that "[t]he allegations of the Initial Complaint included numerous . . . false statements about the LISNR technology, statements that were made with knowledge of their falsity, with a lack of reliable substantiation for them, or both." (*Id.* at ¶ 51;

*see also id.* at ¶¶ 112, 119.) Again, LISNR supported this allegation with further factual allegations:

- "Plaintiff and Edelson alleged that the App, through the LISNR technology, illegally intercepted users' conversations in violation of the Wiretap Act, despite knowing that these allegations were false." (*Id.* at ¶ 53.)

- "Plaintiff and Edelson further falsely alleged that the App recorded conversations and falsely alleged that the App did not solicit permissions for turning on the microphones on users' phones." (*Id.* at ¶ 54.)

- "In the Initial Complaint, Plaintiff and Edelson specifically referenced various parts of the LISNR website, but failed to disclose those portions that made clear that LISNR's technology does not hear human voices." (*Id.* at ¶ 55.)

- "In the Initial Complaint, Plaintiff and Edelson also falsely stated that they had conducted an investigation that confirmed their allegations. They disclosed certain aspects of their findings, but failed to disclose that they knew the App only used (and then discarded) no more than .04 seconds of audio data, failed to disclose that they had not found evidence that the data was ever decoded or evidence of any voice analysis or transmission, and failed to disclose that they knew the App did not hear or listen to human speech." (*Id.* at ¶ 56.)

In sum, LISNR plausibly pleaded that Plaintiff and Edelson filed a complaint containing claims that they knew were baseless and statements that they knew were false. As such, LISNR adequately pleaded "improper process."

In finding to the contrary, the Recommendation focused on whether LISNR's counterclaims contain an allegation that is comparable to the "improper process" allegation in *National City*. (Dkt. 296 at 7.) This approach mischaracterizes the discussion and holding in *National City*. While the *lis pendens* claims asserted in *National City* may be different than the Wiretap Act claims asserted by Edelson here, the *National City* Court did not hold that the allegations in that case were the only way to show (or adequately plead) the "improper process" element.

In *National City,* the Supreme Court of Indiana held that improper process requires that the suit "'must have been initiated or continued primarily for a purpose other than that of securing the proper adjudication of the claim on which they are based.'" 689 N.E.2d at 1253 (quoting Section 676 of the Restatement (Second) of Torts (1977)). The Court described the standard for finding that a claim was baseless, which supports the inference of improper process:

> We conclude that the objective standard which should govern the reasonableness of an attorney's action in instituting litigation for a client is whether the claim merits litigation against the defendant in question on the basis of the facts known to the attorney when suit is commenced. The question is answered by determining that no competent and reasonable attorney familiar with the law of the forum would consider that the claim was worthy of litigation on the basis of the facts known by the attorney who instituted suit.

*Id.* (quoting *Wong v. Tabor*, 422 N.E.2d 1279, 1288 (Ind. Ct. App. 1981)).

This is exactly the allegation made in LISNR's counterclaim. It alleges that the claim was not worthy of litigation on the basis of the facts known by the attorneys who instituted suit. (*See* Dkt. 218 at ¶¶ 43–47.)

The *National City* court did not purport to create a single set of facts under which all future allegations of "improper process" must be asserted; but it did hold that initiation of a baseless suit can be the basis for finding improper process supporting an abuse of process claim. As such, LISNR's abuse of process counterclaim can survive a motion to dismiss even if the counterclaim does not contain allegations that are comparable to those in *National City*.

Even so, the allegations in LISNR's abuse of process counterclaim ***are comparable*** to those in *National City*. In *National City*, the court stated: "[I]t is difficult to reconcile the filing of the second *lis pendens* in Marion County with a desire to secure the *proper* adjudication of the claim." (Dkt. 296 at 7 (quoting *National City*).) Similarly, in the present case, Edelson's and Plaintiff's conduct shows that they did not seek to achieve a proper adjudication of the Wiretap

Act claims (i.e. an adjudication on the merits based on true facts). They knew that, if the Court became aware of all of the true facts in this case, they would lose on the merits. Thus, they misrepresented and obfuscated the facts in both of the Complaints so that their baseless claims could (improperly) survive a motion to dismiss, thus driving up the *in terrorem* value of the suit. (Dkt. 218 at ¶¶ 61, 63, 94). They then hoped that, before the true facts came out and the Court ruled against them on a motion for summary judgment, LISNR would agree to settle the case in order to avoid continuing damage to its reputation, thereby bestowing on Edelson and Mr. Evans "benefits not legitimately available to them through resort to proper judicial process." (*Id.* at ¶ 94; *see also id.* at ¶¶ 63, 119.) Thus, LISNR's allegations are comparable to those in *National City*, and LISNR has adequately pleaded improper process.

Because LISNR has adequately pleaded the elements of abuse of process, the Court should not dismiss LISNR's counterclaim for abuse of process.[3]

**CONCLUSION**

For the foregoing reasons, the Court should reject Magistrate Judge Dinsmore's Report and Recommendation to the extent that he recommends dismissal of LISNR's counterclaims—particularly the counterclaims for abuse of process and declaratory judgment—and the Court should deny Counter-Defendants' motion to dismiss these claims.

Respectfully submitted,

*/s/ Jesse Jenike-Godshalk*

Thomas Feher (*pro hac vice*)
Thomas F. Zych (*pro hac vice*)
Thompson Hine LLP
3900 Key Center

[3] To the extent that the Court feels the need to address the other element of abuse of process (i.e. ulterior motive), LISNR stands upon the arguments, case law, and allegations in its Memorandum in Opposition to Motion to Dismiss Counterclaims (Dkt. 275 at 18–19).

127 Public Square
Cleveland, Ohio 44114
Phone: 216-566-5605
Fax: 216-566-5800
Tom.Feher@ThompsonHine.com
Tom.Zych@ThompsonHine.com

Jesse Jenike-Godshalk (*pro hac vice*)
Thompson Hine LLP
312 Walnut Street, Suite 1400
Cincinnati, Ohio 45202
Phone: 513-352-6702
Fax: 513-241-4771
Jesse.Godshalk@ThompsonHine.com

*Attorneys for Counter-Plaintiff LISNR, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 4, 2018, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Jesse Jenike-Godshalk*