# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| ALAN RACKEMANN, individually and on behalf all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:17-cv-00624-TWP-MJD ) |
| LISNR, INC., ADEPT MOBILE, LLC, and INDIANAPOLIS COLTS, INC., an Indiana Corporation, | ) ) ) ) ) |
| Defendants. | ) |

## ORDER ADOPTING REPORT AND RECOMMENDATION AND ENTRY GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS

This matter is before the Court on the parties' Objections to the Magistrate Judge's Report and Recommendation. This action began when the Plaintiffs/Counter-Defendants Alan Rackemann ("Rackemann"), Jeff Evans ("Evans"), and Edelson PC ("Edelson") (collectively "Plaintiffs") sought to litigate claims under the Electronic Communications Privacy Act ("Wiretap Act"), related to technology developed by the Counter-Claimant, LISNR, Inc., ("LISNR"). The Court dismissed Plaintiffs' claims for lack of subject matter jurisdiction (Filing No. 253, Filing No. 288) and LISNR's counterclaims are the only claims that remain in this action. On February 9, 2018, Plaintiffs filed a Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, asking the Court to dismiss LISNR's counterclaims (Filing No. 250). The Motion to Dismiss was referred to the Magistrate Judge for a Report and Recommendation (Filing No. 256). On May 21, 2018, the Magistrate Judge submitted a Report and Recommendation, recommending that the Motion to Dismiss be granted in part and denied in part (Filing No. 296). On June 4, 2018, LISNR timely filed under seal an Objection to the Report and Recommendation (Filing No.

298), asserting the Magistrate Judge erred in recommending dismissal of certain claims. That same day, Plaintiffs also filed an Objection, asserting the Magistrate Judge made several errors and should have granted the Motion to Dismiss in its entirety ([Filing No. 300](#)). For the reasons stated below, the Court **overrules** both parties' Objections and **adopts** the Magistrate Judge's Report and Recommendation.

## I. BACKGROUND

The following facts are accepted as true for purposes of the Motion to Dismiss and all reasonable inferences are drawn in a light most favorable to LISNR, as the non-moving party. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

Edelson is a law firm organized under the laws of the state of Illinois with its principal place of business in Chicago, Illinois, that generates litigation in the electronic privacy class action field and "has litigated some of the largest consumer class actions in the country on this issue." ([Filing No. 218 at 13](#).) In addition to attorneys, its staff includes "investigators" specializing in privacy issues, including employees with degrees in Computer Engineering and "Cyber Forensics and Security." *Id*. Edelson had a heightened ability to understand in advance, the technology it attacks.

> The firm has a technology lab staffed by technicians who regularly dissect new products, including applications for smart phones ("mobile apps" or "apps"), to proactively identify potential defendants in class action lawsuits that it will seek to file. It did and does so without any client whose interest it has been retained to represent or protect; instead, the work is done to generate new lawsuits that will further its own business and profits. Once it has identified the target, it then advertises on social media and other places seeking to solicit and entice individuals to agree to act as plaintiffs in claims it seeks to file. When contacted by a potential plaintiff, the firm attempts to convince them that they have been victimized by the potential defendant's (or defendants') product or conduct, with the goal of enticing them to permit Edelson to file a lawsuit in his or her name.

([Filing No. 218 at 13-14](#).)

Rackemann and Evans are individual clients of the Edelson law firm. In October 2016, Plaintiffs initially alleged a putative class action against the Defendants LISNR, Adept Mobile, LLC, and the Indianapolis Colts, Inc. ("Colts"), alleging that the version of the Colts' mobile phone application ("the App"), that included LISNR's technology, violated the Wiretap Act. In particular, Plaintiffs alleged that the technology recorded users' private conversations. Through subsequent discovery and related litigation, it was determined that the version of the App on Rackemann's mobile phone did not include the "listening" technology at issue in the lawsuit. In addition, LISNR discovered the following:

• Prior to filing suit, Edelson studied the App and learned facts fatal to the Wiretap Act claims that they subsequently asserted on behalf of Rackemann;

• Edelson made numerous communications with users of the App—including Rackemann and Evans—misrepresenting how the App worked, in an attempt to recruit the users as plaintiffs in the present suit against LISNR;

• After Edelson recruited Rackemann to serve as the plaintiff in this suit, they directed him to delete the App from his phone, which he did;

• Rackemann never had a version of the App on his phone that included LISNR's technology and, thus, Rackemann never had standing to bring the present suit;

• Nevertheless, Edelson filed two complaints against LISNR with claims that they knew were baseless and factual allegations that they knew were false; and

• The Edelson firm repeatedly told LISNR – and this Court – that it fully intended to file a new suit on behalf of a class purportedly to be represented by Evans.

([Filing No. 281](#)). This Court determined that Rackemann lacked standing to sue LISNR and Plaintiffs' claims were dismissed for lack of subject matter jurisdiction. ([Filing No. 253](#), [Filing No. 288](#).) Edelson sought to amend the complaint and substitute Evans as plaintiff, however, the Court denied the motion for leave to amend and dismissed Plaintiffs' claims for lack of subject

matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(h)(3). ([Filing No. 252](), [Filing No. 288]().)

On January 10, 2018, when LISNR filed its Answer, it included counterclaims asserting six causes of action against different combinations of plaintiffs, namely: Count I – Spoliation of Evidence against Rackemann and Edelson; Count II – Abuse of Process against Rackemann and Edelson; Count III – Declaratory Judgment Under 28 U.S.C. §§ 2201, *et seq*., against all Plaintiffs (seeking a declaration that the App does not violate the Wiretap Act); Count IV – Malicious Prosecution against Rackemann and Edelson; Count V – Violation of the Deceptive Trade Practices Act (the "DTPA") against Edelson; and Count VI – Defamation against Edelson. ([Filing No. 218]().) Plaintiffs moved to dismiss these counterclaims ([Filing No. 250]()), asserting that the counterclaims procedurally cannot be maintained in the absence of the underlying claims and because they fail on the merits.

On February 14, 2018, the Court referred the Motion to Dismiss to Magistrate Judge Mark Dinsmore for a report and recommendation ([Filing No. 256]()). On May 21, 2018, the Magistrate Judge recommended that the Court dismiss LISNR's counterclaims for declaratory judgment, abuse of process, and spoliation, but deny dismissal of LISNR's counterclaims for malicious prosecution, violation of the Illinois DTPA, and defamation. ([Filing No. 296]().) Both parties have submitted Objections to the Report and Recommendation.

## II. LEGAL STANDARDS

### A. Review of the Magistrate Judge's Report and Recommendation

A district court may assign dispositive matters to a magistrate judge, in which case the magistrate judge may submit to the district judge only a report and recommended disposition,

4

including any findings of fact. 28 U.S.C. § 636(b)(1)(B) (2012); Fed. R. Civ. P. 72(b)(1). *See also Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 760 (7th Cir. 2009). The magistrate judge's recommendation on a dispositive matter is not a final order, and the district judge makes the ultimate decision to "accept, reject, or modify" the findings and recommendations, and the district court need not accept any portion as binding. 28 U.S.C. § 636(b)(1) (2012); Fed. R. Civ. P. 72(b)(3). *See also Schur*, 577 F.3d at 760-61.

After a magistrate judge makes a report and recommendation, either party may object within fourteen days of being served with a copy of the same. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). When a party raises specific objections to findings and recommendations made within the magistrate judge's report, the district court is required to review those objections *de novo*, determining for itself whether the magistrate judge's decisions as to those issues are supported by substantial evidence or were the result of an error of law. 28 U.S.C. § 636(b)(1) (2012); Fed. R. Civ. P. 72(b)(3). *See also Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999). The court may, however, defer to those conclusions to which timely objections have not been raised by a party. *Schur*, 577 F.3d at 760-61. Further, if a party fails to object to a magistrate judge's report and recommendation, or objects on some issues and not others, the party waives appellate review of the issues to which the party has not objected. *Johnson*, 170 F.3d at 739.

### B.     12(b)(6) Motion to Dismiss

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the complaint, not the merits of the suit. *Triad Assocs., Inc. v. Chi. Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989). The standard for assessing the procedural

sufficiency of pleadings is imposed by Federal Rule of Civil Procedure 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Thus, although the complaint need not recite "detailed factual allegations," it must state enough facts that, when accepted as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A claim is facially plausible when the plaintiff pleads facts sufficient for the court to infer that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The *Twombly/Iqbal* standard "is not akin to a 'probability requirement', but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). By comparison, a complaint that merely contains "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy the factual plausibility standard. *Twombly*, 550 U.S. at 555.

A party seeking dismissal under Rule 12(b)(6)'s requirement that the complaint state a claim upon which relief can be granted bears a heavy burden. In making this determination, the court views the complaint in the light most favorable to the plaintiffs, accepting all well-pleaded factual allegations as true and drawing all reasonable inferences from those allegations in favor of the plaintiffs. *Lee v. City of Chi.*, 330 F.3d 456, 459 (7th Cir. 2003). The plaintiff "receives the benefit of imagination" at this stage "[as] long as the hypotheses are consistent with the complaint." *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994). Thus, a complaint should only be dismissed pursuant to Rule 12(b)(6) when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). "To withstand a Rule 12(b)(6) challenge . . . 'the plaintiff must give enough details about the subject-matter of the case

6

to present a story that holds together,' and the question the court should ask is '*could* these things have happened, not *did* they happen.'" *Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 533 (7th Cir. 2011) (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404–05 (7th Cir. 2010)) (emphasis in original). Additionally, the Court may not rely upon evidence and facts outside of those alleged in the Complaint in ruling on a motion to dismiss.

### III. DISCUSSION

LISNR objects to the recommendation to dismiss two of its claims and Plaintiffs object to the recommendation that any claims survive dismissal. The Court will first address LISNR's objections before turning to the Plaintiffs' objections.

**A.** **LISNR's Objections ([Filing No. 298](#)).**

The Magistrate Judge recommended dismissal of LISNR's counterclaims for declaratory judgment, abuse of process and spoliation. LISNR does not object to the recommendation for dismissal of the counterclaim for Count I--Spoliation of Evidence against Rackemann and Edelson. Accordingly, the Court **adopts** that portion of the Report and Recommendation and this claim is **dismissed**.

**1.** **Count III-Declaratory Judgment against all Plaintiffs.**

The Declaratory Judgment Act ("DJA") provides that a court "may declare the rights and other legal relations of any interested party," 28 U.S.C. § 2201(a). Under the DJA, district courts have "unique and substantial discretion in deciding whether to declare the rights of litigants." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007) (internal citation omitted). However, an "actual controversy" must exist to give the court subject matter jurisdiction to exercise this discretionary power. *Id*.

7

In recommending dismissal of the claim for declaratory relief, the Magistrate Judge determined there was no "actual controversy" between the parties since Plaintiff's claims have been dismissed. LISNR contends that in making this determination, the Magistrate Judge focused only on the now-dismissed claims asserted by Rackemann and Edelson, and did not take into account the fact that, in addition to the suit initiated previously by Rackemann, Edelson and Evans have also threatened to imminently file a new suit against LISNR for violation of the Wiretap Act. LISNR argues that this "imminent threat" creates an actual controversy between the parties regarding whether the Colts' App violates the Wiretap Act. LISNR objects to the finding that there is no "actual controversy" between itself, Edelson and Evans, and relies on the case of *Dugan v. City of West Chicago*, 2008 WL 542356 (N.D. Ill. 2008). As the Magistrate Judge correctly noted, the facts in *Dugan* are distinguished from those in this case. In *Dugan* the court denied a motion to dismiss and reasoned that

> [T]he City does not fail to state a claim for relief simply because it asks for a declaration of its own obligations, rather than the obligations of the Union. When a party seeks declaratory judgment about its own obligations, it does so in the hope of establishing those obligations once and for all and preventing future suits based on the same conduct.

*Dugan*, 2008 WL 5423565 at *2. But in *Dugan*, the underlying ERISA dispute between the City of West Chicago and the union fund was intact, allowing the city to join the local union as a counter-defendant.

LISNR argues that Edelson and Evans have threatened to imminently bring suit against LISNR and by signing an engagement letter, filing a motion to substitute, and drafting and filing a proposed amended complaint. However, these acts alone do not constitute an imminent threat and Plaintiffs have not filed a new action. Moreover, as Plaintiffs argue in their response, there

8

is no actual controversy concerning Edelson since Edelson cannot bring a claim in its own name to recover for itself. LISNR cites no authority holding that a law firm is an appropriate declaratory judgment defendant simply because it might represent a particular individual in a potential lawsuit. Thus, the Court determines there is no "actual controversy" with respect to Edelson.

No actual controversy exists with respect to Rackemann, because he was never exposed to the challenged technology and was dismissed for lack of subject matter jurisdiction. Regarding Evans, the Court determined that Evans could not be substituted as a plaintiff in this case because in the absence of Rackemann having a claim against LISNR, and there was no case remaining to be substituted into. ([Filing No. 253](#).) All of the underlying disputes between LISNR and each of the Plaintiffs have been dismissed or disallowed. As the Magistrate Judge reasoned, because the underlying wiretap claim has been dismissed and there is no dispute intact, there is no actual controversy for the Court to adjudicate. The Court finds no error in the recommendation for dismissal of the claim for declaratory relief. Accordingly, LISNR's objection is **overruled**.

### 2. Count II Abuse of Process against Rackemann and Edelson.

Regarding LISNR's state law counterclaim for abuse of process, the Magistrate Judge concluded that LISNR had not adequately pled the second element of the claim—"improper process". LISNR objects to this finding and argues that its counterclaims specifically pled that Edelson and Rackemann filed two complaints containing baseless claims and false statements.

In Indiana, the tort of abuse of process consists of two elements: (1) ulterior motive, and (2) use of process that would not be proper in the normal prosecution of the case. *Watters v. Dinn,* 633 N.E.2d 280, 288 (Ind. Ct. App. 1994). "The gravamen of [this] tort is not the

9

wrongfulness of the prosecution, but some extortionate perversion of a lawfully initiated process to illegitimate ends." *Heck v. Humphrey,* 512 U.S. 477, 486 n. 5 (1994). In order to prevail, the plaintiff must have some evidence tending to show that the defendant used the process for an end other than that for which it was designed. *Comfax Corp. v. North American Van Lines Inc.,* 638 N.E.2d 476, 481 (Ind. Ct. App. 1994). In Indiana, the reasonableness of an attorney's action in instituting litigation should be judged by an objective standard and whether "'no competent and reasonable attorney familiar with the law of the forum would consider that the claim was worthy of litigation [] on the basis of the facts known by the attorney who instituted suit.'" *National City Bank, Ind. v. Shortridge*, 689 N.E.2d 1248, 1253 (Ind. 1997) (quoting *Wong v. Tabor*, 422 N.E.2d 1279, 1288 [257] (Ind. Ct. App. 1981)). There must be evidence that an attorney filed a claim for a purpose other than aiding his or her client in adjudicating his or her claim. *Id.* Additionally, there must be evidence that the attorney "'knowingly initiated proceedings for a clearly improper purpose,'" which requires more than evidence of a questionable belief as to the merits of a case, or the failure to fully investigate all facts before filing suit. *Id.*

LISNR emphasizes several times that the lawsuit was baseless, however, baseless is not enough when there is no "evidence that an attorney filed a claim for a purpose other than aiding his or her client in adjudicating his or her claim." *Waterfield*, 61 N.E.3d at 328. "The purpose for which the process is used is the only thing of importance." *Nat'l City Bank of Ind. v. Shortridge*, 689 N.E.2d 1248, 1252 (Ind. 1997). The Magistrate Judge reasoned that LISNR's belief that Rackemann and Edelson filed suit "to reap financial benefits unrelated to the actual value of the purported Wiretap Act claim," simply describes the nature of the consumer protection class action lawsuit; and that Rackemann's allegedly improper motive does not constitute "a willful act in the

10

use of process not proper in the regular conduct of the proceeding." The Court agrees. LISNR has failed to state a plausible claim for abuse of process and the objection to this recommendation is overruled.

**B.     Plaintiffs' Objections.**

The Plaintiffs object to the Magistrate Judge's recommendation to deny dismissal of LISNR's counterclaims for malicious prosecution, violation of the Illinois DTPA, and defamation. They argue the Magistrate Judge made several errors, and should have granted the motion to dismiss in its entirety.

    **1.     *Noerr-Pennington* Doctrine.**

As an initial matter, Plaintiffs argue the Magistrate Judge improperly concluded that the *Noerr-Pennington* doctrine does not apply. Under the *Noerr–Pennington* doctrine, speech and other efforts to influence governmental activity cannot be the basis of legal penalties, unless the proposal to the governmental body is a sham and the speech itself imposes costs independent of what the governmental body does—for example, a lawsuit designed to make the other litigant bear the costs of mounting a defense, even though the suit has no chance of success. *See BE & K Construction Co. v. NLRB*, 536 U.S. 516, 122 S.Ct. 2390, 153 L.Ed.2d 499 (2002). The Magistrate Judge determined the *Noerr-Pennington* doctrine, which provides immunity "from antitrust liability for engaging in conduct (including litigation) aimed at influencing decisionmaking by the government" did not apply immunity to litigation completely unrelated to governmental action, such as the claims here. *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1757 (2014); *MCI Communications Corp. v. Am. Tel. & Telegraph Co.,* 708 F.2d 1081, 1159 (7th Cir.1983).    (Filing No. 296 at 5.)

In support of their argument that the doctrine applies, Plaintiffs cite to *New West, L.P. v. City of Joliet,* 491 F.3d 717 (7th Cir. 2007), a condemnation action filed by an apartment complex owner against the City of Joliet, Illinois, alleging that the city's litigating and lobbying violated certain federal statutes, and involved protecting conduct in litigation between private parties. In *New West*, the Seventh Circuit held that the *Noerr–Pennington* doctrine "protects litigation, lobbying, and speech and has been extended beyond the antitrust laws, where it originated, and is today understood as an application of the first amendment's speech and petitioning clauses." *Id*. at 722. Plaintiffs thus argue that because *Noerr-Pennington* "gives effect to the First Amendment right to petition the government (including the courts) by immunizing from liability statements or conduct related to litigation" it therefore "bars each and every counterclaim alleged by Lisnr." ([Filing No. 251 at 4](#).)

Although "[t]he *Noerr-Pennington* doctrine may protect "litigation, lobbying, and speech," Plaintiffs have failed to identify how it would apply to the counterclaims in this action. Even if the doctrine were to apply to counterclaims, Plaintiffs have not demonstrated how it applies to the particular claims against them in this action at this stage of the proceedings. Importantly, "the *Noerr-Pennington* defense is typically only properly analyzed through a consideration of evidence outside of the pleadings and as such, [is usually] not appropriately considered in [a] Rule 12(b)(6) context." *Constr. Cost Data, LLC v. Gordian Grp., Inc.*, No. H- 16-114, 2017 U.S. Dist. LEXIS 77481, at *15–16 (S.D. Tex. Apr. 24, 2017). Moreover, the *Noerr-Pennington* doctrine is an affirmative defense; Plaintiffs bear the burden of establishing that the defense applies to each of LISNR's counterclaims and they have failed to do so. *See Segni v. Commercial Office of Spain*,

816 F.2d 344, 346 (7th Cir. 1987) (The *Noerr-Pennington* doctrine is no different "from any other affirmative defense.").

In addition, LISNR argues that any potential *Noerr-Pennington* protection is lost as they have adequately pled a plausible claim that the litigation is a sham. Taking the allegations in the counterclaim as true, the Court agrees that LISNR has adequately pled the sham litigation exception. Upon *de novo* review, the Court determines that the Magistrate Judge was correct in his conclusion that the *Noerr-Pennington* doctrine does not bar LISNR's counterclaims.

2. **Count IV- Malicious Prosecution against Rackemann and Edelson.**

The Magistrate Judge concluded that LSINR plausibly alleged that Edelson's actions were malicious within the meaning of a malicious prosecution tort. The elements of a malicious prosecution action are: (1) the defendant instituted or caused to be instituted an action against the plaintiff; (2) the defendant acted maliciously in so doing; (3) the defendant had no probable cause to institute the action; and (4) the original action was terminated in the plaintiff's favor. *Crosson v. Berry*, 829 N.E.2d 184, 189 (Ind. Ct. App. 2005). There is no dispute as to the first element, Rackemann and Edelson brought the original action against LISNR. The malice element is supported by LISNR's allegations of personal animosity or inferred from a complete lack of probable cause (Edelson studied the App and learned facts fatal to the Wiretap Act claims prior to filing the action), or a failure to conduct an adequate investigation prior to filing the lawsuit; thereby satisfying the second and third elements. The Magistrate Judge reasoned that because Plaintiffs' claims have all been dismissed (a favorable termination for LISNR), the favorable termination element has been satisfied. The Court finds no error in the Magistrate Judge's recommendation to dismiss the abuse of process claim.

### 3. **Count V – Violation of the Illinois Deceptive Trade Practices Act against Edelson.**

The Magistrate Judge recommended denying Edelson's motion to dismiss LISNR'S claim under the Illinois DTPA. Edelson argues this recommendation is incorrect for two reasons, because (1) Indiana—not Illinois—law governs this claim, and Indiana has no applicable statute; and (2) alternatively, the Illinois DTPA prohibits only statements that disparage the *quality* of a business's goods or services.

Courts consider several factors to determine whether a transaction occurred "primarily and substantially" in Illinois, bringing a claim under the ambit of the DTPA, including: (1) the plaintiff's residence, (2) where the misrepresentation was made, (3) where the damage to the plaintiff occurred, and (4) whether the plaintiff communicated with the defendant in Illinois. *Avery v. State Farm Mutual Auto Ins. Co.,* 835 N.E.2d 801, 853–54 (Ill. 2005). The Court agrees with the Magistrate Judge's assessment that while the counterclaim lacks some detail, LISNR has established the factual nexus with Illinois necessary to state a plausible claim under the DTPA. LISNR alleges that Edelson, an Illinois firm, committed their tortious actions from offices in Illinois. The law firm and its technology laboratory are there, the false statements emanated from there and litigation was directed from there. These factors primarily and substantially show that Illinois is the very center of gravity for this cause of action. While further discovery may illuminate facts that negate the factual nexus with Illinois, at this time there is enough of a connection to allow the claim to proceed. *See Specht v. Google, Inc.*, 660 F. Supp. 2d. 858, 866 (N.D. Ill. 2009).

Regarding the alternative argument, Edelson argues that the Illinois DTPA prohibits only statements that disparage the *quality* of a business's goods or services. It contends LISNR fails to state a plausible claim because the allegedly disparaging communications relate to the

14

unlawfulness of LISNR's conduct, not the "quality" of LISNR's goods or services as required by the statute. Under Illinois law, "quality" has a broad meaning. For instance, a statement is actionable where it comments on the "safety profile and effectiveness" of a business's product. *Morton Grove Pharms., Inc. v. Nat'l Pediculosis Ass'n*, 525 F. Supp. 2d 1039, 1049 (N.D. Ill. 2007) (denying Rule 12(b)(6) motion to dismiss). Courts have also found that statements are actionable even if they do not directly comment on the quality of goods or services, where they negatively reflect on such quality. *M&R Printing Equip., Inc. v. Anatol Equip. Mfg. Co.*, 321 F. Supp. 2d 949, 952 (N.D. Ill. 2004). LISNR's counterclaim includes allegations that Edelson made false statements about the App to potential plaintiffs including that it "secretly turns on your phone's microphone and begins listening in . . . to track you as you go about your business" ([Filing No. 218 at 17](#)) and "listened in on [Plaintiff's] conversations, including his conversations with his family." (*Id.*) As the Magistrate Judge determined, LISNR has sufficiently alleged that Edelson disparaged LISNR's business by false misleading representations of fact, thereby stating a plausible claim under the DTPA. Accordingly, the Court accepts the recommendation that dismissal of this claim be **denied.**

    **4.**     <u>**Count VI – Defamation against Edelson.**</u>

To maintain an action for defamation, a plaintiff must prove a communication with four elements: 1) defamatory imputation; 2) malice; 3) publication; and 4) damages. *Branham v. Celadon Trucking Servs., Inc.*, 744 N.E.2d 514, 522 (Ind. Ct. App. 2001). Absolute privilege is a defense to a defamation action. *See Hartman v. Keri*, 883 N.E.2d 774, 777–79 (Ind. 2008). "An absolute privilege bars an action for defamation even when the information was false, and was maliciously and knowingly published." *Hoffman v. Roberto*, 578 N.E.2d 701, 710 (Ind. Ct.

App. 1991). The privilege provides judges, attorneys, parties, and witnesses, in connection with a judicial proceeding, immunity from liability even if they publish defamatory material with an improper motive. *Van Eaton v. Fink*, 697 N.E.2d 490, 494 (Ind. Ct. App. 1998).

Edelson sought dismissal of LISNR's defamation claim on the grounds that statements made during, or in connection with, judicial proceedings are immunized from liability on claims of defamation. The Magistrate Judge recognized the viability of the litigation privilege, but concluded, because privilege is an affirmative defense, it was premature to assess the privilege at the pleadings stage. ([Filing No. 296 at 14](#).) Moreover, while Indiana law recognizes that "counsel . . . are absolutely privileged to publish defamatory matter in the course of judicial proceedings," *Briggs v. Clinton County Bank & Trust Co.*, 452 N.E.2d 989, 997 (Ind. Ct. App. 1983), Indiana state courts have not extended this privilege for attorneys to statements made prior to a judicial proceeding. The Court agrees with the Magistrate Judge's analysis that at this stage of the proceedings, dismissal of this claim is not warranted and the Court **overrules** the objection to the recommendation.

## IV. CONCLUSION

A motion to dismiss pursuant to Rule 12(b)(6) does not test whether the plaintiff will prevail on the merits but instead whether the claimant has properly stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). For the foregoing reasons the Court **OVERRULES** LISNR'S Objection ([Filing No. 298](#)) and the Plaintiffs' Objections ([Filing No. 300](#)), and **ADOPTS in full** the Magistrate Judge's Report and Recommendation ([Filing No. 296](#)). Accordingly, the Court **GRANTS in part and DENIES in part**, the Plaintiffs' Motion to Dismiss ([Filing No. 250](#)). LISNR's counterclaims for declaratory judgment, abuse of process, and spoliation are

16

**DISMISSED**. LISNR's counterclaims for malicious prosecution, violation of the Illinois Deceptive Trade Practices Act, and defamation **SURVIVE** the initial hurdle of the Motion to Dismiss. Whether or not these claims can survive summary judgment is a matter for another day.

**SO ORDERED**:

Date: 9/24/2018

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Rafey S. Balabanian
EDELSON PC
rbalabanian@edelson.com

Thomas A. Barnard
TAFT STETTINIUS & HOLLISTER LLP
tbarnard@taftlaw.com

David J. Bender
COVINGTON & BURLING LLP
dbender@cov.com

Eric C. Bosset
COVINGTON & BURLING LLP
ebosset@cov.com

Thomas L. Feher
THOMPSON HINE LLP (Cleveland)
tom.feher@thompsonhine.com

Katharine Goodloe
COVINGTON & BURLING LLP
kgoodloe@cov.com

Jesse Jenike-Godshalk
THOMPSPON HINE LLP
Jesse.Jenike-Godshalk@ThompsonHine.com

Kevin Kelly
COVINGTON & BURLING LLP
kkelly@cov.com

John F. McCauley
BINGHAM GREENEBAUM DOLL LLP (Indianapolis)
jmccauley@bgdlegal.com

Erica C Mirabella
132 Boylston Street
Boston, MA 02116

Eve-Lynn Rapp
EDELSON PC
erapp@edelson.com

Benjamin H. Richman
EDELSON PC
brichman@edelson.com

Benjamin Thomassen
EDELSON PC
bthomassen@edelson.com

David O. Tittle
BINGHAM GREENEBAUM DOLL LLP
(Indianapolis)
dtittle@bgdlegal.com

Thomas F. Zych
THOMPSON HINE LLP
tom.zych@thompsonhine.com